```
H8o1ottc
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JONATHAN OTTO,

        Plaintiff,

    v.                              17 Civ. 4712 (GHW)

HEARST COMMUNICATIONS, INC.,

        Defendant.          Conference
------------------------------x
                      New York, N.Y.
                      August 24, 2017
                      3:05 p.m.

Before:

              HON. GREGORY H. WOODS,

                      District Judge

                APPEARANCES

LIEBOWITZ LAW FIRM, PLLC
    Attorneys for Plaintiff
BY: RICHARD LIEBOWITZ, ESQ.

JENNIFER D. BISHOP, ESQ.
Office of General Counsel
HEARST CORPORATION
    For Defendant

1        (Case called)

2        THE DEPUTY CLERK:  Counsel, please state your name for
3   the record.

4        MR. LIEBOWITZ:  Richard Liebowitz, Liebowitz Law Firm,
5   counsel for plaintiff Jonathan Otto.  Good afternoon, your
6   Honor.

7        THE COURT:  Thank you.  Good afternoon.

8        MS. BISHOP:  This is Jennifer Bishop from Hearst
9   Communications, Inc., the defendant.

10       THE COURT:  Thank you very much.  Good afternoon.

11       So we're here for an initial pretrial conference with
12  respect to this case.  My agenda follows:

13       First, I'm going to give each of the parties the
14  opportunity to describe any legal or factual issues that you'd
15  like to bring to my attention in connection with this case.

16       Second, I hope to discuss the process that we'll be
17  using to litigate the case going forward.  I expect to use the
18  parties' proposed case management plan as the frame for that
19  conversation.

20       And last, I expect to discuss what, if anything, I can
21  do to help facilitate an amicable resolution of the case.

22       Is there anything that either of you would like to add
23  to that agenda before we proceed?  Counsel?

24       MR. LIEBOWITZ:  Your Honor, I just want to add one
25  thing in terms of the case management plan that was proposed,

H8o1ottc

1    and we can talk about that later.  There was just one thing
2    that we wanted to change in that case management plan.
3             THE COURT:  Good.
4             MR. LIEBOWITZ:  Do you want to discuss it now?
5             THE COURT:  No.  We'll come to that.
6             MR. LIEBOWITZ:  Okay.
7             THE COURT:  Thank you.
8             Counsel, anything you'd like to add to the agenda
9    before we proceed?
10            MS. BISHOP:  No, your Honor.
11            THE COURT:  Good.  Thank you.
12            Counsel for plaintiff, what would you like to tell me
13   about the case?
14            MR. LIEBOWITZ:  All right.  So your Honor, this is a
15   copyright infringement case whereby my client, a photographer,
16   he was -- he photographed president Donald Trump at -- when he
17   crashed a wedding at his golf course in New Jersey, and he --
18   it was an exclusive photograph, and next thing you know, the
19   photograph appears on Esquire.com, which is owned by Hearse
20   Communications.  Pretty straightforward case whereby, you know,
21   it's a copyright infringement.  The defendant used the
22   photograph without permission.  Plaintiff believes that
23   defendant, a sophisticated, you know, media outlet that's in
24   the business of creating content and even licensing content
25   themselves, would not try to contact the owner of the

1  photograph before using it but instead putting it on their
2  popular website, Esquire Magazine, Esquire.com, and having, you
3  know -- it was a very popular, you know -- it made headlines
4  all around the country when Donald Trump crashed this wedding,
5  and defendant wanted to have a picture to show the public that,
6  here it is, Donald Trump greeting the bride at the wedding,
7  here's the photograph, and they just blatantly just copied the
8  photograph and placed it on their website without permission,
9  and we don't know how many visitors to the website but we know
10 that, you know, Esquire.com is a very popular website, they get
11 a lot of viewers.  We're not sure the amount of profits they
12 made.  That's something that we're going to have to get during
13 discovery.  But we feel that this was willful, they could have
14 easily contacted -- defendant has a long history of copyright
15 infringement claims against them over the past year, two years,
16 and they should have done the proper thing in terms of
17 contacting the photographer before they used it on their
18 website.
