Richard Liebowitz
James H. Freeman
LIEBOWITZ LAW FIRM, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
rl@liebowitzlawfirm.com
jf@liebowitzlawfirm.com

*Counsel for Plaintiff Jonathan Otto*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JONATHAN OTTO,<br><br>                   Plaintiff,<br><br>    - against –<br><br>HEARST COMMUNICATIONS, INC.<br><br><br>                  Defendants. | 1:17-cv-04712 (GHW-JLC)<br><br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON**
**LIABILITY AGAINST DEFENDANT FOR COPYRIGHT INFRINGEMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ iv

PRELIMINARY STATEMENT ........................................................ 1

UNCONTROVERTED FACTS ........................................................ 2

SUMMARY JUDGMENT STANDARD ................................................ 5

ARGUMENT ............................................................................ 6

**POINT I:  PLAINTIFF READILY ESTABLISHES HIS COPYRIGHT
INFRINGEMENT CLAM ........................................... 6**

A.  PLAINTIFF OWNS A VALID COPYRIGHT ................................... 6

B.  HEARST COPIED OTTO'S WORK WITHOUT AUTHORIZATION ............ 8

**POINT II:  THE FAIR USE DEFENSE FAILS AS A MATTER OF LAW ............. 9**

A.  THE FIRST FACTOR WEIGHS HEAVILY AGAINST FAIR USE ................ 10

  (1)  Hearst's Secondary Use is NOT Transformative .......................... 10

    (a)  *The Newsworthiness of the Photograph is Not Dispositive* .......... 10

    (b)  *The Photograph Here is Not "Itself the Subject of the Story"* ...... 12

    (c)  *Hearst Used the Photograph to Merely Illustrate the Content Described in
its Second-Hand News Article* ...................................... 13

    (d)  *Hearst Has Simply Repackaged the Message Conveyed by a Pre-Existing
Work And Has Not Altered the Meaning of the Photograph* ........ 14

  (2)  Defendant's Use is Commercial Rather Than Non-Profit ............. 15

  (3)  Hearst's Use is in Bad Faith .......................................... 16

B.  THE SECOND FACTOR IS LIKELY NEUTRAL (BUT CARRIES MINIMAL WEIGHT) .... 18

C.  THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE HEARST
UNNECESSARILY PUBLISHED A FULL-COLOR REPRODUCTION OF THE IMAGE ....... 19

D.  THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE THERE WAS ACTUAL
MARKET HARM AS WELL AS HARM TO THE POTENTIAL MARKET ........................ 20

(1)     Defendant's Use Functioned As An Actual Market Replacement ............... 21

(2)     Defendant's Use Curtailed the Potential Market for the Copyright ............. 22

**POINT III: OTHER DEFENSES TO LIABILITY SHOULD BE DISMISSED...... 23**

CONCLUSION ............................................................................................................ 25

## **TABLE OF AUTHORITIES**

### **CASES**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 247 (1986) ............................................................................ 5

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009) .......................................................................... 24

*Associated Press v. Meltwater U.S. Holdings,*
    931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) ........................................... passim

*Authors Guild v. Google, Inc.,*
    804 F.3d 202, 220 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1658 (2016) ..................... 18

*Balsley v. LFP, Inc.,*
    691 F.3d 747, 759 (6th Cir. 2012) ...................................................... 15, 21

*Baraban v. Time Warner,*
    No. 99-cv-1569 (JSM), 2000 WL 358375 at *4 (S.D.N.Y. April 6, 2000) ........... 12, 18

*Barcroft Media, Ltd. v. Coed Media Group, LLC,*
    No. 16-cv-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. 2017) ............................. passim

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 570 (2007) .......................................................................... 24

*Blanch v. Koons,*
    467 F.3d 244, 251 (2d Cir. 2006) ................................................... 10, 16, 18

*Bridgeport Music, Inc. v. UMG Recordings, Inc.,*
    585 F.3d 267, 279 (6th Cir. 2009) ........................................................... 17

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.,*
    196 F.Supp.3d 395, 407 (S.D.N.Y. 2016) ........................................... passim

*Cable/Home Commc'n Corp. v. Network Prods., Inc.,*
    902 F.2d 829, 845 (11th Cir.1990) ........................................................... 23

*Campbell v. Acuff– Rose Music, Inc.,*
    510 U.S. 569, 579 (1994) ........................................................................ passim

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,*
    150 F.3d 132, 137 (2d Cir. 1998) ........................................................ 6, 8, 9

## *CASES (continued…)*

*Celotex Corp. v. Catrett,*
  477 U.S. 317, 323 (1986) .......................................................................... 5, 23

*Davis v. The Gap Inc.,*
  246 F.3d 152, 175 (2d Cir. 2001) ................................................................. 16

*Eclaire Advisor Ltd. v. Daewoo Engineering Co.,*
  375 F.Supp.2d 257, 260 (S.D.N.Y. 2005) .................................................... 24

*Ets–Hokin v. Skyy Spirits, Inc.,*
  225 F.3d 1068, 1074-76 (9th Cir. 2000) ........................................................ 6

*F.D.I.C. v. Giammettei,*
  34 F.3d 51, 54 (2d Cir. 1994) ........................................................................ 5

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340, 361 (1991) ............................................................................... 6

*Fitzgerald v. CBS Broad., Inc.,*
  491 F.Supp.2d 177, 185 (D.Mass.2007) ................................................. 13, 22

*Fonar Corp. v. Domenick,*
  105 F.3d 99, 104 (2d Cir.), *cert. denied*, 522 U.S. 908 (1997) ....................... 7

*Harper & Row v. Nation Enterprises,*
  471 U.S. 539, 560 (1985) ...................................................................... passim

*In re Zeman,*
  No. 09-52559-C, 2010 WL 3123144, at *1 (Bankr. W.D. Tex. Aug. 6, 2010) ............ 25

*Infinity Broadcast Corp. v. Kirkwood,*
  150 F.3d 104, 108 & n. 2 (2d Cir. 1998) ............................................... passim

*Island Software & Computer Serv., Inc. v. Microsoft Corp.,*
  413 F.3d 257 (2d Cir. 2005) ........................................................................... 6

*Jewelers' Circular Pub. Co. v. Keystone Pub. Co.,*
  274 F. 932, 934 (S.D.N.Y. 1921) ................................................................... 6

*Kienitz v. Sconnie Nation LLC,*
  766 F.3d 756, 759 (7th Cir. 2014) ............................................................... 20

### CASES (continued…)

*Konangataa v. Am. Broadcasting Companies, Inc.,*
   No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017)............ 12

*L.A. News Serv. v. KCAL–TV Channel 9,*
   108 F.3d 1119, 1122 (9th Cir.1997) ............................................................. 13

*Leibovitz v. Paramount Pictures Corp.,*
   No. 94 Civ. 9144 (LAP), 2000 WL 1010830, at *4 (S.D.N.Y. 2000) ......................... 19

