IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JONATHAN OTTO,

        Plaintiff,

v.

HEARST COMMUNICATIONS, INC.,

        Defendant.

C.A. No. 1:17-cv-04712-GHW

**MEMORANDUM OF LAW IN
<u>SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS</u>**

Jonathan R. Donnellan
Ravi V. Sitwala
Jennifer D. Bishop
THE HEARST CORPORATION
  Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
jdonnellan@hearst.com
rsitwala@hearst.com
jbishop@hearst.com

*Counsel for Defendant Hearst
Communications, Inc.*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................1

    Events Leading to the Settlement Conference ..................................................2

    The Settlement Conference ..............................................................................3

    Discovery Following the Settlement Conference .............................................4

    Counsel's Admissions About the Misrepresentations .......................................6

    Plaintiff and His Counsel Have Made Other Misrepresentations in this Case ...................7

LEGAL STANDARD.........................................................................................................7

ARGUMENT .....................................................................................................................9

I.      PLAINTIFF AND HIS COUNSEL SHOULD BE SANCTIONED FOR
        THEIR SERIAL MISREPRESENTATIONS ABOUT THE PURPORTED
        LICENSE ...........................................................................................9

      A.    Plaintiff's and the Liebowitz Law Firm's Misrepresentations at the
           Settlement Conference Warrant Sanctions ...................................9

      B.    Plaintiff's and the Liebowitz Law Firm's Bad Faith Conduct During
           Discovery Warrants Sanctions .....................................................12

II.    APPROPRIATE SANCTIONS SHOULD DETER FUTURE
        MISCONDUCT AND COMPENSATE HEARST FOR ITS
        WASTED ATTORNEY TIME.........................................................14

      A.    This Court Should Fashion Strong Deterrence Sanctions to
           Prevent Future Misconduct By Plaintiff and the Liebowitz
           Law Firm........................................................................................14

      B.    Plaintiff and His Counsel Should Also Be Required to Pay Hearst's
           Reasonable Attorneys' Fees Associated with the Settlement
           Conference and this Motion...........................................................17

CONCLUSION..................................................................................................................18

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Arneault v. O'Toole*,
No. 16-4375, --- F. App'x ----, 2017 WL 5989024 (3d Cir. Dec. 4, 2017) ..............................8

*Bouveng v. NYG Capital LLC*,
No. 14-cv-5474, 2017 WL 6210853 (S.D.N.Y. Dec. 7, 2017).................................................8

*Broad. Music, Inc. v. Prana Hosp., Inc.*,
158 F. Supp. 3d 184 (S.D.N.Y. 2016).....................................................................................2

*c.f. Fisher v. SmithKline Beecham Corp.*,
No. 07-CV-0347A(F), 2008 WL 4501860 (W.D.N.Y. Sept. 29, 2008) .................................11

*Cerruti 1881 S.A. v. Cerruti, Inc.*,
169 F.R.D. 573 (S.D.N.Y. 1996) ...........................................................................................14

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991).........................................................................................................7, 9, 14

*Chen v. Marvel Food Servs., LLC*,
No. CV 15-6206, 2016 WL 6872626 (E.D.N.Y. Nov. 21, 2016)..........................................11

*Cruz v. Am. Broad. Cos.*,
No. 17-cv-8794, 2017 WL 5665657 (S.D.N.Y. Nov. 17, 2017)............................................16

*Enmon v. Prospect Capital Corp.*,
675 F.3d 138 (2d Cir. 2012).........................................................................................8, 9, 10

*Gollomp v. Spitzer*,
568 F.3d 355 (2d. Cir. 2009)...................................................................................................8

*Grenion v. Farmers Ins. Exch.*,
No. 12-cv-3219, 2014 WL 1284635 (E.D.N.Y. Mar. 14, 2014)........................................8, 17

*Guillory v. Domtar Indus. Inc.*,
95 F.3d 1320 (5th Cir. 1996) ..................................................................................................8

*Humane Soc'y of U.S. v. HVFG, LLC*,
No. 06-cv-6829, 2010 WL 3322512 (S.D.N.Y. Aug. 19, 2010)............................................18

*Janik v. SMG Media, Inc.*,
No. 16-7308, 2018 WL 345111 (S.D.N.Y. Jan. 10, 2018) ....................................................16

*Janik v. Spin Media, Inc.*,
　　No. 16-cv-7308, 2017 WL 6021644 (S.D.N.Y. Dec. 4, 2017) ...............................................15

*Johnson v. Univ. of Rochester Med. Ctr.*,
　　642 F.3d 121 (2d Cir. 2011)...................................................................................................8

*Kanongataa v. Am. Broad. Cos.*,
　　Nos. 16-cv-7382 (LAK), 16-cv-7383 (LAK), 16-cv-7472 (LAK), 2017 WL
　　4776981 (S.D.N.Y. Oct. 4, 2017) .........................................................................................18

*In re McGrath*,
　　96 A.D.2d 267 (N.Y. App. Div. 1983) ..................................................................................12

*McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*,
　　191 F. Supp. 2d 440 (S.D.N.Y. 2002)......................................................................13, 15, 16

*Mordechai v. St. Luke's-Roosevelt Hosp. Ctr.*,
　　No. 99-cv-3000, 2001 WL 699062 (S.D.N.Y. June 20, 2001) ..............................................17

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
　　427 U.S. 639 (1976)..............................................................................................................14

