IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN OTTO,<br><br>      Plaintiff,<br><br>v.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>      Defendant. | C.A. No. 1:17-cv-04712-GHW |

**DECLARATION OF JENNIFER D. BISHOP
IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS**

I, JENNIFER D. BISHOP, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. My name is Jennifer D. Bishop, and I am over the age of 18 and fully competent to make this Declaration. I am an attorney admitted to practice before this Court. I am employed as Counsel to the Hearst Corporation, in the Office of the General Counsel, and an attorney for Defendant Hearst Communications, Inc. ("Hearst"). I make this Declaration in support of Hearst's Motion for a Sanctions (the "Motion"). I have personal knowledge of the matters stated in this Declaration, and each statement is true and correct.

**Events Leading to the Settlement Conference.**

2. Hearst has never licensed an image from Plaintiff, and Plaintiff filed this action without providing Hearst with any pre-suit notification of his claims. Accordingly, at the outset of this case, Hearst lacked any information about Plaintiff's licensing history, regular license fees, and claimed lost license fee resulting from Hearst's publication of the image at issue in this action.

3. On August 16, 2017, I proposed to Plaintiff's counsel Richard Liebowitz that a

settlement conference would be appropriate following the conclusion of fact discovery, after Hearst had an opportunity to discover information about Plaintiff's potential damages and his standard license fees. Mr. Liebowitz initially agreed, as reflected in the Civil Case Management Plan and Scheduling Order. (ECF No. 12.)

4.  Subsequently, Mr. Liebowitz repeatedly asked to have an earlier settlement conference (including during the August 24, 2017 pretrial conference with Judge Woods). Hearst eventually agreed, but asked more than once that Mr. Liebowitz provide Hearst with information about Plaintiff's licensing history prior to the conference.

5.  The settlement conference was scheduled for October 23, 2017.

6.  Mr. Liebowitz did not provide any information about Plaintiff's licensing fees or licensing history prior to the settlement conference.

7.  On October 18, 2017—5 days before the settlement conference—Plaintiff served responses to Hearst's first set of interrogatories. Those responses disclosed that "Plaintiff [] calculates the loss of licensing fee in the range of $5,000 based on the market rate of photographs of similar style, quality and content." A true and correct copy of the relevant portion of Plaintiff's October 18, 2017 interrogatory responses is attached hereto as <u>Exhibit A</u>.

**The Settlement Conference**

8.  Both Plaintiff and his counsel attended the settlement conference before this Court on October 23, 2017. I also attended the conference with my colleague Ravi V. Sitwala and Michael Sebastian, the Digital Director of Esquire.com.

9.  Near the outset of the conference, Mr. Liebowitz represented to me, my colleagues, and the Court that ████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

2



10.

11.

12.

**Events Subsequent to the Settlement Conference**

13. On November 28, 2017, Plaintiff issued supplemental interrogatory responses identifying a license agreement with Warner Brothers Entertainment, Inc. ("Warner Brothers") as a document relevant to the computation of actual damages in this action.

14. Plaintiff made his first production of documents in this action on December 5, 2017. That production did not include any agreement with Warner Brothers, despite the fact that Hearst had demanded production of all licensing and settlement agreements related to the image at issue in this case.

15. After I inquired about the missing Warner Brothers agreement, Plaintiff's counsel produced a document bearing Bates numbers OTTO_0067-0070 on December 7, 2017. That document appears to be an executed

███████████  It is titled "Photography License," bears the electronic file name "Otto_Warner Licensing Agreement.pdf," and appears to have been executed by Warner Brothers on October 27, 2018.  It does not contain redacted pages nor any other indication that it is anything other than a complete document.  A true and correct copy of Plaintiff's counsel's production email and the document bearing Bates numbers OTTO_0067-0070 is attached hereto as <u>Exhibit B</u>.

16.  Through Hearst's own research, it learned that Plaintiff had filed a suit with Warner Brothers, Case No. 1:17-cv-4763 (S.D.N.Y.), arising out of that company's use of the photograph at issue in this case, which was dismissed pursuant to Rule 41(a)(1)(A)(ii) on October 30, 2017.

17.  Hearst deposed Plaintiff on December 11, 2018.  During that deposition, I questioned Plaintiff about the relationship between the document produced as OTTO_0067-0070 and the settlement of Plaintiff's case against Warner Brothers.  Plaintiff refused to answer questions regarding the nature of the settlement, and he also testified about his relationship with the Liebowitz Law Firm.  A true and correct copy of the portion of the transcript of Plaintiff's deposition that includes this line of testimony is attached hereto as <u>Exhibit C</u>.  Following this exchange, I informed Plaintiff's counsel that Hearst would move to compel production of all settlement agreements relating to the photograph at issue and may seek to reopen Plaintiff's deposition.

