UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN OTTO,

                        Plaintiff,

    - against -

HEARST COMMUNICATIONS, INC.

                    Defendant.

Docket No. 17-cv-4712 (GHW-JLC)

ECF CASE

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT OF CIVIL CONTEMPT, PURSUANT TO LOCAL RULE 83.6, AGAINST DEFENDANT AND ITS COUNSEL OF RECORD; AND FOR SANCTIONS; AND IN OPPOSITION TO DEFENDANT'S SHAM MOTION FOR SANCTIONS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND ............................................................................................................ 2

ARGUMENT .............................................................................................................. 11

**POINT I:   HEARST AND ITS COUNSEL-OF-RECORD SHOULD BE HELD IN
CONTEMPT OF COURT** ................................................................................... **11**

   A.   THE STANDING COURT ORDER IS CLEAR AND UNAMBIGUOUS ......................................... 11

   B.   THE PROOF OF HEARST'S NON-COMPLIANCE IS CLEAR AND CONVINCING ........................ 13

   C.   HEARST HAS NOT DILIGENTLY ATTEMPTED TO COMPLY IN A REASONABLE MANNER .... 13

**POINT II:   PLAINTIFF SHOULD BE AWARDED HIS ATTORNEYS' FEES AND
HEARST'S COUNSEL SHOULD BE HELD IN CONTEMPT AND
ORDERED TO COMPLETE ETHICS TRAINING** .......................................... **15**

   A.   UNDER SECOND CIRCUIT LAW, DISCLOSURE OF COMMUNICATIONS MADE DURING
SETTLEMENT CONFERENCES IS SANCTIONABLE BECAUSE SUCH DISCLOSURES THREATEN
TO "DESTROY THE EFFECTIVENESS OF THE [MEDIATION] PROGRAM" .............................. 15

   B.   HEARST HAS FAILED TO DISCLOSE CRITICAL INFORMATION IN AN ATTEMPT TO MISLEAD
THE COURT; WHICH FURTHER WARRANTS SANCTIONS ..................................................... 17

   C.   HEARST'S CONTENTION THAT PLAINTIFF OR ITS COUNSEL "DOCTORED" EVIDENCE IS
PATENTLY FALSE AND DISPROVED BY THE VERY STIPULATION EXECUTED BY HEARST .. 18

   D.   HEARST IS IMPROPERLY USING THIS SANCTIONS PROCEEDING TO LITIGATE THE MERITS OF
ITS POSITION ON DAMAGES, AS SUPPORTED BY ITS EXPERT WITNESS .............................. 19

**POINT III: HEARST'S SHAM MOTION FOR SANCTIONS SHOULD BE DENIED ..... 21**

   A.   COUNSELS' TESTIMONY REGARDING WHAT WAS SAID AT THE SETTLEMENT CONFERENCE
IS UNRELIABLE, PATENTLY BIASED AND ENTITLED TO ZERO CREDIT .............................. 21

   B.   OTTO'S LAY TESTIMONY WAS ACCURATE AND CONSISTENT WITH HIS UNDERSTANDING
AND LEGAL POSITION ON THE MERITS ............................................................................. 23

   C.   PLAINTIFF'S DECEMBER 7, 2017 PRODUCTION OF THE LICENSING AGREEMENT IN
STANDLONE FORM IS PROPER AND NOT GROUNDS FOR SANCTIONS ................................ 23

CONCLUSION............................................................................................................................. **24**

## TABLE OF AUTHORITIES

### CASES

*Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*,
    303 F. Supp. 2d 356, 362 (S.D.N.Y. 2003) .......................................................... 20

*Aspira of New York, Inc. v. Board of Education of the City of New York,*
    423 F.Supp. 647, 654 (S.D.N.Y.1976) ................................................................ 13

*Benjamin v. Kerik*,
    No. 75 CIV. 3073 (HB), 1999 WL 221113, at *4 (S.D.N.Y. Apr. 14, 1999);........................ 13

*Bernard v. Galen Grp., Inc.*,
    901 F. Supp. 778, 783 (S.D.N.Y. 1995) .......................................................... 17, 19

*Calka v. Kucker Kraus & Bruh*,
    167 F.3d 144, 146 (2d Cir. 1999)................................................................ 16

*Commander Oil Corp. v. Advance Food Serv. Equip.*,
    991 F.2d 49, 52–53 (2d Cir.1993).................................................................. 23

*Dunn v. New York State Dept. of Labor,*
    47 F.3d 485, 490 (2d Cir.1995).................................................................... 11

*Dynamics Corp. of America v. International Harvester Co.,*
    429 F.Supp. 341, 345–46 (S.D.N.Y.1977) ......................................................... 23

*E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.*, No. 00CIV.8670(LTS)(GWG), 2003 WL
    22416174, at *2 (S.D.N.Y. Oct. 23, 2003) ........................................................ 15

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.,*
    807 F.2d 1110, 1116 (2d Cir.1986)................................................................ 20

*Gompers* v. *Buck Stove & Range Co.*, 221 U.S. 418, 450 (1911) .................................... 1

*Kara Holding Corp. v. Getty Petroleum Mktg., Inc.,*
    99 Civ. 0275(RWS), 2004 WL 1811427, at *22 (S.D.N.Y. Aug. 12, 2004)........................... 20

*King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir.1995).................................... 11

*Lake Utopia Paper Limited,*
    608 F.2d 928 (2d Cir.1979), cert. denied, 444 U.S. 1076 (1980). .............................. 15

*Lee v. Grand Sichuan E. (N.Y.) Inc.*,
    No. 12-CV-08652 SN, 2014 WL 199512, at *2 (S.D.N.Y. Jan. 17, 2014) ....................... 20, 22

### CASES (continued…)

*Levin v. Tiber Holding Corp.*,
   277 F.3d 243, 250 (2d Cir.2002)............................................................................... 13

*McCulloch v. Town of Milan*,
   No. 07 CIV.9780 LAP RLE, 2009 WL 3326638, at *2 (S.D.N.Y. Oct. 15, 2009) ................. 22

*New York State National Organization for Women v. Terry*,
   886 F.2d 1339, 1351 (2d Cir.1989)............................................................................ 11

*Perez v. Danbury Hosp.*,
   347 F.3d 419, 423–24 (2d Cir.2003)........................................................................... 11

*Roadway Express, Inc. v.. Piper*,
   447 U.S. 752, 764–765 (1980).................................................................................. 11

*Rudman v. Cowles Commc'ns, Inc.*,
   30 N.Y.2d 1, 13, 330 N.Y.S.2d 33, 280 N.E.2d 867 (1972).................................... 23

*TVT Records v. Island Def Jam Music Group*,
   412 F.3d 82, 89 (2d Cir.2005), cert. denied, *364 548 U.S. 904, 126 S.Ct. 2968, 165 L.Ed.2d
   951 (2006)............................................................................................................. 23

*United States v. Glens Falls Newspapers, Inc.*,
   160 F.3d 853, 858 (2d Cir. 1998).............................................................................. 17

### RULES

Local Civil Rule 83.6 .............................................................................................. 15

<u>**INTRODUCTION**</u>

**"If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the `judicial power of the United States' would be a mere mockery."**

*Gompers* v. *Buck Stove & Range Co.*, 221 U.S. 418, 450 (1911).

