UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN OTTO,<br><br>    Plaintiff,<br><br>  - against –<br><br>HEARST COMMUNICATIONS, INC.<br><br>    Defendants. | 1:17-cv-04712 (GHW-JLC)<br><br>ECF Case |

**DECLARATION OF RICHARD LIEBOWITZ IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT OF CIVIL CONTEMPT AND SANCTIONS AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS**

RICHARD LIEBOWITZ, under the penalty of perjury, declares that the following is true and correct.

1. I am counsel for Plaintiff Jonathan Otto ("Plaintiff" or "Otto") and admitted to practice before this Court. I am the principal and founder Liebowitz Law Firm, PLLC. I make this Declaration in support of Plaintiff's Motion for Judgment of Civil Contempt and Sanctions and in opposition to Defendant Hearst Communications, Inc. ("Defendant" or "Hearst")'s Motion for Sanctions.

**My Settlement History Against Hearst**

2. To date, my law firm has settled a total of three (3) copyright infringement lawsuits against Hearst, including *Winn v Hearst Communications, Inc.*, 17-cv-1874; *Yang v. Hearst Communications, Inc.*, 17-cv-7585 (VEC); *Romanowicz v. Hearst Television, Inc.*, 17-cv-1630; and I have also settled another infringement case in principle, *Reynolds v. Hearst Communications, Inc.* 17-cv-6720 (DLC). Thus, Defendant's assertion that I attended the

October 23, 2017 settlement conference in this action without any intent to settle is patently absurd.  As the record shows, I routinely settle infringement lawsuits against Hearst.

**History of Settlement Negotiations in This Case**

3.	On October 16, 2017, I e-mailed the Court Plaintiff's settlement memorandum in anticipation of the October 23, 2017 settlement conference.  Accordingly, the Court is privy to the history of settlement negotiations prior to October 23, 2017, as well as Plaintiff's evaluation of the settlement value of the case.

**Certifications of Compliance With The Court's Standing Order**

4.	On October 16, 2017, I also e-mailed the Court a signed Acknowledgment form which certified that I had read both the Court's Order scheduling this conference as well as the "Standing Order for All Cases Referred for Settlement to Magistrate Judge Cott."  Pursuant to the Court's Standing Order, I understood then, as I do now, that communications made during the course of the settlement conference were strictly confidential and could not be used for "any purpose."  A true and correct copy of Plaintiff's certification is attached hereto as Exhibit A.

5.	On October 16, 2017, Hearst e-mailed the Court a copy of its own duly executed certification, signed by Jennifer Bishop, in which Hearst certified that it (via counsel) had read both the Court's Order scheduling this conference as well as the "Standing Order for All Cases Referred for Settlement to Magistrate Judge Cott."   Pursuant to the Acknowledgment form, Hearst certified that by signing the document, it was bound to comply with the Court's Standing Order. A true and correct copy of Defendant's certification is attached hereto as Exhibit B.

**Grounds for Judgment of Contempt Against Hearst and its Counsel**

6.	By using alleged communications made during the course of an "off-the-record" settlement conference as the basis to file a sham motion for sanctions, Defendant and its counsel

have willfully and flagrantly violated the Court's Standing Order, which constitutes civil contempt.

7. Defendant's contempt of Court has been exacerbated by false representations made to the Court as part of its submission and a glaring series of omissions calculated to mislead the Court. These include the failure to disclose that:

(a) Hearst has settled several infringement cases brought by the Liebowitz Law Firm, which belies Hearst's contention that Plaintiff refused to negotiate settlement in good faith;

(b) Hearst knew about Plaintiff's lawsuit against Warner Bros. as early as September 1, 2017 when it served its first set of requests for documents and interrogatories;

(c) Hearst knew that Plaintiff settled his case with Warner Bros. no later than December 1, 2017, six days *before* Plaintiff produced his Licensing Agreement; yet nevertheless claimed that it did not discover the existence of the Warner Bros. suit until sometime after December 7, 2017;

(d) Hearst knew that Plaintiff objected to producing settlement agreements as of November 28, 2017, yet did not raise a discovery dispute concerning settlement agreements until December 11, 2017, four days *after* Plaintiff produced a copy of the Licensing Agreement as a standalone document.

8. In addition, Hearst claims that Plaintiff or its counsel "doctored" evidence of the Licensing Agreement or otherwise committed "fraud" when the record clearly shows that Defendant entered into a Stipulation of Facts on December 20, 2017 stating that the Licensing Agreement produced as a standalone document on December 7, 2017 was <u>identical</u> to the Licensing Agreement produced as an exhibit to the Settlement Agreement on December 15, 2017.

**The Settlement Conference – October 23, 2017**

9. On October 23, 2017, I attended a settlement conference in this action with my my client. Defendant's counsel, Mr. Ritwala and Ms. Bishop, were in attendance on behalf of Hearst. In flagrant violation of the Court's Standing Order and Hearst's own signed certification of compliance with the Court's Order, Mr. Ritwala and Ms. Bishop have both filed declarations attesting to alleged communications that took place during the settlement conference for the purpose of filing a sham motion for sanctions. Portions of counsels' testimony, which is cunningly paraphrased and drawn from biased selective memory, disclose the purported amount of settlement demand issued by Plaintiff.

10. My understanding is that even though some portions of the declarations were filed under seal, they can be viewed by the District Court, as well as judges on the Court of Appeals and the U.S. Supreme Court.

