UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN OTTO, <br><br>            Plaintiff, <br><br>   - against – <br><br> HEARST COMMUNICATIONS, INC. <br><br>            Defendants. | 1:17-cv-04712 (GHW-JLC) <br><br> ECF Case |

**DECLARATION OF JAMES H. FREEMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT OF CIVIL CONTEMPT AND SANCTIONS AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS**

JAMES H. FREEMAN, under the penalty of perjury, declares that the following is true and correct.

1.      I am counsel for Plaintiff Jonathan Otto ("Plaintiff" or "Otto") and admitted to practice before this Court. I am employed as an associate at Liebowitz Law Firm, PLLC. I make this Declaration in support of Plaintiff's Motion for Judgment of Civil Contempt and Sanctions and in opposition to Defendant Hearst Communications, Inc. ("Defendant" or "Hearst")'s Motion for Sanctions.

2.      I filed a Notice of Appearance in this case on November 21, 2017 [Dkt. #17] and prior to that date, was not aware of the facts of this case or the proceedings. However, since filing a Notice of Appearance, I have reviewed the pleadings and filings on record, as well as the discovery demands, responses and communications exchanged by the parties during the course of discovery.

**Plaintiff's Initial Responses to Defendant's Discovery Requests**

3. On September 7, 2017, Defendant served upon Plaintiff its First Request for Production of Documents ("RFP") and First Set of Interrogatories. Request No. 17 of Defendant's RFP asked Plaintiff to produce "All settlement agreements entered into by you in connection with other instances of alleged infringement of your claimed copyright(s)." Request Nos. 5 and 20 of Defendant's RFP asked Plaintiff to produce documents relating to Plaintiff's lawsuit against Warner Brothers Entertainment, Inc. ("Warner Bros.").

4. On October 18, 2017, Plaintiff served its responses to Defendant's RFP, a true and correct copy of which is attached hereto as <u>Exhibit A</u>. Plaintiff's response to Request No. 17 indicated that Plaintiff did not have settlement agreements in his possession.

5. On October 18, 2017, Plaintiff served its responses to Defendant's First Set of Interrogatories, a true and correct copy of which is attached hereto as <u>Exhibit B</u>.

**Stipulated Confidentiality Agreement and Protective Order [11/16-11/22/17]**

6. On November 16, 2017, Defendant served a letter upon Plaintiff to address "certain fact discovery matters," a true and correct copy of which is attached hereto as <u>Exhibit C</u>. Defendant also attached a proposed Stipulated Confidentiality Agreement and Protective Order. Defendant's letter did not address settlement agreements or Plaintiff's lawsuit against Warner Bros.

7. On November 22, 2017, I signed a copy of the Stipulated Confidentiality Agreement and Protective Order on behalf of Plaintiff and transmitted to Defendant's counsel. The Order was entered by Judge Woods on November 28, 2017 [Dkt. #21].

[next page]

**Plaintiff's Supplemental Disclosures and Objections to Producing Settlement Agreements [11/22-11/28/17]**

8. On November 22, 2017, I e-mailed opposing counsel to inform Defendant that Plaintiff would supplement his disclosures and identified additional potential witnesses. Attached as Exhibit D is a true and correct copy of the e-mail chain re: supplemental disclosures.

9. On November 28, 2017, Plaintiff served Plaintiff's Supplemental Disclosures Pursuant to Rule 26(e), a true and correct copy of which is attached as Exhibit E. In response to Defendant's RFP No. 17, which asked Plaintiff to produce settlement agreements, Plaintiff stated as follows: "Plaintiff cannot produce documents responsive to Request No. 17 without potentially violating the terms of said agreements. Accordingly, no further response is required."

**Defendant's Production of Documents re: *Otto v. Warner Bros.* [12/1/17]**

10. On December 1, 2017, Defendant served its first production of responsive documents, which included a copy of Plaintiff's complaint against Warner Bros. (including exhibits) and a copy of the Stipulation of Dismissal With Prejudice which was filed in that case on October 30, 2017. Attached as Exhibit F is a true and correct copy of Defendant's first production letter, dated 12/1/17; a copy of the Warner Bros. complaint (without exhibits) as produced by Defendant; and a copy of the Stipulation of Dismissal With Prejudice in the Warner Bros. action, dated 10/30/17, as produced by Defendant.

**Plaintiff's Production of the Licensing Agreement w/ Warner Bros. [12/5-12/7/17]**

11. On December 5, 2017, Plaintiff served its first production of responsive documents. A true and correct copy of the transmittal e-mail is attached hereto as Exhibit G.

