# EXHIBIT Q

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN OTTO,

        Plaintiff,

v.                                Civil Action No. 1:17-cv-4712

HEARST COMMUNICATIONS, INC.,

        Defendant.

## Expert Report of Charles S. Sims

## Qualifications

I am an attorney with extensive expertise representing clients in copyright litigation and pre-suit claims. Until I took senior status last year, I have been a partner in the law firm of Proskauer Rose LLP, where I worked for 30 years specializing in copyright law. During that time, I served as counsel in scores of copyright claims and cases, representing both plaintiffs and defendants. I have argued three cases in the United States Supreme Court, one of which was a copyright case (*Reed Elsevier Inc. v. Muchnick*, 559 U.S. 154 (2010)), and was Chair for three years of the Committee on Communications and Media Law of the Association of the Bar of the City of New York. Earlier this year, I joined the faculty of the Yale Law School as a Fellow and Counsel to the Media Freedom and Information Access Clinic, and its Government Accountability Project. I am a graduate of Amherst College and the Yale Law School.

In my decades of experience representing clients defending copyright infringement claims, and others prosecuting copyright infringement claims, I developed expertise in evaluating the settlement value of copyright infringement claims, and the basis for that value, including its relationship to a license or other grant of rights in the allegedly infringed work. This expertise is based on my work personally representing clients in numerous copyright infringement claims that were resolved through settlement, and my familiarity with additional claims and settlements handled by my law firm, as well as or by colleagues in the copyright Bar.

I am being compensated at the rate of $1,000 per hour, and my compensation does not depend on the outcome of the case.

1

## Assignment

I have been retained by The Hearst Corporation, Office of General Counsel, on behalf of Hearst Communications, Inc. ("Hearst") related to a copyright lawsuit filed by Jonathan Otto ("Plaintiff") to review the settlement agreements and photography license between Plaintiff and other media companies, the photograph of President Trump at issue in the case (the "Trump Photograph"), the June 11, 2017 article on esquire.com entitled "President Trump Is the Ultimate Wedding Crasher" that is also at issue in this case (the "Esquire.com Article"), and other documents, and to render opinions based on my experience in the settlement of copyright infringement claims and photograph licensing related to such settlements.

## Documents Reviewed

1. Complaint and Exhibits (including the Trump Photograph and Esquire.com Article)
2. Deposition transcript of Jonathan Otto
3. Confidential Settlement Agreement and Release between Jonathan Otto and Warner Bros. Entertainment Inc., dated October 26-27, 2017
4. Confidential Settlement Agreement and Release between Jonathan Otto and CBS Broadcasting, Inc., dated December 1, 2017

## Observations and Opinions

1. Based on my thirty years of experience handling copyright infringement cases and claims, settlements of those claims routinely involve a grant of a license by the copyright owner to the alleged infringing party, either as part of the settlement agreement itself or as a separate writing, and the value paid by the alleged infringer for the license and/or settlement does not accurately reflect the market value for a license to use the copyrighted work at issue. Once a claim of copyright infringement has been made, disputes are typically resolved before judgment by means of (1) a settlement agreement and release in exchange for money or other consideration, or (2) a license agreement for use of the allegedly infringed work in exchange for a fee or other consideration, or (3) some combination of both, such as settlement agreement executed in conjunction with a license. Accordingly, my use of the word "settlement" throughout this report includes all three forms of claims resolution described above. Based on my experience, in each settlement of a copyright infringement claim, the payment made to resolve the claim and/or grant rights to the work at issue will exceed the market value that would otherwise apply to license the work in the absence of an infringement claim. The enhanced value reflects other considerations, principally related to litigation avoidance, discussed below in paragraphs 2 through 4.
2. A significant factor in valuing the settlement of any claim, including copyright infringement claims, are the economic and other costs a defendant must incur to defend such a claim. Most defendants do not have the expertise and/or resources to defend themselves against a copyright claim, and retain outside counsel at a law firm to

2

do so. This is very expensive. Based on typical hourly billing rates of outside counsel at reputable law firms with expertise in copyright cases, attorneys' fees to defend a case can amount to tens if not hundreds of thousands of dollars, or more.[1] Plaintiffs and defendants both take account of this basic economic reality in negotiating settlement values. In my experience, cost of defense is the single most significant factor driving the value of settlements and/or related licenses that follow claims of copyright infringement.

3. Among the significant factors that may drive settlement of a copyright infringement claim unrelated to the value of the work at issue, or the merit of the claim, is defendants' desire to avoid the burdens and distractions of defending against such a claim, which typically involves preparing for and testifying at depositions and in court; reviewing briefs, declarations, and discovery materials; searching for and preserving relevant materials outside the normal course of business; supervising outside counsel; reporting to insurers, auditors, and others; and other meetings and communications related to defense of the claim. Because these burdens are disruptive to defendants' businesses, and impose a cost on those businesses, defendants will often settle claims with little or no merit for an amount exceeding any reasonable license fee to avoid those costs to their business.

4. Another related factor in determining the settlement value of a copyright infringement claim is a defendants' possible exposure to statutory damages claims, the possibility of an award of attorneys' fees to plaintiff if he or she were to prevail, and a defendant's tolerance for risk. Plaintiffs routinely tout the highest amount available in the Copyright Act's range of statutory damages (up to $150,000 per infringement) as a defendant's damages exposure, even though that amount has nothing to do with the market value to license the work at issue, and may have no bearing on the ultimate merits of the claim or the amount of statutory damages ultimately awarded by the judge or jury. The same is true concerning awards of attorneys' fees under the Copyright Act. Defendants who have low risk tolerance, and/or wish to avoid reserving for an adverse outcome as an accounting matter, may choose to settle based on these factors for an amount that bears no relation to the actual license value of a claim.

5. I have reviewed the Settlement and Release Agreement between Jonathan Otto and Warner Bros. Entertainment Inc., dated October 26 & 27, 2017, as well as the two

---

[1] For instance, in the recent copyright case *Mahan v. Roc Nation, LLC*, No. 14-cv-5075, 2016 WL 4718018, at *2 (S.D.N.Y. Sept. 9, 2016), the court deemed hourly rates of $855 for an experienced partner and up to $553 for associates to be reasonable. *See also Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13-cv-2493, 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014) ("In recent years, New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour."); *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 56 (S.D.N.Y. 2015) (finding a $461 per hour rate to be reasonable for a second-year associate); Karen Sloan, *$1,000 Per Hour Isn't Rare Anymore; Nominal billing levels rise, but discounts ease*, The National Law Journal, Jan. 13, 2014, at 2 ("Firms with their largest office in New York had the highest *average* partner and associate billing rates, at $882 and $520, respectively," with a realization rate of 83.5 percent.) (emphasis added).

# REDACTED
# For Confidentiality

My analysis is ongoing, my opinions may change, and this report may be updated if new facts become known. In addition, I may be asked to review, evaluate, and comment on additional opinions or conclusions that may be offered by Plaintiff at a future date.

In connection with my anticipated testimony in this lawsuit, I may use as exhibits documents produced in this litigation which refer or relate to the matters discussed in this report. In addition, I may create or assist in the creation of certain demonstrative exhibits to accompany my testimony. I have not yet selected or created such exhibits.

Respectfully submitted by,

*Charles S. Sims /ejs*

Charles S. Sims
Executed on December 29, 2017.