IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JONATHAN OTTO,

        Plaintiff,

v.

HEARST COMMUNICATIONS, INC.,

        Defendant.

C.A. No. 1:17-cv-04712-GHW

**MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS AND
<u>IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONTEMPT AND SANCTIONS</u>**

Jonathan R. Donnellan
Ravi V. Sitwala
Jennifer D. Bishop
THE HEARST CORPORATION
  Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
jdonnellan@hearst.com
rsitwala@hearst.com
jbishop@hearst.com

*Counsel for Defendant Hearst
Communications, Inc.*

## **TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT ................................................................................................................................3

I.  PLAINTIFF AND HIS COUNSEL SHOULD BE SANCTIONED FOR
    THEIR SCHEME CONCERNING THE PURPORTED LICENSE ......................3

    A.  Plaintiff and the Liebowitz Law Firm Have Admitted They
        Intended to Misrepresent the Nature of the Purported License to
        Hearst and the Court ..................................................................................3

    B.  Plaintiff and His Counsel Have No Excuse For Their
        Misrepresentations .....................................................................................4

    C.  Plaintiff's and the Firm's Scheme Warrants Strong Sanctions to
        Deter Future Misconduct ............................................................................9

II. THE COURT SHOULD DENY PLAINTIFF'S RETALIATORY
    CROSS-MOTION ..............................................................................................11

    A.  Hearst Should Not Be Held in Contempt of the Standing Order
        for Raising Plaintiff's Rule 16 Violation with this Court .........................12

        1.  The Standing Order Does Not and Cannot Unambiguously
            Prohibit Hearst's Motion.................................................................13

        2.  Hearst Acted Reasonably, Diligently, and in Good Faith,
            While Plaintiff Has Unclean Hands.................................................15

        3.  Hearst's Motion Serves the "Integrity" of the Settlement
            Conference ......................................................................................18

    B.  Hearst Should Not Otherwise Be Sanctioned ...........................................21

CONCLUSION............................................................................................................................23

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arneault v. O'Toole*,
  No. 16-4375, --- F. App'x ---, 2017 WL 5989024 (3d Cir. Dec. 4, 2017) ............................19

*Bernard v. Galen Grp., Inc.*,
  901 F. Supp. 778 (S.D.N.Y. 1995)..................................................................................20, 21

*Brennan v. Nassau Cty.*,
  352 F.3d 60 (2d Cir. 2003).....................................................................................................17

*Calka v. Kucker Kraus & Bruh*,
  167 F.3d 144 (2d Cir. 1999)............................................................................................20, 21

*Chao v. Gotham Registry, Inc.*,
  514 F.3d 280 (2d Cir. 2008)........................................................................................14, 15, 17

*Chen v. Marvel Food Servs., LLC*,
  No. CV 15-6206, 2016 WL 6872626 (E.D.N.Y. Nov. 21, 2016) ..........................................18

*Devils Film, Inc. v. Nectar Video*,
  No. 98-cv-8016, 2000 WL 1201383 (S.D.N.Y. Aug. 23, 2000).............................................18

*Dunn v. N.Y. State Dep't of Labor*,
  47 F.3d 485 (2d Cir. 2000).............................................................................................12, 17

*E-Z Bowz, L.L.C. v. Professional Product Research Co.*,
  No. 00-cv-8670, 2003 WL 22416174 (S.D.N.Y. Oct. 23, 2003)....................................17, 20

*Fiber-Shield Indus., Inc. v. N.Y. Fire-Shield, Inc.*,
  189 F.3d 460, 1999 WL 709351 (2d Cir. 1999) ...................................................................12

*Fisher v. SmithKline Beecham Corp.*,
  No. 07-cv-0347A, 2008 WL 4501860 (W.D.N.Y. Sept. 29, 2008)..................................19, 20

*Fruit of the Loom, Inc. v. Am. Mktg. Enters., Inc.*,
  192 F.3d 73 (2d Cir. 1999).....................................................................................................13

*Grenion v. Farmers Ins. Exch.*,
  No. CV 12-3219, 2014 WL 1284635 (E.D.N.Y. Mar. 14, 2014) ..........................................19

*Guillory v. Domtar Indus., Inc.*,
  95 F.3d 1320 (5th Cir. 1996) .................................................................................................19

*Hall v. Kirkegard*,
  No. CV 14-00011-H-DLC-JTJ, 2017 WL 8787176 (D. Mont. July 31, 2017) ......................19

*Holt v. Welch Allyn, Inc.*,
  No. 95-cv-1135, 1999 WL 592686 (N.D.N.Y. Aug. 2, 1999) ..................................................14

*Jung v. Neschis*,
  No. 01-cv-6993, 2009 WL 762835 (S.D.N.Y. Mar. 23, 2009) ................................................10

*Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*,
  608 F.2d 928 (2d Cir. 1979)..................................................................................18, 20, 21

*Lee v. Grand Sichuan Eastern (N.Y.) Inc.*,
  No. 12-cv-08652, 2014 WL 199512 (S.D.N.Y. Jan. 17, 2014) ..........................................5, 20

*Levin v. Tiber Holding Corp.*,
  277 F.3d 243 (2d Cir. 2002).....................................................................................................12

*MacKay v. Crews*,
  No. 09-cv-2218, 2009 WL 5062119 (E.D.N.Y. Dec. 16, 2009)..............................................18

*Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*,
  779 F.3d 102 (2d Cir. 2015).....................................................................................................12

*McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*,
  191 F. Supp. 2d 440 (S.D.N.Y. 2002)......................................................................................10

*Meriwether v. Coughlin*,
  879 F.2d 1037 (2d Cir. 1989)...................................................................................................13

*MPD Accessories B.V. v. Urban Outfitters, Inc.*,
  No. 12-cv-6501, 2013 WL 6869919 (S.D.N.Y. Dec. 23, 2013) .............................................17

*In re Ng*,
  111 B.R. ----, 2018 WL 1569792 (Mar. 29, 2018) ................................................................20

*Perez v. Danbury Hosp.*,
  347 F.3d 419 (2d Cir. 2003).....................................................................................................12

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
  324 U.S. 806 (1945).................................................................................................................18

*Rabin v. Down Jones & Co.*,
  665 F. App'x 21 (2d Cir. 2016) .................................................................................................9

*Schlaifer Nance & Co. v. Estate of Warhol*,
  194 F.3d 323 (2d Cir. 1999).....................................................................................................21

*Scholastic, Inc. v. Stouffer*,
   221 F. Supp. 2d 425 (S.D.N.Y. 2002) ...................................................................10

*Shangold v. Walt Disney Co.*,
   No. 03-cv-9522, 2006 WL 71672 (S.D.N.Y. Jan. 12, 2006) .....................................10

*Skarnulis v. Belmont*,
   74 F. App'x 92 (2d Cir. 2003) ...........................................................................17

