IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JONATHAN OTTO,

          Plaintiff,

v.

HEARST COMMUNICATIONS, INC.,

          Defendant.

C.A. No. 1:17-cv-04712-GHW

**ORAL ARGUMENT REQUESTED**

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Jonathan R. Donnellan
Ravi V. Sitwala
Jennifer D. Bishop
THE HEARST CORPORATION
  Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
jdonnellan@hearst.com
rsitwala@hearst.com
jbishop@hearst.com

*Counsel for Defendant Hearst
Communications, Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................1

ARGUMENT ..............................................................................................................................2

      I.      HEARST'S NEWS ARTICLE IS A FAIR USE OF THE SNAPSHOT ................2

            A.     The Purpose and Character of the Article Strongly Favors
                   Fair Use ........................................................................................................2

            B.     The Second Factor Favors Fair Use, and the Third Is
                   (at Worst) Neutral ........................................................................................5

            C.     The Complete Absence of Market Harm Strongly Favors
                   Fair Use ........................................................................................................6

            D.     Allowing Hearst's Use Will Further the Purpose of Copyright...................7

      II.     PLAINTIFF CANNOT ESTABLISH WILLFUL INFRINGEMENT...................9

CONCLUSION...........................................................................................................................10

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Authors Guild v. Google, Inc.*,
  804 F.3d 202 (2d Cir. 2015)..................................................................6

*Balsley v. LFP, Inc.*,
  691 F.3d 747 (6th Cir. 2012) ......................................................4, 5, 6, 7

*Barcroft Media Ltd. v. Coed Media Group, LLC*,
  2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017)...............................................3

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*,
  196 F. Supp. 3d 395 (S.D.N.Y. 2016).......................................................3

*Calkins v. Playboy Enterprises International, Inc.*,
  561 F. Supp. 2d 1136 (E.D. Cal. 2008)......................................................4

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994).............................................................................6

*Cariou v. Prince*,
  714 F.3d 694 (2d Cir. 2013)....................................................................6

*Castle Rock Entm't v. Carol Publ'g Grp., Inc.*,
  955 F. Supp. 260 (S.D.N.Y. 1997)............................................................9

*D'Amico v. City of N.Y.*,
  132 F.3d 145 (2d Cir. 1998)....................................................................5

*Dhillon v. Does 1-10*,
  2014 WL 722592 (N.D. Cal. Feb. 5, 2014) ................................................3

*EMI Entm't World, Inc. v. Karen Records, Inc.*,
  806 F. Supp. 2d 697 (S.D.N.Y. 2011)........................................................9

*Fallaci v. New Gazette Literary Corp.*,
  568 F. Supp. 1172 (S.D.N.Y. 1983)..........................................................9

*Farmer v. Brennan*,
  511 U.S. 825 (1994).............................................................................9

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*,
  807 F.2d 1110 (2d Cir. 1986)..................................................................9

*Harte-Hanks Commc'ns, Inc. v. Connaughton,*
  491 U.S. 657 (1989) ................................................................................. 9

*Katz v. Google Inc.,*
  802 F.3d 1178 (11th Cir. 2015) .............................................................. 3

*Kolstad v. Am. Dental Ass'n,*
  527 U.S. 526 (1999) ................................................................................. 9

*Louis Paris, Ltd. v. Standard Fabrics, Int'l, Inc.,*
  2016 WL 4203548 (S.D.N.Y. Aug. 8, 2016) ........................................ 10

*Mathieson v. Associated Press,*
  1992 WL 164447 (S.D.N.Y. June 25, 1992) .......................................... 3

*Nunez v. Caribbean International News Corp.,*
  235 F.3d 18 (1st Cir. 2000) ..................................................................... 3

*Smith v. Barnesandnoble.com, LLC,*
  839 F.3d 163 (2d Cir. 2016) ................................................................. 10

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
  464 U.S. 417 (1984) ................................................................................. 6