19          So that's the case in the nutshell for your Honor.
20          THE COURT:  Thank you.
21          What can you tell me about the status of the
22 plaintiff's registration of --
23          MR. LIEBOWITZ:  Yes, your Honor.  So we did receive
24 the actual VA number and we potentially just will amend the
25 complaint to add it in, because at the time we had a pending

H8o1ottc

1  number, and the copyright office, it takes them a little while
2  to actually get to the registration, but at this point we do
3  have the actual VA number, the registration number, that we may
4  amend to add into the actual complaint.
5         THE COURT:  Thank you.
6         Given the timing for the application here, what's your
7  view regarding plaintiff's entitlement to statutory damages and
8  attorney's fees?
9         MR. LIEBOWITZ:  Yes, your Honor.  So plaintiff did
10 register the image within three months of first publication,
11 and thus, as a result, plaintiff is entitled to statutory
12 damages and attorney's fees because of that.  The statute
13 states that if it's registered within three months, that that's
14 fine.
15        THE COURT:  Thank you.
16        And what's the date of first publication?
17        MR. LIEBOWITZ:  The date of first publication was the
18 date that he photographed the -- that date, that date that he
19 photographed Donald Trump at the wedding.
20        THE COURT:  Thank you.  Good.
21        Counsel for defendant, what would you like to tell me
22 about the case?
23        MS. BISHOP:  Yes, your Honor.
24        So this single photograph that's at issue in this
25 case, it appears to have been taken on a cellphone.  It was

1  published many times on the internet, besides on Esquire.com,
2  including on multiple Instagram accounts that don't appear to
3  belong to the plaintiff here, and on multiple websites where it
4  was credited to one of those other Instagram accounts.  On
5  Esquire.com it was similarly credited to an Instagram account
6  of someone named Lara Pitkowsky, who is, of course, not the
7  plaintiff here.

8        Hearst removed the photograph less than two weeks
9  after it was published, as soon as plaintiff filed this
10 lawsuit, but plaintiff had not made any demand or sent a cease
11 and desist letter before filing the lawsuit, so that was the
12 first notice we had of the claim.  We're still investigating
13 the facts, but we believe that the other publications of the
14 photograph raise questions about whether or not plaintiff is
15 the actual owner of this photograph and whether they were the
16 right person to ask for permission to use it.  We also intend
17 to make a fair use defense based on the news character of the
18 use and the comment character of the use on Esquire.com.

19       THE COURT:  Thank you.

20       Mr. Liebowitz, is it correct as defendant asserts that
21 no demand was made with respect to potential resolution or
22 requesting that the photograph be taken down before this case
23 was brought?

24       MR. LIEBOWITZ:  So your Honor, no.  We filed the case
25 and then we did make a demand.  Right now there is a demand in

H8o1ottc

1  defendant's hands, and we haven't received any response to the
2  demand.
3       THE COURT:  Thank you.
4       Did you make a demand before you filed suit here?
5       MR. LIEBOWITZ:  No.
6       THE COURT:  Thank you.
7       So let's talk about the process that we'll be using to
8  litigate the case going forward.
9       Counsel for plaintiff, I've reviewed the proposed case
10  management plan.  I understand that there may be something that
11  the parties wish to modify.  But let me first hear the nature
12  and extent of the discovery that you anticipate taking in
13  support of these claims.
14       MR. LIEBOWITZ:  So yes, your Honor.  So plaintiff
15  would like to depose the person who got the actual photograph
16  from this lawsuit, where they got it from, you know, what their
17  state of mind was in terms of getting the photograph.  I would
18  also like to depose the writer of the article of, you know, how
19  did they come up with the idea for the article.  Also a
20  corporate representative from Hearst to determine what if any
21  profits they made from the use of the photograph and how their
22  business works in terms of -- defendant is a media company,
23  they're in the business of driving traffic to their website,
24  and we would like to determine, you know, from this article how
25  much profit they made.  So that's what I envision in terms of

1  depositions.