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC,*
   13-cv- 4664, 2014 WL 3368893, at (N.D. Ill. July 8, 2014) ....................................... 12

*Lipton v. Nature Co.,*
   71 F.3d 464, 471 (2d Cir. 1995)........................................................................ 6

*Mathieson v. Associated Press,*
   1992 WL 164447 (S.D.N.Y. June 25, 1992) ............................................................. 12

*Mavrix Photographs LLC v. Sandra Rose LLC,*
   2016 WL 6246408  *2 (C.D. Cal. April 6, 2016) ......................................................... 13

*Monge v. Maya Magazine, Inc.,*
   688 F.3d 1164, 1170 (9th Cir. 2012) ...................................................... passim

*Monster Communications, Inc. v. Turner Broadcasting,*
   935 F.Supp. 490, 494 (S.D.N.Y. 1996) ......................................................... 18

*Murphy v. Millennium Radio Group LLC,*
   650 F.3d 295, 306 (3d Cir. 2011)........................................................... 11-13

*Nunez v. Caribbean Int'l News Corp.,*
   235 F.3d 18, 25 (1st Cir. 2000)................................................................... 12

*NXIVM Corp. v. Ross Inst.,*
   364 F.3d 471, 478 (2d Cir. 2004)........................................................ 10, 16, 19

*Psihoyos v. National Examiner,*
   No. 97-cv-7624 (JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) ............ passim

*Richard Feiner & Co., Inc. v. H.R. Industries, Inc.,*
   10 F.Supp.2d 310, 314 (S.D.N.Y. 1998) ...................................................... 16

*Ringgold v. Black Entertainment Television, Inc.,*
   126 F.3d 70, 79 (2d Cir. 1997)........................................................... 10, 21

## _CASES (continued…)_

*Rogers v. Koons,*
  960 F.2d 301, 307 (2d Cir. 1992)....................................................................... 6, 17, 19

*Roy Export Co. Establishment of Vaduz, Liechtenstein,*
  503 F.Supp. 1137, 1144 (2d Cir. 1980) .......................................................... 1

*Sarl Louis Feraud Intern. v. Viewfinder, Inc.,*
  627 F.Supp.2d 123, 131 (S.D.N.Y. 2008) ..................................................... 10

*Scholz Design, Inc. v. Sard Custom Homes, LLC,*
  691 F.3d 182, 186 (2d Cir. 2012)..................................................................... 6

*Sony Corp. of America v. Universal City Studios, Inc.,*
  464 U.S. 417, 450 (1984)............................................................................ 16, 21

*Stewart v. Abend,*
  495 U.S. 207 (1990)......................................................................................... 9

*Swatch Group Management Services Ltd. v. Bloomberg L.P.,*
  756 F.3d 73, 85 (2d Cir. 2014)...................................................................... 11

*Torain v. Clear Channel Broad., Inc.,*
  651 F. Supp. 2d 125, 145 (S.D.N.Y. 2009) ................................................. 24

*United States v. Am. Soc. of Composers Authors & Publishers,*
  599 F.Supp.2d 415, 429 (S.D.N.Y. 2009) ................................................... 16

*Whimsicality, Inc. v. Rubie's Costume Co. Inc.,*
  891 F.2d 452, 455 (2d Cir. 1989)................................................................... 6

*Zomba Enterprises, Inc. v. Panorama Records, Inc.,*
  491 F.3d 574, 584 n. 9 (6th Cir. 2007) ...................................................... 18

## STATUTES

17 U.S.C. § 106.................................................................................................. 9, 23
17 U.S.C. § 107............................................................................................... passim
17 U.S.C. § 410(c) ................................................................................................ 6

## RULES

Fed. R. Civ. P. 56................................................................................................. 5
Fed.R.Civ.P. 8(c)(1)............................................................................................ 24

## PRELIMINARY STATEMENT

**"It is true that news reporting is a widely-recognized ground for finding fair use under the Copyright Act. The Court has found no case, however, in which the use of an image solely to present the content of that image, in a commercial capacity, was found to be fair."** - *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F.Supp.3d 395, 407 (S.D.N.Y. 2016)

**"The fair use doctrine is not a license for corporate theft, empowering a court to ignore a copyright whenever it determines the underlying work contains material of possible public importance."** - *Roy Export Co. Establishment of Vaduz, Liechtenstein*, 503 F.Supp. 1137, 1144 (2d Cir. 1980)

This case is about the democratization of 21st century technology and whether courts will enforce the copyrighted works created by those in possession of such technology. Plaintiff Jonathan Otto ("Plaintiff" or "Otto") is a guy with an iPhone who happened to photograph a newsworthy event: President Trump crashing a wedding. Defendant Hearst Communications, Inc. ("Defendant" or "Hearst") is a largescale news publisher and serial copyright infringer who has been sued ten times in this District in the last two years. Having been caught yet once again exploiting copyrights without first obtaining permission, Hearst has manufactured a defense of "fair use" to shield itself from liability on the theory that it can freely exploit images taken from social media.

But the caselaw is crystal clear: even in the context of news reporting, there is no transformative effect when the secondary user simply publishes an image to illustrate a story. Hearst has not offered any commentary or critique about the photograph itself. Moreover, under the Copyright Act <u>and</u> Copyright Clause, ordinary citizens with iPhones have as much rights to enforce and protect their newsworthy images as professional photojournalists. Accordingly, the Court should grant Plaintiff's motion and permit this case to advance to trial on the issue of damages.

## UNCONTROVERTED FACTS

### The Wedding – June 10, 2017

On June 10, 2017, a wedding reception took place at Trump National Golf Club in Bedminster Township, New Jersey (the "Wedding").  [Plaintiff's Statement Pursuant to Local Rule 56.1 (hereafter "56.1"), ¶ 1; 2d Stipulation of Facts (hereinafter "SF") ¶ 1] U.S. President Donald Trump ("President Trump") made a surprise appearance at the Wedding or, in other words, President Trump crashed the wedding.  [56.1, ¶ 3; SF ¶ 3] President Trump's appearance at the Wedding was newsworthy.  [56.1, ¶ 4; SF ¶ 4]

### Plaintiff Jonathan Otto

Plaintiff Jonathan Otto attended the Wedding.  [56.1, ¶ 9; SF ¶ 9]  Otto is not and has never been a professional photographer.  [56.1, ¶ 7; SF ¶ 7]

### Defendant Hearst Communications, Inc.

Hearst is a for-profit entity [56.1, ¶ 11; SF ¶ 60] in the business of publishing news.  [56.1, ¶ 12; SF ¶ 61]  Hearst employs lawyers in-house who are knowledgeable about copyright law [56.1, ¶ 15; SF ¶ 64] and licensing practices in the publishing industry.  [56.1, ¶ 17; SF ¶ 66]  Through its enterprise license with Getty Images, Hearst has access to photographs of President Trump.  [56.1, ¶ 21; SF ¶ 70]