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
　　317 F.3d 209 (2d Cir. 2003)..................................................................................................14

*Rabin v. Down Jones & Co., Inc.*,
　　665 F. App'x 21 (2d Cir. 2016) .............................................................................................10

*Reynolds v. Hearst Communications, Inc.*,
　　No. 17-cv-6720, 2018 WL 1229840 (S.D.N.Y. Mar. 5, 2018)........................................15, 16

*Scholastic, Inc. v. Stouffer*,
　　221 F. Supp. 2d 425 (S.D.N.Y. 2002)....................................................................................14

*Shangold v. Walt Disney Co.*,
　　No. 03-cv-9522, 2006 WL 71672 (S.D.N.Y. Jan. 12, 2006) ...........................................13, 14

*Sosinsky v. Chase Manhattan Bank*,
　　No. 99-cv-0043, 1999 WL 675999 (S.D.N.Y. Aug. 31, 1999)...............................................8

*Steeger v. JMS Cleaning Servs., LLC*,
　　No. 17-cv-8013, 2018 WL 1363497 (S.D.N.Y. Mar. 14, 2018)........................................15, 16

*Video-Cinema Films, Inc. v. Cable News Network, Inc.*,
　　No. 98-cv-7128, 2004 WL 213032 (S.D.N.Y. Feb. 3, 2004) ................................................18

*Xu v. UMI Sushi, Inc.*,
　　No. 15-cv-4710, 2016 WL 3523736 (S.D.N.Y. June 21, 2016) ............................................10

**Statutes**

17 U.S.C. § 504..................................................................................................................2

28 U.S.C. § 1927..................................................................................................8, 9, 11, 17

**Other Authorities**

ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 06-439 (2006) ..............................12

Fed. R. Civ. P. 16(f)..................................................................................... *passim*

Defendant Hearst Communications, Inc. ("Hearst"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its Motion for Sanctions.

## INTRODUCTION

Hearst's request for sanctions is based on a straightforward, but highly troubling, chain of events.  In an action where they contend that the only material issues are on damages,[1] Plaintiff and the Liebowitz Law Firm—which has recently been called out for litigating "irresponsibly" and instructed to "clean up its act"—concocted a plan to inflate their damages claim through doctored evidence.  They settled similar copyright claims against a different defendant, and drafted a settlement agreement with the specific intent of representing to Hearst and the Court that the settlement fee was in fact a *license* fee, and thus evidence of damages in this case.  ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████  They produced it to Hearst in ██████ doctored form.  And then Plaintiff lied under oath, insisting that the "license" was separate from any settlement.

This fact pattern has a name in this District:  "fraud upon the court."  It warrants the strongest sanctions available to deter similar abuses of the judicial process, particularly given the volume of cases filed by the Liebowitz Law Firm in this District and the firm's history of disrespecting court rules.  Sanctions can and should be imposed.

## BACKGROUND

Plaintiff is a Vice President at Deutsche Bank who happened to capture an iPhone snapshot of President Trump while attending a friend's wedding at a Trump-owned golf club (the "Snapshot").  (*See* ECF No. 53 ¶¶ 1-2, 6, 9, 114, 130.)  Hearst later obtained the Snapshot from a

---

[1] Plaintiff has moved for summary judgment on liability against Hearst.  (*See* ECF No. 36.)

third party's Instagram account and published it with an article entitled "President Trump is the Ultimate Wedding Crasher" (the "Article"). (ECF No. 53 ¶¶ 50, 54, 135-138.) Hearst's Article commented directly on the Snapshot as part of a broader story about the President's proclivity for crashing weddings and being photographed doing so. (ECF No. 53 ¶¶ 135-136.)

On June 21, 2017, through counsel at the Liebowitz Law Firm, Plaintiff filed this copyright infringement action against Hearst without providing Hearst with any pre-suit notification of his claim. (ECF No. 53 ¶¶ 66.)[2] As relief, he seeks either actual or statutory damages under the Copyright Act. (Compl. ¶¶ 18-19.) Under either theory of damages, the reasonable license fee that Plaintiff may have lost because of Hearst's use of the Snapshot is critical to the damages calculation. *See* 17 U.S.C. § 504; *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016) ("Second Circuit case law . . . reflects that courts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid.").

***Events Leading to the Settlement Conference.*** At the outset of this case, Hearst lacked any information about Plaintiff's claimed lost license fee resulting from Hearst's use of the Snapshot or any other claimed damages. (Bishop Decl. ¶ 2.) Accordingly, Hearst initially proposed that a settlement conference would be appropriate following the close of fact discovery after Hearst learned more about the basis for Plaintiff's claims. (Bishop Decl. ¶ 3.) However, after Plaintiff's counsel repeatedly asked for an earlier conference (including during the initial

---

[2] Plaintiff also filed similar suits against four other defendants. *See Otto v. Warner Bros. Entertainment, Inc.*, No. 1:17-cv-04763 (S.D.N.Y.); *Otto v. CBS Broadcasting, Inc.*, No. 1:17-cv-06351 (S.D.N.Y.); *Otto v. Altaba Inc.*, No. 1:17-cv-08550 (S.D.N.Y.); *Otto v. Associated Newspapers (U.S.A.) Ltd.*, No. 1:18-cv-00338 (S.D.N.Y.). He further testified that he has consulted the Liebowitz Law Firm regarding other photographs. (March 27, 2018 Declaration of Jennifer D. Bishop in Support of Defendant's Motion for Sanctions ("Bishop Decl.") ¶ 17 & Ex. C at 37:3-38:23.)