18.  On December 15, 2017, Plaintiff's counsel produced a document bearing Bates numbers OTTO_0071-0079.  That document is entitled "Settlement and Release Agreement" and provides for the settlement of Plaintiff's claims against Warner Brothers in Case No. 17-cv-4763 (S.D.N.Y.).  It appears to have been executed by Warner Brothers on October 27, 2017.  A true

and correct copy of Plaintiff's counsel's production email and the document bearing Bates numbers OTTO_0071-0079 is attached hereto as <u>Exhibit D</u>.

19.   On December 20, 2017, Plaintiff stipulated to certain facts concerning the document Bates stamped OTTO_0071-0079. A true and correct copy of that stipulation is attached hereto as <u>Exhibit E</u>.

20.   Upon review of OTTO_0067-0070 and OTTO_0071-0079, it is clear that the former document is the two exhibits to the Settlement and Release Agreement that have been rearranged to appear to be a standalone agreement.

**Post-Discovery Conversations With Plaintiff's Counsel**

21.   On January 26, 2018, Mr. Sitwala and I discussed Plaintiff's and his counsel's representations about OTTO_0067-0070 with Plaintiff's counsel James Freeman in a telephone conference. During that call, Mr. Freeman stated in sum or substance that the Liebowitz Law Firm had purposefully structured Plaintiff's settlement with Warner Brothers as a settlement agreement with a license exhibit with the intention of relying on only the license exhibit as evidence of damages in other cases. Mr. Freeman stated that Plaintiff's ability to hold out the exhibit as a separate license agreement was the "benefit of the bargain" with Warner Brothers. He also stated that the Liebowitz Law Firm had attempted to structure settlements in this way before, but other defendants had not agreed to the structure.

22.   During the parties' pre-motion conference with the Court on March 6, 2018, Mr. Freeman repeated the substance of his statements detailed in Paragraph 21.

**Hearst's Reasonable Fees and Expenses**

23.   As set forth and supported in this Declaration, the Hearst Defendants by this Motion seek an award of $22,612.50 in attorneys' fees incurred in preparing for and attending

the Settlement Conference, and in preparing this Motion. (Additional fees incurred in connection with this Motion will be reflected in a supplemental declaration filed with Hearst's reply papers after those expenses are finalized.)

24. Hearst is represented in this action by the Hearst Corporation's specialized in-house legal department, known as the Hearst Office of General Counsel ("Hearst OGC"). Hearst OGC operates as a full-service in-house boutique law firm with a national practice, and directly represents Hearst subsidiaries in a wide range of litigations, as well as transactional and regulatory matters. It is responsible for all legal matters involving Hearst's media interests, which include magazines, Internet businesses, newspaper and business publishing, newspaper features distribution, cable networks, television and radio broadcasting, television production and distribution, and real estate.

25. Hearst OGC has a particular expertise in the area of media law litigation, including copyright and trademark cases. Hearst Vice President and Deputy General Counsel Jonathan Donnellan leads Hearst OGC's litigation practice group, which handles all litigation, newsroom counsel, and content-related matters for the company (including this case). Mr. Donnellan regularly serves as lead counsel for Hearst in state and federal trial and appeals courts around the country and has over 25 years of experience representing media clients in intellectual property and other content-related actions. Recently, for example, Mr. Donnellan was lead counsel for Hearst OGC in *Kelly-Brown v. Winfrey*, 659 F. App'x 55 (2d Cir. Sept. 16, 2016) (affirming summary judgment in favor of Hearst and codefendants on trademark claim involving, *inter alia*, use of a phrase on the cover of a magazine). In addition to his media law practice, Mr. Donnellan has been a law school professor on the topic since 2006, as well as a member of the faculty of the Practicing Law Institute for its annual program on Communications

Law in the Digital Age.  Before joining Hearst in 2003, Mr. Donnellan was Vice President and Deputy General Counsel for the New York Daily News from 2002 to 2003 and Assistant General Counsel for CNN from 2001 to 2002.  Previously, he practiced from 1991 to 2001 at the firm Cahill Gordon & Reindel in New York City, where he focused primarily on the representation of media clients.  He is a frequent speaker around the country and internationally on legal and ethical issues relating to media law and the First Amendment, and has published articles and book excerpts on those topics.  Mr. Donnellan received his J.D. from the New York University School of Law in 1991.  He has served as chair of the New York City Bar Association's Committee on Communications Law, co-chair of the ABA's First Amendment Litigation Committee, a member of the Governing Committee of the ABA's Forum on Communications Law, and as a Trustee of the Media Law Resource Center Institute.