Pursuant to Local Civil Rule 83.6 and the Court's inherent power, Plaintiff Jonathan Otto ("Plaintiff" or "Otto"), via counsel, hereby submits this memorandum of law in support of Plaintiff's Motion for Judgment of Civil Contempt against Defendant Hearst Communications, Inc. ("Defendant" or "Hearst") and its Counsel of Record; and for Sanctions in the form of attorneys' fees incurred as a result of this ancillary proceeding. Hearst's counsel of record should also be ordered to complete ethics training for being oblivious to what it means to comply with Standing Court Orders after certifying compliance through handwritten signature.

Hearst has made itself the judge of the validity of this Court's Standing Court Order, and therefore makes a mockery of the Article III power, by willfully violating an Order which serves to protect the sanctity and intergity of "off-the-record" settlement conferences. And why? So that it could harass Plaintiff during the briefing of summary judgment and pre-litigate the merits of its expert's theory of damages. The Court should not tolerate such flagrant violation of an unambiguous Standing Court Order and should appropriately GRANT Plaintiff's motion for judgment of Civil Contempt against Hearst Communications, Inc. and its counsel-of-record, AWARD Plaintiff his attorneys' fees in connection with this ancillary proceeding, and DENY Defendant's sham motion for sanctions.

## BACKGROUND

### The Parties and the Underlying Controversy

Plaintiff, who is not a professional photographer, took a photograph of Donald Trump with his iPhone while attending a wedding at Trump's golf course in New Jersey in June 2017 (the "Photograph").  The Photograph was provided to another wedding guest who posted the image on Instagram without Plaintiff's consent.  Several commercial media outlets, including Hearst, appropriated the image from Instagram without inquiring as to the identity of the copyright holder and simply published it on their respective websites to generate a profit.

Hearst is a largescale news publisher and serial copyright infringer who has been sued ten times in this District in the last two years.  Having been caught yet once again exploiting copyrights without first obtaining permission, Hearst has manufactured a defense of fair use to shield itself from liability on the theory that it can freely exploit images taken from social media.

### The Court's Standing Order for All Cases Referred for Settlement

On September 6, 2013, the Court entered its revised Standing Order for All Cases Referred for Settlement to Magistrate Judge James L. Cott, which is available at http://www.nysd.uscourts.gov/cases/show.php?db=judge_info&id=847 (the "Standing Court Order"), Paragraph 1 of the Standing Court Order reads in its entirety:

> Confidential Nature of Conference. All settlement conferences are "off the record." All communications relating to settlement are strictly confidential and **may not be used for any purpose**. They are not to be used in discovery and will not be admissible at trial. (boldface added)

The Standing Court Order includes an "Acknowledgment Form," also revised as of September 6, 2013.  Paragraph 4 of the Acknowledgment Form asks counsel to "certify that I have read both the Court's Order scheduling this conference as well as the 'Standing Order for All Cases Referred for Settlement to Magistrate Judge Cott.'"  The Acknowledgment Form also

instructs counsel: "<u>Please read the certifications below carefully as your signature indicates your compliance with them</u>."

**<u>Certifications of Compliance With The Standing Court Order [October 16, 2017]</u>**

On October 16, 2017, Plaintiff's counsel, Mr. Liebowitz, e-mailed the Court a signed Acknowledgment form which certified that he had read both the Court's Order scheduling the conference as well as the "Standing Order for All Cases Referred for Settlement to Magistrate Judge Cott." [Liebowitz Decl. ¶ 4, Ex. A]

Also on October 16, 2017, Hearst e-mailed the Court a copy of its own duly executed certification, signed by Jennifer Bishop, in which Hearst certified that it (via counsel) had read both the Court's Order scheduling this conference as well as the "Standing Order for All Cases Referred for Settlement to Magistrate Judge Cott."   Pursuant to the Acknowledgment form, Hearst certified that by signing the document, it was bound to comply with the Court's Standing Order. [Liebowitz Decl. ¶ 5, Ex. B]

**<u>Liebowitz Law Firm's Settlement History w/ Hearst</u>**

To date, the Liebowitz Law Firm has settled a total of three (3) copyright infringement lawsuits against Hearst, including *Winn v Hearst Communications, Inc.*, 17-cv-1874; *Yang v. Hearst Communications, Inc.*, 17-cv-7585 (VEC); *Romanowicz v. Hearst Television, Inc.*, 17-cv-1630; and it has also settled in principle another infringement case, *Reynolds v. Hearst Communications, Inc*. 17-cv-6720 (DLC).  [Declaration of Richard Liebowitz, dated 4/17/18 ("Liebowitz Decl.") ¶ 2]  Accordingly, any claim by Hearst that the Liebowitz Law Firm failed to negotiate settlements in good faith is absurd.

**<u>History of Settlement Negotiations in This Case</u>**

On October 16, 2017, Liebowitz e-mailed the Court Plaintiff's settlement memorandum in anticipation of the October 23, 2017 settlement conference. Accordingly, the Court is privy to the history of settlement negotiations prior to October 23, 2017, as well as Plaintiff's evaluation of the settlement value of the case. [Liebowitz Decl. ¶ 3]

**The Settlement Conference [October 23, 2017]**

On October 23, 2017, Mr. Liebowitz attended a settlement conference in this action with Plaintiff. Defendant's counsel, Mr. Ravi Ritwala and Ms. Jennifer Bishop, were in attendance on behalf of Hearst.