11. In accordance with my certified statement that I understood the Court's Standing Court Order and would dutifully comply with its provisions, I will not fall into the trap of violating a Standing Court Order and destroying the integrity of the settlement conference program by engaging in a debate as to what was actually said at the settlement conference. There's no record of it. Further, given that it took place five months ago and I've attended over a dozen of such conferences since, I will not venture a guess as to what communications were made, or weren't made.

12. Suffice it to say, the record shows that as of October 23, 2017, Plaintiff had not yet settled his infringement action with Warner Brothers Entertainment ("Warner Bros."). Attached as Exhibit C is a docket report from the case of *Otto v. Warner Bros.,* 17-cv-4763 (LTS) showing that the parties did not file a stipulation of dismissal until October 30, 2017, seven days after the settlement conference. Moreover, the Settlement Agreement itself was not

fully executed until October 27, 2017, four days after the date of the settlement conference. *See* Jennifer Bishop Decl., Ex. B.

13.  Hypothetically speaking, if Defendant's counsel asked me whether Plaintiff had settled with Warner Bros., or whether Plaintiff's Licensing Agreement with Warner Bros. was part of a settlement agreement, or was negotiated as part of a settlement agreement, then the correct hypothetical answer would have been NO simply based on the timing of the question. Point blank: there was no settlement agreement as of October 23, 2017.

**My Practice of Negotiating Licensing Agreements as Separate Instruments**

14.  Regardless of the timing of Defendant's question, I negotiated the Licensing Agreement with Warner Brothers with the intent of using it as a severable and separately enforceable agreement, given that it is subject to different terms and conditions.

15.  By way of background, since founding the Liebowitz Law Firm in late 2015, I have personally negotiated hundreds of settlement agreements with copyright infringers on behalf of the firm's clients.

16.  In cases where the client's photograph has been infringed by multiple entities, I always endeavor to negotiate the licensing agreement as a separately enforceable instrument, severable from the settlement agreement.

17.  The primary purpose for severing the licensing agreement is to allow the client to introduce the licensing agreement as evidence of damages in future litigation involving the same photograph. Whereas settlement agreements generally prohibit use of such agreements in future litigation and require confidentiality of the terms of the settlement, the licensing agreements I've drafted as exhibits to settlement agreements exclude terms which prohibit future use or which require confidentiality.

18.     Thus, while the monetary consideration to support both the licensing agreement and settlement agreement may be the same, it's our firm's intention that the two agreements will be treated as separately enforceable and severable because <u>they are not governed by the same prohibitive terms and conditions</u>.

19.     In addition to using such licensing agreements to establish damages, standalone licensing agreements can also be used to enforce the terms of the license itself (separate and apart from the settlement agreement) in the event the infringer exceeds the scope of the license. Thus, the licensing agreement may include terms that limit the licensee's right to use, alter or assign the photograph. Such terms are not included in the associated settlement agreement.

20.     In my day-to-day practice, where I have succeeded in negotiating a licensing agreement as a separate instrument, I make sure to store, file and archive licensing agreements as separate documents from the settlement agreement to which they were originally attached as exhibits. This segregation is critical to avoiding the possibility of inadvertent disclosure, because whereas settlement agreements cannot be used in future litigation and are subject to strict terms of confidentiality, licensing agreements negotiated as severable instruments can be used in other cases and are not confidential (unless the client elects to designate them as such).

**Plaintiff's Licensing Agreement w/ Warner Bros.**

21.     With respect to the Licensing Agreement and Settlement Agreement w/ Warner Bros. at issue here, the manner and form in which the Licensing Agreement was drafted, i.e., to <u>exclude</u> prohibitions from the Licensing Agreement which were contained in the Settlement Agreement and to <u>include</u> terms which impose limitations on the licensee's rights, is consistent with my experience in other cases.

22.     Plaintiff's Licensing Agreement with Warner Bros., which is attached as an exhibit to the Settlement Agreement, was specifically intended to exist as a <u>separately</u>

6

enforceable agreement subject to different terms and conditions than Plaintiff's Settlement Agreement with Warner Bros.

23.    Plaintiff, via counsel, therefore maintains his Licensing Agreement with Warner Bros. as a separate PDF file in the ordinary course of business. Again, this separation is critical to maintain because the Settlement Agreement cannot be voluntarily introduced into evidence by Plaintiff.

24.    In contrast, Plaintiff can introduce the Licensing Agreement as evidence of what a similarly situated copyright infringer paid to license Plaintiff's photograph.

**Damages Incurred as A Result of Defendant's Contempt of Court and Sham Motion**

25.    As a result of Defendant's flagrant contempt of a Standing Court Order, and sham motion practice which was intended to use this proceeding as a vehicle to litigate the merits of its Expert Witness' opinion, Plaintiff has incurred substantial legal fees to date in the amount of $10,087.50, which are detailed as follows:

| **Professional** | **Total Hours** | **Billing Rate** | **Amount** |
|---|---|---|---|
| Richard Liebowitz | 4.5 | $375 | $1687.50 |
| James Freeman | 28 | $300 | $8400.00 |
| TOTAL | 32.5 | - | **$10,087.50** |

Dated: Valley Stream, New York

Executed this 17th Day of April, 2018

/s/richardliebowitz
RICHARD LIEBOWITZ