12. On December 6, 2017, Defendant's counsel sent us an e-mail stating: "Plaintiff's December 5 production did not include the licensing agreement entered into with Warner Brothers Entertainment, Inc., that Plaintiff identified in his November 28 Supplemental

3

Interrogatory Responses. Please produce a copy of that agreement by noon tomorrow." A true and correct copy of Defendant's e-mail is attached hereto as <u>Exhibit H</u>.

13. On December 7, 2017, and in response to Defendant's 12/6/17 e-mail request, Plaintiff produced a copy of his Licensing Agreement with Warner Bros., bearing bate-stamp numbers OTTO_0067-70 (the "Licensing Agreement"). The PDF is labeled "Otto-Warner Licensing Agreement" and is maintained as such in Plaintiff's ordinary course of business consistent with the good faith belief and intention that the Licensing Agreement is a separately enforceable agreement subject to different terms and conditions than Plaintiff's settlement agreement with Warner Bros. True and correct copies of my transmittal e-mail and letter is attached hereto as <u>Exhibit I</u>.

14. A copy of the Licensing Agreement, as produced as a standalone document on 12/7/17, has already been filed under seal by Defendant. *See* Bishop Declr., Ex. B. Provided that the document filed under seal is identical to the document e-mailed to the Court and counsel on March 27, 2017, then Ex. B to the Bishop Declr. contains a true copy of the Licensing Agreement as produced on 12/7/17.

**Deposition of Plaintiff [12/11/17]**

15. On December 11, 2017, I attended Defendant's deposition of Plaintiff. During the course of the deposition, Defendant's counsel requested that Plaintiff produce a copy of Plaintiff's settlement agreement with Warner Bros. and threatened to file a motion to compel. Plaintiff had previously objected to producing settlement agreements as part of his supplemental disclosures on 11/28/17; but the deposition date marked the first time that Defendant raised a discovery dispute concerning Plaintiff's production of settlement agreements. Notwithstanding, Defendant reserved the right to conduct a second deposition of Plaintiff to address the settlement agreement.

**Plaintiff's Production of Settlement Agreement w/ Warner Bros. and Parties' First Stipulation of Facts re: Settlement Agreement vs. Licensing Agreement [12/13-12/20/17]**

16. On December 13, 2017, I e-mailed Defendant's counsel stating that Plaintiff would produce a copy of the settlement agreement with Warner Bros. by no later than December 20. I also indicated that Plaintiff would be willing to enter into a stipulation concerning the settlement agreement to avoid the time and expense of conducting a second deposition. A true and correct copy of my e-mail to Defendants' counsel, dated 12/13/17, is attached hereto as Exhibit J.

17. On December 15, 2017, Plaintiff produced a copy of his settlement agreement with Warner Brothers (the "Settlement Agreement"), along with exhibits. True and correct copies of my transmittal e-mail and letter, dated 12/15/17, is attached hereto as Exhibit K. The Licensing Agreement is attached as Exhibit B to the Settlement Agreement and is an identical copy of the document produced as OTTO_0067-70 on 12/7/17.

18. A copy of the Settlement Agreement along with exhibits, as produced on 12/15/17, has already been filed under seal by Defendant. *See* Bishop Declr., Ex. D. Provided that the document filed under seal is identical to the document e-mailed to the Court and counsel on March 27, 2017, then Ex. D to the Bishop Declr. contains a true copy of the Settlement Agreement along with exhibits as produced on 12/15/17.

19. On December 19, 2017, Defendant's counsel e-mailed me a draft of a proposed stipulation and stated: "If you will agree to the attached stipulated facts, we will not need to depose Mr. Otto again." A true and correct copy of the e-mail, dated 12/19/17, and the first draft of the proposed stipulation, is attached hereto as Exhibit L.

20. On December 20, 2017, at 9:45 a.m., I responded to the 12/19/17 e-mail and commented on Defendants' proposed stipulation, stating: "Paragraph #1 calls for a legal conclusion as to whether the licensing agreement is incorporated by reference into the settlement

5

agreement. Mr. Otto has already testified that the licensing agreement is separate from the settlement agreement. However, he is prepared to stipulate that the licensing agreement is attached as an exhibit to the Settlement Agreement." A true and correct copy of the e-mail, dated 12/20/17 at 9:45 a.m., is attached hereto as Exhibit M.