*Skywark v. Isaacson*,
   No. 96-cv-2815, 1999 WL 1489038 (S.D.N.Y. Oct. 14, 1999).........................10, 11

*Slotkin v. Citizens Cas. of N.Y.*,
   614 F.2d 301 (2d Cir. 1979)..................................................................................1

*Trs. of the Buffalo Laborers' Pension Fund v. Accent Stripe, Inc.*,
   No. 01-cv-76C, 2007 WL 1540267 (W.D.N.Y. May 24, 2007)..........................17, 18

*United States v. Clark*,
   984 F.2d 31 (2d Cir. 1993).................................................................................14

*United States v. Cole*,
   496 F.3d 188 (2d Cir. 2007)...............................................................................13

*United States v. Glens Falls Newspapers, Inc.*,
   160 F.3d 853 (2d Cir. 1998)...............................................................................18

*Vermont Teddy Bear Co. v. 1-800 Beargram Co.*,
   373 F.3d 241 (2d Cir. 2004)...............................................................................13

*In re Young*,
   253 F.3d 926 (7th Cir. 2001) (Posner, J.) ............................................................19

**Other Authorities**

Fed. R. Civ. P. 16...........................................................................................*passim*

Fed. R. Civ. P. 83(b) ...........................................................................................13

Fed. R. Crim. P. 57(b) ..........................................................................................13

N.Y. Rule of Prof'l Conduct 3.3 ..............................................................................1

N.Y. Rule of Prof'l Conduct 8.3 ..........................................................................1, 13

N.Y. Rule of Prof'l Conduct 8.4 ..............................................................................1

Defendant Hearst Communications, Inc. ("Hearst"), by and through its undersigned counsel, respectfully submits this memorandum of law in further support of its Motion for Sanctions (ECF No. 59, the "Motion") and in opposition to Plaintiff's Cross-Motion for Civil Contempt and Sanctions (ECF No. 66, the "Cross Motion").[1]

## INTRODUCTION

Attorneys who practice before this Court have a fundamental obligation of honesty and candor; there is a line between zealous advocacy and deliberate misrepresentation of facts and evidence, which constitutes professional misconduct that other attorneys have a duty to report. *See* N.Y. Rules of Prof'l Conduct 8.3, 8.4 ("A lawyer or law firm shall not: . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.").[2]  The Liebowitz Law Firm (the "Firm") ran right over the line—not in the heat of the moment or with an inadvertent misstatement, but in what they have now admitted was a premeditated, drawn out attempt to mislead Hearst and the Court about the nature of their client's damages evidence.  And this was far from an isolated incident:  the Firm has filed hundreds of recent cases in this Court, has stated it is their routine

---

[1] As used herein, "Opening Br." and "Opening Brief" refer to Hearst's memorandum of law in support of its Motion (ECF No. 60), while "Plaintiff's Brief" and "Pl. Br." refer to Plaintiff's memorandum of law in opposition to Hearst's Motion and in support of his Cross-Motion (ECF No. 67.)  Other capitalized terms not defined herein have the meaning given to them in Hearst's Opening Brief.

[2] *See also* N.Y. Rule of Prof'l Conduct 3.3 ("A lawyer shall not knowingly:  (1) make a false statement of fact or law to a tribunal . . . (3) offer or use evidence that the lawyer knows to be false."); 3.4 ("A lawyer shall not:  (a) (1) suppress any evidence that the lawyer or the client has a legal obligation to reveal or produce; . . . (3) conceal or knowingly fail to disclose that which the lawyer is required by law to reveal; (4) knowingly use perjured testimony or false evidence; (5) participate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false . . . ."); 4.1 ("a lawyer shall not knowingly make a false statement of fact or law to a third person"); *c.f. Slotkin v. Citizens Cas. of N.Y.*, 614 F.2d 301, 314-16 (2d Cir. 1979) (upholding fraud judgment against one lawyer and overturning dismissal of fraud claims against another lawyer due to their misrepresentations of their client hospital's insurance coverage during settlement negotiations).

practice to structure agreements with the intention of misleading litigants and the Court in future cases, and has not so much as hinted that they will put an end to that practice.

In view of this bigger picture, Plaintiff's primary arguments about why they should not be sanctioned—that the Court's Standing Order gave them a license to lie during the Settlement Conference, and that their deception is justified because they created the contract at issue with the advance intent of misrepresenting it in this case—ring hollow. Excusing their conduct for these reasons would in fact result in far **more** deception and professional misconduct by officers of the Court, impeding the truth-finding process, and ultimately (in Plaintiff's own words) compromising the "integrity" of the judicial system.

And with these bad policy arguments set aside (as they should be), nothing about Plaintiff's and the Firm's scheme is excusable. Plaintiff and the Firm admit that they drafted their settlement with Warner Brothers with the "primary purpose" of representing that an exhibit to that agreement is a separate document and "evidence of damages" in this case (and others). They do not deny that they ████ represented that the license exhibit was not part of a settlement or that they failed to produce the complete settlement agreement until the close of discovery, after initially producing only the license exhibit with no indication it was part of a larger document. And in their attempt to explain their conduct, they take a series of untenable positions, including that the license exhibit that they initially produced as "strictly confidential" is actually not confidential at all.

It is telling that, instead of seriously addressing these issues, Plaintiff devotes all but four pages of his brief to attempting to distract the Court by arguing that it is **Hearst** who should be sanctioned for bringing Plaintiff's misconduct at the Settlement Conference to the Court's attention. The premise of his argument is not only disingenuous—Plaintiff's own counsel was the first to reveal details of the parties' Settlement Conference discussion in open court—but it would

also mean that every party attending a settlement conference could lie to opposing parties and the court without fear of repercussion, resulting in more harm to the integrity of the mediation process than Hearst's Motion ever could.  This Court should reject Plaintiff's continued attempt to hide his misconduct, deny his retaliatory Cross-Motion, and impose sanctions sufficient to deter Plaintiff and his counsel from further misconduct.

## ARGUMENT

### I.  PLAINTIFF AND HIS COUNSEL SHOULD BE SANCTIONED FOR THEIR SCHEME CONCERNING THE PURPORTED LICENSE.

Plaintiff's brief response to Hearst's Motion (Pl. Br. 21-24) makes *no* attempt to address any of the law cited in Hearst's Opening Brief, admits the key facts, and offers no credible justification for Plaintiff's and his counsel's actions.  Sanctions should be imposed.

### A.  Plaintiff and the Liebowitz Law Firm Have Admitted They Intended to Misrepresent the Nature of the Purported License to Hearst and the Court.