*The Design Tex Grp., Inc. v. U.S. Vinyl Mfg. Corp.,*
  2005 WL 2063819 (S.D.N.Y. Aug. 24, 2005) ....................................... 9

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.,*
  996 F.2d 1366 (2d Cir. 1993) ................................................................. 6

*Van Der Zee v. Greenidge,*
  2006 WL 44020 (S.D.N.Y. Jan. 6, 2006) ............................................... 9

*Viacom Int'l Inc. v. Fanzine Int'l, Inc.,*
  2001 WL 930248 (S.D.N.Y. Aug. 16, 2001) ......................................... 9

*Video-Cinema Films, Inc. v. CNN, Inc.,*
  2001 WL 1518264 (S.D.N.Y. Nov. 28, 2001) ....................................... 2

*Walt Disney Co. v. Best,*
  1990 WL 144209 (S.D.N.Y. Sept. 26, 1990) ......................................... 9

**Statutes**

17 U.S.C. § 107 ........................................................................................ 3, 5, 8

**Other Authorities**

Hon. Stanley F. Birch, *Copyright Fair Use: A Constitutional Imperative*, J.
    Copyright Soc'y U.S.A. 139 (Winter/Spring 2007) ..................................................................1

*Willful*, Black's Law Dictionary (5th ed. 1981)..............................................................................9

## INTRODUCTION

Plaintiff's opposition (ECF No. 70, "Pl. Opp.") continues to disregard the facts in favor of rhetoric and obfuscation. As much as Plaintiff would like this case to be about all amateur photography, it is not; it is about a *specific* amateur photographer who (unlike many) took a Snapshot[1] with no creativity for purely personal use, did not intend nor attempt to market or widely disseminate it, but now seeks to use the Copyright Act to extort the news media for a cut. Hearst's use of that Snapshot for a new, different, and quintessentially fair purpose—reporting and comment—furthers the public interest and is precisely what fair use is supposed to protect.

Rather than respond directly to Hearst's analysis of fair use as applied to the actual facts of this case, Plaintiff first suggests that fair use should be disregarded altogether, that *all* amateur iPhone photos should be licensed in every case—and that a self-interested jury will agree. He otherwise focuses on strawmen constructed from sweeping caricatures of Hearst's arguments and legal points that are not disputed (but say nothing about the specifics before this Court).[2]

To the extent that Plaintiff does address Hearst's analysis, he *concedes* that the main position espoused in his opening brief—that articles must comment directly on a photograph to be fair use—is wrong. This effectively leaves him with no case, and he is forced to invent an illogical test unsupported by the Copyright Act or case law and to repeatedly rely on a single Sixth Circuit decision that is factually inapposite. Ultimately, imposing liability here would *not* serve the goals of copyright as the "engine of free expression," and the particular circumstances

---

[1] Capitalized terms not defined herein have the meaning given in Hearst's March 26, 2018 brief in support of its Motion for Summary Judgment (ECF No. 52, "Mov. Br." or "Moving Brief").

[2] Hearst never asserted an absolute "First Amendment right to exploit protected works" (Pl. Opp. 12-13) or that news reporting enjoys "blanket immunity" (Pl. Opp. 15-16), as Plaintiff claims. But First Amendment concerns do necessarily *inform* the analysis, and reporting enjoys a presumption on the first statutory fair use factor. (Mov. Br. 8-13.) Further, as noted in Hearst's Moving Brief, while Hearst submits that Plaintiff should carry the burden of disproving fair use in this context, Hearst has nevertheless proved fair use as an affirmative defense. (*See* Mov. Br. 8 & n.3.) *See also* Hon. Stanley F. Birch, *Copyright Fair Use: A Constitutional Imperative*, 54 J. Copyright Soc'y U.S.A. 139 (Winter/Spring 2007) (arguing that fair use cannot be an affirmative defense).

of this case warrant a finding of fair use as a matter of law.