2      In terms of production of documents, I would like to
3  find out the number of actual visitors to the website, which is
4  I think pretty easy to try to have in their analytics.  And,
5  you know, we want to also know if there are any, you know -- is
6  there anything that Hearst has in terms of any copyright,
7  handbooks, what do they do to educate their editors in terms of
8  copyright and what do they do to contact the owners of
9  photographs, because defendant does have a history of cases
10 filed in this district, a bunch of them, and we want to know
11 whether, you know, this is willful in terms of, are they doing
12 this on purpose and taking other people's work without
13 permission, and is that their business model, and so we want to
14 find that out to determine if there's anything that they have
15 in terms of educating their writers or photo editors in terms
16 of what to do when they need to get permission to use a
17 photograph.  So, and you know, obviously if they have any
18 documents in terms of profits, in terms of any advertising,
19 revenue, that they have, which would probably be documents as
20 well, but pretty much I think that's the crux of the document
21 requests and depositions that we would want to get from
22 defendant.
23     THE COURT:  Thank you.
24     Can you tell me whether you anticipate third-party
25 discovery in connection with this case.

1       MR. LIEBOWITZ:  You know, potentially, you know,
2  defendant may get, you know, whatever they got it from, you
3  know, whatever the social media account that they potentially
4  got the image from, but on our end, we don't anticipate getting
5  any, you know, third-party, you know, discovery.
6       THE COURT:  Thank you.  Good.
7       Let me hear from you, counsel, about the change to the
8  case management plan that you wished to raise earlier.
9       MR. LIEBOWITZ:  Oh, yes, your Honor.  So we would like
10 to change the jury trial.  We would like it yes, that it will
11 be a jury trial.
12      THE COURT:  Thank you.  Have you already included in
13 another document a jury demand?
14      MR. LIEBOWITZ:  You know, I think there was just an
15 oversight in terms of, you know, it shouldn't have been nonjury
16 trial, it should have been yes, a jury trial, which is I
17 believe the last page of the case management plan.
18      THE COURT:  Thank you.
19      This case management plan is not itself the document
20 pursuant to which the parties make the jury demand as an
21 initial matter.  Frequently the parties will do it in their
22 complaint.
23      MR. LIEBOWITZ:  Oh, yes.  So in the complaint it does
24 say jury trial, but just for clarification, because, you know,
25 we did have to fill out the case management plan, that that was

1        just something that needed to be changed in there.

2                Another thing that we would like to change as well in
3        terms of -- we would like to be in front of the magistrate
4        judge for settlement purposes, and we would like to do it as
5        soon as possible, instead of waiting until after fact
6        discovery.  I think that will save everyone time and resources
7        to try to get the matter resolved.  So we would like to just do
8        it, you know -- refer it right away.

9                THE COURT:  Thank you.  Understood.  Let me talk about
10       that request after we finish talking about the case management
11       plan as a whole.

12               Counsel for defendant, what's your view regarding the
13       discovery that will be necessary in this case?

14               MS. BISHOP:  Sure.  In addition to discovery about the
15       copyright ownership issue I was talking about before, we'll
16       want to take discovery on plaintiff's licensing history and
17       other documents that may be relevant to determination of what
18       his damages actually are here.  As counsel for plaintiff
19       alluded to earlier, we'd also probably take third-party
20       discovery about some of those other publications I mentioned
21       earlier.

22               THE COURT:  Thank you.

23               Do you anticipate that there will be any issues
24       managing ESI in this case?  Counsel for defendant first.

25               MS. BISHOP:  No, your Honor, I don't think that the

1  volume here would be such that there would be any real ESI

2  issues.  We will request a -- well, I mean, I think we need to

3  meet and confer on that.  If plaintiff is seeking voluminous or

4  very, very broad document requests, we might need to agree on

5  search terms or something like that on emails, but based on

6  what I understand today, it doesn't look like ESI is going to

7  be an issue.

8        Separately, though, we would want to seek to enter a

9  protective order for the production that would govern any of

10  the documents defendant would be producing.

11        THE COURT:  Thank you.

12        With respect to any protective order, let me just

13  point the parties to my individual rules which contain guidance

14  regarding the process for requesting a protective order from

15  me.