### The Photograph of President Trump at the Wedding – June 10, 2017

The Photograph at issue in this lawsuit depicts President Trump with the bride at the Wedding (the "Photograph").  [56.1, ¶ 28; SF ¶ 11]  Otto took the Photograph with his iPhone.  [56.1, ¶ 29; SF ¶ 12]  At the time Otto created the Photograph, he did not have the intent to commercially exploit the Photograph.  [56.1, ¶ 31]  Otto took the Photograph because it was remarkable that the President of the United States suddenly appeared at his friend's wedding.  [56.1, ¶ 32]  President Trump's appearance at the

wedding was a newsworthy event and Otto wanted to capture the moment. [56.1, ¶ 33]

After taking the Photograph, Otto used the photo editing application on his iPhone to modify the image.  [56.1, ¶ 34]  The name "Jonathan Otto" was programmed into the "Copyright" field in the iPhone editing application.  [56.1, ¶ 35]  Otto then texted a copy of the Photograph to one other wedding guest named Sean Burke, who had asked Otto to share the Photograph with him.  [56.1, ¶ 36; SF ¶ 14]. Otto did not himself post the Photograph to social media.  [56.1, ¶ 39; SF ¶ 16]

**Publication of the Photograph – June 11, 2017**

On Sunday, June 11, 2017, the day after the Wedding, Otto discovered that the Photograph had been published to various news websites including TMZ.  [56.1, ¶ 42]  Otto indicated that he wanted to be compensated and credited for commercial use of the Photograph. [56.1, ¶¶ 43-44]  Several more third-party news outlets, including *CNN, Washington Post*, and *Daily Mail,* published the Photograph without Otto's permission.  [56.1, ¶ 78-82; SF ¶ 43-47]  The Photograph was also published to social media via Instagram.  [56.1, ¶ 46; SF ¶ 22]

**Hearst's Publication of the Photograph on www.Esquire.com - June 11, 2017**

Hearst operates the Website www.Esquire.com (the "Website") [56.1, ¶ 52; SF ¶ 27] which is a frequent licensee of photographs from professional photographers and stock photography agencies.  [56.1, ¶ 53; SF ¶ 28]  On June 11, 2017, the Photograph appeared on the Website as part of an article about President Trump's appearance at the Wedding entitled "President Trump is the Ultimate Wedding Crasher" (the "Article").  [56.1, ¶ 54; SF ¶ 29]  Hearst obtained the Photograph from the Instagram account of Laura Piatowski at @lauramp11.  [56.1, ¶ 50; SF ¶ 26]

Commercial advertisements were visible at the same URL on www.esquire.com where the Photograph was displayed [56.1, ¶ 56; SF ¶ 31] and Hearst earned revenue from those ads. [56.1, ¶ 578; SF ¶ 32] Hearst's use of the Photograph on the Website did not credit Otto as the author or owner of the Photograph. [56.1, ¶ 59; SF ¶ 34] Hearst did not seek Otto's permission to publish the Photograph. [56.1, ¶ 60; SF ¶ 35] Otto never granted Hearst authorization to copy the Photograph or distribute copies of his image to the public. [56.1, ¶ 61; SF ¶ 36]

Prior to publishing the Photograph on the Website, Hearst did not communicate with Otto. [56.1, ¶ 64; SF ¶ 38] The data entry forms used by Hearst to input text and images for use in the Article show that the data entry field for "Copyright" was left blank [56.1, ¶ 74] Hearst made no effort to ascertain the actual identity of the copyright holder prior to publication of the Photograph [56.1, ¶ 77].

### Copyright Registration of the Photograph – June 12, 2017

On Monday, June 12, 2017, Otto retained the Liebowitz Law Firm (the "Firm") to enforce his rights in the Photograph [56.1, ¶ 83] It is the Firm's routine practice to register photographs with the Copyright Office on behalf of its clients. [56.1, ¶ 85] The Firm's registration of the Photograph on behalf of Mr. Otto was carried out in accordance with this routine practice. [56.1, ¶ 89]

As a result, Otto is in possession of a registration certificate for the Photograph, bearing number VA 2-055-309, entitled "Donald Trump crashes wedding at Trump National Golf Course, Bedminster, NJ" (the "309 Registration"). [56.1, ¶ 90] Otto obtained the 309 Registration on June 12, 2017, within five years after first publication of the Photograph. [56.1, ¶ 91]

4

**Otto's Infringement Suits**

Including the present action, Otto has filed five copyright infringement lawsuits in this District based on use of the Photograph.  [56.1, ¶ 102; SF ¶ 48]  Four out of the five lawsuits referenced have already settled. [56.1, ¶ 107]  Subsequent to filing his lawsuit against Hearst, Otto discovered that Hearst had removed the Photograph from its Website. [56.1, ¶¶ 108-109]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The burden is on the moving party to establish the lack of any factual issues.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  An otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).

Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial."  *Anderson,* 477 U.S. at 248. "Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense - on which the defendant bears the burden of proof at trial - a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citation omitted).

# ARGUMENT

On summary judgment, the Court may determine liability against a defendant on plaintiff's copyright infringement claim. *See, e.g., Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995); *Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir. 1992).

## POINT I:  PLAINTIFF READILY ESTABLISHES HIS INFRINGEMENT CLAIM

To establish a claim of copyright infringement, plaintiff must show two elements: (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998).

### A.    PLAINTIFF OWNS A VALID COPYRIGHT

"A certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the certificate holder's copyright ownership, as well as of the truth of the facts stated in the registration." *BWP Media USA,*196 F.Supp.3d at 401 (*citing* 17 U.S.C. § 410(c)).  A certificate of copyright registration is *prima facie* evidence of both valid ownership of copyright <u>and</u> originality.[1]  *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012).

To be timely, a certificate of registration must be obtained "before or within five years after first publication" of a work.  *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005).  Thus, "[p]ossession of a registration certificate creates a rebuttable presumption that the work in question is copyrightable." *Whimsicality, Inc. v. Rubie's Costume Co. Inc.*, 891 F.2d 452, 455 (2d Cir. 1989).  A

---

[1] "Even the slightest artistic touch will meet the originality test for a photograph." *Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1074-76 (9th Cir. 2000); *see also Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*, 274 F. 932, 934 (S.D.N.Y. 1921) (Judge Learned Hand) ("no photograph, however simple, can be unaffected by the personal influence of the author.").

party's "proffer of its certificate of copyright registration thus shifts to [the opposing party] the burden of proving the invalidity of the copyright." *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir.), *cert. denied*, 522 U.S. 908 (1997).