2

pretrial conference with Judge Woods), the parties scheduled a settlement conference before this Court for October 23, 2017 (the "Settlement Conference").  (Bishop Decl. ¶ 4-5.)

Prior to the Settlement Conference, Hearst repeatedly requested that Plaintiff's counsel provide information about Plaintiff's claimed lost license fee, but he never did so.  (Bishop Decl. ¶ 4.)  As a result, at the time of the Settlement Conference, Hearst's only information about Plaintiff's lost fee was an October 18, 2017 interrogatory response stating that "Plaintiff . . . calculates the loss of licensing fee in the range of $5,000 based on the market rate of photographs of similar style, quality and content."  (Bishop Decl. ¶ 7 & Ex. A.)

***The Settlement Conference.***  Both Plaintiff and his counsel Richard Liebowitz attended the Settlement Conference on October 23, 2017.  (Bishop Decl. ¶ 8; March 27, 2018 Declaration of Ravi V. Sitwala in Support of Defendant's Motion for Sanctions ("Sitwala Decl.") ¶ 2.)  Near the outset of the Conference, Mr. Liebowitz represented to Hearst's counsel and the Court that



(Bishop Decl. ¶ 9; Sitwala Decl. ¶ 3.)

(Bishop Decl. ¶ 10; Sitwala Decl. ¶ 4.)

(Bishop Decl. ¶ 9; Sitwala Decl. ¶ 3.)

(Bishop Decl. ¶ 10; Sitwala Decl. ¶ 4.)

(Bishop Decl. ¶ 10; Sitwala Decl. ¶ 4.)

███████████████████████████████████████████████████

████████████████████████ (Bishop Decl. ¶ 11-12; Sitwala Decl. ¶ 5-6.)

***Discovery Following the Settlement Conference.*** A confidentiality and protective order was entered in this action on November 28, 2017.  (ECF No. 21.)  That same day, Plaintiff issued supplemental interrogatory responses identifying a licensing agreement entered into with Warner Bros. Entertainment, Inc. as a document relevant to the computation of actual damages in this action.  (Bishop Decl. ¶ 13.)  However, when Plaintiff made his first production of documents on December 5, 2017, that production did not contain any agreement with Warner Brothers, despite the fact that Hearst had specifically demanded production of all licensing and settlement agreements relating to the Snapshot.  (Bishop Decl. ¶ 14.)

After Hearst's counsel inquired about the missing agreement, Plaintiff's counsel produced a document bearing Bates numbers OTTO_0067-0070 on December 7, 2017.  (Bishop Decl. ¶ 15 & Ex. B.)  That document appears to be an executed copy of the license ████████ ████████████████████████ (the "Purported License").  (Bishop Decl. ¶ 15 & Ex. B.)  It is titled "Photography License," is followed by an Exhibit A that contains a copy of the Snapshot, and was executed by Warner Brothers on October 27, 2018.  (Bishop Decl. ¶ 15 & Ex. B.)  As produced on December 7, the Purported License was not accompanied by any redacted pages nor any other indication that it was not a complete document.  (Bishop Decl. ¶ 15 & Ex. B.)

However, through Hearst's own research, it learned that Plaintiff had filed a suit with Warner Brothers arising out of Warner Brothers' use of the Snapshot, and that suit was dismissed pursuant to Rule 41(a)(1)(A)(ii) on October 30, 2017.  (Bishop Decl. 16.)  Hearst's counsel questioned Plaintiff about the relationship between the Purported License and its relationship to the Warner Brothers suit during his December 11, 2017 deposition:

> Q.  Have you ever licensed the photograph at issue in this case to anyone?
> A.  Currently, yes.
> Q.  What do you mean by "currently"?
> A.  We've—we've licensed the photos, yes.
> Q.  Who have you licensed it to.
> A.  TMZ [owned by Warner Brothers].
> Q.  Is that it?
> A.  To my knowledge as of today, yes.
> . . . .
> Q.  What's the status of [your lawsuit against Warner Brothers]?
> A.  I believe that one's settled or a settlement, I think, as well.
> Q.  ***Was this license agreement part of the settlement of that lawsuit?***
> A.  ***No, they're separate.***
> Q.  How are they separate?
> A.  We had a settlement with them after the license agreement.
> Q.  ***Is there a separate written settlement agreement?***
> A.  ***Yes.***
> Q.  Was there an additional payment besides this license fee in consideration for the settlement agreement?
> A.  I can't talk about it.

(Bishop Decl. ¶ 17 & Ex. C at 40:14-22, 43:2-17 (emphasis added).)  Citing confidentiality obligations, Plaintiff refused to answer further questions about his settlement with Warner Brothers, notwithstanding the protective order in this case.  (Bishop Decl. ¶ 17 & Ex. C.) Subsequently, Hearst's counsel informed Plaintiff's counsel that Hearst would move to compel the production of all settlement agreements relating to the Snapshot.  (Bishop Decl. ¶ 17.)