26. In addition to Mr. Donnellan, this case is staffed by my colleague Ravi Sitwala and myself, and the three of us work together regularly on Hearst's copyright litigation matters.  As Associate General Counsel for Hearst, and an attorney with the Hearst OGC for ten years, Mr. Sitwala has significant experience involving intellectual property matters and has appeared numerous times on behalf of Hearst in matters before state and federal trial and appeals courts.  Mr. Sitwala received his J.D. from New York University School of Law in 2004.  After graduating from law school and prior to joining Hearst OGC, he clerked for Judge Fuentes on the United States Court of Appeals for the Third Circuit, and was a litigation associate at Patterson Belknap Webb & Tyler LLP with a focus on litigating intellectual property and media cases.

27. As Counsel for Hearst for over two years, I also have significant experience litigating cases involving copyright and other media law issues and have appeared numerous times on behalf of Hearst in matters before state and federal trial and appeals courts.  Prior to

joining Hearst OGC in 2015, I was a litigation associate at Quinn Emanuel Urquhart & Sullivan, LLP, where I focused on media and intellectual property litigation. I received my J.D. from the Yale Law School in 2012.

28. Hearst OGC attorney time records, which set forth Mr. Sitwala's and my time spent in connection with preparing for and attending the Settlement Conference (including preparation of Hearst's confidential settlement memorandum) and in preparing this Motion are attached hereto as Exhibit F and Exhibit G, respectively. Considerable effort was taken by Mr. Sitwala and I not to duplicate any tasks. Further, neither I nor Mr. Sitwala have billed all the time we spent on this Motion or the Settlement Conference and have "written-off" time. For example, we have not billed for the time we spent preparing for and attending the pre-motion telephone conference with the Court. Moreover, Hearst is not requesting fees for the hours that their counsel's senior paralegal spent assisting myself and Mr. Sitwala in finalizing and filing this Motion or the settlement memorandum.

29. The following chart summarizes the hours of legal work (with the associated billing rate per professional) for which Hearst OGC seeks an award of attorneys' fees, as described in Exhibits F and G.

| Professional | Total Hours | Billing Rate | Amount |
|---|---|---|---|
| R. Sitwala | 5 | $700 | $3,500 |
| J. Bishop | 34.75 | $550 | $19,112.50 |
| **TOTAL** | **39.75** | | **$22,612.50** |

30. As in-house counsel, Mr. Sitwala and I do not regularly charge hourly rates to Hearst. Accordingly, consistent with the holdings of judicial decisions that have awarded fees for time spent by in-house counsel, I have calculated our billing rates above by looking to the

hourly rates of outside counsel with experience and expertise comparable to that of myself and my colleagues.  For instance, in the recent copyright case *Mahan v. Roc Nation, LLC*, No. 14-cv-5075, 2016 WL 4718018, at *2 (S.D.N.Y. Sept. 9, 2016), the Court deemed hourly rates of $855 for an experienced partner and up to $553 for associates to be reasonable.  *See also Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13-cv-2493, 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014) ("In recent years, New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour."); *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 56 (S.D.N.Y. 2015) (finding a $461 per hour rate to be reasonable for a second-year associate); Karen Sloan, *$1,000 Per Hour Isn't Rare Anymore; Nominal billing levels rise, but discounts ease*, The National Law Journal, Jan. 13, 2014, at 2 ("Firms with their largest office in New York had the highest *average* partner and associate billing rates, at $882 and $520, respectively," with a realization rate of 83.5 percent.) (emphasis added).

**Relevant Authority Cited in the Motion.**

31.     Attached hereto as Exhibit H is a true and correct copy of the Memorandum Decision & Order issued by U.S. District Judge Katherine B. Forrest on May 19, 2016, in the matter of *Baiul v. NBC Sports*, No. 1:15-cv-09920 (KBF) (S.D.N.Y.).

32.     Attached hereto as Exhibit I is a true and correct copy of the Memorandum Decision & Order issued by U.S. District Judge Katherine B. Forrest on August 22, 2014, in the matter of *Baiul v. NBCUniversal Media LLC*, No. 1:13-cv-02205 (KBF) (S.D.N.Y.).

Executed this 27th day of March, 2018, in New York, New York.

_____
JENNIFER D. BISHOP

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 27, 2018, and pursuant to the Court's Order of March 6, 2018 (ECF No. 50), a true and correct copy of the above document will be sent by electronic mail to CottNYSDChambers@nysd.uscourts.gov and served on counsel via Fed Ex and electronic mail at:

> Richard Liebowitz
> James H. Freeman
> Liebowitz Law Firm, PLLC
> 11 Sunrise Plaza, Suite 305
> Valley Stream, NY 11580
> RL@LiebowitzLawFirm.com
> JF@LiebowitzLawFirm.com

Also pursuant to the Court's March 6, 2018 Order, a redacted version of the foregoing document will be filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing at a later date.

/s/ Jennifer D. Bishop
Jennifer D. Bishop