In flagrant violation of the Court's Standing Order and Hearst's own signed certification of compliance with the Court's Order, Mr. Ritwala and Ms. Bishop have both filed declarations attesting to alleged communications that took place during the settlement conference for the purpose of filing a sham motion for sanctions. Portions of counsels' testimony, which is cunningly paraphrased and drawn from biased selective memory, disclose the purported amount of settlement demand issued by Plaintiff. [Liebowitz Decl. ¶ 9]

In accordance with Mr. Liebowitz's certified statement that he understood the Court's Standing Court Order and would dutifully comply with its provisions, he will not fall into the trap of violating a Standing Court Order and destroying the integrity of the settlement conference program by engaging in a debate as to what was actually said at the settlement conference. [Liebowitz Decl. ¶ 11] There's no record of it.

**Plaintiff's Settlement With Third-Party Warner Brother Entertainment [October 30, 2017]**

On June 22, 2017, Plaintiff filed suit against Warner Brothers Entertainment ("Warner Bros.") for TMZ's infringement of the identical Photograph at issue here. [Liebowitz Decl. ¶ 12, Ex. C]

4

As of October 23, 2017, the date of the settlement conference in this action, Plaintiff had not yet settled his infringement action against Warner Bros. Indeed, the docket report from the case of *Otto v. Warner Bros.,* 17-cv-4763 (LTS) shows that the parties did not file a stipulation of dismissal until October 30, 2017, seven days after the settlement conference here.  Moreover, the Settlement Agreement with Warner Bros. was not itself fully executed until October 27, 2017, four days after the date of the settlement conference in this case.  [Liebowitz Decl. ¶ 12; Declaration of Jennifer Bishop ("Bishop Declr.") Ex. B (under seal)]

Hypothetically speaking, if Defendant's counsel asked Mr. Liebowitz at the settlement conference on October 23 whether Plaintiff had settled with Warner Bros., or whether Plaintiff's Licensing Agreement with Warner Bros. was part of a settlement agreement, then the correct hypothetical answer would have been "NO" simply based on the timing of the question. [Liebowitz Decl. ¶ 13].  Point blank: there was no settlement agreement w/ Warner Bros. as of October 23, 2017.

**Plaintiff's Licensing Agreement w/ Warner Bros. [Signed October 27, 2017]**

With respect to the Licensing Agreement and Settlement Agreement w/ Warner Bros. at issue here, the manner and form in which the Licensing Agreement was drafted, i.e., to <u>exclude</u> prohibitions from the Licensing Agreement which were contained in the Settlement Agreement and to <u>include</u> terms which impose limitations on the licensee's rights, is consistent with Liebowitz's practice of negotiating such agreements [Liebowitz Decl. ¶¶ 14-20, 21]

Plaintiff's Licensing Agreement with Warner Bros., which is attached as an exhibit to the Settlement Agreement, was specifically intended to exist as a <u>separately enforceable agreement subject to different terms and conditions</u> than Plaintiff's Settlement Agreement with Warner Bros.  [Liebowitz Decl. ¶ 22]

Plaintiff, via counsel, therefore maintains and archives his Licensing Agreement with

Warner Bros. as a separate PDF file in the ordinary course of business. [Liebowitz Decl. ¶ 23]

While Plaintiff may not introduce the Settlement Agreement as evidence in the present litigation,

he can introduce the Licensing Agreement, standing alone, as evidence of what a similarly

situated copyright infringer, i.e., Warner Bros. / TMZ  paid to license Plaintiff's photograph.

[Liebowitz Decl. ¶ 24][1]

**Plaintiff's Initial Responses to Defendant's Discovery Requests [Sept. 7 –Nov. 16, 2017]**

On September 7, 2017, Defendant served upon Plaintiff its First Request for Production

of Documents ("RFP") and First Set of Interrogatories.  Request No. 17 of Defendant's RFP

asked Plaintiff to produce "All settlement agreements entered into by you in connection with

other instances of alleged infringement of your claimed copyright(s)."  Request Nos. 5 and 20 of

Defendant's RFP asked Plaintiff to produce documents relating to Plaintiff's lawsuit against

Warner Brothers Entertainment, Inc. ("Warner Bros."). [Declaration of James H. Freeman

("Freeman Declr.") ¶ 3].  This shows that Hearst was already aware of Plaintiff's lawsuit against

Warner Bros. a full six weeks before the settlement conference.

On October 18, 2017, Plaintiff served its responses to Defendant's RFP, including his

response to Request No. 17 indicating that Plaintiff did not have settlement agreements in his

possession.  [Freeman Declr. ¶ 4, Ex. A].  On November 16, 2017, Defendant served a letter

upon Plaintiff to address "certain fact discovery matters."  Defendant's letter did not address

settlement agreements or Plaintiff's lawsuit against Warner Bros. [Freeman Declr. ¶ 6, Ex. C]

---

[1] To the extent Hearst wants to mitigate the licensing fee paid by Warner Bros. by showing that the fee paid was mere "litigation avoidance cost," that is their burden.  Under *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998), the jury will ultimately decide the amount of statutory damages to be awarded based on the totality of circumstances.

**Plaintiff's Supplemental Disclosures and Objections to Producing Settlement Agreements [November 22-28, 2017]**

On November 22, 2017, Mr. Freeman e-mailed opposing counsel to inform Defendant that Plaintiff would supplement his disclosures and identified additional potential witnesses. [Freeman Declr. ¶ 8, Ex. D].  On November 28, 2017, Plaintiff served Plaintiff's Supplemental Disclosures. [Freeman Declr. ¶ 9, Ex. E] In response to Defendant's RFP No. 17, which asked Plaintiff to produce settlement agreements, Plaintiff stated as follows: "Plaintiff cannot produce documents responsive to Request No. 17 without potentially violating the terms of said agreements.  Accordingly, no further response is required."  [*Id.*]

**Defendant's Production of Documents re: *Otto v. Warner Bros.* [December 1, 2017]**

On December 1, 2017, Defendant served its first production of responsive documents, which included a copy of Plaintiff's complaint against Warner Bros. (including exhibits) and a copy of the Stipulation of Dismissal With Prejudice which was filed in that case on October 30, 2017.  [Freeman Declr. ¶ 10, Ex. F]