21. On December 20, 2017, at 10:02 a.m., Defendant's counsel responded to my 9:45 a.m. e-mail, stating: "Our intent with paragraph 1 was to authenticate the document, as well as indicating that the license agreement is attached as an exhibit to the settlement agreement. Can you please suggest some revised language that will achieve that purpose while addressing your concern?" A true and correct copy of the e-mail from Defendant's counsel, dated 12/20/17 at 10:02 a.m., is attached hereto as Exhibit N.

22. On December 20, 2017, at 10:37 a.m., I responded to Defendant's 10:02 a.m. e-mail by attaching a revised draft of the proposed stipulation. I added the following language to paragraph 1 of the stipulation: "along with exhibits attached hereto" in order to reflect the parties' stated intent that Plaintiff's Licensing Agreement with Warner Bros. is an exhibit to the Settlement Agreement. A true and correct copy of the e-mail, dated 12/20/17 at 10:37 a.m., and the revised draft of the proposed stipulation, is attached hereto as Exhibit O.

23. On December 20, 2017, the parties executed the proposed stipulation consistent with my revisions and the parties' stated intentions. A true and correct copy of the executed stipulation is attached hereto as Exhibit P.

**Defendant's Expert Report re: Settlement Agreements vs. Licensing Agreements**

24. On December 29, 2017, Defendant served a copy of an Expert Report prepared by an attorney, Charles S. Sims, who was compensated at the rate of $1000/hr. According to the report, Mr. Sims was retained to "review the settlement agreements and photography license between plaintiff and other media companies . . . and to render opinions based on my experience

6

in the settlement of copyright infringement claims and photograph licensing related to such settlements." After reviewing Plaintiff's Licensing Agreement and Settlement Agreement with Warner Bros., Mr. Sims concludes that the licensing fee obtained by Plaintiff in the Licensing Agreement does not reflect the market value of Plaintiff's photograph, but instead reflects the settlement value of Plaintiff's infringement claim against Warner Bros. A true and correct copy of Mr. Sim's 12/29/17 expert report, portions of which have been redacted to protect confidentiality, is attached hereto as Exhibit Q.

**Otto's Sworn Declaration re: Settlement Agreement vs. Licensing Agreement**

25. On February 26, 2018, Plaintiff submitted a sworn declaration to the Court, stating: "In my case against Warner Brothers Entertainment Inc., which involved TMZ's unauthorized use of the Photograph, I entered into a licensing agreement with Warner Brothers which authorized it to display the Photograph on TMZ's website (the "Licensing Agreement"). The Licensing Agreement was attached as an exhibit to my settlement agreement with Warner Brothers." [Dkt. #38, ¶ 41] A true and correct copy of Plaintiff's declaration is attached hereto as Exhibit R.

**My Practice of Negotiating Licensing Agreements as Separate Instruments**

26. Since joining the Liebowitz Law Firm in July 2017, I have personally negotiated over fifty settlement agreements with copyright infringers on behalf of the firm's clients.

27. In cases where the client's photograph has been infringed by multiple entities, I always endeavor to negotiate the licensing agreement as a separately enforceable instrument, severable from the settlement agreement.

28. The primary purpose for severing the licensing agreement is to allow the client to introduce the licensing agreement as evidence of damages in future litigation involving the same photograph. Whereas settlement agreements generally prohibit use of such agreements in future

litigation and require confidentiality of the terms of the settlement, the licensing agreements I've drafted as exhibits to settlement agreements exclude terms which prohibit future use or which require confidentiality.

29. Thus, while the monetary consideration to support both the licensing agreement and settlement agreement may be the same, it's our firm's intention that the two agreements will be treated as separately enforceable and severable because <u>they are not governed by the same prohibitive terms and conditions</u>.

30. In addition to using such licensing agreements to establish damages, standalone licensing agreements can also be used to enforce the terms of the license itself (separate and apart from the settlement agreement) in the event the infringer exceeds the scope of the license. Thus, the licensing agreement may include terms that limit the licensee's right to use, alter or assign the photograph. Such terms are not included in the associated settlement agreement.

31. In my day-to-day practice, where I have succeeded in negotiating a licensing agreement as a separate instrument, I make sure to store, file and archive licensing agreements as separate documents from the settlement agreement to which they were originally attached as exhibits. This segregation is critical to avoiding the possibility of inadvertent disclosure, because whereas settlement agreements cannot be used in future litigation and are subject to strict terms of confidentiality, licensing agreements negotiated as severable instruments can be used in other cases and are not confidential (unless the client elects to designate them as such).