Plaintiff's submissions either concede or fail to dispute all of the critical facts underlying Hearst's Motion.  Mr. Liebowitz's declaration admits in no uncertain terms that he structured Plaintiff's agreement with Warner Brothers with the specific intent of having Plaintiff "introduce the [Purported License]"—"sever[ed]" from the Complete Agreement—"as evidence of damages in future litigation involving the same photograph."  (April 17, 2018 Declaration of Richard Liebowitz (ECF No. 68, "Liebowitz Decl.") ¶ 17; *see also id.* ¶¶ 14, 16, 18-22.)  And Plaintiff and the Firm do not (because they cannot) dispute that (a) ███████████████████████ ███████████████████████████████; (b) they produced the Purported License to Hearst without producing the Complete Agreement and without any indication that it was an exhibit to the Complete Agreement or otherwise connected to a settlement; and (c) when Plaintiff finally admitted to having a settlement agreement with Warner Brothers, he testified that that

agreement was entirely "separate" from and had been signed "after" the Purported License. (Bishop Decl. ¶¶ 9-12, 15-18 & Exs. B-D; Sitwala Decl. ¶¶ 3-6; Liebowitz Decl. ¶¶ 9-12, 14-24.)

In other words, Plaintiff and his counsel intended to—and did—hold out the Purported License as licensing history while hiding that it was part of a settlement agreement, for the express purpose of inflating their claim of damages.  If they had had their way, either the case would have settled ███████████████████████████████ or, if not, **only** the Purported License would be in the record, Plaintiff would be introducing it before the Court "as evidence of damages" (Liebowitz Decl. ¶¶ 17, 24), and Hearst would **not be able to** "mitigate the . . . fee paid by Warner Bros. by showing that the fee paid was mere 'litigation avoidance cost'" (which Plaintiff now acknowledges Hearst has every right to do (Pl. Br. 6 n.1)).[3]  But the fact is, the Purported License is integral to Plaintiff's settlement with Warner Brothers.  As the Court can see for itself, the Complete Agreement establishes without question that the Purported License is in fact an exhibit to—and part and parcel of—the Complete Agreement through which Plaintiff settled his claims against Warner Brothers in *Otto v. Warner Bros. Entertainment Inc.*, No. 1:17-cv-4763 (S.D.N.Y. filed June 22, 2017).  (Bishop Decl. Ex. D.)

**B.    Plaintiff and His Counsel Have No Excuse For Their Misrepresentations.**

Instead of defending his and the Firm's actions, Plaintiff devotes the bulk of his brief response to Hearst's Motion to arguing that he should be able to hide behind the confidentiality provisions of the Court's Standing Order governing the Settlement Conference and that Hearst's testimony of what happened at that Conference is "biased."  (*See* Pl. Br. 21-23.)  But the

---

[3] The parties appear to agree that the question of whether the entire Complete Agreement constitutes evidence of damages is **not** at issue on these motions.  Hearst has disclosed the expert testimony of Mr. Sims on this point, who testifies that the Complete Agreement does not provide evidence of the market rate for a license to use the photograph at issue in this suit.  (Pl. Br. 6 n.1; Freeman Decl. ¶ 24 & Ex. Q.)

Standing Order did not provide Plaintiff with a license to lie during the Settlement Conference; to the contrary, it instructed Plaintiff to treat the process "serious[ly]" and "earnest[ly]." (Standing Order at 1.)  And as discussed in detail *infra* in Part II.A, Federal Rule of Civil Procedure 16, the Rules of Professional Conduct, case law, and the overall purpose of the settlement conference process all require that Plaintiff's bad faith misrepresentations at the Conference be raised with the Court.  *See infra* Part II.A.  As for the charges of "bias," this Court was present during the Settlement Conference and can evaluate the accuracy of Hearst's counsel's recollection for itself, and Plaintiff and his counsel do not actually challenge the material facts testified to by Hearst.  (*See* Bishop Decl. ¶¶ 9-12; Sitwala Decl. ¶¶ 3-6; Liebowitz Decl. ¶¶ 11-13.)[4]

When Plaintiff does finally get around to addressing the heart of the matter—that is, ***why*** he and his counsel ████████ represented that the Purported License was not part of a settlement—his primary argument is that they just "intended" that it exist separately from the Complete Agreement.  (Pl. Br. 5, 23-23.)  In the words of Mr. Liebowitz, it is his common practice "[i]n cases where the client's photograph has been infringed by multiple entities . . . to negotiate the licensing agreement as a separately enforceable instrument . . . . ***to allow the client to introduce the licensing agreement as evidence of damages in future litigation*** involving the same photograph."  (Liebowitz Decl. ¶¶ 16-17 (emphasis added).)  He explains that "while the monetary consideration to support both the licensing agreement and settlement agreement ***may***

---

[4] Plaintiff's citation to *Lee v. Grand Sichuan Eastern (N.Y.) Inc.*, No. 12-cv-08652, 2014 WL 199512, at *4 (S.D.N.Y. Jan. 17, 2014) (Pl. Br. 23) is unpersuasive on this point because the Court was referring to statements made during a settlement conference before a different judge, of which the Court did not have first-hand knowledge.

*be the same*, it's ***our firm's intention*** that the two agreements will be treated as separately enforceable and severable . . . ."  (Liebowitz Decl. ¶ 18 (emphasis added).)[5]

The fact that Plaintiff and his counsel ***intended*** to use the document to deceive others at the time they negotiated it only emphasizes that they acted with bad faith intent from the start; it does not somehow excuse their actions.  Moreover, regardless of whether Plaintiff and his counsel planned to use the Purported License as evidence of damages without disclosing that it was part of a settlement, the face of the Complete Agreement—which is not ambiguous (*see* Pl. Br. 23 n.4)—permits no conclusion but that the Purported License is part of (not separate from) that Agreement.  In addition to the fact that the Purported License is an exhibit to the Complete Agreement and was signed the same day, it is incorporated by reference into that Agreement as the consideration for the settlement.  (*See* Opening Br. 5-6; Bishop Decl. Ex. D at OTTO_0072 ¶ 7.)  Plaintiff's claims are further belied by the integration clause in the Complete Agreement; surely neither Plaintiff, the Liebowitz Law Firm, nor Warner Brothers intended for the integration of their agreement to ***exclude*** the Purported License.  (Bishop Decl. Ex. D at OTTO_0073 ¶ 18.)  The Purported License is not separate from Plaintiff's settlement with Warner Brothers.  There is no other reading.

---

[5] It is telling that Plaintiff repeatedly uses the phrases "separately enforceable" and "severable" in describing the Purported License.  The issue here is not whether the license could legally be enforced against Warner Brothers without introducing the Complete Agreement, but whether ***as a matter of fact*** the Purported License and the consideration paid for it was actually ***separate from*** the settlement.  And in any event, this assertion (like Plaintiff's other excuses) was made up after the fact.  Plaintiff's primary support for this claim is that the Purported License does not include its own "prohibitive" confidentiality term (and thus presumably could be introduced in open court) (Pl. Br. 5; Liebowitz Decl. ¶¶ 17-18), but, as explained *infra* at pages 7-8, up until Hearst filed its Motion, Plaintiff clearly understood that the Purported License was covered by the confidentiality provision within the Complete Agreement.