Plaintiff's forced attempt to make a case for willfulness is similarly divorced from the law and facts.  In essence, he claims that even though there is **no record evidence** of the Article's author's actions, intent, or knowledge concerning the Snapshot, Hearst's willfulness can be inferred from the fact that (1) it is a mass media company with experience in copyright litigation, and (2) Hearst's managing editor (who is not the author) did not inquire about the Snapshot's copyright.  These facts alone are insufficient, and Hearst should be granted summary judgment.

## ARGUMENT

### I.     HEARST'S NEWS ARTICLE IS A FAIR USE OF THE SNAPSHOT.

#### A.     The Purpose and Character of the Article Strongly Favors Fair Use.

Plaintiff has not created an issue of fact on whether the "purpose and character" of the Article supports fair use.  He ignores that while there is no "blanket immunity" for reporting or comment (Pl. Opp. 15-16), there **is** a "strong presumption" in that the first factor favors a defendant that uses a work for these purposes (Mov. Br. 11-13 & n.6 (citing cases)).  This presumption squarely applies to Hearst's Article, just as it applies to similar news reporting uses. *See, e.g.*, *Video-Cinema Films, Inc. v. CNN, Inc.*, 2001 WL 1518264, at *6 (S.D.N.Y. Nov. 28, 2001).  And even if it did not, this factor would still favor Hearst because Hearst transformed the Snapshot—which Plaintiff admits was taken solely as a memento—into an integral part of its Article about the President's fondness for being photographed at weddings.  (Mov. Br. 15-17.)

Plaintiff's trumped up argument to the contrary is at once inconsistent with his own earlier position, the law, and the facts.  Because his prior argument that an article only transforms an photo where it "offer[s] . . . commentary or critique about the photograph itself" (Pl. Br. 1, 11-14) could not be squared with numerous cases cited by Hearst, Plaintiff now concedes that

articles **can** transform photographs **without** commenting on the photos themselves (*see* Pl. Opp. 20-21).[3]  Now he argues that there is some "bright line" between articles that engage in "editorial commentary" about the subject of a photo (which he agrees can be transformative), and articles that report news about that same depiction (which he contends can never be).  (Pl. Opp. 16-21.)

While Hearst's Article **does** comment on both the Snapshot and President Trump's apparent eagerness to be photographed at his club,[4] there is no legal or logical basis for the line Plaintiff has drawn.  Both commentary and news reporting are classic fair uses named in § 107 (while "opinion" is not), and the case law does not support Plaintiff's false dichotomy.[5]  Instead, the cases cited by both parties make clear that the relevant distinction is ***not*** whether an article uses a photo for commentary or news reporting, but whether the article uses it for a different purpose than that for which it was created.  Thus, in *Barcroft Media Ltd. v. Coed Media Group, LLC* and *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, news uses of photographs "had no transformative effect" because the paparazzi photos at issue were "originally intended to be used" for celebrity reporting and were used by the defendants for that same purpose.  *Barcroft Media*, 2017 WL 5032993, at *6 (S.D.N.Y. Nov. 2, 2017); *BWP Media USA*, 196 F. Supp. 3d

---

[3] Plaintiff cites several cases where the defendant did not provide "editorial commentary" about the photo itself (Pl. Opp. 18), but used the photo alongside commentary about the **subject** of the photo.  *See, e.g., Dhillon v. Does 1-10*, 2014 WL 722592, at *5 (N.D. Cal. Feb. 5, 2014); *Katz v. Google Inc.*, 802 F.3d 1178, 1182-83 (11th Cir. 2015).