16        So having heard the parties' description of the nature

17  and extent of the discovery that you anticipate in this case, I

18  expect that I will accept much of the proposed structure that

19  you've set forth in the case management plan -- in particular,

20  the suggestion that fact discovery be completed no later than

21  December 22, 2017.  I believe that, given the limited nature of

22  the discovery in this case, that that should be more than

23  adequate time for the parties to complete fact discovery in the

24  case.

25        Now the parties have told me that they do not

1    anticipate experts at this time and have reserved the option to
2    notify me 30 days prior to close of fact discovery with respect
3    to any possible expert testimony.  I would like to set
4    deadlines for completion of expert discovery, understanding
5    that they may not in fact be needed.  Still, I think it would
6    be helpful to make sure that the parties understand that there
7    are deadlines for completion of expert discovery from the
8    outset to focus you on that question as you are structuring
9    your litigation strategy.
10           So I want to include a deadline for completion of
11   expert discovery.  Given that the parties at this point don't
12   anticipate expert discovery, I'd like to ask whether it would
13   be appropriate for me to insert a date that's approximately a
14   month after end of fact discovery rather than 45 days after the
15   end of fact discovery.  What's your view, counsel for
16   plaintiff?  Mr. Liebowitz?
17           MR. LIEBOWITZ:  Yeah, your Honor, that's fine.  30
18   days after fact discovery should be enough time.
19           THE COURT:  Good.  Thank you.
20           Counsel for defendant?
21           MS. BISHOP:  I believe that would be fine for us as
22   well, just provided that, also setting earlier deadlines for
23   disclosures, that that allows time for both the opening expert
24   report and a responsive report, if one party does decide to go
25   forward with an expert.

1          THE COURT:  Good.  That's fine.

2          What I'll do is I will insert a date that's

3  approximately 30 days after the end of fact discovery for the

4  deadline for completion of expert discovery.  Any party

5  proponent's disclosures will be due a date that's approximately

6  one week prior to the close of fact discovery, so not the same

7  day as the close of fact discovery but one week prior to that

8  date, and therefore any party opponent's submissions will be

9  due approximately two weeks following that initial disclosure

10 deadline.  That still provides some time for completion of

11 expert discovery following completion of the disclosures.

12         Good.  So I'll enter a case management plan with those

13 deadlines and a modification to the deadline for motions for

14 summary judgment to a date that's approximately 30 days after

15 the close of expert discovery.

16         I'll also modify paragraph 12 because, as I understand

17 it, plaintiff has requested a jury trial in this case and the

18 checkmark in the nonjury trial box was in error.

19         So I'll make those modifications to the case

20 management plan.

21         Let me say a few things.  First, these are real

22 deadlines, so please understand them as such.  The discovery in

23 this case is relatively discrete, and it can be completed by

24 the dates that we're establishing here.  Let me be clear that

25 by completed, I mean completed.  In other words, fact discovery

1    will not continue on after December 22, 2017, unless I've
2    granted an extension, which I will only do for good cause shown
3    and I'll only do if the application is made no less than two
4    business days prior to the expiration of the date sought to be
5    extended.  As a corollary to that rule, be mindful that if you
6    wait until the end of the discovery period to, for example,
7    take a deposition, you should not expect that I'll extend the
8    discovery period for you to do follow-up discovery.  You should
9    schedule your discovery process with that in mind.
10           Similarly, if there are any discovery disputes, you
11   should raise them to my attention if you're unable to resolve
12   them promptly so that I can help you resolve them and you can
13   complete discovery within this time period.  Do not expect that
14   you can hoard discovery disputes until the end of fact
15   discovery with the expectation that I will add on some
16   indefinite amount of time for completion of discovery regarding
17   disputed issues.  That is not my understanding of what
18   completed means.  Completed means completed.
19           Similarly, if you fail to meet the deadlines that I'm
20   going to include in paragraph 8(c) with respect to expert
21   disclosures, you should expect that your expert will not be
22   permitted to provide any testimony, so if you have not provided
23   all of the materials required for any particular expert under
24   Federal Rule of Civil Procedure 26(a)(2) by the date specified
25   in paragraph 8(c), that expert will not be permitted to

1   testify -- again, unless I've granted an extension of time,
2   which I'll only do for good cause shown and only if the request
3   is made timely.