Here, Otto is in possession of a certificate of registration from the U.S. Copyright Office. [56.1, ¶ 90]. Via counsel, Otto caused a copy of the Photograph to be deposited with the Copyright Office as part of his application. [*Id.*, ¶¶ 83-89] The registration of the Photograph was carried out in accordance with the Firm's routine practice of registering photographs on behalf of its clients [*Id.*, ¶¶ 85-89] *See* FRE 406 (evidence showing "an organization's routine practice may be admitted to prove that on a particular occasion the ... organization acted in accordance with the ... routine practice."); *BWP Media*, 196 F.Supp.3d at 403.

Further, the 309 Registration was obtained within five years after first publication of the work. [56.1, ¶ 91] Accordingly, the 309 Registration serves as *prima facie* evidence of Otto's valid copyright ownership and creates a rebuttable presumption that the work in question is copyrightable. *Whimsicality, Inc.*, 891 F.2d at 455. "The validity of a registration may be rebutted by proof of a certificate holder's fraud on the Copyright Office, though the party seeking to establish such fraud bears a 'heavy burden.'" *BWP Media*, 196 F.Supp.3d at 401 (*citation omitted); see also Fonar Corp.*, 105 F.3d at 105 (*"the presumption [of validity] may be overcome only by 'proof of deliberate misrepresentation.'").[2]

---

[2] A defendant asserting fraud must show that (i) the copyright application contains one or more factual misrepresentation, (ii) the inaccuracies were "willful or deliberate," and (iii) the Copyright Office relied on the misrepresentations. *BWP Media*, 196 F.Supp.3d at 401 (citing *Whimsicality*, 891 F.2d at 455; *accord Santrayall v. Burrell*, 993 F.Supp. 173, 176 (S.D.N.Y.1998).

Defendant has failed to sustain its burden of showing that the 309 Registration is invalid. There is no evidence that the 309 Registration is facially inaccurate; nor is there evidence showing that the 309 Registration was procured by "willful and deliberate" misrepresentation to the Copyright Office. *BWP Media*, 196 F.Supp.3d at 401. In fact, Defendant abjectly failed to request *any* information from the Copyright Office during the course of discovery, despite ample opportunity to do so. [56.1, ¶¶ 99-101] As such, there is no genuine issue of material fact concerning the validity of the 309 registration.

**B.     HEARST COPIED OTTO'S WORK WITHOUT AUTHORIZATION**

To satisfy the second element of an infringement claim, a plaintiff must show both that his work was "actually copied" and that the portion copied amounts to an "improper or unlawful appropriation." *Castle Rock,* 150 F.3d at 137 (citation and internal quotation marks omitted).

First, there is no factual dispute concerning whether Hearst "actually copied" the Photograph. Hearst readily admits that it obtained the Photograph from Instagram [56.1, ¶¶ 49-50; SF ¶¶ 25-26]; that the Photograph, or a reproduction thereof, appeared on its website www.esquire.com in the Article [56.1, ¶ 54; SF ¶ 29]; and that the Photograph appeared on its web servers. [56.1, ¶ 55; SF ¶ 30]

Second, there is no factual dispute concerning authorization. Hearst admits that it did not seek Otto's permission to publish the Photograph [56.1, ¶ 60; SF ¶ 35]; that Otto never directly granted Hearst authorization to copy the Photograph or distribute copies of his image to the public [56.1, ¶ 61; SF ¶ 36]; and that Otto never directly granted Hearst authorization to prepare a derivative work based on the Photograph. [56.1, ¶ 62] Nor is there any evidence that Otto indirectly granted Hearst authorization because, by Hearst's

own admission, there was never any communication between Otto and Hearst prior to

Hearst's publication of the Photograph (or prior to filing of this lawsuit).  [56.1, ¶¶ 64-66;

SF ¶¶ 38-40].  As such, Hearst violated Otto's exclusive rights under section 106 of the

Act[3] because its actual copying amounted to "an improper and unlawful appropriation."

*Castle Rock,* 150 F.3d at 137.  In sum, there is no genuine issue of material fact

concerning the two elements of Otto's copyright infringement claim.


**POINT II:**      **THE FAIR USE DEFENSE FAILS AS A MATTER OF LAW**

Hearst's second affirmative defense asserts the privilege of Fair Use.  [*See* Dkt.

#9, Answer, p. 5].  Fair use is an affirmative defense that "presumes that unauthorized

copying has occurred, and is instead aimed at whether the defendant's use was fair."

*Monge v. Maya Magazine, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012). A court "may

conclude as a matter of law that the challenged use does not qualify as a fair use of the

copyrighted work."  *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 560 (1985).

Thus, the Court may grant summary judgment dismissing the fair use defense.  *See, e.g.*,

*Stewart v. Abend*, 495 U.S. 207 (1990); *Castle Rock*, 150 F.3d at 137.

Section 107 of the Copyright Act sets out four factors to consider in determining

whether a defendant's use of a copyrighted work is a fair use.  These are "(1) the purpose

and character of the use, including whether such use is of a commercial nature or is for

nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount

and substantiality of the portion used in relation to the copyrighted work as a whole; and

---

[3] Section 106 of the Copyright Act gives the owner of a valid copyright the exclusive rights, *inter alia*, to "reproduce the copyrighted work in copies;" "to prepare derivative works based on the copyrighted work"; and to "distribute copies ... of the copyrighted work to the public by sale or . . . lease." 17 U.S.C. § 106(1)-(3).

(4) the effect of the use upon the potential market for or value of the copyrighted work."
17 U.S.C. § 107.  As set forth below, examination of these factors demonstrates that
Hearst's use of the Photograph does <u>not</u> constitute fair use.

**A.      THE FIRST FACTOR WEIGHS HEAVILY AGAINST FAIR USE**

The first factor under 17 U.S.C. § 107(1), which addresses the manner in which
the copied work is used, is the "heart of the fair use inquiry." *Blanch v. Koons*, 467 F.3d
244, 251 (2d Cir. 2006).  Courts within the Second Circuit examine three sub-factors to
determine the purpose and character of use, including whether the secondary use is: (1)
transformative; (2) for commercial purposes; and (3) in bad faith.  *See, e.g.*, *NXIVM
Corp. v. Ross Inst.,* 364 F.3d 471, 478 (2d Cir. 2004); *Sarl Louis Feraud Intern. v.
Viewfinder, Inc*., 627 F.Supp.2d 123, 131 (S.D.N.Y. 2008).

**(1)      HEARST'S SECONDARY USE IS <u>NOT</u> TRANSFORMATIVE**

The fair use doctrine "allows for new transformative works that further the public
discourse and the free exchange of ideas in order to promote science and the arts." *See
Campbell v. Acuff– Rose Music, Inc.*, 510 U.S. 569, 579 (1994).  The central purpose of
the inquiry is to determine whether "the new work merely supersedes the objects of the
original creation, or instead adds something new, with a further purpose or different
character, altering the first with new expression, meaning, or message." *Ringgold v.
Black Entertainment Television, Inc.*, 126 F.3d 70, 79 (2d Cir. 1997) (citations omitted).