On December 15, 2017—exactly one week before the close of fact discovery—Plaintiff's counsel produced to Hearst a document bearing Bates numbers OTTO_0071-0079.  (Bishop Decl. ¶ 18 & Ex. D.)  That document is entitled "Settlement and Release Agreement" and provides for the settlement of Plaintiff's claims against Warner Brothers in Case No. 1:17-cv-4763 (the "Complete Agreement").  (Bishop Decl. ¶ 18 & Ex. D.)  It was executed by Warner Brothers on October 27, 2017 and contains the following paragraph:

5

████████████████████████████████████████████

(Bishop Decl. Ex. D (emphasis added).)  The Complete Agreement includes an Exhibit A, which is a copy of the Snapshot, and an Exhibit B, which is the first three pages of the document previously produced as the Purported License.  (Bishop Decl. Ex. D.)  Plaintiff later stipulated that the Purported License is an exhibit to the Complete Agreement.  (Bishop Decl. ¶ 19 & Ex. E.)

Upon review of the Complete Agreement and Purported License, it is clear that the Purported License is simply the two exhibits to the Complete Agreement that have been rearranged to appear to be a standalone license agreement.  (Bishop Decl. ¶ 20.)  In other words, Plaintiff and his counsel actively misrepresented the nature of the Purported License ████ ████████████ through their December 7 document production, and during Plaintiff's deposition.  And the Purported License is the ***only*** produced document they have ever asserted is relevant to the calculation of Plaintiff's lost license fee.  (*See* Bishop Decl. ¶¶ 7, 13, 21 & Ex. A.)

***Counsel's Admissions About the Misrepresentations.***  Hearst's counsel discussed the misrepresentations about the Purported License with Plaintiff's counsel James Freeman in a telephone conference on January 26, 2018.  (Bishop Decl. ¶ 22; Sitwala Decl. ¶ 7.)  During that call, Mr. Freeman stated in sum or substance that the Liebowitz Law Firm had purposefully structured the Complete Agreement with Warner Brothers as a settlement agreement with a license exhibit with the intention of relying on ***only*** the exhibit as evidence of damages in other cases.  (Bishop Decl. ¶ 22; Sitwala Decl. ¶ 7.)  According to Mr. Freeman, Plaintiff's ability to represent that the exhibit was a separate license agreement was the "benefit of the bargain" with Warner Brothers.  (Bishop Decl. ¶ 22; Sitwala Decl. ¶ 7.)  He also stated that the Liebowitz Law Firm had tried this tactic before, but other defendants had not agreed to structure their settlement

agreements with a license exhibit.  (Bishop Decl. ¶ 22; Sitwala Decl. ¶ 7.)  Mr. Freeman repeated

the substance of these statements during the parties' pre-motion telephone conference with the

Court on March 6, 2018.  (Bishop Decl. ¶ 23; Sitwala Decl. ¶ 8.)

   ***<u>Plaintiff and His Counsel Have Made Other Misrepresentations in this Case.</u>***  During

the course of this case, Plaintiff and his counsel made two additional material misrepresentations

that are not directly at issue on this Motion, but that are relevant to understanding Plaintiff's and

his counsel's respect for the judicial process.  Out of the gate, Plaintiff referred to himself as a

"professional photojournalist" (Compl. ¶ 5)—an allegation that is unequivocally false according

to his own testimony (*see* ECF No. 53 ¶ 7, 8, 111, 129).  He also failed to disclose a key witness

to whom he had gifted a copy of the Snapshot in his interrogatory responses, and did not do so

until November 28, 2017, after Hearst demanded that he supplement his responses.  (*See* ECF

No. 57 ¶¶ 3-7 & Exs. B-D; ECF No. 52 at 6.)  Even then, he did not disclose the witness's

contact information, despite having had a phone number for the witness since the day the

Snapshot was created.  (*See* ECF No. 52 at 6.)

## LEGAL STANDARD

   This Court has authority under three separate sources to sanction Plaintiff and the

Liebowitz Law Firm for their misrepresentations about the Purported License that began during

the Settlement Conference and continued throughout discovery.  First, courts possess the

"inherent power" to impose sanctions "for conduct that abuses the judicial process" when a party

or attorney acts "in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Chambers v.*

*NASCO, Inc.*, 501 U.S. 32, 45 (1991) (quotation marks and citations omitted).  Second, under

Rule 16(f) of the Federal Rules of Civil Procedure, a court may issue sanctions "if a party or its

attorney . . . does not participate in good faith . . . in [a pretrial] conference," including any

settlement conference.  Fed. R. Civ. P. 16(f); *see Arneault v. O'Toole*, No. 16-4375, --- F. App'x ----, 2017 WL 5989024, at *4-5 (3d Cir. Dec. 4, 2017) (affirming Rule 16(f) sanctions for bad faith participation in settlement conference); *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1334 (5th Cir. 1996) (similar); *Grenion v. Farmers Ins. Exch.*, No. 12-cv-3219, 2014 WL 1284635, at *4-5 (E.D.N.Y. Mar. 14, 2014) (similar); *Bouveng v. NYG Capital LLC*, No. 14-cv-5474, 2017 WL 6210853, at *4 (S.D.N.Y. Dec. 7, 2017) (Cott, U.S.M.J.) (explaining that Rule 16(f) applies to settlement conferences).  Finally, under 28 U.S.C. § 1927, an attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[3]

An award of sanctions for bad faith generally requires more than a finding that the challenged conduct lacked a colorable basis; the court must also find that the challenged conduct was motivated by an improper purpose.  *See Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125-26 (2d Cir. 2011) (citing *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d. Cir. 2009)); *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143-44 (2d Cir. 2012) (observing that "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is that awards under § 1927 are made only against attorneys" (citation omitted)).  However, "bad faith may be inferred . . . if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Enmon*, 675 F.3d at 143 (quotation marks and citation omitted).  Bad faith conduct need not