**Plaintiff's Production of the Licensing Agreement w/ Warner Bros. [December 5-7, 2017]**

On December 5, 2017, Plaintiff served its first production of responsive documents. [Freeman Declr. ¶ 11, Ex. G].  On December 6, 2017, Defendant's counsel sent Plaintiff an e-mail stating: "Plaintiff's December 5 production did not include the licensing agreement entered into with Warner Brothers Entertainment, Inc., that Plaintiff identified in his November 28 Supplemental Interrogatory Responses.  Please produce a copy of that agreement by noon tomorrow." [Freeman Declr. ¶ 12, Ex. H]

On December 7, 2017, and in direct response to Defendant's 12/6/17 e-mail request, Plaintiff produced a copy of his Licensing Agreement with Warner Bros., bearing bate-stamp numbers OTTO_0067-70 (the "Licensing Agreement").  The PDF is labeled "Otto-Warner

Licensing Agreement" and is maintained as such in Plaintiff's ordinary course of business consistent with the good faith belief and intention that the Licensing Agreement is a separately enforceable agreement subject to different terms and conditions than Plaintiff's settlement agreement with Warner Bros. [Freeman Declr. ¶¶ 13-14, Ex. I]

**Deposition of Plaintiff [December 11, 2017]**

On December 11, 2017, Defendant deposed Plaintiff.  During the course of the deposition, Defendant's counsel requested that Plaintiff produce a copy of Plaintiff's settlement agreement with Warner Bros. and threatened to file a motion to compel. [Freeman Declr. ¶ 15] Plaintiff had previously objected to producing settlement agreements as part of his supplemental disclosures on 11/28/17; but the deposition date marked the first time that Defendant raised a discovery dispute concerning Plaintiff's production of settlement agreements. [*Id.*] Notwithstanding, Defendant reserved the right to conduct a second deposition of Plaintiff to address the settlement agreement. [*Id.*]

**Plaintiff's Production of Settlement Agreement w/ Warner Bros. and Parties' First Stipulation of Facts re: Settlement vs. Licensing Agreement [December 13-20, 2017]**

On December 13, 2017, Mr. Freeman e-mailed Defendant's counsel stating that Plaintiff would produce a copy of the settlement agreement with Warner Bros. by no later than December 20.  Freeman also indicated that Plaintiff would be willing to enter into a stipulation concerning the settlement agreement to avoid the time and expense of conducting a second deposition. [Freeman Declr. ¶ 16, Ex. J]

On December 15, 2017, Plaintiff produced a copy of his settlement agreement with Warner Brothers (the "Settlement Agreement"), along with exhibits.  The Licensing Agreement was attached as Exhibit B to the Settlement Agreement and was an identical copy of the document produced as OTTO_0067-70 on 12/7/17. [Freeman Declr. ¶ 17, Ex. K]

On December 19, 2017, Defendant's counsel e-mailed Plaintiff a draft of a proposed stipulation and stated: "If you will agree to the attached stipulated facts, we will not need to depose Mr. Otto again." [Freeman Declr. ¶ 19, Ex. L]

On December 20, 2017, at 9:45 a.m., Mr. Freeman responded to the 12/19/17 e-mail and commented on Defendants' proposed stipulation, stating: "***Paragraph #1 calls for a legal conclusion as to whether the licensing agreement is incorporated by reference into the settlement agreement. Mr. Otto has already testified that the licensing agreement is separate from the settlement agreement***. However, he is prepared to stipulate that the licensing agreement is attached as an exhibit to the Settlement Agreement." [Freeman Declr. ¶ 20, Ex. M (emphasis added)]

On December 20, 2017, at 10:02 a.m., Defendant's counsel responded to Freeman's 9:45 a.m. e-mail, stating: "***Our intent with paragraph 1 was to authenticate the document, as well as indicating that the license agreement is attached as an exhibit to the settlement agreement***. Can you please suggest some revised language that will achieve that purpose while addressing your concern?". [Freeman Declr. ¶ 21, Ex. N (emphasis added)]

On December 20, 2017, at 10:37 a.m., Freeman responded to Defendant's 10:02 a.m. e-mail by attaching a revised draft of the proposed stipulation. Freeman added the following language to paragraph 1 of the stipulation: "along with exhibits attached hereto" in order to reflect the parties' stated intent that Plaintiff's Licensing Agreement with Warner Bros. is an exhibit to the Settlement Agreement. [Freeman Declr. ¶ 22, Ex. O] On December 20, 2017, the parties executed the proposed stipulation consistent with Freeman's revisions and the parties' stated intentions. [Freeman Declr. ¶ 23, Ex. P]

**Defendant's Expert Report re: Settlement vs. Licensing Agreements [December 29, 2017]**

On December 29, 2017, Defendant served a copy of an Expert Report prepared by an attorney, Charles S. Sims, who was compensated at the rate of $1000/hr.  According to the report, Mr. Sims was retained to "review the settlement agreements and photography license between plaintiff and other media companies . . . and to render opinions based on my experience in the settlement of copyright infringement claims and photograph licensing related to such settlements."  After reviewing Plaintiff's Licensing Agreement and Settlement Agreement with Warner Bros., Mr. Sims concludes that the licensing fee obtained by Plaintiff in the Licensing Agreement does not reflect the market value of Plaintiff's photograph, but instead reflects the settlement value of Plaintiff's infringement claim against Warner Bros. [Freeman Declr. ¶ 24, Ex. Q]

**Teleconference b/w Counsel [January 26, 2018]**

On January 26, 2018, Freeman spoke with Defendant's counsel, Ms. Bishop and Mr. Sitwala, by telephone. [Freeman Declr. ¶ 38]  During this call, they raised for the first time Defendant's intention to move for sanctions based on Mr. Liebowitz's alleged representations made at the October 23, 2017 settlement conference.  [*Id.*]  At no point during this discussion did Defendant's counsel allege that there had been any misrepresentations or misconduct concerning the production of documents. [*Id.*]  Freeman was entirely forthcoming, explaining the Liebowitz Law Firm's specific intent of drafting licensing agreements as separate instruments that are severable from the settlement agreement.  [Freeman Declr. ¶ 39]  Freeman also emphasized that the issue of whether the Licensing Agreement in this case was separately enforceable was a question of law and that what Defendant's counsel described as a misrepresentation of fact was nothing more than their own disagreement with Plaintiff's legal position. [Freeman Declr. ¶ 40]

10

## ARGUMENT

## POINT I:     HEARST AND ITS COUNSEL-OF-RECORD SHOULD BE HELD IN CONTEMPT OF COURT

This court has inherent and statutory power to enforce its decrees and punish violators for contempt. *Roadway Express, Inc. v.. Piper,* 447 U.S. 752, 764–765 (1980). Civil contempt is a "sanction imposed to compel obedience to a lawful court order or to provide compensation to a complaining party." *New York State National Organization for Women v. Terry,* 886 F.2d 1339, 1351 (2d Cir.1989).