**Plaintiff's Licensing Agreement w/ Warner Bros.**

32. While I did not personally negotiate the Licensing Agreement and Settlement Agreement w/ Warner Bros. at issue here, the manner and form in which the Licensing Agreement was drafted, i.e., to <u>exclude</u> prohibitions from the Licensing Agreement which were

contained in the Settlement Agreement and to <u>include</u> terms which impose limitations on the licensee's rights, is consistent with my experience in other cases.

33. Plaintiff's Licensing Agreement with Warner Bros., which is attached as an exhibit to the Settlement Agreement, was specifically intended to exist as a <u>separately enforceable agreement subject to different terms and conditions</u> than Plaintiff's Settlement Agreement with Warner Bros.

34. Plaintiff, via counsel, therefore maintains his Licensing Agreement with Warner Bros. as a separate PDF file in the ordinary course of business. Again, this separation is critical to maintain because the Settlement Agreement cannot be voluntarily introduced into evidence by Plaintiff. In contrast, Plaintiff can introduce the Licensing Agreement as evidence of what a similarly situated copyright infringer paid to license Plaintiff's photograph.

35. On December 7, 2017, when Plaintiff produced the Licensing Agreement as a standalone document in response to Defendant's 12/6/17 e-mail request, I produced it exactly as Plaintiff maintains it in the ordinary course of business, which is as a separate enforceable agreement that is not subject to the same terms and conditions as the associated Settlement Agreement.

36. Further, when I produced a copy of the Licensing Agreement on December 7, 2017, I did not produce the Settlement Agreement because <u>Plaintiff had specifically objected to producing settlement agreements on November 28, 2017</u> as part of his supplemental disclosures. Defendant, on its part, never raised a discovery dispute concerning the settlement agreement before December 7. Indeed, the first time Defendant raised such dispute was on December 11 at Plaintiff's deposition, which was four days after Plaintiff produced the Licensing Agreement as a standalone document.

37. Defendant's assertion that Plaintiff has "doctored" evidence is patently false, as reflected by paragraph 2 of the First Stipulation of Facts signed by Defendant's counsel, which states: "Exhibit B to the Settlement and Release Agreement (Bates-stamped OTTO_0077-79) is an **identical copy** of the document that was produced in this matter as OTTO_0067-69 and that Otto testified about at his December 11, 2017 deposition." (boldface added). Obviously, if the Licensing Agreement produced as a standalone document is identical to the Licensing Agreement produced as an exhibit to the Settlement Agreement, then Defendant's claims that the Licensing Agreement has been "doctored" is absurd and stands in direct conflict with the stipulation signed by its counsel.

**My January 26, 2018 Teleconference w/ Defendant's Counsel and March 6, 2018 Pre-Motion Teleconference**

38. On January 26, 2018, I spoke with Defendant's counsel, Ms. Bishop and Mr. Sitwala, by telephone. During this call, they raised for the first time Defendant's intention to move for sanctions based on Mr. Liebowitz's alleged representations made at the October 23, 2017 settlement conference. At no point during this discussion did Defendant's counsel allege that there had been any misrepresentations or misconduct concerning the production of documents. Their sole concern was alleged representations (or omissions) made at the October 23, 2017 settlement conference. They took issue with Mr. Liebowitz's presentation of the Licensing Agreement as a standalone document and accused him of failing to disclose the existence of an associated settlement agreement (even though there was no settlement as of October 23, 2017).

39. Although Defendant's counsel have paraphrased the discussion to serve their own biased ends (e.g., referring to the Licensing Agreement as a "licensing exhibit"), I explained to them in sum and substance what has been set forth in paragraphs 27-30 of this declaration. I was

entirely forthcoming with our specific intent in drafting licensing agreements as separate instruments that are severable from the settlement agreement.

40. I also emphasized that the issue of whether the Licensing Agreement in this case was separately enforceable was a question of law and that what Defendant's counsel described as a misrepresentation of fact was nothing more than their own disagreement with Plaintiff's legal position. I warned opposing counsel against using a sham sanctions proceeding as a vehicle to litigate the merits of their damages position.

41. I explained my same views concerning the severability of the Licensing Agreement to the Court at the March 6, 2018 pre-motion conference.

Dated: Valley Stream, New York

Executed this 17th Day of April, 2018

/s/jameshfreeman
JAMES H. FREEMAN