Plaintiff's other attempts to justify his and the Firm's actions are so contorted and inconsistent that it is clear they were concocted after-the-fact in response to Hearst's Motion. For instance, Plaintiff's objection to producing settlement agreements on confidentiality grounds (*see* Pl. Br. 24) is no excuse for his failure to produce the Complete Agreement (which was responsive to Hearst's requests for production) or indicate that the Purported License was part of a larger document.[6]  As an initial matter, Plaintiff's confidentiality objection never had any basis given the protective order in this case and the terms of the Complete Agreement itself, which make clear that it can and should have been produced.  (*See* ECF No. 21; Bishop Decl. Ex. D at OTTO_0072-73 ¶ 11.)  But even if this were not so, Plaintiff at least should have produced a redacted copy of the Complete Agreement wherein the license exhibit was unredacted.  After all, he was willing to identify, produce and rely on the "severed" Purported License without the same confidentiality objection, and he now even argues that the license exhibit is ***not*** subject to confidentiality at all.  (*See* Bishop Decl. ¶ 15 & Ex. B; Freeman Decl. ¶¶ 9, 11-13, 28, 32 & Ex. E; Liebowitz Decl. ¶¶ 17, 21.)

Of course, not even that course of action would have made any sense because, up until the time that Hearst filed this Motion, Plaintiff understood that the Purported License ***was*** subject to the confidentiality terms of the Complete Agreement.  He produced the Purported License pursuant to the protective order in this case—it says "STRICTLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" in bold letters at the top—a designation that would have

---

[6] Plaintiff also suggests his production of the Purported License is excused because Hearst requested that document in particular on December 6, 2017.  (*See* Pl. Br. 24; Freeman Decl. ¶¶ 12-13; Bishop Decl. Ex. B.)  Hearst made that request because the Purported License was mentioned by name in Plaintiff's amended discovery responses, which did ***not*** mention any corresponding specific settlement with Warner Brothers.  (*See* Freeman Decl. Ex. E.)  Moreover, Hearst's email request for a specific document mentioned by name did not negate Plaintiff's obligation to produce all responsive documents.

been baseless if that document were not subject to the Complete Agreement's confidentiality clause as he now claims. (Bishop Decl. Ex. B.) The only defensible positions would have been for Plaintiff to produce the entire Complete Agreement, or to withhold the Purported License along with the Complete Agreement on confidentiality grounds. Thus, regardless of whether the Firm actually maintains a "severed" copy of the Purported License (*see* Pl. Br. 6) (which it has no legitimate reason to do since it is part of the Complete Agreement), Plaintiff's and the Firm's production of ***only*** the Purported License and their shifting positions on confidentiality smack of improper purpose.[7]

In a similarly revealing fashion, Plaintiff's brief explanations for the representations at the Settlement Conference and at his deposition rely on distortions of record facts. He defends the statements at the Settlement Conference solely by pointing out that the Complete Agreement had not yet been executed (Pl. Br. 5; Liebowitz Decl. ¶ 13)—but of course, neither had the Purported License ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Bishop Decl. ¶¶ 9-10; Sitwala Decl. ¶¶ 3-4). Likewise, Plaintiff now says he testified that it was his "opinion" that the Purported License "is severable from the [Complete Agreement]" (Pl. Br. 23), but that testimony was clear and factual and said nothing about "severability": "Q. Was this license agreement ***part of the settlement of that lawsuit***? A. No, they're separate" (Bishop Decl. Ex. C at 43:5-7 (emphasis added)). Even if the Purported License were somehow severable from the Complete

---

[7] For the same reasons, Plaintiff's repeated protestations that it did not produce doctored evidence (Pl. Br. 19; Liebowitz Decl. ¶ 8; Freeman Decl. ¶ 37) miss the point. The fact is, the Complete Agreement was neither produced nor disclosed, but the Purported License was, and it ***is*** altered from the Complete Agreement—it does not include the rest of the pages of the Complete Agreement, does not include its exhibit cover page, and attaches an Exhibit A which appeared ***before*** the Purported License in the Complete Agreement. Contrary to Plaintiff's claim (Pl. Br. 19), the parties' December 20 stipulation of facts is consistent; it establishes that the Purported License (***without its Exhibit A***) is identical to Exhibit B to the Complete Agreement (Bishop Decl. Exs. B, D, E).

Agreement, that does not change the fact that it is an exhibit to the settlement agreement and specifically identified as being incorporated by reference and is therefore part of it.

In short, Plaintiff has not offered a credible or consistent account of his own actions, much less provided any "legal or factual basis" for his and the Firm's deliberate effort to represent that the Purported License was unconnected to his settlement with Warner Brothers. *Rabin v. Down Jones & Co.*, 665 F. App'x 21, 23 (2d Cir. 2016) (citation omitted). Thus—no matter how many times Plaintiff calls Hearst's Motion a "sham"—there is no denying that he and his counsel repeatedly attempted to mislead both Hearst and the Court.

### C.    Plaintiff's and the Firm's Scheme Warrants Strong Sanctions to Deter Future Misconduct.

As set forth in Hearst's Opening Brief, Plaintiff's and the Firm's intentional scheme to mislead Hearst and the Court goes to the very heart of Plaintiff's damages case because the Purported License is the ***only*** document that Plaintiff has produced and relied on to substantiate his damages in this action. (*See* Bishop Decl. ¶ 21.) As a result, their efforts to hide the nature of that document amount to an attempted fraud upon the Court warranting strong sanctions. (*See* Opening Br. 13-14.)[8] And their conduct is all the more troubling because the Firm gives no indication that it will not continue using license exhibits in this misleading fashion in the many hundreds of other cases it has filed in this District. (*See* Liebowitz Decl. ¶¶ 15-20; Freeman Decl. ¶¶ 26-33.)

---

[8] As Plaintiff's submissions make clear, his and the Firm's scheme began prior to the Settlement Conference during their negotiation of Plaintiff's settlement with Warner Brothers. (Pl. Br. 4-5; Liebowitz Decl. ¶¶ 14-22.) Even if the Court declines to consider their misrepresentations at the Settlement Conference, these earlier actions and the overall premeditated scheme (in addition to their later discovery misconduct) provide additional bases for sanctions.

Rather than credibly explain why Plaintiff and his counsel's actions do not amount to fraud upon the Court, Plaintiff chides Hearst for supposedly not citing cases that define the term. (Pl. Br. 19.)  But, as explained in Hearst's Opening Brief and the cases cited and quoted therein, a fraud upon the court "occurs where a party has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and his adversary's defense of the action"—where "a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process . . . ."  *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002) (citation omitted); *Shangold v. Walt Disney Co.*, No. 03-cv-9522, 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006) (similar); *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 439 (S.D.N.Y. 2002) (fraud upon the court requires that the party "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action" (citation omitted)); *see also Jung v. Neschis*, No. 01-cv-6993, 2009 WL 762835, at *13-14 (S.D.N.Y. Mar. 23, 2009) (similar); *Skywark v. Isaacson*, No. 96-cv-2815, 1999 WL 1489038, at *14 (S.D.N.Y. Oct. 14, 1999) (similar).[9]  That is what happened here.