[4] Plaintiff's claim to the contrary (Pl. Opp. 18-20) focuses too narrowly on his own view that the Article does not offer an "opinion" about whether the President's actions are good or bad.  Regardless of whether the Article takes a position (and it does have an implicit point of view), it nonetheless ***comments*** on the existence of the Instagram photos within the broader context of the President's peddling of wedding photos, and it used the Snapshot—which depicts the President amid a sea of cameras and appeared on a guest's Instagram—as both illustration and substantiation.  (*See* Compl. Ex. C; Mov. Br. 4-5, 15-17.)  This is no different than the "commentary" at issue in *Nunez v. Caribbean International News Corp.*, 235 F.3d 18, 21-23 (1st Cir. 2000), which used photos to illustrate news articles about the existence of the photos, and which transformed the images because they were not "originally intended to appear . . . in the newspaper."  *Id.* at *22-23.  Nor is it unlike the reporting in *Mathieson v. Associated Press*, 1992 WL 164447, at *1-3 (S.D.N.Y. June 25, 1992), which used a photographic brochure cover to illustrate and substantiate a story about the business advertised by the brochure and the people involved.  (Plaintiff's assertion that the articles in these cases were "opinion" (Pl. Opp. 17) is baseless—*Mathieson* involved a straight news story, and nothing in *Nunez* indicates that the articles were opinion pieces.)

[5] As Plaintiff's misdescriptions of *Nunez* and *Mathieson* highlight, commentary does not always include opinion and is not always distinct from reporting.  (*See supra* n.4.)  Plaintiff's rule would require the Court to draw that distinction and make quality determinations about journalism, which it should be loath to do since the Act does not.

395, 405, 407 (S.D.N.Y. 2016) (similar). But where, as here, the "original intent" behind taking the image has nothing whatsoever to do with news reporting or licensing or any similar or related purpose, using the image for news purposes *is* transformative. (Mov. Br. 14-19 (citing cases).)

Ultimately, Plaintiff resorts to misrepresenting the Sixth Circuit's decision in *Balsley v. LFP, Inc.*, 691 F.3d 747 (6th Cir. 2012), to claim that its holding is directly on point and renders Hearst's Article non-transformative. (Pl. Opp. 21-23.) But the premise of Plaintiff's analysis of that case—that the photograph at issue was, like his Snapshot, "originally intended for personal use" (Pl. Opp. 22)—is incorrect. Although the *Balsley* photographer was (like Plaintiff) an amateur, he took his image for the purpose of publishing it on www.lenshead.com in order to "shock, arouse, and amuse" visitors to the site. *Balsley*, 691 F.3d at 759. The Sixth Circuit held that *Hustler*'s use of the image for the ***exact same*** entertainment purpose was not transformative. *Balsley* is just like *Barcroft*, and says nothing about the facts here, where the Article's news use of the Snapshot is completely unrelated to Plaintiff's original intent in taking the image.

However, there *is* a case where an image originally taken for personal use was later used with magazine reporting, and Plaintiff tellingly fails to discuss it. In *Calkins v. Playboy Enterprises International, Inc.*, 561 F. Supp. 2d 1136 (E.D. Cal. 2008), *Playboy* used a high school image that was created for a personal purpose alongside a magazine profile in order to "inform and entertain" magazine readers. The court found *Playboy*'s use transformative because the photo was "originally created . . . for the limited purpose of being used as a gift by [the subject's] family and friends," and *Playboy*'s entertainment use served a "different function." *Id.* at 1141. That is the case here—Plaintiff took the Snapshot as a personal keepsake, and Hearst transformed it into part of reporting and commentary about the President of the United States.

Finally, Hearst previously explained why Plaintiff's claims about Hearst's for-profit

status and intent are misplaced.  (Mov. Br. 20-23.)  Plaintiff has made no effort to respond to Hearst's arguments and citations on these points, much less cite any binding law himself (Pl. Opp. 24), and his own say-so cannot tilt the first factor in his favor.[6]  Hearst transformed the Snapshot for a classic fair use named in § 107, and this factor supports a finding of fair use.