4              Appreciate that I do not expect to find that there's
5   good cause on the basis that the parties are discussing
6   settlement or otherwise seeking to mediate the case.  The
7   parties will have the opportunity to litigate the case in
8   parallel with any efforts to resolve the case.  Once the case
9   is filed, I have an obligation to move it along efficiently and
10  therefore, while I'm going to talk about the prospect of
11  referring this to a magistrate judge, you should not understand
12  that that relieves you from your obligations to complete
13  discovery by the deadlines that I'm about to establish.  Any
14  efforts to settle the case will have to happen in parallel with
15  your efforts to litigate the case.
16             Good.  So Mr. Liebowitz, you've suggested that the
17  parties would request a reference to the magistrate judge for
18  settlement purposes.  Can I ask first, is that necessary?  Have
19  the parties discussed settlement without --
20             MR. LIEBOWITZ:  Yes, your Honor.  You know, plaintiff
21  and defendant have had other cases against one another and
22  we've had other cases where we've been in front of a magistrate
23  judge and it has been successful, so I think that with a third
24  party, you know, neutral, together, I think that we can come to
25  resolution fairly quickly.

1          THE COURT:  Do you think that you need that help or
2     that instead you may be able to resolve the case through
3     further unmediated discussions?  I ask only because, while I
4     agree with you that a magistrate judge's presence sure would be
5     helpful, that their time is also a valuable resource and I
6     don't want to send you there if the parties haven't engaged in
7     meaningful conversations yet.
8          MR. LIEBOWITZ:  Your Honor, I do think that it is
9     important.  I mean, I think that, prior history with one
10    another, I really believe that having a settlement conference
11    would be very beneficial in getting to a resolution here.
12         THE COURT:  Thank you.
13         Counsel for defendant, what's your view?
14         MS. BISHOP:  Our view is that we do think we have some
15    room to move along in settlement discussions without the
16    assistance of a magistrate judge and would be happy requesting
17    a magistrate judge conference at a later date if we're
18    unsuccessful.
19         I might propose sort of a middle solution here where
20    we could set a date by which we'll file a letter to request a
21    conference with the magistrate judge maybe a month out from
22    today if we have not yet resolved -- been able to resolve it
23    between ourselves.
24         THE COURT:  Good.  Thank you.
25         Mr. Liebowitz, what's your view regarding that

H8o1ottc

1  suggestion?

2              MR. LIEBOWITZ:  Your Honor, I think that getting on
3  the magistrate judge's calendar now instead of waiting 30
4  days -- I know that, you know, they're very busy, and by the
5  time we get it onto the calendar, it's going to be, you know --
6  it could be even by the end of fact discovery by the time, you
7  know -- if we need to contact them, you know, a month out.  So
8  what I would suggest is to at least get onto the magistrate
9  judge's calendar now, whether it be, you know, getting it on,
10  you know, 30 days, you know, from today, at least it's on the
11  calendar of the magistrate judge, just in case the judge fills
12  up with other things.

13              THE COURT:  Good.  Thank you.

14              Let me ask the parties to do the following.  Please
15  work collaboratively toward resolving the case in the upcoming
16  two weeks.  If after two weeks you think it will be helpful for
17  me to enter a reference to the assigned magistrate judge,
18  please write me.  I'd be happy to enter a reference then.  So
19  I'd appreciate it if you could work to resolve the case in the
20  near term.  If you still believe that the assistance of a
21  magistrate judge would be helpful, please don't hesitate to
22  write me.  I'd be happy to enter a reference at that point.

23              Good.  Is there anything else that we should talk
24  about before we adjourn?  Counsel for plaintiff?

25              MR. LIEBOWITZ:  Nothing, your Honor.  Thank you.

H8o1ottc

1      THE COURT:  Counsel for defendant?
2      MS. BISHOP:  No, your Honor.
3      THE COURT:  Good.  Thank you, both.  This proceeding
4  is adjourned.
5      MR. LIEBOWITZ:  Thank you.
6                          o0o