***(a)  The Newsworthiness of the Photograph is <u>Not</u> Dispositive***

The preamble to the fair use statute lists "news reporting" as an illustrative basis
supporting fair use under this factor. 17 U.S.C. § 107.  Relying on the preamble, Hearst
primarily argues that its infringing use was "fair" because the Photograph at issue – and

10

Donald Trump in general – are newsworthy.  [56.1 ¶¶ 4-5; SF ¶¶ 3-4]  However, as per the Supreme Court, "[t]he promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report' of the [work]." *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 557 (1985).[4]

In *Barcroft Media, Ltd. v. Coed Media Group, LLC*, No. 16-cv-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. 2017), the court explained that the preferential treatment accorded to "news reporting" under the preamble to Section 107 only applies to news reporting of the copyrighted work itself; not news reporting about the subject matter depicted in the image.  *Barcroft*, 2017 WL 5032993 at *6 ("CMG is correct in noting that the preamble of Section 107 carves out categories of reproduction that are likely to constitute fair use, but it is incorrect in asserting that its use of the Images fell within one of those categories. Display of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story *about that work*.") (italics added); *accord BWP Media*, 196 F. Supp. 3d at 406 n.6 ("Defendant confuses the situation in which the photograph is the story . . . and the scenario present here, in which the contents of the photograph are of some public interest . . . ).

In light of the applicable caselaw, Defendant cannot "simply take fair use refuge under the umbrella of news reporting."  *Monge*, 688 F.3d at 1173.

---

[4] "Although news reporting is an example of fair use, it is not sufficient itself to sustain a *per se* finding of fair use." *Monge*, 688 F.3d at 1173. "[N]ewsworthiness itself does not lead to transformation." *Id. at* 1175. "A news organization thus may not freely copy creative expression solely because the expression itself is newsworthy." *Swatch Group Management Services Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d Cir. 2014); *see also Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 307 (3d Cir. 2011) ("[N]ews reporting does not enjoy a blanket exemption from copyright. News organizations are not free to use any and all copyrighted works without the permission of the creator simply because they wish to report on the same events a work depicts."); *Psihoyos v. National Examiner*, No. 97-cv-7624 (JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) ("The mere fact the photo depicts a newsworthy item does not justify commercial exploitation of it.").

**(b)      The Photograph Here is <u>Not</u> "Itself the Subject of the Story"**

In the context of news reporting, a photograph may be transformed where "the copyrighted work is itself the subject of the story, transforming the function of the work in the new context." *Barcroft Media*, 2017 WL 5032993, at *6. Thus, "a depiction of a controversial photograph might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the photograph." *Id.* (*citing Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000) (fair use found where salacious photograph of Miss Puerto Rico Universe was published by newspaper to comment on the controversy surrounding her qualifications to retain the crown); *Konangataa v. Am. Broadcasting Companies, Inc.,* No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) ("Defendants and other news outlets reported on the Video [of a woman giving birth] and offered social commentary about the phenomenon of someone publicly live-streaming a life event that traditionally is considered personal.").[5]

Here, in contrast to the cases cited above where the news story was about the controversial nature of the image itself, Defendant's use of the Photograph was not intended to comment on any political or social controversy surrounding the actual image.

---

[5] *See also Baraban v. Time Warner*, No. 99-cv-1569 (JSM), 2000 WL 358375 at *4 (S.D.N.Y. April 6, 2000) (finding "the photograph is itself a work of political commentary" which allowed defendants "to quote or reproduce a reasonable portion of that commentary in order to respond to it"); *Murphy v. Millennium Radio Group LLC*, 650 F.3d 295, 307 (3d Cir. 2011) ("[H]ad the [i]mage itself become controversial due to its 'salacious' content, it would likely have been fair use for a newspaper to reproduce it to accompany an article about the controversy"); *Mathieson v. Associated Press*, 1992 WL 164447 (S.D.N.Y. June 25, 1992) (newspaper's use was transformative where it published the cover of a company's marketing pamphlet featuring a photo of Oliver North to illustrate a story about North's involvement with the company); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 13-cv- 4664, 2014 WL 3368893, at (N.D. Ill. July 8, 2014) (defendant's use was transformative where it did not use the photo to promote a product or to illustrate an article about the Chicago Bears in general, or even the Super Bowl Shuffle in particular; but instead used a photo from a DVD cover to comment on a *lawsuit* concerning the illegal use of Super Bowl Shuffle video contained on the DVD).

**(c)**    ***Hearst Used the Photograph to Merely Illustrate the Content Described in its Second-Hand News Article***

In the context of news reporting, no transformation exists where the images are merely used "as illustrative aids" to depict the subjects described in the news article.  *See, e,g.*, *Barcroft Media,* 2017 WL 5032993, at *6 ("CMG's articles did not comment on, criticize, or report news *about the Images themselves*; instead, they used the Images as illustrative aids because they depicted the subjects described in its articles.  CMG's argument, if accepted, would eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph. That is plainly not the law."); *BWP Media*, 196 F.Supp. at 404-405 (not transformative where the secondary use of "photograph seems intended as a general illustration of the [celebrity] couple . . . [and] Defendant [does not] comment or report on the images in question . . .).[6]

Here, the Photograph depicts President Trump crashing a wedding.  [56.1, ¶ 28; SF ¶ 11]  Likewise, the Article published by Hearst reports on the fact that President Trump crashed a wedding.  [56.1, ¶ 54; SF ¶ 29]  The headline of the article is "President Trump is the Ultimate Wedding Crasher."  [*Id.*]  The text accompanying the Article

---

[6]  *See also Monge*, 688 F.3d at 1175 (rejecting fair use defense where " the controversy here has little to do with photos; instead, the photos here depict the couple's clandestine wedding."); *Fitzgerald v. CBS Broad., Inc.*, 491 F.Supp.2d 177, 185 (D.Mass.2007) (finding a news outlet's use of a photojournalist's image of an arrest for the purpose of reporting on that arrest not transformative, as it used the photograph for the precise reason it was created); *Murphy v. Millennium Radio Group LLC*, 650 F.3d 295, 306 (3d Cir. 2011) (no transformative effect where image was originally created to illustrate a magazine article informing the public about radio DJs' "best of" award; and defendant's challenged use was to report to their viewers the newsworthy fact of the DJs' receipt of the magazine's award); *Mavrix Photographs LLC v. Sandra Rose LLC*, 2016 WL 6246408  *2 (C.D. Cal. April 6, 2016) (finding that even though defendant's inclusion of celebrity photos on its website qualified as "news reporting," there was no evidence that defendant had transformed the celebrity photographs); *L.A. News Serv. v. KCAL–TV Channel 9*, 108 F.3d 1119, 1122 (9th Cir.1997) (a news station's broadcast of an extraordinarily timely news segment concerning ongoing riots related to the Rodney King beating was held unfair: Even though the news station "apparently ran its own voice-over, it does not appear to have added anything new or transformative to what made the [ ] work valuable— a clear, visual recording of the beating itself.").

reports that President Trump "has become a fixture at nuptials at his resort" and that his appearance at the Wedding "was Trump's 24th visit to a golf course since he was elected." [*Id.*]  Significantly, Hearst has not commented on any controversy surrounding the Photograph itself; nor is there any political critique directed at Trump's views or his frequent visits to his own golf course.  [*Id.*]  Clearly, the defendant's "use is not transformative, because its piece uses the photo to show what it depicts." *Psihoyos*, 1998 WL 336655, *3.