---

[3] "[I]t is well settled that a magistrate judge has the authority to issue an order containing sanctions in connection with a matter that has been properly referred to the magistrate judge." *Bouveng*, 2017 WL 6210853, at *4 (quoting *Sosinsky v. Chase Manhattan Bank*, No. 99-cv-0043, 1999 WL 675999, at *2 (S.D.N.Y. Aug. 31, 1999)).  Moreover, "[b]ecause sanctions pursuant to Rule 16(f) fall within the scope of pretrial matters, magistrate judges are well within their authority to impose such sanctions."  *Grenion*, 2014 WL 1284635, at *4.

"disrupt[] the relevant litigation" to be "sanctionable."  *Id.* at 144-45, 147 (discussing *Chambers*,

501 U.S. 32, and affirming sanctions on law firm for misrepresentations to the court under

section 1927 and inherent authority).

**ARGUMENT**

I.  **PLAINTIFF AND HIS COUNSEL SHOULD BE SANCTIONED FOR THEIR SERIAL MISREPRESENTATIONS ABOUT THE PURPORTED LICENSE**

Plaintiff and his counsel repeatedly misrepresented the nature of the Purported License:

at the Settlement Conference, through their document production, and at Plaintiff's deposition.

They have essentially admitted that their actions were planned in advance for the purpose of

convincing both Hearst and the Court that Plaintiff had licensed the Snapshot ⬛, and to

rely on that "license" as evidence of damages.  This is a quintessential attempt at fraud upon the

Court, and both Plaintiff and the Liebowitz Law Firm should be sanctioned.

A.  **Plaintiff's and the Liebowitz Law Firm's Misrepresentations at the Settlement Conference Warrant Sanctions.**



During the Settlement Conference, Plaintiff and Mr. Liebowitz ⬛
⬛
⬛
⬛ (*See supra* at 3-4.) ⬛
⬛  They were unequivocally false.

As detailed above, the Complete Agreement produced at the close of fact discovery, as

well as Plaintiff's stipulations about that Agreement, establish that the Purported License was in

fact an exhibit to the Complete Agreement through which Plaintiff settled his claims against

Warner Brothers Entertainment in *Otto v. Warner Bros. Entertainment Inc.*, No. 1:17-cv-4763-

LTS (S.D.N.Y. filed June 22, 2017).  (Bishop Decl. Exs. B, D, E.)  The Purported License—

including the license fee set forth therein— ████████████████████████████████████

████████████████████████████████████████████████████████████████

(Bishop Decl. Ex. D.)  ████████████████████████████████████████████████

████████████████████████████████████████████████████ were "utterly devoid of

a legal or factual basis." *Rabin v. Down Jones & Co., Inc.*, 665 F. App'x 21, 23 (2d Cir. 2016)

(citation omitted).

Although the claims about the Purported License were "so completely without merit" that

bad faith can and should be inferred, *Enmon*, 675 F.3d at 143, Plaintiff's and his counsel's

additional conduct and statements confirm that they participated in the Settlement Conference in

bad faith.  First and foremost, Plaintiff's counsel have unequivocally admitted—twice—that they

structured the Complete Agreement with the ***specific intent*** to use just the license attachment to

prove up their damages in other cases.  (Bishop Decl. ¶¶ 22-23; Sitwala Decl. ¶¶ 7-8.)  In their

view, it was the "benefit of the bargain" with Warner Brothers to be able to misrepresent the

nature of the Complete Agreement to the Court and to Hearst.  (Bishop Decl. ¶ 22; Sitwala Decl.

¶ 7.)  And in addition to that admission, Plaintiff's and his counsel's subsequent discovery

conduct permits no other conclusion but that they intended to mislead both the Court and Hearst

about the nature of the Purported License to falsely inflate Plaintiff's claim of damages—

beginning with their statements at the Settlement Conference.  This is quintessential bad faith

conduct, warranting the strongest of sanctions.  *See infra* Part II.B (citing cases).  As one court in

this District has explained, "[w]hatever the appropriate definition [of bad faith], making a false

statement with the intent to mislead a court certainly meets that definition."  *Xu v. UMI Sushi,*

*Inc.*, No. 15-cv-4710, 2016 WL 3523736, at *3 (S.D.N.Y. June 21, 2016) (citation omitted)

(sanctioning counsel for, *inter alia*, false statements made to the court during a conference).

Moreover, Plaintiff and Mr. Liebowitz ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████ (*See supra* at 3.)  This sort of last-minute disclosure, without more, has been held to

warrant sanctions for bad faith participation at a settlement conference under Rule 16(f).  *See*

*Chen v. Marvel Food Servs., LLC*, No. CV 15-6206, 2016 WL 6872626, at *4-5 (E.D.N.Y. Nov.

21, 2016) (doubling demand minutes before settlement conference constitutes bad faith

participation, warranting sanctions under Rule 16(f)); *c.f. Fisher v. SmithKline Beecham Corp.*,

No. 07-cv-0347A(F), 2008 WL 4501860, at *6-7 (W.D.N.Y. Sept. 29, 2008) (awarding sanctions

under court's inherent authority and section 1927 for bad faith participation in a settlement

conference where, *inter alia*, defendant surprised plaintiff with a motion for summary judgment

on the eve of the mediation).  In short, every aspect of Plaintiff's and his counsel's use of the

Purported License at the Settlement Conference smacks of improper motivation, and they should

be sanctioned to deter further abuses of the court-supervised settlement process in the other cases

they have filed in this District.