To establish contempt, "a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Perez v. Danbury Hosp.*, 347 F.3d 419, 423–24 (2d Cir.2003). The decision to hold a party in contempt is within the discretion of the district court. *See Dunn v. New York State Dept. of Labor,* 47 F.3d 485, 490 (2d Cir.1995).

## A.     THE STANDING COURT ORDER IS CLEAR AND UNAMBIGUOUS

"A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed,  . . . who must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir.1995) An order is found to be clear and unambiguous where "the conduct that lay between that which was prohibited and that which was permitted was sufficiently clear for defendants to ascertain precisely what they could and could not do." *New York State Nat. Org. for Women v. Terry,* 886 F.2d 1339, 1352 (2d Cir.1989).

11

Here, there can be no dispute that the Standing Court Order, which has been in effect since September 2013, is clear and unambiguous, particularly with respect to the provision in question (paragraph 1).  The Court's prohibition against using "off-the-record" communications made during a settlement conference "for any purpose" is sufficiently clear to put the parties on notice of what is permitted vs. what is prohibited.  Paragraph 1 of the Standing Court Order is simply not subject to any other reasonable interpretation.

In Defendant's opening brief, it strains to create ambiguity in the Standing Court Order by referencing the Introduction, which provides: "Set forth below are the procedures the Court will require the parties and counsel to follow and the procedures *the Court typically will employ* in conducting the conference." (italics added). Hearst argues that "the word 'typically' in the Standing Order allows breathing room for varying circumstances like those presented here . . ." [Dkt. #60, p.17 of  25].

So Hearst interprets this language in the Introduction to mean that any party, including Hearst, retains unfettered discretion to violate any provision of the Standing Court Order at will, provided that such party unilaterally believes that opposing counsel made misrepresentations during the course of the conference. If that's the true standard, then no rules or orders would ever be followed because parties typically regard everything opposing counsel says as misrepresentative. That's the nature of the adversary process.  In short, it is not for Hearst to decide which Court Orders it can follow versus which ones it can freely disregard based on its own biased beliefs and meritless positions.  Heart's interpretation is unreasonable because it would render futile the powers granted by Article III.

**B.    THE PROOF OF HEARST'S NON-COMPLIANCE IS CLEAR AND CONVINCING**

To demonstrate contempt, a movant must demonstrate by clear and convincing evidence the violation of a court's order. *Perez*, 347 F.3d at 423–24. "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Levin v. Tiber Holding Corp.,* 277 F.3d 243, 250 (2d Cir.2002).

Here, there is not only a reasonable certainty that a violation of the Standing Court Order has occurred, but an <u>absolute</u> certainty.  Hearst has intentionally filed documents with the Court which explicitly reference communications that were allegedly made by Richard Liebowitz, Plaintiff's counsel, during the course of the settlement conference on October 23, 2018.  [*See* D's Memorandum of Law, Dkt. #60, pp. 6, 8, 9, 14, 16; Bishop Decl. ¶¶ 9-12; Sitwala Decl. ¶ 3-6].

**C.    HEARST HAS NOT DILIGENTLY ATTEMPTED TO COMPLY IN A REASONABLE MANNER**

To answer the third inquiry, the courts "examine the defendant's actions and consider whether they are based on a good faith and reasonable interpretation of the court order." *Benjamin v. Kerik*, No. 75 CIV. 3073 (HB), 1999 WL 221113, at *4 (S.D.N.Y. Apr. 14, 1999); *accord Aspira of New York, Inc. v. Board of Education of the City of New York,* 423 F.Supp. 647, 654 (S.D.N.Y.1976) ("It is a sufficient defense . . . if a defendant . . . has in good faith employed the utmost diligence in discharging his ... responsibilities.") (internal quotations and citation omitted).

Here, Defendant made no diligent attempt whatsoever to comply with the Standing Court Order in a reasonable manner.  Had it sought to diligently comply, it would have filed the exact same motion based on alleged "misconduct" which occurred <u>after</u> the settlement conference.

After all, Defendant claims that Plaintiff's production of the Licensing Agreement as a standalone document on December 7, 2017, as well as Plaintiff's deposition testimony concerning the severability of the Licensing Agreement are grounds for sanctions. So why were those instances not enough?

If Heart was truly diligent in attempting to comply with the Standing Court Order, and thereby preserve the integrity of the Court's mediation program, Hearst could have filed its motion for sanctions *without any reference* to alleged communications made during the October 23, 2017 conference. The motion would have been equally frivolous, but at least Hearst could have avoided a flagrant violation of a Standing Court Order with which they already certified compliance. Hearst has essentially driven into the eye of the hurricane after the coastal authorities pronounced "evacuate!" That's not diligent behavior. It's madness.

Hearst may contend that it made "good faith" efforts to comply with the Standing Court Order because it filed portions of its motion under seal. But this argument fails on two grounds.

<u>First</u>, the Standing Court Order provides that "[a]ll communications relating to settlement are strictly confidential <u>and</u> may not be used for any purpose." (underline added). So regardless of whether confidentiality was partially maintained by filing under seal, Hearst still violated the Standing Court Order by using such communications for "any purpose," such as litigating its position on damages, impairing the reputation of plaintiff's counsel (or whatever other purpose may be served by filing it motion for sanctions).

<u>Second</u>, filing a portion of its motion under seal does not remedy Hearst's violation because such portions will be available to the District Court (Judge Woods) and the judges of the United States Court of Appeals (none of whom are supposed to be privy to such information).

14

This was explained by Judge Gorenstein in *E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.*, No.

00CIV.8670(LTS)(GWG), 2003 WL 22416174, at *2 (S.D.N.Y. Oct. 23, 2003)

> The thrust of PPR's argument thus appears to be that had PPR merely filed the memorandum of law under seal, no violation of the Court's Order would have occurred. This argument is meritless, however, because **sealing would not have maintained the confidentiality of the purported settlement offer**. At least one purpose of the Court's Order was to prevent a party's settlement offer from being made part of the record and hence available to the District Judge and to the judges of the United States Court of Appeals (or any other reviewing court). While PPR assumes that the undersigned would have recalled the purported offer even had it not been contained in the memorandum of law, this assumption does not alter the fact that these other judicial officers would have been unaware of the purported offer except for its disclosure by PPR in its brief. Obviously, **even a statement in a sealed record is available to these judges and thus sealing would not have maintained the confidentiality of the purported settlement offer.**

*E-Z Bowz, L.L.C.,* 2003 WL 22416174, at *2.