While many instances of fraud upon the court involve misrepresented, altered, and even fabricated evidence, the decision in *Skywark v. Isaacson* is particularly instructive because it concerned misrepresentations about and concealment of damages evidence throughout settlement discussions and discovery, which eventually unraveled as the case approached trial.  *See id.* at

---

[9] Hearst also set forth in its Opening Brief the various factors courts use to determine the appropriate sanction for this type of fraud, whether dismissal or otherwise:  "(1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the other party; (3) whether there is a pattern of misbehavior, rather than an isolated instance; (4) whether and when the misconduct was corrected; and (5) whether further misconduct is likely to continue in the future."  *McMunn*, 191 F. Supp. 2d at 446.  (*See* Opening Br. 14-15.)

*15-16.  The Court explained that even though the truth eventually came out, "because the discovery and settlement processes in this case were certainly within the penumbra of the Court's authority and at the hands-on supervision of the Court, plaintiff's misconduct adversely impacts on the judicial system . . . ."  *Id.* at *16 (citation omitted).  The Court further emphasized that, "[h]ad the case settled, the Court would have served as the unwitting tool of the plaintiff," and found particularly troubling that plaintiff's counsel had admitted that plaintiff's action "was considered and rational."  *Id.* at *15-16.

Here, Plaintiff's misconduct reveals the same type of disrespect for both the opposing party and the Court, underscored by Plaintiff's counsel's admissions that their actions "w[ere] considered and rational."  *Id.* at *15.  And as highlighted in Hearst's Opening Brief and by counsel's admissions about their ongoing practice in structuring settlements, the Firm is likely to engage in similar misconduct in the hundreds of cases they have filed in this District.  (*See* Opening Br. 15-16; Liebowitz Decl. ¶¶ 14-22; Freeman Decl. ¶¶ 26-33.)  Strong deterrence sanctions are therefore warranted.

## II.    THE COURT SHOULD DENY PLAINTIFF'S RETALIATORY CROSS-MOTION.

Having been caught abusing the court system, Plaintiff's knee-jerk reaction was to ***again*** try to misuse the judicial process by filing a frivolous motion for contempt and sanctions against Hearst.  His only real argument boils down to a claim that the confidentiality provision of the Court's Standing Order provides him an absolute privilege to lie to Hearst and a federal judge— and that Hearst should be punished for bringing his misrepresentations to the attention of that same judge.  This is not, and cannot be, the law.  Plaintiff's other complaints about Hearst's Motion are even more baseless.  Plaintiff's Cross-Motion should be rejected out of hand.

11

**A.    Hearst Should Not Be Held in Contempt of the Standing Order for Raising Plaintiff's Rule 16 Violation with this Court.**

Civil contempt is a "potent weapon, to which courts should not resort where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Perez v. Danbury Hosp.*, 347 F.3d 419, 425 (2d Cir. 2003) (internal quotation marks and citation omitted). Accordingly, "a district court's contempt power is narrowly circumscribed," *id.* at 423, and "[t]he failure to meet the strict requirements of an order does not necessarily subject a party to a holding of contempt," *Dunn v. N.Y. State Dep't of Labor*, 47 F.3d 485, 490 (2d Cir. 2000). Contempt may only be imposed after the movant shows "that '(1) the order the alleged contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the alleged contemnor has not diligently attempted to comply in a reasonable manner.'" *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 111 (2d Cir. 2015) (quoting *Perez*, 347 F.3d at 423-24); *see also Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250-52 (2d Cir. 2002) (noting plaintiff's burden of proof). "Even where these three preconditions are met, however, the district court retains discretion in deciding whether to hold a party in contempt." *Fiber-Shield Indus., Inc. v. N.Y. Fire-Shield, Inc.*, 189 F.3d 460, 1999 WL 709351, at *1 (2d Cir. 1999).

Here, Hearst acted in good faith based on Federal Rule of Civil Procedure 16(f) in alerting the Court to Plaintiff's bad faith participation at the Settlement Conference, submitting only limited, sealed statements from that Conference to the judge that was present at the Conference in order to enforce Rule 16's requirements. This does not even come close to warranting a finding of contempt, and Plaintiff's arguments to the contrary and newfound concern for the confidentiality and integrity of the Settlement Conference depend (ironically) on

a reading of the Standing Order that would mean open season for lies and other professional misconduct during settlement conferences.[10]

    *1.   The Standing Order Does Not and Cannot Unambiguously Prohibit Hearst's Motion.*

As an initial matter, the Standing Order ***must*** be construed to permit Hearst's sealed submission of limited Settlement Conference statements to the very same judge that held that Conference for purposes of bringing a Rule 16(f) motion.  A court "may not apply [its] individual practices in a manner that is inconsistent with the Federal Rules."  *Fruit of the Loom, Inc. v. Am. Mktg. Enters., Inc.*, 192 F.3d 73, 75 (2d Cir. 1999) (citing Fed. R. Civ. P. 83(b)); *see also Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (similar, discussing Rule 83(a)); *United States v. Cole*, 496 F.3d 188, 191-95 (2d Cir. 2007) (discussing requirement that standing orders be consistent with Federal Rules under analogous Fed. R. Crim. P. 57(b)).  The Standing Order thus "cannot be construed to contradict" Rule 16(f), *Meriwether v. Coughlin*, 879 F.2d 1037, 1042 (2d Cir. 1989), which ***explicitly*** allows a sanctions motion "if a party or its attorney . . . does not participate in good faith" at a settlement conference," Fed. R. Civ. P. 16(f)(1)(B); (*see* Opening Br. 7-8 (citing cases)).  But Plaintiff's interpretation of the Standing Order—that it categorically prohibits even sealed submissions about settlement conference conduct to the same judge who held the conference—would put the Order and Rule 16(f) squarely in conflict, destroying litigants' rights under that Rule.  It would also mean that attorneys could not fulfill their ethical obligation to inform the court of opposing counsel's professional misconduct.[11]  The Standing Order cannot be, and need not be (*see* Opening Br. 11-

---

[10] Plaintiff's request for contempt is doubly ironic because his counsel have been repeatedly admonished for their own failures to follow court rules and individual practices, but have not (to date) been held in contempt.  (*See* Opening Br. 15-16 (citing cases).)