### B.    The Second Factor Favors Fair Use, and the Third Is (at Worst) Neutral.

On the second factor—the nature of the Snapshot—Plaintiff offers mostly over-the-top rhetoric in lieu of cognizable legal argument.  (Pl. Opp. 25-27.)  He ignores his own testimony (he "just started taking photos" in "burst" mode), as well as the recent cases cited by Hearst, which establish that candid photographs of real events are primarily factual, not creative, and tilt the second factor towards fair use.  (*See* Mov. Br. 24-26.)[7]  Instead, he offers a non sequitur that the Snapshot **must** be creative since Hearst and others published it with news and commentary. (Pl. Opp. 25-26.)  But it is the **facts** depicted in the Snapshot (the President in a mob of cameras), as well as the **fact** that the Snapshot exists, that further Hearst's reporting and comment.

Similarly, Plaintiff's sole argument on the third factor is that (in his view) Hearst's use of the Snapshot was not "necessary" (Pl. Opp. 27-28), but Hearst has already explained why this

---

[6] In his 56.1 response, Plaintiff does bizarrely object to Michael Sebastian's testimony about Hearst's content management system (which Plaintiff argues is related to intent, *see* Pl. Br. 16-18) because the testimony is not "hard evidence."  (ECF No. 72, "Pl. 56.1 Resp." ¶¶ 151-156.)  This implies that there is a difference between well-founded testimony and documentary evidence for purposes of summary judgment, but the case he cites does not so hold—it merely says that actual evidence (as opposed to conclusory allegation or speculation) is required.  *See D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998).  Mr. Sebastian's testimony is based on his personal knowledge, and it would have been in the record earlier if Plaintiff had bothered to depose any Hearst witness.  Moreover, to the extent Plaintiff argues that Hearst should have produced documents showing the substance of Mr. Sebastian's testimony: (a) Mr. Sebastian is describing a computer program and documents explaining its every capability are not generated in the regular course of business; (b) Hearst never agreed to produce documents explaining the capabilities of the program; and (c) Plaintiff never raised any issue about Hearst's document request objections nor its production.

[7] Even while failing to address the cases head-on, Plaintiff does refer to 2015 decisions by the Eleventh Circuit and Judge Ramos—which clearly support Hearst on this factor—as "absurd."  (Pl. Opp. 26.)  Plaintiff does not explain why this is so, but urges the Court to reject these holdings based only on the older *Balsley* opinion.  The Court should not do so as a policy matter (*see* Mov. Br. 26-28), and regardless *Balsley* is inapposite because the court emphasized the photographer's "control over the exposure of the film (i.e., shutter speed and flash settings)," 691 F.3d at 760, whereas here Plaintiff took a hundred photos with no control in his iPhone's "burst" mode.

contention is off-base for multiple reasons, none of which Plaintiff addresses.  (Mov. Br. 29-30.)

### C.    The Complete Absence of Market Harm Strongly Favors Fair Use.

On the final factor, Plaintiff makes only off-base arguments and fails to point to ***any***

evidence that Hearst's Article harmed any market for the Snapshot.  Plaintiff first continues to

claim a presumption (Pl. Opp. 28-29), but *Campbell v. Acuff-Rose Music, Inc.* rejected any

presumption in "a case involving something beyond mere duplication for commercial purposes"

like that described in *Sony*'s dicta.  510 U.S. 569, 584, 591 (1994).[8]  The Article is far more than

this—it is reporting and comment about the President of the United States.  (Mov. Br. 4-5, 15-

17.)  Any other determination would render meaningless *Campbell*'s holding that *Sony* cannot be

read to "elevat[e] commerciality to hard presumptive significance" because if "commerciality

carried presumptive force . . . the presumption would swallow nearly all of the illustrative uses . .