### (d)    Hearst Has Simply Repackaged the Message Conveyed by a Pre-Existing Work And Has Not Altered the Meaning of the Photograph

"[U]se of copyrighted material that 'merely repackages or republishes the original is unlikely to be deemed a fair use' and a 'change of format, though useful' is not transformative." *Associated Press v. Meltwater U.S. Holdings*, 931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) (*quoting Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 108 & n. 2 (2d Cir. 1998) (citation omitted)).  A secondary use of images have "no transformative effect [where the article] display[s] the Images in the same manner and for the same purpose as they were originally intended to be used." *Barcroft Media,* 2017 WL 5032993, at *6.[7]

First, Hearst did not transform the message or meaning behind the original image, which was to convey the newsworthy fact that President Trump had crashed a Wedding at his own golf resort.  [56.1, ¶¶ 32-33]  Hearst simply re-packaged an image from a pre-existing Instagram post which first reported the news of President Trump crashing a wedding.  [*Id.*, ¶¶ 49-50, 54; SF ¶ 29]   Defendant's second-hand news article has added

---

[7] *See also Murphy*, 650 F.3d at 306 (disallowing copying of unaltered image because there was "no meaningful distinction between the purpose and character" of the creator's use and the infringer's use of reporting news); *Levyfilm,*, 2014 WL 3368893 at *11 (explaining that appropriation by defendant-newsgather "impermissibly usurped the plaintiff's original intended uses.").

nothing new to the Photograph, has not given the image different character, nor conveyed a new expression.

Second, while Hearst argues that it transformed the image by converting it from personal to commercial use, the Photograph retained the same purpose regardless of whether it was commercially exploited.  Otto created the Photograph on account of its newsworthiness [56. 1, ¶¶ 32-33] and Hearst obviously published the Photograph because it was newsworthy. [56. 1, ¶¶ 4-5; SF ¶¶ 4-5]  As such, Defendant's secondary use is not transformative because Defendant re-published the Photograph to do nothing more than re-report the identical newsworthy content.  *Psihoyos,* 1998 WL 336655 at *3 (rejecting fair use defense where purpose of secondary use was to display it "for precisely a central purpose for which it was created"); *see also Balsley v. LFP, Inc.*, 691 F.3d 747, 759 (6th Cir. 2012) ("Defendant's use of the photograph was the same as [photographer]'s original use - to shock, arouse, and amuse.").[8]

### (2)    DEFENDANT'S USE IS COMMERCIAL RATHER THAN NON-PROFIT

The fact that Hearst used Otto's photograph for a commercial rather than a nonprofit purpose also weighs against a finding of fair use.  *Psihoyos*, 1198 WL 336655, at *3 (*citing Campbell*, 510 U.S. at 583-84).  The "crux of the profit/nonprofit distinction is . . . whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562.  Thus, "when the copier directly and exclusively acquires conspicuous financial rewards from its use of the

---

[8]  Even if Hearst's purpose of commercially exploiting the work is deemed separate from Otto's original purpose of creating the Photograph for personal use, a "difference in purpose is not quite the same thing as transformation, and *Campbell* instructs that transformativeness is the critical inquiry under this factor." *Infinity Broad. Corp.,*150 F.3d at 108; *see also Monge* at 1176 ("even an infringer's separate purpose, by itself, does not necessarily create new aesthetics or a new work that alter[s] the first [work] with new expression, meaning or message.").

copyrighted material" a finding of fair use is less likely. *Associated Press,* 931 F.Supp.2d at 551 (quoting *Blanch*, 467 F.3d at 253).[9]

Here, there is no dispute that Hearst is a for-profit entity which disseminates news content on its website. [56.1, ¶¶ 11-13; SF ¶¶ 60-62].  The record shows that commercial advertisements appeared alongside the Photograph on Hearst's website [56.1, ¶¶ 56-57; SF ¶¶ 31-32], thereby evincing Defendant's intent to exploit Otto's photograph. *See Richard Feiner & Co., Inc. v. H.R. Industries, Inc.*, 10 F.Supp.2d 310, 314 (S.D.N.Y. 1998) (finding that commercial advertisements appearing alongside the unauthorized use of photographs demonstrated a defendant's commercial purpose).  Accordingly, Hearst sought to profit from Otto's copyright without paying the customary price.[10]

**(3)   HEARST'S USE IS IN BAD FAITH**

In weighing the first factor, courts may also consider "the propriety of a defendant's conduct." *NXIVM Corp.,* 364 F.3d at 478 (citations omitted).[11]  "As the term itself suggests, '[f]air use presupposes good faith and fair dealing.'  *Associated Press,* 931 F.Supp.2d at 552 (*quoting Harper & Row*, 471 U.S. at 562).

Here, bad faith is evidenced by the fact that Hearst: (a) failed to provide attribution on the Photograph; (b) failed to conduct due diligence concerning the identity

---

[9]   The Supreme Court has held that, with respect to secondary uses which implicate wholesale copying of the original work (as here), "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony*, 464 U.S. at 451.

[10] Further, because Hearst's secondary use was not transformative, "the question whether the new use is commercial thus acquires an importance it [would] not [otherwise] have...." *Davis v. The Gap Inc.*, 246 F.3d 152, 175 (2d Cir. 2001); *accord United States v. Am. Soc. of Composers Authors & Publishers*, 599 F.Supp.2d 415, 429 (S.D.N.Y. 2009) ( "[A]pplicant's use of previews is not transformative, and, thus, the significance of its commercial use is not reduced, but instead takes on greater importance.").

[11]  While Plaintiff is not aware of any case that *requires* the Court to consider the defendant's conduct, *NXIVM Corp.* suggests that defendant's conduct may be weighed in the analysis of the first factor.

of the copyright holder; (c) removed the infringing content from its website <u>after</u> this lawsuit was filed; and (d) failed to consult counsel prior to publication.

<u>First</u>, Hearst's secondary use of the Photograph omits the authorship credit [56.1, ¶ 59; SF ¶ 34]. The omission of Otto's name besides his Photograph demonstrates Hearst's absence of good faith and fair dealing in their use of the Photograph. *See Rogers*, 960 F.2d at 309 (finding that defendant's "action [in tearing the copyright mark off of the original work] suggests bad faith in defendant's use of plaintiff's work, and militates against a finding of fair use.").