To the extent Plaintiff asserts that Hearst cannot seek sanctions based on conduct at the

Settlement Conference under this Court's Standing Order for All Cases Referred for Settlement,[4]

Hearst respectfully submits that Plaintiff misunderstands both the text and purpose of the

Standing Order.  As confirmed during the Court's pre-motion conference, Plaintiff's position is

that he can make bald-faced lies to the Court and opposing parties at a settlement conference

without repercussion, because the Standing Order includes among the procedures that the Court

"typically will employ" that "[a]ll communications relating to settlement are strictly confidential

---

[4] (Hereinafter the "Standing Order," *available at*
http://www.nysd.uscourts.gov/cases/show.php?db=judge_info&id=847.)

and may not be used for any purpose." (Standing Order, at 1.) But the word "typically" in the

Standing Order allows breathing room for varying circumstances like those presented here, and

allowing counsel to blatantly misrepresent facts in violation of the ethical rules[5] without

consequence would frustrate the very purpose of a settlement conference: to foster candid

discussion that "provide[s] the parties with a better understanding of the factual and legal nature

of their dispute" and hopefully leads to a settlement. (*Id.*) It would also be inconsistent with

other provisions of the Standing Order, including the requirement that parties treat settlement as

"a serious matter" and "earnest[ly] consider[] the other side's point of view." (*Id.*) As a result,

even if the Standing Order on its face did preclude an application for sanctions (and it does not),

an exception would be warranted on these facts.[6] (And even if the Court were to allow Plaintiff

and his counsel to hide behind the Standing Order to excuse their misconduct, their continued

misrepresentations after the Settlement Conference independently call for sanctions.)

### B.    Plaintiff's and the Liebowitz Law Firm's Bad Faith Conduct During Discovery Warrants Sanctions.

As detailed above, Plaintiff's and his counsel's charade about the Purported License

continued for months ███████████████████████ After initially failing to

produce the agreement at all, he produced a doctored, repaginated version of the Purported

License without redactions or indications that it was part of the Complete Agreement. (Bishop

---

[5] Mr. Liebowitz's misrepresentations during the Settlement Conference appear to violate Rule 3.3 of the Rules of Professional Conduct (prohibiting making a "false statement of fact . . . to a tribunal") or Rule 4.1 (prohibiting knowingly making "a false statement of material fact . . . to a third person"), or both. *See also* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 06-439 (2006) (stating that under the Model Rules, a lawyer "may not make a false statement of material fact to a third person" during mediation); *In re McGrath*, 96 A.D.2d 267 (N.Y. App. Div. 1983) (affirming suspension of attorney that misrepresented amount of client's insurance coverage in statements to opposing counsel).

[6] As discussed during the pre-motion conference with the Court, Hearst will be filing a redacted version of its motion papers in compliance with the confidentiality provisions of the Standing Order.

Decl. ¶ 15 & Ex. B.)  He then perjured himself at his deposition, testifying that "[w]e had a settlement with [Warner Brothers] *after* the license agreement" with "a *separate* written settlement agreement," and giving the impression that Plaintiff ████████████████████ ████████████████████████████████ for the settlement of his case against Warner Brothers.  (Bishop Decl. Ex. C (emphasis added).)  These material misrepresentations were corrected only at the end of fact discovery, when Hearst's counsel threatened to move to compel and reopen Plaintiff's deposition.  (Bishop Decl. ¶¶ 17-19.)

Again, this conduct—particularly the production of an altered document—is so baseless that bad faith may be inferred, and it bears repeating that Plaintiff's counsel have admitted that they structured the Complete Agreement for the purpose of using the Purported License to inflate Plaintiff's damages in this and other actions.  (Bishop Decl. ¶ 22; Sitwala Decl. ¶ 7.)  In other words, the misrepresentations at issue were not only ill-motivated, they were planned long in advance.  And they go to the very heart of the case:  the Purported License is the *only* document that Plaintiff has produced and relied on to substantiate his damages in this action.  (*See* Bishop Decl. ¶ 21.)

Simply put, Plaintiff's and his counsel's prolonged efforts to hide the true nature of the Purported License amounts to an attempted "fraud upon the court."  *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 446 (S.D.N.Y. 2002).  "Our judicial system generally relies on litigants to tell the truth and participate in discovery in good faith."  *Id.* at 445.  But Plaintiff and his counsel have "lie[d] to the court and [their] adversary intentionally, repeatedly, and about issues that are central to the truth-finding process . . . ."  *Id.*  Courts in this District consistently impose the strongest of sanctions for just this type of conduct.  *See, e.g.*, *Shangold v. Walt Disney Co.*, No. 03-cv-9522, 2006 WL 71672, at *5 (S.D.N.Y. Jan. 12, 2006)

(dismissing case as a sanction under court's inherent authority where plaintiffs injected "tainted evidence at the heart of their dispute . . . and then sought to conceal it"), *aff'd*, 275 F. App'x 72 (2d. Cir. 2008); *Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D. 573, 582-84 (S.D.N.Y. 1996) (dismissing case as a sanction where plaintiff fabricated invoices at the heart of its case and used false testimony to attempt to protect such fabrication from being detected); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 222 (2d Cir. 2003) (submission of fraudulent documents, including a fraudulent invoice, is sanctionable under section 1927); *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 444 (S.D.N.Y. 2002) (sanctioning counterclaim plaintiff for reliance on, *inter alia*, altered documents as evidence of issues at the heart of her case).