**POINT II:**    **PLAINTIFF SHOULD BE AWARDED HIS ATTORNEYS' FEES AND HEARST'S COUNSEL SHOULD BE HELD IN CONTEMPT AND ORDERED TO COMPLETE ETHICS TRAINING**

Local Civil Rule 83.6 provides that "a reasonable counsel fee, necessitated by the

contempt proceedings, may be included as an item of damage [occasioned by the contemnor's

misconduct."

**A.**    **UNDER SECOND CIRCUIT LAW, DISCLOSURE OF COMMUNICATIONS MADE DURING SETTLEMENT CONFERENCES IS SANCTIONABLE BECAUSE SUCH DISCLOSURES THREATEN TO "DESTROY THE EFFECTIVENESS OF THE [MEDIATION] PROGRAM"**

Almost 40 years ago, the Second Circuit emphasized the importance of maintaining

confidentiality with respect to "everything that transpires" during settlement conferences, and

that do otherwise would "surely destroy the effectiveness of the [mediation] program." *In re*

*Lake Utopia Paper Limited,* 608 F.2d 928 (2d Cir.1979), *cert. denied,* 444 U.S. 1076 (1980).

The Second Circuit stated:

It is essential to the proper functioning of the Civil Appeals Management Plan that all matters discussed at these conferences remain confidential. **The guarantee of confidentiality permits and encourages counsel to discuss matters in an uninhibited fashion often leading to "settlement,** the simplification of the issues and (the resolution of) any other matters which the staff counsel determines may aid in the handling or the disposition of the proceeding." Civil Appeals Management Plan Rule (5)(a). **If participants cannot rely on the confidential treatment of everything that transpires during these sessions then counsel of necessity will feel constrained to conduct themselves** in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute. **This atmosphere if allowed to exist would surely destroy the effectiveness of a program** which has led to settlements and withdrawals of some appeals and to the simplification of issues in other appeals, thereby expediting cases at a time when the judicial resources of this Court are sorely taxed.

*Lake Utopia,* 608 F.2d at 930.[2]

Twenty years later, in 1999, the Second Circuit again reminded practitioners of the necessity to maintain confidentiality with respect to communications made during settlement conferences in order to avoid a "chilling effect" on the parties' meaningful participation. *See Calka v. Kucker Kraus & Bruh*, 167 F.3d 144, 146 (2d Cir. 1999).  The Second Circuit further held that sanctions would be appropriate for failure to abide by the terms of confidentiality, stating:

All matters discussed at a conference, including the views of Staff Counsel as to the merits, are confidential and not communicated to any member of the court. Likewise **parties are prohibited from advising members of the court or any unauthorized third parties of discussions or actions taken at the conference.** *In re Lake Utopia Paper Limited,* 608 F.2d 928 (2d Cir.1979). Thus the court never knows what transpired at a conference.

Without question, the potential for disclosure of CAMP [Civil Appeals Management Plan] communications would have **a chilling effect on CAMP conferences regardless of the nature of the communications** that might be disclosed or the forum in which such disclosure might take place. Accordingly, we have no difficulty concluding that Bittens violated both the letter and the spirit of the CAMP confidentiality rule when he disclosed

---

[2] Although the Second Circuit was addressing confidentiality provisions in the context of pre-argument conferences held pursuant to the Second Circuit's Civil Appeals Management Plan, the underlying principles are equally applicable to settlement conferences held in district courts. *See Bernard v. Galen Grp., Inc.*, 901 F. Supp. 778, 783–84 (S.D.N.Y. 1995) (quoting same language from *Lake Utopia* and stating that "[t]hese considerations apply with equal force to this Court's Mediation Program.")

Kanbar's CAMP conference statements in a state court sanctions motion . . .We intend to make clear that the disclosure at issue here 'is highly improper and will not be condoned.' *Lake Utopia,* 608 F.2d at 929. To be sure, such disclosures present a basis for the imposition of sanctions in the appropriate case. *See S.R. Mercantile Corp. v. Maloney,* 909 F.2d 79, 83–84 (2d Cir.1990).

*Calka*, 167 F.3d at 146; see also *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 858 (2d Cir. 1998) ("We conclude that the presumption of access to settlement negotiations, draft agreements, and conference statements is negligible to nonexistent. We also conclude that release of these discussions and documents is likely to impair materially the trial court's performance of its Article III function of crafting a settlement of this case.")

District courts have invariably followed the Second Circuit's long-standing prohibition against disclosure of communications made during a confidential settlement conference. *See, e,g., Bernard v. Galen Grp., Inc.,* 901 F. Supp. 778, 783–84 (S.D.N.Y. 1995) ("Participants in the Mediation Program rely on the understanding that all matters discussed during the mediation process will be kept confidential, and **the breach of the applicable confidentiality provisions threatens the integrity of the entire Program."**) (boldface added).

Here, in order to preserve the sanctity and integrity of the mediation program that is critical to the efficient functioning of the judicial system, Hearst's bad faith motion for sanctions should subject it and its counsel-of-record to appropriate sanctions.  Hearst's own self-serving beliefs about what allegedly transpired at the October 23 conference, and meritless legal positions concerning the severability of the Licensing Agreement are not grounds to flagrantly violate a Standing Court of Order at will.