[11] N.Y. Rule of Professional Conduct 8.3 ***requires*** that "[a] lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial

12), read that way.  *See generally United States v. Clark*, 984 F.2d 31, 34 (2d Cir. 1993) (holding

that defendant was entitled to move for reconsideration under Federal Rules, even though the

motion was untimely under the applicable local rule); *Holt v. Welch Allyn, Inc.*, No. 95-cv-1135,

1999 WL 592686, at *5 (N.D.N.Y. Aug. 2, 1999) (noting that a local rule is "meaningless" under

a construction that conflicts with Federal Rules).  Rather, it must be read to allow motions, like

Hearst's, which respect the confidentiality of the settlement conference process while still

enforcing Rule 16's requirement of good faith conference participation.

　　　　Moreover, even if Rule 16(f) did not clearly prohibit Plaintiff's reading of the Standing

Order and allow for Hearst's motion, it would still prevent a finding that the prerequisites for

contempt have been met here.  In evaluating the first two prerequisites, "[t]he proper measure . . .

is not whether the [order] is clear in some general sense, but whether it unambiguously

proscribes the challenged conduct."  *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 292 (2d Cir.

2008).  Considering the language of the Standing Order in the context of Rule 16(f) and the cases

interpreting that Rule, it is far from unambiguous that Hearst's motion—which, again, submitted

limited Settlement Conference statements under seal to the same judge who presided over the

Conference for the purpose of enforcing Rule 16's requirement of good faith participation at that

Conference—violated that Order.[12]

---

question as to that lawyer's honesty, trustworthiness or fitness as a lawyer shall report such
knowledge to a tribunal or other authority empowered to investigate or act upon such violation."

[12] This does not mean, as Plaintiff claims, that "no rules or orders would ever be followed . . .
."  (Pl. Br. 12.)  It means only that a party must be able to introduce some settlement conference
statements under seal to the same court that presided over the conference (and thus already heard
the statements) for purposes of enforcing the requirement that parties and counsel participate in
such conferences in good faith.  (*See also infra* Part II.A.3.)

    2.   *Hearst Acted Reasonably, Diligently, and in Good Faith, While Plaintiff Has Unclean Hands.*

In any event, Hearst cannot be held in contempt for the additional reason that it acted diligently and in good faith in attempting to comply with the Order in a reasonable manner while also vindicating Rule 16's good faith requirement and its counsel's ethical obligation to report attorney misconduct. *See Chao*, 514 F.3d at 291, 293. It is not as if Hearst spontaneously introduced Plaintiff's settlement communications in open court; Hearst proceeded cautiously and respectfully. It first raised the issue of Plaintiff's settlement conference conduct during a telephone conference with opposing counsel (and Plaintiff's counsel did not raise any confidentiality concerns). (Bishop Decl. ¶ 21; Sitwala Decl. ¶ 7; Freeman Decl. ¶¶ 38-40.) It then informed Judge Woods merely that it intended to seek sanctions for "misconduct . . . that began during the initial October settlement conference with Judge Cott," and stated that "given that it commenced during the confidential session with Judge Cott, we thought that it would be best raised before him." (April 27, 2018 Declaration of Jennifer D. Bishop ("Bishop Reply Decl.") Ex. A at 27:19-25.) At that point, ***Plaintiff's counsel*** revealed the nature of the misconduct in open court, telling Judge Woods that "it is dealing with an interpretation of a settlement agreement and how it relates to a licensing agreement." (Bishop Reply Decl. Ex. A at 29:10-12.)

Hearst then filed a letter requesting a referral to this Court, which did not mention the nature of the misconduct but again stated "the motion should be presented to Judge Cott in the first instance due to the confidential nature of the settlement conference." (ECF No. 31.) After the referral was granted, Hearst filed a pre-motion letter that revealed only that the misconduct "concern[ed] Plaintiff's purported evidence of license fees for the Photograph" (something Plaintiff's counsel already had revealed in open court) and also stated that Hearst "is not

providing further detail regarding Plaintiff's and his counsel's misconduct in this publicly-filed

letter due to the confidential nature of the Settlement Conference. . . ." (ECF No. 43.)  In

response, Plaintiff **again** revealed more information about the misconduct in a publicly-filed

letter, making clear that the misconduct concerned statements regarding "a licensing fee obtained

through settlement of an infringement claim . . . ." (ECF No. 44.)  Despite having done so,

Plaintiff also raised the issue of contempt and confidentiality for the first time in that letter.  (*Id.*)

Then, the Court held a pre-motion conference without a court reporter on March 6, 2018.

(*See* Bishop Decl. ¶ 22; Sitwala Decl. ¶ 8.)  The Court granted Hearst permission to file its

motion for sanctions.  To preserve the confidentiality of the Settlement Conference, the Court

and the parties agreed to a sealing and redaction procedure.  (ECF No. 50.)  Ultimately, Hearst

filed its sanctions motion in accordance with that procedure, and included only those (redacted)

Settlement Conference statements that were necessary to enforce Rule 16's good faith

requirement—none of which revealed any settlement offer.  (*See* Bishop Decl. ¶¶ 9-11; Sitwala

Decl. ¶¶ 3-5.)[13]

Simply put, Hearst not only acted reasonably and in good faith, but approached this issue

from the get-go with caution and respect for the confidentiality of the Settlement Conference.

Meanwhile, *Plaintiff* revealed details of the conduct at issue in open court and did not so much

as raise the contempt issue until after Judge Woods granted the referral order.  In the face of

these facts, Plaintiff's arguments that Hearst was not diligent (Pl. Br. 13-15) fall flat.  They also

miss the point of this inquiry.  First, Plaintiff's suggestion that Hearst could have omitted any

reference to conduct at the Settlement Conference (Pl. Br. 13-14) ignores that Hearst brought its

---

[13] Mr. Liebowitz's testimony to the contrary is baseless.  (*See* Liebowitz Decl. ¶ 9.)  Both parties and the Court have direct knowledge of Plaintiff's actual settlement offer, and it cannot be determined from Hearst's submissions.

16

motion, in part, to enforce Rule 16's good faith requirement by holding Plaintiff accountable for his lies at the Conference. A motion that omitted the Settlement Conference statements would not have served this purpose. Second, while Plaintiff claims that Hearst's steps did not amount to perfect compliance with the Standing Order (Pl. Br. 14-15), that is not the standard for contempt. The third contempt prerequisite *assumes* a party may not have met "the strict requirements of an order . . . ." *Dunn*, 47 F.3d at 490.[14] The inquiry is whether Hearst has made efforts "to comply in a reasonable manner." *Chao*, 514 F.3d at 293; *see also Skarnulis v. Belmont*, 74 F. App'x 92, 95-96 (2d Cir. 2003). That cannot seriously be disputed.