. including news reporting . . . since these activities are generally conducted for profit in this

country."  *Id.* at 585 (citation omitted).  Indeed, it is so clear that there is no presumption in the

news context that most news cases (including those cited by Plaintiff) do not address the issue.[9]

Since there is no presumption, Plaintiff's admission that he never intended to use his

Snapshot in a news or related market ends the inquiry.  (Mov. Br. 32-34.)  Because this factor is

tied closely to copyright's purpose of financially incentivizing creativity, *see Authors Guild v.*

*Google, Inc.*, 804 F.3d 202, 223 (2d Cir. 2015), it looks to whether "the infringer's target

audience . . . is the same as the original," *Cariou v. Prince*, 714 F.3d 694, 709 (2d Cir. 2013), and

there is no cognizable market harm if the defendant's work "filled a market . . . that the plaintiff

simply had no interest in occupying," *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d

---

[8] *Sony* referenced a presumption in the context of commercial sales of VCR recordings—akin to hawking bootleg DVDs today.  *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 448 (1984).

[9] Plaintiff's sole citation to *Balsley* is again misplaced:  the image at issue there was reproduced purely for entertainment, not reporting.  691 F.3d at 755-56, 759-61.  To the extent it conflicts with *Campbell*, it is incorrect.

1366, 1377 (2d Cir. 1993).  Again, Plaintiff disregards these and other cases cited by Hearst and reverts to holding up *Balsley* to claim that his lack of intent to market or even disseminate the Snapshot is irrelevant.  (Pl. Opp. 29-31.)  But this Court cannot rely on *Balsley* instead of the Second Circuit decisions cited by Hearst, nor should it as a matter of policy.[10]  Since Plaintiff never intended to use his work in the news market, he did not need the financial incentive of that market to create the Snapshot, and thus Hearst's use in that unintended market harms neither Plaintiff's finances nor his incentive to create.  (*See* Mov. Br. 34.)

Lastly, Hearst has also already explained why Plaintiff's newfound intent to make money off the Snapshot through litigation is irrelevant, as is the fact that other outlets used the Snapshot *without* a license.  (Mov. Br. 33.)  Neither fact suggests that Plaintiff would have sold licenses to third parties but for Hearst's use.  Plaintiff characteristically has not responded to this point (Pl. Opp. 30), nor has he remedied his failure to put forth *any* evidence at all—such as actual lost licensing opportunities or a market analysis—that Hearst's Article made it unlikely that others would buy a license.  And even if Plaintiff's *ipse dixit* claim of a lost licensing market was sufficient (and it is not), that loss would not be cognizable under the fourth factor due to the transformative nature of Hearst's use.  (*See* Mov. Br. 34-35.)  There is no market harm.

###    D.    Allowing Hearst's Use Will Further the Purpose of Copyright.

Because the unique facts of this case establish that Hearst's use was fair, Plaintiff tries hard to make this case about a general threat to copyright protection for amateur and social media photos.  (*See* Pl. Opp. 21, 26.)  But it is not.  The fair use balance may well be different in other amateur cases—where an iPhone image is creatively staged, for example)—but *this case* is

---

[10] *Balsley* is also off-point because the photo was created for entertainment distribution, and the plaintiff bought the photographer *out* of that market; *Hustler*'s publication of the image undid the benefit of that market transaction. This case contains no similar facts, nor does it raise the privacy issues that animate the entire *Balsley* decision.

about a specific news use of a specific amateur snapshot, which served the public interest
*without* harm to copyright's ultimate purpose as the "engine of free expression." (*See* Mov. Br.
8-10, 26-28, 34-36.) Plaintiff did not require financial incentive to create the Snapshot nor did
he devote his creativity to composing it; he filed this action only because he saw an after-the-fact
opportunity to demand a "cut" of up to $150,000. (*See* Mov. Br. 2-6 (citing facts).) Thus,
Hearst's transformative Article—in a market Plaintiff never intended to occupy—will not chill
Plaintiff or others from taking images for similar purposes or otherwise harm the goals of
copyright. But imposing liability *would*: it would deprive the public of knowledge and
understanding of the actions and proclivities of the President of the United States.