<u>Second</u>, Hearst failed to identify the copyright holder before publishing the Photograph. [56.1, ¶¶ 70-75]. Hearst's lack of due diligence shows reckless disregard for the copyright holder's rights and a corresponding absence of good faith.

<u>Third</u>, Hearst took down the Photograph after this lawsuit was filed. [56.1, ¶¶ 108-109]. This shows that Hearst and its in-house counsel lack a subjective good faith belief in their fair use defense. *See Barcroft Media*, 2017 WL 5032993, at *4 ("CMG's decision to remove the Images from its websites after its negotiations with FameFlynet fell through belies any notion that CMG believed it had an implied nonexclusive license to continue using the Images"). After all, if a defendant harbors a good faith belief in the fair use defense, then it will continue to display that work consistent with such belief.

<u>Fourth</u>, there is no evidence that Hearst's in-house counsel considered the fair use defense prior to publication of the Photograph. A defendant must take "reasonable steps to assure fair use before infringement," *Bridgeport Music, Inc. v. *1166 *UMG Recordings, Inc.,* 585 F.3d 267, 279 (6th Cir. 2009), not as a "post-hoc rationalization

concocted to skirt liability." *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491

F.3d 574, 584 n. 9 (6th Cir. 2007).

In sum, because Defendant's use was not transformative, was for a commercial

purpose, and was in bad faith, the first factor weighs heavily against a finding of fair use.

## B.    THE SECOND FACTOR IS LIKELY NEUTRAL (BUT CARRIES MINIMAL WEIGHT)

The second factor examines the "nature of the copyrighted work."  17 U.S.C. §

107(2).  Courts consider "(1) whether the work if expressive or creative, with a greater

leeway being allowed a claim of fair use where the work is factual or information, and (2)

whether the work if published or unpublished."  *Blanch*, 467 F.3d at 256.

 "The mere fact that the original is a factual work . . . should not imply that others

may freely copy it," as "authors of factual works, like authors of fiction, should be

entitled to copyright protection of their protected expression." *Authors Guild v. Google,

Inc.*, 804 F.3d 202, 220 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1658 (2016).

"Photographic images of actual people, places and events may be as creative and

deserving of protection as purely fanciful creations." *Monster Communications, Inc. v.

Turner Broadcasting*, 935 F.Supp. 490, 494 (S.D.N.Y. 1996).[12]

Here, the Photograph was published to Instagram prior to Hearst's use.  [56.1, ¶

49].  However, the image itself is creative even though it captured a factual event.

Although this factor is likely neutral, "[i]t is well established that the second factor—the

nature of the copyrighted work—is not very important to the fair use analysis."  *Leibovitz

v. Paramount Pictures Corp.*, No. 94 Civ. 9144 (LAP), 2000 WL 1010830, at *4

---

[12] *See also Baraban*, 2000 WL 358375 at *4 ("Although photographs are often 'factual or informational in nature,' the art of photography has generally been deemed sufficiently creative to make the second fair use factor weigh in favor of photographer-plaintiffs.").

(S.D.N.Y. 2000); *see also BWP Media* at 409 (the second fair use factor is "rarely found to be determinative.")

**C.    THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE HEARST UNNECESSARILY PUBLISHED A FULL-COLOR REPRODUCTION OF THE IMAGE**

The third factor bearing on fair use is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). The question is whether "the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586.  The Court should consider whether the portion taken is "essentially the heart" of the copyrighted expression. *NXIVM Corp.*, 364 F.3d at 480 (citation omitted). The "most relevant" question for this factor is whether the infringer has taken "no more" than is necessary. *Infinity Broadcast Corp.*, 150 F.3d at 110.  "[T]he more of a copyrighted work that is taken, the less likely the use is to be fair." *Id.* at 109.

As a quantitative matter, Hearst has taken the entire full-color photograph.  [56.1, ¶¶ 49, 54-55]  This fact alone weighs against fair use.  *See Associated Press*, 931 F.Supp.2d at 558 ("appropriation of a copyrighted work in its entirety weighs against a finding of fair use").

As a qualitative matter, Defendant has used more of the copyrighted work than was necessary to accomplish its purpose of news reporting.  *See Rogers*, 960 F.2d at 311. The Photograph was reproduced in full color without any visible modification.  [56.1, ¶ 54]  Defendant's wholesale reproduction of Otto's photograph, without any aesthetic alteration, demonstrates the image's qualitative value.  *See Harper & Row*, 471 U.S. at 565 ("the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the

19

plagiarist who seeks to profit from marketing someone else's copyrighted expression.").

Moreover, Defendant's copying of the Photograph was unnecessary to achieve Hearst's news reporting purpose.  As noted by Judge Easterbrook in *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 759 (7th Cir. 2014), "[t]he fair-use privilege under § 107 is not designed to protect lazy appropriators."  In this case, there were at least four legal alternatives available to Defendant which did <u>not</u> include the "lazy appropriation" of Otto's work: (1) Hearst could have published its informative story *without* any photo whatsoever [56.1, ¶¶ 23, 69]; (2) Hearst could have published the Article using other photographs of President Trump [*Id.,* ¶¶ 21, 41, 68]; (3) Defendant could have engaged its own photographer to take an original photo of President Trump at the Wedding; [*Id.,* ¶¶ 14, 63];  or (4) Defendant could have obtained a license directly from Otto.

Hearst cannot provide any explanation for why its use of the Photograph was necessary or how it served Defendant's purpose better than an alternative means that did not rely on Plaintiff's copyrighted work.  By opting to appropriate Otto's original photographic expression of President Trump, Defendant has taken more than what was "necessary" to effectuate its news reporting purpose.  *See Psihoyos*, 1998 WL 336655, at *4 (Defendant "was simply using the [plaintiff's] photo to save itself the expense of obtaining its own photo").[13]

### D.    THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE THERE WAS ACTUAL MARKET HARM AS WELL AS HARM TO THE POTENTIAL MARKET

---

[13] *See also Monge,* 688 F.3d at 1179 ("While we do not discredit [plaintiff]'s legitimate role as a news gatherer, its reporting purpose could have been served through publication of the couple's marriage certificate or other sources rather than copyrighted photos."); *Kienitz*, 766 F.3d at 759 ("[t]here's no good reason why defendants should be allowed to appropriate someone else's copyrighted efforts as the starting point in their lampoon, when so many non-copyrighted alternatives (including snapshots they could have taken themselves) were available.").

The final fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).  This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Ringgold*, 126 F.3d at 80-81 (*citing Campbell*, 510 U.S. at 590 (quotation omitted)).  "[A] copyright owner is not required to show that actual harm has come to her, *Sony Corp.*, 464 U.S. at 451, but must show merely a 'potential' effect on the market for the copyrighted work. *Harper & Row*, 471 U.S. at 568–69." *Balsley*, 691 F.3d at 761.