## II.   APPROPRIATE SANCTIONS SHOULD DETER FUTURE MISCONDUCT AND COMPENSATE HEARST FOR ITS WASTED ATTORNEY TIME.

### A.   This Court Should Fashion Strong Deterrence Sanctions to Prevent Future Misconduct By Plaintiff and the Liebowitz Law Firm.

Under its inherent power, the Court has considerable discretion to "fashion an appropriate sanction" and "do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants." *Shangold*, 2006 WL 71672, at *4, 6 (citing *Chambers*, 501 U.S. at 44-45). Likewise, because Plaintiff and his counsel have acted in bad faith, the Court is empowered by Rule 16 to issue "just orders," Fed. R. Civ. P. 16(f), "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent," *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). To determine an appropriate sanction, the Court should consider: "(1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the other party; (3) whether there is a pattern of misbehavior, rather than an isolated instance; (4) whether and when the

misconduct was corrected; and (5) whether further misconduct is likely to continue in the future."
*McMunn*, 191 F. Supp. 2d at 446.

While Hearst acknowledges that—purely because of its own efforts to uncover the
Complete Agreement—it has suffered relatively little prejudice, all other factors point in favor of
imposing the strongest of sanctions against Plaintiff and his counsel.  As set forth above, they
have lied repeatedly about a central issue in this case, *see supra* at 3-7.  (*See* Bishop Decl. ¶ 20.)
They did not correct their misconduct until the very close of discovery.  (*See* Bishop Decl. ¶¶ 17-
19.)  And similar conduct is eminently likely to occur in the future—and may have already
occurred in other cases in this District.

This last point merits special emphasis.  Plaintiff has already filed five copyright
infringement cases in this District on similar facts, using the same counsel.  (*See* n.2, *supra*.)  He
settled three of those cases **after** the execution of the Complete Agreement with Warner Brothers
(*see* ECF No. 53 ¶¶ 102-107), and the facts here suggest ███████████████████████████
████████████████████  And his testimony suggests that he may be exploring further
cases with Mr. Liebowitz.  (Bishop Decl. Ex. C at 37:3-38:23.)

Meanwhile, Plaintiff's counsel has filed over 500 cases in this District in the past two
years and has been labeled a "copyright 'troll.'"  *Reynolds v. Hearst Communications, Inc.*, No.
17-cv-6720, 2018 WL 1229840, at *4 (S.D.N.Y. Mar. 5, 2018) (citing cases).  He and his clients
have been sanctioned for failing to comply with court orders, filing misleading documents, and
discovery violations.  *See Steeger v. JMS Cleaning Servs., LLC*, No. 17-cv-8013, 2018 WL
1363497 (S.D.N.Y. Mar. 14, 2018) (sanctioning Mr. Liebowitz under inherent authority for
failing to comply with court orders and filing misleading documents); *Janik v. Spin Media, Inc.*,
No. 16-cv-7308, 2017 WL 6021644, at *1 (S.D.N.Y. Dec. 4, 2017) (detailing discovery failures);

15

*see also Reynolds*, 2018 WL 1229840, at \*3-4 (describing misrepresentations in court filings). He has been ordered to complete continuing legal education in ethics and professionalism. *Steeger*, 2018 WL 1363497, at \*1.  He has had cases dismissed from the bench as frivolous.  *See Cruz v. Am. Broad. Cos.*, No. 17-cv-8794, 2017 WL 5665657, at \*2 n.11 (S.D.N.Y. Nov. 17, 2017) (noting that the court had "awarded over $121,000 in attorneys fees against a client of Mr. Liebowitz in three . . . cases that were dismissed from the bench").  He has been ordered to show cause why his clients should not be required to post security for costs as a condition of proceeding further with their actions.  *See, e.g.*, *Periera v. Kendall Jenner, Inc.*, No. 17-cv-6945 (case voluntarily dismissed before responding to show cause order); *Cruz*, 2017 WL 5665657 (similar outcome).  And one of his clients has been required to post such a bond.  *Reynolds*, 2018 WL 1229840, at \*5.

In short, the serious conduct at issue in this case is part of a larger pattern of "irresponsibl[e] litigat[ion]" that is ongoing, *Reynolds*, 2018 WL 1229840, at \*4, despite admonishments to Plaintiff's counsel to "clean up its act," *Janik v. SMG Media, Inc.*, No. 16-7308, 2018 WL 345111, at \*16 (S.D.N.Y. Jan. 10, 2018).  In view of this background and the seriousness of Plaintiff's and his counsel's conduct in this case, the Court should impose strong sanctions that are meaningful enough to deter similar abuses in the future.  As noted, many courts have imposed the strongest sanctions of dismissal for similar actions, because they amount to "forfeit[ure of] [plaintiff's] right to have his claim decided on the merits." *McMunn*, 191 F. Supp. 2d at 445.  (*See supra* at 13-14 (citing cases).)  But the Court may also order Plaintiff and his counsel to pay a significant fine to the Clerk of Court, or impose more creative sanctions such as legal education requirements.  *See Steeger*, 2018 WL 1363497.  While the proper sanction rests in this Court's sound discretion, Hearst respectfully submits that at least a $50,000 fine (to

be paid jointly by Plaintiff and his counsel) is appropriate under these circumstances, and that

Plaintiff and his counsel should be admonished in a publicly filed judicial opinion.