B.     HEARST HAS FAILED TO DISCLOSE CRITICAL INFORMATION IN AN ATTEMPT TO MISLEAD THE COURT; WHICH FURTHER WARRANTS SANCTIONS

By relying on alleged communications made during the course of an "off-the-record" settlement conference as the basis to file a sham motion for sanctions, Defendant and its counsel

have willfully and flagrantly violated the Court's Standing Order, which constitutes civil contempt.  [Liebowitz Decl. ¶ 6)  However, the violation of the Standing Court Order is not the only basis to sanction Hearst and its counsel.  Defendant's contempt has been exacerbated by false representations made to the Court as part of its submission and a glaring series of omissions calculated to mislead the Court.  These include the failure to disclose that:

(a) Hearst has settled multiple infringement cases brought by the Liebowitz Law Firm, which belies Hearst's contention that Plaintiff refused to negotiate settlement in good faith; [Liebowitz Decl. ¶ 2]

(b) Hearst knew about Plaintiff's lawsuit against Warner Bros. as early as September 7, 2017, when it served its first set of requests for documents and interrogatories; [Freeman Declr. ¶ 3]

(c) Hearst knew that Plaintiff settled his case with Warner Bros. no later than December 1, 2017, six days *before* Plaintiff produced his Licensing Agreement as a standalone document; yet nevertheless claimed that it did not discover the existence of the Warner Bros. suit until sometime after December 7, 2017. [Freeman Declr. ¶ 10, Ex. F; Bishop Declr. ¶ 16][3]

(d) Hearst knew that Plaintiff objected to producing settlement agreements as of November 28, 2017 [Freeman Declr., ¶ 9, Ex. E], yet did not raise a discovery dispute concerning settlement agreements until December 11, 2017, four days *after* Plaintiff produced a copy of the Licensing Agreement as a standalone document. [Freeman Decl. ¶ 15]

## C.    HEARST'S CONTENTION THAT PLAINTIFF OR ITS COUNSEL "DOCTORED" EVIDENCE IS PATENTLY FALSE AND DISPROVED BY THE VERY STIPULATION EXECUTED BY HEARST

---

[3] Paragraphs 2-22 of Ms. Bishop's declaration is organized in exact chronological order and she therefore attempts to mislead the Court by stating that Hearst only learned of the infringement suit against Warner Bros. sometime after December 7, 2018.  But in actuality, Hearst had known about the suit since early September 2017 and knew the case had settled at least six days prior to December 7. [Freeman Declr. ¶10, Ex. F]

Hearst claims that Plaintiff or its counsel "doctored" evidence of the Licensing Agreement or otherwise committed "fraud upon the court." This accusation is particularly desperate because the record shows that Defendant entered into a Stipulation of Facts on December 20, 2017 stating that the Licensing Agreement produced as a standalone document on December 7, 2017 was <u>identical</u> to the Licensing Agreement produced as an exhibit to the Settlement Agreement on December 15, 2017. [Freeman Decl. ¶ 23, Ex. P].  Hearst fails to explain how the Licensing Agreement was "doctored" in any way.  Hearst has also invoked "fraud upon the court" which is legal term of art that requires elements to prove.  But Hearst has not cited any case which define those elements nor even attempted to prove them.  Officers of the Court should not be permitted to throw around accusations of fraud without at least listing the elements and providing the Court with some documentary evidence to prove the claim.

Hearst also failed to disclose the communications leading up to the execution of the stipulation where Ms. Bishop essentially confirmed that the Licensing Agreement was nothing more than an exhibit to the Settlement Agreement [Freeman Decl. ¶ 21, Ex. N] (Ms. Bishop writes: "Our intent with paragraph 1 was to authenticate the document, as well as indicating that the license agreement is attached as an exhibit to the settlement agreement.")

In short, false charges of fraud are highly irresponsible and serve to be reprimanded. *See Bernard v. Galen Grp., Inc.,* 901 F. Supp. 778, 783 (S.D.N.Y. 1995) ("Moreover, his charges that defendants or their counsel have tried to mislead me about the mediation process and that they have tried to defraud the Court are not only wrong but irresponsible.")

D.    **HEARST IS IMPROPERLY USING THIS SANCTIONS PROCEEDING TO LITIGATE THE MERITS OF ITS POSITION ON DAMAGES, AS SUPPORTED BY ITS EXPERT WITNESS**

Courts within this Circuit have noted that it is improper for a party to use a sanctions motion as a vehicle to litigate the merits of its claims or defenses.  *See Lee v. Grand Sichuan E.*

*(N.Y.) Inc.*, No. 12-CV-08652 SN, 2014 WL 199512, at *2 (S.D.N.Y. Jan. 17, 2014) ("Nor should Rule 11 motions be prepared to emphasize the merits of a party's position."); *Kara Holding Corp. v. Getty Petroleum Mktg., Inc.,* 99 Civ. 0275(RWS), 2004 WL 1811427, at *22 (S.D.N.Y. Aug. 12, 2004) (disregarding arguments in a Rule 11 motion that pertained to the merits of a summary judgment motion)

    Here, Hearst failed to disclose in its submission that it previously retained an expert witness to opine on the very issue that lies at the core of its motion for sanctions, which is whether the Licensing Agreement is severable from the Settlement Agreement (or whether they must be read as a single executory contract). [Freeman Decl. ¶ 24, Ex. Q] This omission is critical, because Hearst expects Mr. Otto, a layperson, to understand this legal distinction as a matter of common sense while Hearst needed to pay an attorney $1000/hr. to explain that same distinction to a jury.

    Defendant has also littered its submissions with its own legal position on damages, namely that courts mechanically calculate statutory damages by awarding 3-5 times the licensing fee. Neither the Second Circuit nor Supreme Court, let alone Congress, has ever authorized district courts to apply a "one-size-fits-all" formula to calculate statutory damages awards. Rather, many factors must be weighed depending on the totality of circumstances. *See, e,g., Fitzgerald Publ'g Co. v. Baylor Publ'g Co.,* 807 F.2d 1110, 1116 (2d Cir.1986) (referring to "the wide discretion the Copyright Act affords the trial court in setting the amount of statutory damages"); *Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 362 (S.D.N.Y. 2003) ("Many factors influence an award of statutory damages for copyright infringement, including the expenses saved and the profits earned by the defendant, the revenues lost by the plaintiff, the deterrent effect, if any, that such an award will have on the defendant and on third

parties, the cooperation of the defendant in providing evidence concerning the value of the infringing material, the defendant's state of mind and the conduct and attitudes of the parties.")

In short, Hearst's motion for sanctions is a sham and a folly that has wasted Plaintiff's time and resources while in the midst of briefing his summary judgment motion on liability.  An award of attorneys' fees is therefore warranted, as well as an order which compels Hearst's in-house counsel to complete ethical training for its oblivious concern for the Standing Court Order and attempt to destroy the integrity of the mediation program.

## POINT III:    HEARST'S SHAM MOTION FOR SANCTIONS SHOULD BE DENIED

Regarding Plaintiff's sham motion for sanctions, the facts recited in the Background section of this memorandum of law are controlling because they are based on "hard evidence," i.e. documents, not self-serving "off-the-record" testimony of biased counsel who disagree with Plaintiff's legal position on damages.