Furthermore, for many of the same reasons, Plaintiff is barred from seeking an order of contempt because of his own unclean hands. "[A] finding of contempt is an equitable remedy under Second Circuit law, and 'subject to equitable defenses,'" including the "unclean hands" doctrine. *Trs. of the Buffalo Laborers' Pension Fund v. Accent Stripe, Inc.*, No. 01-cv-76C, 2007 WL 1540267, at *5 (W.D.N.Y. May 24, 2007) (quoting *Brennan v. Nassau Cty.*, 352 F.3d 60, 63 (2d Cir. 2003)); *see also MPD Accessories B.V. v. Urban Outfitters, Inc.*, No. 12-cv-6501, 2013 WL 6869919, at *4 (S.D.N.Y. Dec. 23, 2013) (same). This doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks

---

[14] Plaintiff relies on *E-Z Bowz, L.L.C. v. Professional Product Research Co.*, No. 00-cv-8670, 2003 WL 22416174 (S.D.N.Y. Oct. 23, 2003) in support of its argument that Hearst's redaction and sealing efforts do not entirely preserve the confidentiality of the Settlement Conference. (Pl. Br. 15.) Putting aside that (as noted above), the standard for reasonable diligence is not perfect compliance, *E-Z Bowz* is entirely inapposite because it concerned one party's revelation of the other party's actual settlement offer, *without* any advance notice to the Court, in connection with summary judgment briefing on the merits. In contrast, both this Court and Judge Woods were aware that Hearst's motion would address Settlement Conference conduct before it was filed, the Motion does not reveal Plaintiff's settlement offer, and the Motion specifically seeks to address Plaintiff's conduct *at* the Settlement Conference in order to further the purpose of such conferences and ensure that they are attended in good faith as required by Rule 16. (And in any event, as in most of the cases Plaintiff cites, the *E-Z Bowz* Court ultimately declined to award monetary sanctions.)

relief, however improper may have been the behavior of the defendant." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). Here, Plaintiff's hands are doubly dirty. This entire proceeding was occasioned by his and his counsel's own deception before, during, and after the Settlement Conference, ***and*** Plaintiff's counsel—not Hearst—first broke confidentiality and revealed the nature of the conduct at issue in open court. (*See supra* at 15.) For this reason alone, Plaintiff is ineligible to seek contempt sanctions. *See, e.g.*, *Trs.*, 2007 WL 1540267, at *5 (denying contempt on grounds of unclean hands); *MacKay v. Crews*, No. 09-cv-2218, 2009 WL 5062119, at *5 n.8 (E.D.N.Y. Dec. 16, 2009) (explaining that the court "would deny any motion for sanctions under the doctrine of unclean hands"); *Devils Film, Inc. v. Nectar Video*, No. 98-cv-8016, 2000 WL 1201383, at *1 (S.D.N.Y. Aug. 23, 2000) (explaining that the Court would not "agree[] to use its contempt powers to punish the defendant," because of the plaintiff's "unclean hands").

    *3. Hearst's Motion Serves the "Integrity" of the Settlement Conference.*

    Finally, Plaintiff's multi-page argument that Hearst's Motion harms the "integrity" of the Settlement Conference (Pl. Br. 15-17) is both disingenuous and misplaced considering that ***Plaintiff and his counsel*** actively lied during that Conference to both Hearst and this Court. The entire premise of the cases Plaintiff cites is that mediation is intended to foster frank, open, and honest conversation in order to "arrive at a ***just*** resolution of a civil dispute." *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979) (emphasis added); *see also United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that trial judges should "foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly ***and fairly***" (emphasis added)); *Chen v. Marvel Food Servs., LLC*, No. CV 15-6206, 2016 WL 6872626, at *4 (E.D.N.Y. Nov. 21, 2016)

(settlement conferences intended to foster "meaningful dialogue and negotiation"). Bad faith factual misrepresentations obliterate the purpose of a settlement conference and make a mockery of the process by destroying any possibility of trust, fairness, and a "better understanding of the factual . . . nature of the[] dispute . . . ." (Standing Order at 1.) They can also render the conference a waste of time and judicial resources, as they did here. *See Arneault v. O'Toole*, No. 16-4375, --- F. App'x ---, 2017 WL 5989024, at *5 (3d Cir. Dec. 4, 2017); *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1334 (5th Cir. 1996); *Grenion v. Farmers Ins. Exch.*, No. CV 12-3219, 2014 WL 1284635, at *5-7 (E.D.N.Y. Mar. 14, 2014).

In other words, Plaintiff's position—that a general confidentiality requirement grants him license to lie during a settlement conference without repercussion—would harm the integrity of the settlement process far more than Hearst's limited disclosures of settlement statements for the purpose of enforcing the requirement of good faith participation. Accordingly, such statements "may be revealed insofar as necessary for the decision of an issue of alleged misconduct in them." *In re Young*, 253 F.3d 926, 927 (7th Cir. 2001) (Posner, J.). The decision in *Fisher v. SmithKline Beecham Corp.*, No. 07-cv-0347A, 2008 WL 4501860 (W.D.N.Y. Sept. 29, 2008), is particularly instructive on this point. There, the court imposed Rule 16(f) sanctions on the defendant for bad faith participation in a settlement conference over its objections that the plaintiff's sanctions request was based on confidential mediation statements. *Id.* at *3-7. In addressing the confidentiality issue, the court found it significant that the plaintiff had revealed only the information "necessary to establish Defendant's conduct is sanctionable based on Defendant's alleged lack of good faith in attending the . . . mediation session . . . ." *Id.* at *5; *see also Hall v. Kirkegard*, No. CV 14-00011-H-DLC-JTJ, 2017 WL 8787176, at *15-16 (D. Mont. July 31, 2017) (disregarding similar confidentiality argument where the information "disclosed

was limited to . . . [that] which was necessary for determining whether Defendants participated [in the mediation] in bad faith").  That is all Hearst has done here, and if motions like Hearst's and the one in *Fisher* were not permitted, no litigant could expect an opposing party to behave honestly at settlement conferences, and such conferences would cease to be effective.

Relatedly and unsurprisingly, the two cases cited by Plaintiff in which sanctions were **actually** imposed against a party for violating mediation confidentiality look very different from this one.[15]  Specifically, sanctions were imposed where a party revealed the other's actual settlement offer in connection with its summary judgment briefing and without providing any advance notice to the court, *E-Z Bows*, 2003 WL 22416174, at *1-2, and where a party disclosed the specific dollar amounts of settlement offers, an entire confidential settlement memorandum, and multiple other mediation statements apparently for no other purpose than to defer further mediation and "set the record straight."  *Bernard v. Galen Grp., Inc.*, 901 F. Supp. 778, 782-83 (S.D.N.Y. 1995).  In other words, the "case law reflects that sanctions are appropriately applied where the disclosure reflects an effort to undermine the mediation process, or was otherwise in bad faith." *In re Ng*, 111 B.R. ----, 2018 WL 1569792, at *5 (Mar. 29, 2018).  That is not this case, where limited settlement conference communications were re-submitted to the judge who