Throughout his many pages of inflamed rhetoric (Pl. Opp. 13-15, 21, 26), Plaintiff makes
only halfhearted attempts to address the policy issue here, all of which continue to overlook the
facts of this case and reveal his true view of the law: that copyright exists as a vehicle for
generating cash windfalls (not creation) and fair use itself is bad policy. He claims that "Hearst
[could have] retain[ed] it [sic] own photographers" and thus rejection of fair use will stimulate
creation by "caus[ing] publishers to independently create their own news content" (Pl. Opp. 14),
but this overlooks that Hearst did not have advance knowledge of or access to the wedding
(Mov. Br. 29 n.26). The implication of Plaintiff's argument is that (contrary to § 107) fair use
has no role in reporting, and the news media cannot report on events when it lacks direct access.
Similarly, Plaintiff argues that it would simply be more "fair to maintain a fully functioning
licensing market for photographs posted to social media" (Pl. Opp. 14-15) (emphasis omitted),
but this is just another way of saying there should not be *any* fair use for social media images.

Finally, and most tellingly, Plaintiff argues that "no reasonable juror, each of whom owns
a smartphone camera, is going to find that Hearst's use was fair" and will "resent Hearst's

position." (Pl. Opp. 13-14, 26-27.) This makes clear that Plaintiff plans to play to the jury's self-interest in making money from their cell phone snapshots, but it has nothing to do with the policy behind copyright, which, again, is intended to "expand public knowledge and understanding" and does not confer "on authors the absolute ownership of their creations." (Mov. Br. 8 (quoting cases).) The Court should enter judgment for Hearst.

## II.    PLAINTIFF CANNOT ESTABLISH WILLFUL INFRINGEMENT.

In attempting to cobble together a case for willfulness, Plaintiff points almost exclusively to the fact that Hearst is a mass media company and has been sued in unrelated infringement cases—just as Hearst predicted he would. (*See* Pl. Opp. 32-34; Mov. Br. 41.) As detailed, these facts alone are insufficient for a reasonable juror to find willfulness; if they were enough, then *every* mass media company would be deemed willful every time. (Mov. Br. 40-42.) None of the cases Plaintiff cites suggests otherwise—in each and every case, there was additional evidence from which the court found that the defendant ignored the plaintiff's *specific* claim to copyright ownership.[11] Plaintiff's rule would also run against virtually every other area of law, in which "willful" and similar standards are well-understood as imposing a significant burden that requires *subjective* evidence of a "bad purpose either to disobey or disregard the law."[12]

---

[11] *Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (defendant failed to appear and defend action); *Viacom Int'l Inc. v. Fanzine Int'l, Inc.*, 2001 WL 930248, at *4 (S.D.N.Y. Aug. 16, 2001) (defendant continued infringement after receiving a cease-and-desist, and had defaulted in a "strikingly similar" action); *Van Der Zee v. Greenidge*, 2006 WL 44020, at *3 (S.D.N.Y. Jan. 6, 2006) (defendants had sought out plaintiff to discuss licensing prior to publication and failed to defend the action); *Castle Rock Entm't v. Carol Publ'g Grp., Inc.*, 955 F. Supp. 260, 267 (S.D.N.Y. 1997) (defendant continued to distribute infringing work at issue "after receiving a specific warning" (citation omitted)); *Walt Disney Co. v. Best*, 1990 WL 144209, at *1-2 (S.D.N.Y. Sept. 26, 1990) (two weeks before infringement began, same plaintiff settled suit with same defendant involving use of the *same* copyrighted character at issue in second case); *EMI Entm't World, Inc. v. Karen Records, Inc.*, 806 F. Supp. 2d 697, 703 (S.D.N.Y. 2011), *vacated on other grounds*, 2013 WL 2480212 (S.D.N.Y. June 10, 2013) (similar); *The Design Tex Grp., Inc. v. U.S. Vinyl Mfg. Corp.*, 2005 WL 2063819, at *1-3 (S.D.N.Y. Aug. 24, 2005) (similar); *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986) (similar).