**(1)      Defendant's Use Functioned As An Actual Market Replacement**

As a threshold matter, the Court may presume market harm because Defendant's secondary use constituted a mere duplication of Otto's original photograph. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984) (holding that "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright").  "A presumption of market harm "makes common sense[ ] when a commercial use amounts to mere duplication of the entirety of an original." *Campbell*, 510 U.S.  at 591.

Defendant's secondary use impairs the actual market for Otto's photograph because, as Hearst concedes, there was a fully functioning market demand for Otto's work.  This is evidenced by the multiple news organizations which published the Photograph, including *CNN, Washington Post*, and *TMZ*.  [56.1, ¶ 82]  *See Associated Press*, 931 F.Supp.2d at 559 ("Where there is a fully functioning market for the

infringer's use of the copyrighted material, it will be difficult for the infringing party to show that it made fair use without paying a licensing fee") (citing *Harper & Row*, 471 U.S. at 566 n. 9).  The fact that Otto has sued various infringers and obtained settlements [56.1, ¶¶ 102-107] is also proof of an actual market.  *See Fitzgerald*, 491 F.Supp.2d at 189 (in analyzing the fourth factor, the court noted that "[v]arious media outfits have used the photographs more than 20 times, resulting in over $60,000 in fees and settlements for exactly this kind of use").

Defendant's unauthorized posting of Otto's photograph on the Website made it unlikely that the market would purchase the Photograph from Plaintiff and therefore diminished the licensing value of the copyright.  *See Harper & Row*, 471 U.S. 566-67 ("[f]air use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied.") (*citing* S. Rep. No. 94-473 (1975) ("[A] use that supplants any part of the normal market for a copyrighted work would ordinarily be considered an infringement.")).

Defendant's use clearly supplanted the market in which Otto had a reasonable expectation to earn licensing revenue.  Even though Otto is not a professional photojournalist, the record shows that he actually expected to be compensated for news organizations' exploitation of his work.  [56.1, ¶ 43]  *See Fitzgerald*, 491 F.Supp.2d at 189 ("CBS's use of the photographs is paradigmatic of the only market the photographs could reasonably have: licensing to media outfits").

**(2)    Defendant's Use Curtailed the Potential Market for the Copyright**

Defendant's secondary use also impairs the potential market for Otto's photograph because "unrestricted and widespread conduct of the sort engaged in by the

defendant . . . would result in the substantially adverse impact on the potential market for [licensing of] the original." *Campbell*, 510 U.S. at 590 (internal quotation omitted). "Under section 107, 'potential market' means either an immediate or a delayed market, and includes harm to derivative works." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir.1990).

Here, Otto is entitled to profit from the market demand generated by initial publication of his work. *See* 17 U.S.C. § 106. But because multiple news purveyors, including Hearst, engaged in wholesale copying of the Photograph, any authorized market for the original work was eradicated. Otto was forced to file lawsuits to secure a proper license. [56.1, ¶ 110] Moreover, because the subject matter depicted in the Photograph was newsworthy [56.1, ¶¶ 4-5], Hearst deprived Otto of the opportunity to exploit the value of his copyright during its peak demand in the marketplace for news content. In short, by dismissing the fair use defense here, the Court will prevent media companies' widespread practice of appropriating images from social media without first obtaining authorization from the original copyright holder.

**POINT III:   OTHER DEFENSES TO LIABILITY SHOULD BE DISMISSED**

In addition to the fair use defense, Defendant interposes five defenses to liability: (1) failure to state a claim (first defense); (2) non-infringement (third defense); (3) waiver (sixth defense); (4) consent (sixth defense); and (5) release (eighth defense). These defenses should be dismissed because Defendant has failed to produce evidence to support their essential elements. *See Celotex Corp.,* 477 U.S. at 322.

First, a defense based on failure to state a claim must be directed to the pleading. *See Eclaire Advisor Ltd. v. Daewoo Engineering Co.*, 375 F.Supp.2d 257, 260 (S.D.N.Y.

2005).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Further, the existence of a meritorious affirmative defense does not equate to failure to state a claim upon which relief may be granted.  *Xechem, Inc. v. Bristol-Myers Squibb Co.,* 372 F.3d 899, 901 (7th Cir.2004). Here, Plaintiff's complaint sets forth a plausible set of facts to support each element of his copyright infringement claim. *See* Complaint, Dkt. #1, ¶¶ 17-20 (ownership and validity of copyright); ¶¶ 21-22 (Defendant's unauthorized copying of Otto's work).

Second, the defense labeled "non-infringement" should be dismissed because there is no genuine issue of material fact concerning the elements of Otto's copyright infringement claim, and because Hearst has failed to meet its burden of showing fair use, consent, waiver or release.

Third, "[w]aiver is the voluntary or intentional relinquishment of a known right, or intentional conduct inconsistent with claiming such a right."  *Torain v. Clear Channel Broad., Inc.*, 651 F. Supp. 2d 125, 145 (S.D.N.Y. 2009).  Accordingly, "[i]ntent is the key element in establishing waiver." *Id.* at 146  (citation omitted).  Waiver is an affirmative defense.  Fed.R.Civ.P. 8(c)(1).  Here, no reasonable trier of fact can conclude that Otto manifested an intent to intentionally and knowingly relinquish his copyright to the Photograph simply because he text messaged the image to Sean Burke.  Because Hearst fails to raise a question of fact as to Otto's intent to knowingly waive his rights, the waiver defense fails as a matter of law.

Fourth, although Hearst failed to raise the defense of license in its answer - and has therefore waived such defense, *see* Fed.R.Civ.P. 8(c) - it continues to interpose the defense of "consent."  However, there is no evidence in the record to support the theory that Otto consented to Hearst's use of the Photograph.  Hearst admits that it did not seek Otto's permission to publish the Photograph [56.1, ¶ 60] nor did Hearst obtain his authorization.  [56.1, ¶ ¶ 61-62]  Further, Hearst admits that it failed to communicate with Otto prior to publishing the Photograph.  [*Id.,* ¶¶  64-66]  Thus, there can be no consent.

Fifth, "[a] release is an agreement by one party to surrender its cause of action against the other party." *In re Zeman*, No. 09-52559-C, 2010 WL 3123144, at *1 (Bankr. W.D. Tex. Aug. 6, 2010) (citation omitted).  Release is an affirmative defense.  *See* Fed.R.Civ.P. 8(c)(1).  Here, there is no evidence that Otto entered into an agreement with Hearst to release his claims.  Accordingly, this defense should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff Jonathan Otto's motion for partial summary judgment on liability against Defendant Hearst Communications, Inc. for copyright infringement [Count I] should be GRANTED.

Respectfully Submitted,

LIEBOWITZ LAW FIRM PLLC

by: **/jameshfreeman/**
Richard Liebowitz
James H. Freeman
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580

*Counsel for Plaintiff Jonathan Otto*