> **B.**      **Plaintiff and His Counsel Should Also Be Required to Pay Hearst's Reasonable Attorneys' Fees Associated with the Settlement Conference and this Motion.**

In addition, Rule 16(f) *requires* the Court to "order the party, its attorney, or both to pay

the reasonable expenses—including attorney's fees—incurred because of" Plaintiff's and his

counsel's bad faith participation at the Settlement Conference.  Fed. R. Civ. P. 16(f)(2); 28

U.S.C. § 1927; *Grenion*, 2014 WL 1284635, at *7.  Just as if Plaintiff and Mr. Liebowitz had not

bothered to appear for the Settlement Conference at all, their bad faith conduct during that

conference derailed the process and rendered it a waste of Hearst's and the Court's time.  *See,*

*e.g.*, *Mordechai v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 99-cv-3000, 2001 WL 699062, at *2

(S.D.N.Y. June 20, 2001).  Similarly, the Court's inherent authority and § 1927 provide a basis

for an award of attorneys' fees for conduct that unnecessarily multiplies litigation proceedings.

Accordingly, the Court should award Hearst its reasonable expenses and attorneys' fees

associated with preparing for and attending the Settlement Conference and preparing this

Motion.

As calculated in and supported by the accompanying March 27, 2018 Declaration of

Jennifer D. Bishop, Hearst specifically requests an award of $22,612.50 in reasonable attorneys'

fees resulting from its preparation for and attendance at the Settlement Conference and its

preparation of this Motion for Sanctions.  (Bishop Decl. ¶¶ 24-31.)  The attorneys' fees are those

reasonably charged by Hearst's in-house counsel Jennifer D. Bishop and Ravi V. Sitwala for

their preparation of Hearst's settlement memorandum and attendance at the Settlement

Conference, as well as for the preparation and filing of this Motion, and exclude (among other

things) the time spent on these tasks by Hearst Vice President and Deputy General Counsel

Jonathan R. Donnellan and by Hearst's senior paralegal.  (Bishop Decl. ¶¶ 24-31.)  *See generally,*

*e.g.*, *Kanongataa v. Am. Broad. Cos.*, Nos. 16-cv-7382 (LAK), 16-cv-7383 (LAK), 16-cv-7472

(LAK), 2017 WL 4776981, at *3 (S.D.N.Y. Oct. 4, 2017) (awarding full amount of fees

requested by defendant NBCUniversal Media, LLC, for the work of its in-house counsel under

Section 505 of the Copyright Act).  Consistent with the case law of this Court, those fees were

calculated using "a reasonable hourly rate that the in-house counsel would be awarded if he or

she was acting in the capacity of an outside counsel." *Video-Cinema Films, Inc. v. Cable News*

*Network, Inc.*, No. 98-cv-7128, 2004 WL 213032, at *6 (S.D.N.Y. Feb. 3, 2004); *see also Baiul*

*v. NBC Sports*, No. 15-cv-9920, ECF No. 64 at 11 (S.D.N.Y. May 19, 2016) (similar) (attached

as Bishop Decl. Ex. H); *Baiul v. NBCUniversal Media LLC*, No. 13-cv-02205, ECF No. 127 at 2

(S.D.N.Y. Aug. 22, 2014) (similar) (attached as Bishop Decl. Ex. I); *c.f. Humane Soc'y of U.S. v.*

*HVFG, LLC*, No. 06-cv-6829, 2010 WL 3322512, at *5 (S.D.N.Y. Aug. 19, 2010) (fee award for

pro bono counsel calculated based on private law firm rates).

## CONCLUSION

For the foregoing reasons, this Court should sanction Plaintiff and his counsel for their

bad faith conduct in this litigation and (1) order Plaintiff and the Liebowitz Law Firm jointly and

severally liable for Hearst's attorneys' fees of $22,612.50; (2) order further sanctions against

Plaintiff and his counsel sufficient to deter future misconduct; and (3) order such other and

further relief as this Court deems just and proper.

Dated: March 27, 2018
New York, New York

Respectfully submitted,

/s/ Jennifer D. Bishop
Jonathan R. Donnellan
Ravi V. Sitwala
Jennifer D. Bishop
The Hearst Corporation
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
jdonnellan@hearst.com
rsitwala@hearst.com
jbishop@hearst.com

*Counsel for Defendant Hearst*
*Communications, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 27, 2018, and pursuant to the Court's Order of March 6, 2018 (ECF No. 50), a true and correct copy of the above document will be sent by electronic mail to CottNYSDChambers@nysd.uscourts.gov and served on counsel via Fed Ex and electronic mail at:

> Richard Liebowitz
> James H. Freeman
> Liebowitz Law Firm, PLLC
> 11 Sunrise Plaza, Suite 305
> Valley Stream, NY 11580
> RL@LiebowitzLawFirm.com
> JF@LiebowitzLawFirm.com

Also pursuant to the Court's March 6, 2018 Order, a redacted version of the foregoing document will be filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing at a later date.

/s/ Jennifer D. Bishop
Jennifer D. Bishop