### A.    COUNSELS' TESTIMONY REGARDING WHAT WAS SAID AT THE SETTLEMENT CONFERENCE IS UNRELIABLE, PATENTLY BIASED AND ENTITLED TO ZERO CREDIT

For obvious reasons, courts in this Circuit have consistently recognized that courts should not permit use of "off-the-record" settlement conference communications for future claims.  *See Calka,* 167 F.3d at 146 (discussing the need to maintain confidentiality of settlement discussions in court settlement conferences because the disclosure of such communications "would have a chilling effect" on the parties; and finding that disclosure was "highly improper and will not be condoned.") (citation omitted);  *Bernard,* 901 F.Supp. at 782–84 (sanctioning plaintiff's attorney for disclosing terms of two settlement offers, including specific dollar amounts, made by defendants during mediation sessions); *E–Z Bowz, L.L.C,* 2003 WL 22416174, at *3 (admonishing attorney for disclosing in summary judgment submissions confidential settlement

communications from court-sponsored settlement conference); *Lee v. Grand Sichuan E. (N.Y.) Inc.,* No. 12-CV-08652 SN, 2014 WL 199512, at *4 (S.D.N.Y. Jan. 17, 2014) (finding that representations made in a sanctions motion which reference communications during settlement conference "are objectively unreasonable and entirely improper."); *McCulloch v. Town of Milan*, No. 07 CIV.9780 LAP RLE, 2009 WL 3326638, at *2 (S.D.N.Y. Oct. 15, 2009) ("Normally, discussions between parties at settlement conferences are confidential and do not form the basis for claims in litigation.")

Here, Hearst asks this Court to disregard black letter Circuit law, toss out its own Standing Court Order, and destroy the integrity of the mediation program by issuing over $75,000 in sanctions against Plaintiff and his counsel for alleged communications made during the course of a confidential settlement conference. As evidence to support $75,000 in sanctions, Hearst presents testimony of its own in-house counsel. That's it. But providing evidence of selective paraphrasing of alleged communications that occurred off-the-record during a settlement conference which took place five months ago is wholly unreliable.

Imagine: if the Court were to grant Heart's motion, the chilling effect on parties' conduct during settlement conferences would have a wide-ranging and immediate impact, as lawyers would certainly fear that anything said "off-the-record" would suddenly become "on-the-record" months later by virtue of their opposing counsel's biased selective memory. Indeed, the Court's granting of Heart's motion would crank open "Pandora's Box," allowing attorneys to file frivolous sanctions motions based on just about anything *allegedly* said during settlement conferences which an opposing party might later find disagreeable. Granting Heart's motion would catapult the Court's mediation program into pandemonium.

In *Lee,* 2014 WL 199512, at *4, Judge Netburn warned counsel against paraphrasing communications from a settlement conference, concluding that such paraphrasing has "no evidentiary value and is strongly indicative of an improper purpose . . ." *Id.* While the paraphrasing offered there was of communications made by Judge Maas, the same rule should apply with equal force to paraphrasing opposing counsel. It's just not reliable.

## B.    OTTO'S LAY TESTIMONY WAS ACCURATE AND CONSISTENT WITH HIS UNDERSTANDING AND LEGAL POSITION ON THE MERITS

Defendant falsely charges that Plaintiff committed "perjury" because he testified at his deposition, in sum and substance, that the Licensing Agreement is severable from the Settlement Agreement.  Mr. Otto is entitled to his opinion and Hearst has failed to show that the Licensing Agreement and Settlement Agreement constitute a single executory contract.  Nor can they show it because the question of severability is for the Court or jury to decide based on the intent of the contracting parties. *See, e.g,*, *Commander Oil Corp. v. Advance Food Serv. Equip.,* 991 F.2d 49, 52–53 (2d Cir.1993) ("Whether multiple writings should be construed as one agreement depends upon the intent of the parties."); *Dynamics Corp. of America v. International Harvester Co.,* 429 F.Supp. 341, 345–46 (S.D.N.Y.1977) ("The issue whether separate documents executed simultaneously should be treated as a single contract is governed by the intent of the parties manifested at the time of contracting and viewed in light of all the surrounding circumstances.").[4]

## C.    PLAINTIFF'S DECEMBER 7, 2017 PRODUCTION OF THE LICENSING AGREEMENT IN STANDLONE FORM IS PROPER AND NOT GROUNDS FOR SANCTIONS

---

[4] Indeed, the intent of the parties is usually a question of fact reserved for the jury. *Rudman v. Cowles Commc'ns, Inc.,* 30 N.Y.2d 1, 13, 330 N.Y.S.2d 33, 280 N.E.2d 867 (1972). "But if the documents in question reflect no ambiguity as to whether they should be read as a single contract, the question is a matter of law for the court." *TVT Records v. Island Def Jam Music Group,* 412 F.3d 82, 89 (2d Cir.2005), *cert. denied,* *364 548 U.S. 904, 126 S.Ct. 2968, 165 L.Ed.2d 951 (2006).

Finally, Hearst argues that Plaintiff's production of the Licensing Agreement in its severable form on December 7, 2017 is ground for sanctions. But once again, Plaintiff has the legal right to present the Licensing Agreement in its severable form because it was intended to be used as a separate document. [Freeman Decl. ¶¶ 32-36] Moreover, Plaintiff advised Defendant on November 28, 2017 that it had settlement agreements in its possession but objected to producing them for confidentiality reasons. [Freeman Declr. ¶9, Ex. E, Request No. 17] Plaintiff's December 7, 2018 production was also in direct response to Hearst's request to produce the Licensing Agreement, which it did. [Freeman Declr. ¶¶12-13, Exs. H, I]. Accordingly, there is no basis on the record to infer misconduct that would warrant sanctions.

## <u>CONCLUSION</u>

Based on the foregoing, the Court should GRANT Plaintiff's motion for judgment of Civil Contempt against Hearst Communications, Inc. and its counsel-of-record, AWARD Plaintiff his attorneys' fees in connection with this ancillary proceeding, and DENY Defendant's sham motion for sanctions.

RESPECTFULLY SUBMITTED,

LIEBOWITZ LAW FIRM, PLLC

**/richardliebowitz/**
Richard Liebowitz, Esq.

11 Sunrise Plaza, Ste. 305
Valley Stream, NY 11580

*Counsel for Plaintiff Jonathan Otto*

24