---

[15] The Court declined to award sanctions in *Lake Utopia* and *Calka*, and *Great Falls Newspapers* and *McCulloch* did not concern a request for sanctions.  *Lee* awarded a party its attorneys' fees in successfully defending against a sanctions motion in part because the sanctions motion relied on statements made by a magistrate judge at a settlement conference, but as in *E-Z Bowz*, the settlement conference statements at issue were introduced to argue the merits of a summary judgment motion.  *Lee*, 2014 WL 199512, at *4.  That case is also inapposite for several other reasons, including because the statements were submitted to a different judge who was not present at the settlement conference, and because the party erroneously asserted that they had been made in open court and represented a court ruling on dispositive issues.  *Id.*

presided over the conference for the purpose of ***preserving*** trust and candor in the settlement process.[16]

### B.    Hearst Should Not Otherwise Be Sanctioned.

Plaintiff's further request for sanctions under the Court's inherent authority (Pl. Br. 17-21) is an equally frivolous attempt to distract from his own misconduct, and ignores the standard for imposing such sanctions.  "In order to impose sanctions pursuant to its inherent power, a district court must find that:  (1) the challenged claim was without a colorable basis ***and*** (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay."  *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999).[17]

Nothing Hearst has done in bringing Plaintiff's and his counsel's own bad faith conduct to the attention of this Court meets this standard.  Hearst's sealed filing of limited statements at the Settlement Conference was made in good faith and with colorable basis for the reasons already discussed.  (*See supra* Part II.A.)  Similarly, contrary to Plaintiff's claim (*see* Pl. Br. 18-19), there is nothing false or improperly motivated about Hearst's statements that Plaintiff

---

[16] Moreover, the cases Plaintiff relies on in this section all concern a very different type of disclosure than that at issue here.  Each involved statements that were made in mediation programs specifically structured to exclude ***any*** judge involvement and then later disclosed to a judge.  *See Lake Utopia Paper*, 608 F.2d at 929 (statements made in a mediation program that is entirely "insulated" from all judges of the court later disclosed in arguing that the appeal was frivolous); *Calka v. Kucker Kraus & Bruh*, 167 F.3d 144, 145 (2d Cir. 1999) (statements made in a mediation program where "the court never knows what transpire[s]"); *Bernard*, 901 F. Supp. at 779-80 (statements made in a mediation program where neither parties nor mediator could "disclose information . . . to the court").  Here, by contrast, Hearst has ***re-submitted*** statements made before this Court ***to*** this Court for purposes of enforcing the requirement of good faith conference participation.

[17] Characteristically, Plaintiff faults Hearst for supposedly failing to list the standard for fraud upon the court (Pl. Br. 19), but himself fails to cite or address the standard for inherent power sanctions.

produced doctored evidence, for reasons already discussed twice now.  (*See supra* at 8 n.7;
Opening Br. 4, 12.)

The other purported "false representations" and "glaring . . . omissions" Plaintiff points to
are anything but that.  The fact that Hearst has settled cases with the Liebowitz Law Firm in the
past (Pl. Br. 18 ¶ (a)) is irrelevant to whether Plaintiff and Mr. Liebowitz attended ***this***
Settlement Conference in good faith—and Hearst has never argued that they attended "without
any intent to settle," as Mr. Liebowitz charges in his Declaration (Liebowitz Decl. ¶ 2).  (To the
contrary, the point is that they attended ***with*** the intent to settle based on false facts.)  The details
of when Hearst learned of Plaintiff's suit against Warner Brothers and the settlement of that suit
(Pl. Br. 18 ¶¶ (b), (c) were not included because they are not relevant—the issue here is what
***Plaintiff*** said about the relationship between its Warner Brothers settlement and the Purported
License, not what Hearst knew about the litigation with Warner Brothers through its own
research.[18]  The fact that Hearst waited less than two weeks to dispute Plaintiff's objection to
producing settlement agreements (Pl. Br. 18 ¶ (d)) is likewise irrelevant, and in any case, Hearst
raised the issue promptly during Plaintiff's deposition on December 11, 2017, after Plaintiff
acknowledged that he had a settlement agreement with Warner Brothers but refused to testify
about it (Bishop Decl. Ex. C at 43:11-44:14).

Plaintiff's final claim that Hearst should be sanctioned for "us[ing] a sanctions motion as
a vehicle to litigate the merits of its claims or defenses" (Pl. Br. 19-20) is perplexing.  While

---

[18] Paragraph 16 of the Bishop Declaration appears where it does in that document because it
provides background information that is necessary to understand the following paragraph about
what transpired at Plaintiff's deposition.  (*See* Bishop Decl. ¶¶ 16-17.)  That paragraph was not
intended to suggest that Hearst did not learn of Plaintiff's suit against Warner Brothers until after
the Settlement Conference; and Hearst does not dispute that it was aware of that lawsuit since
September 2017.  Indeed, Plaintiff's lawsuit against Warner Brothers is a matter of public record.

Hearst briefly mentioned the law on statutory damages in its Opening Brief to explain why Plaintiff's licensing history is important evidence in this case—a fact with which Plaintiff's counsel agree (Liebowitz Decl. ¶¶ 17, 24; Freeman Decl. ¶ 28)—Hearst has not asked the Court to determine the appropriate measure of damages now.  And it is also unclear how the fact that Hearst did ***not*** include its expert report in its sanctions motion (Pl. Br. 20) relates to Plaintiff's claim that Hearst is attempting to litigate the merits.[19]

At the end of the day, there is really no there there in Plaintiff's cross-motion for contempt and sanctions.  It is nothing more than a desperate counter-punch, centered around a hypocritical "integrity" argument about confidentiality obligations that Plaintiff's own counsel disregarded until Hearst made clear it would move forward with bringing Plaintiff's conduct to the Court's attention.  It should be rejected.

## CONCLUSION

For the foregoing reasons and those set forth in Hearst's Opening Brief, this Court should sanction Plaintiff and his counsel for their bad faith conduct in this litigation and (1) order Plaintiff and the Liebowitz Law Firm jointly and severally liable for Hearst's attorneys' fees of $22,612.50; (2) order further sanctions against Plaintiff and his counsel sufficient to deter future misconduct; (3) deny Plaintiff's cross-motion for contempt and sanctions; and (4) order such other and further relief as this Court deems just and proper.

---

[19] As Mr. Sims' report makes clear, the subject of his testimony is not whether, in Plaintiff's words, the Purported License is "severable" from the Complete Agreement (Pl. Br. 20), but that the Complete Agreement does not provide evidence of the market rate for a license to use the photograph at issue in this suit.  (*See* Freeman Decl. ¶ 24 & Ex. Q.)

Dated: April 27, 2018
       New York, New York

Respectfully submitted,

/s/ Jennifer D. Bishop
Jonathan R. Donnellan
Ravi V. Sitwala
Jennifer D. Bishop
The Hearst Corporation
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
jdonnellan@hearst.com
rsitwala@hearst.com
jbishop@hearst.com

*Counsel for Defendant Hearst
Communications, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on April 27, 2018.

/s/ Jennifer D. Bishop
Jennifer D. Bishop

25