[12] *Willful*, Black's Law Dictionary, at 1434 (5th ed. 1981); *see also, e.g., Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535-39 (1999) (recklessness is "subjective" standard and requires actions "in the face of a *perceived* risk that its actions will violate federal law"); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (same in criminal law); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 690-93 (1989) (same in defamation).

Recognizing that Hearst's status as a media conglomerate is not enough, Plaintiff grasps at *one* additional fact: that Esquire.com's Digital Director—who did not author the Article—did not personally ask about the Snapshot's copyright. (Pl. Opp. 34-35.) This is another attempt by Plaintiff to improperly draw inferences from the ***absence*** of evidence to meet his burden; it says nothing about the author's efforts, intent, or knowledge. It also presumes that a managing editor has an affirmative duty to inquire about every image published on a site, but Plaintiff has not cited any case that remotely suggests such a duty. And even if the Digital Director ***had*** inquired, there is no evidence he would have learned of Plaintiff's copyright—the Snapshot was sourced from a third party's Instagram, and Hearst credited that source. (Def. 56.1 ¶ 50; Compl. Ex. C.)

In short, this record is devoid of ***both*** direct and circumstantial evidence of Hearst's subjective intent, other than that Hearst is a media company with inherent knowledge of copyright law. This has never been enough, alone, to support a finding of willfulness, and Plaintiff's claim for enhanced statutory damages should be dismissed.[13]

## **CONCLUSION**

For the foregoing reasons and those set forth in Hearst's Moving Brief, this Court should grant Hearst's Motion for Summary Judgment and dismiss this action with prejudice.

---

[13] Plaintiff's additional argument that he has shown a copyright registration for the Snapshot (Pl. Opp. 2-11) continues to ignore that he took many photos of the President at the wedding. (Pl. 56.1 Resp. ¶¶ 116-118.) As a result, it is unclear from the face of his registration certificate whether it covers the Snapshot or some other photo or group of photos, and in this situation, *Louis Paris, Ltd. v. Standard Fabrics, Int'l, Inc.*, 2016 WL 4203548, at *3 (S.D.N.Y. Aug. 8, 2016), makes clear that the Court must look to "other evidence in the record to determine whether [the plaintiff] has met its burden." While Hearst is not objecting to the admissibility of Mr. Liebowitz's declaration on this point, the record contains inconsistencies about the registration that raise questions about the credibility of Mr. Liebowitz's testimony. For instance, Plaintiff now claims that his registration is for "a single photograph" (Pl. Opp. 8), but he previously testified that it was a group registration (Bishop Decl. Ex. A at 53:2-54:9, 57:16-20). In addition, the version of the Snapshot that Mr. Liebowitz claims was submitted for registration (April 23, 2018 Decl. of Richard P. Liebowitz (ECF No. 71) ¶ 4 & Ex. A) is ***not*** the same version of the Snapshot that Plaintiff otherwise distributed (Def. 56.1 ¶¶ 37, 42). There also remain material issues of fact on Hearst's waiver and consent defense: Plaintiff admits to having granted unrestricted permission to Sean Burke to use the Snapshot, and having done so, it is ***his*** burden to prove that the scope of that grant did not include a right to further disseminate the Snapshot to others. *See Smith v. Barnesandnoble.com, LLC*, 839 F.3d 163, 167 (2d Cir. 2016).

Dated: May 7, 2018                    Respectfully submitted,
      New York, New York

/s/ Jennifer D. Bishop
Jonathan R. Donnellan
Ravi V. Sitwala
Jennifer D. Bishop
The Hearst Corporation
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
jdonnellan@hearst.com
rsitwala@hearst.com
jbishop@hearst.com

*Counsel for Defendant Hearst
Communications, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on May 7, 2018.

/s/ Jennifer D. Bishop
Jennifer D. Bishop