IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN OTTO,<br><br>      Plaintiff,<br><br>v.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>      Defendant. | C.A. No. 1:17-cv-04712-GHW |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF
FROM CALLING EVE BURTON AS A WITNESS AT TRIAL**

Jonathan R. Donnellan
Ravi V. Sitwala
Nathaniel S. Boyer
THE HEARST CORPORATION
  Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
jdonnellan@hearst.com
rsitwala@hearst.com
nathaniel.boyer@hearst.com

*Counsel for Defendant
Hearst Communications, Inc.*

Pursuant to Rule 5.B.i of the Court's Individual Rules of Practice in Civil Cases, Defendant Hearst Communications, Inc. ("Hearst") respectfully submits this memorandum of law in support of its motion *in limine* for an order precluding Plaintiff Jonathan Otto from calling Eve Burton, a senior executive with the Hearst Corporation who lacks any relevant knowledge, as a witness at the parties' upcoming bench trial on damages, pursuant to Fed. R. Evid. 401, 403, 611, and the Court's inherent authority (the "Motion").

Ms. Burton is a Senior Vice President and the Chief Legal Officer of the Hearst Corporation. Ms. Burton's name does not appear on, and she is not referenced in, a single document that has been produced in this case. She has not been deposed in this case. Indeed, Plaintiff did not take *any* depositions of *anyone*, not even Hearst by Rule 30(b)(6). Nonetheless, Plaintiff Jonathan Otto has added Ms. Burton's name to his list of trial witnesses so that he can question her about "Heart's [*sic*] policies and practices for training its supervising editors, staff journalists and independent contractors in legal matters relating to licensing of photographs, including the determination as to whether uses of photographs constitute fair use under 17 U.S.C. § 107" (the "Copyright Training Program"). Doc. No. 102, at 9. However, Ms. Burton has no relevant knowledge concerning the Copyright Training Program, and Hearst has already submitted direct testimony from other witnesses who *do* have direct knowledge.

Plaintiff's insistence on calling Ms. Burton is a transparent attempt to compel Hearst to voluntarily identify and produce some other witness, the identity of which Plaintiff neglected to learn during discovery. This is apparent from Plaintiff's statement on his witness list that he is "amenable" to an "alternate witness." *Id*. The Court should not countenance Plaintiff's proposed end-run-around the discovery period and process by naming an apex witness without direct knowledge, in the hopes of getting another. In any event, Hearst has already produced an

"alternate witness" with direct knowledge of the Copyright Training Program: namely, the Vice President of Content with Hearst Magazines Digital Media ("HMDM"), Brooke Siegel, whose declaration was submitted to the Court on May 13. For each of these reasons and those set forth below, the Court should grant this Motion and preclude Plaintiff from calling Ms. Burton as a witness.

## ARGUMENT
## THE COURT SHOULD PRECLUDE PLAINTIFF
## FROM CALLING EVE BURTON AS A WITNESS

### A. The Court Should Exclude Irrelevant and Duplicative Testimony, Particularly of Apex Witnesses Who Had No Involvement in Any Matters that Are Relevant to the Issues at Trial.

To be relevant and thus admissible, evidence must have "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401, 402. In other words, to be relevant, "(1) [t]he evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007) (citation omitted). Otherwise relevant evidence under Rule 402 may still be excluded under Rule 403 when its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, . . . undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[P]robative value," per Rule 403, may be "calculated by comparing evidentiary alternatives." *Old Chief v. United States*, 519 U.S. 172, 184 (1997).

In addition, the Court "should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or

undue embarrassment." Fed. R. Evid. 611(a). "[E]xercis[ing] reasonable control over the mode and order" of the examination of witnesses includes the power to preclude witnesses from testifying at trial. *See In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 776 F. Supp. 838, 839 (S.D.N.Y. 1991); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("This Court has also held that district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."); *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 456 n.12 (2d Cir. 1995) (referring to the district court's "inherent power to deal with abusive litigation practices in their courtrooms").

Courts are rightly wary of permitting parties to call "apex" witnesses as trial witnesses where, as here, discovery has not established that they have any knowledge that is relevant to the issues in the case.[1] In *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, this Court granted a motion *in limine* to preclude plaintiffs from calling Moody's CEO as a trial witness where the plaintiffs failed to "renew their request to depose" the CEO. No. 08 CIV. 7508 SAS, 2013 WL 1155420, at *4-5, 10 (S.D.N.Y. Mar. 20, 2013) (granting motion subject to defendants stipulating to certain non-controversial facts). The Court would "not require [the CEO] to appear in light of plaintiffs' failure to renew their request to depose him, his 'apex' witness status, and

---

[1] This is a reference to the "apex witness doctrine," pursuant to which "courts give special scrutiny to requests to depose high-ranking corporate and governmental officials" "[b]ecause of the possibility of business disruption and the potential for harassment." *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK JCF, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013); *see also In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, No. MDL 1428(SAS)THK, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006) ("Courts disfavor requiring the depositions of senior executives unless they have personal knowledge of relevant facts or some unique knowledge that is relevant to the action."). Although the doctrine is a product of Federal Rule of Civil Procedure 26 and it primarily concerns the conduct of discovery, the underlying concerns are relevant to the issues presented here because Plaintiff, by naming Ms. Burton as a trial witness and expressing that he is "amenable" to an "alternate witness," is seeking to discover the identity of persons with knowledge as he might have done (but did not do) by interrogatories or a deposition.

3

the absence of any evidence of direct knowledge regarding the falsity statements at issue in this case." *Id.* Similarly, where a court had previously "denied plaintiff's motion to compel the deposition of" a company's chief operating officer, that court granted a motion *in limine* to preclude other high-level executives from being called at trial. *See Rookaird v. Bnsf Ry. Co.*, No. C14-176RSL, 2016 WL 1258388, at *5 (W.D. Wash. Mar. 31, 2016). As the court explained, its "rationale" underlying denying the motion to compel deposition testimony applied equally to plaintiff's efforts to compel other high-level executives "to testify at trial." *Id.*

### B. In Identifying Eve Burton as a Witness, Plaintiff Is Seeking Duplicative Testimony from a Senior Executive Who Has No Relevant Knowledge of the Facts.

Plaintiff seeks to call Eve Burton as a witness to testify regarding Hearst's Copyright Training Program. Doc. No. 102, at 9. Plaintiff has no reason to believe that Ms. Burton has any direct knowledge of relevant facts. Ms. Burton's name has not surfaced once during discovery in this case. There have been no documents produced in this case suggesting that Ms. Burton is aware of (let alone involved in) Hearst's Copyright Training Program. Plaintiff did not take a single deposition of any witness in this case, much less Eve Burton herself,[2] or anyone who is named Eve Burton. Hearst has not named Eve Burton in its initial disclosures, discovery responses, trial witness list, or other trial materials. In short, Eve Burton has been completely absent from this case until Plaintiff included her on his trial witness list.

Had Plaintiff taken any depositions and asked about Ms. Burton's knowledge, he would have learned what Hearst hereby proffers to the Court: Ms. Burton has no direct knowledge of

---

[2] This is to not suggest that it would have been appropriate for Plaintiff to notice Ms. Burton's deposition in this case. For the reasons explained in this Motion, she lacks any specific knowledge, and any deposition notice for Ms. Burton would have been met with a motion for a protective order because she is an apex witness who lacks knowledge of any relevant facts. *See supra* p.3 n.1.

4

Hearst's "policies and practices for training its supervising editors, staff journalists and independent contractors in legal matters relating to licensing of photographs, including the determination as to whether uses of photographs constitute fair use under 17 U.S.C. § 107." Doc. No. 102, at 9.  As a Senior Vice President and the Chief Legal Officer for all of the Hearst Corporation, Ms. Burton is one of the 15 most senior executives for Hearst and all of its affiliates.  She has responsibility for more than 360 global businesses ranging from medical information and services businesses, to financial services publishers like Fitch Ratings, to transportation technology service solutions, to Hearst's more traditional media businesses, such as the HMDM division.

Given her position, it is not surprising that Ms. Burton does not lead copyright training sessions with HMDM staff, qualified as she may be to do so; that she does not attend such training sessions; that she is not familiar with the (privileged) substance of those trainings; and that, to the extent Ms. Burton knows that the training sessions occur, it is because she learned about it through likely privileged conversations with attorneys who report to her (who in turn may only know about it from attorneys who report to them).  For the same reason, editorial staff would not call or contact Ms. Burton with questions concerning the use of a photograph or video in a news article; although, if they did, Ms. Burton would certainly respond and put them in touch with an attorney in the Office of General Counsel.³  Calling Hearst's Senior Vice President and Chief Legal Officer to this trial—which concerns only the damages to which Plaintiff is

---

³ If a more formal representation concerning Ms. Burton's lack of knowledge would satisfy the Court, Hearst's counsel is prepared to stipulate to the foregoing facts on the record at trial. *See Abu Dhabi Commercial Bank*, 2013 WL 1155420, at *4-5, 10 (granting motion subject to defendants stipulating to certain non-controversial facts).

5

entitled for Hearst's use of a single photograph on a web-only article—is a waste of resources that will not yield in any probative testimony.

Even if Ms. Burton had any first-hand knowledge of Hearst's Copyright Training Program—and she does not—her testimony would be duplicative of, and no more informative than, the testimony that Hearst has already submitted from Ms. Siegel.  Ms. Siegel testifies that she has "engaged Hearst's Office of General Counsel . . . to provide [HMDM's] editors with copyright training sessions."  Siegel Decl. ¶ 11.  She goes on to explain that these sessions, which are subject to the attorney-client privilege, run for 90-120 minutes; are provided "on a rolling and routine basis"; and concern "subjects of copyright authorship and ownership, the licensing of copyrighted content, and fair use."  *Id.* ¶¶ 11, 12.  Plaintiff may examine Ms. Siegel at trial for further non-privileged information on this topic, and doing so would be much more informative than anything he may learn from Ms. Burton about the Copyright Training Program.  Plaintiff may also examine Michael Sebastian, the Digital Director for Esquire.com, regarding his experience attending "numerous" copyright training sessions while at Hearst, to the extent the questions do not call for privileged communications.  Sebastian Decl. ¶ 4.

    **C.**    **The Court Should Not Reward Plaintiff for Doing Nothing Throughout Discovery, and then Using Senior Executives as Bargaining Chips to Compel Hearst to Nominate Witnesses with Knowledge.**

Hearst expects Plaintiff to respond by arguing that, in lieu of calling Ms. Burton, Hearst should be compelled to identify and produce an "alternate witness" who is "a member of Hearst's in-house legal department and has knowledge of Heart's [*sic*] policies and practices as they existed in July 2017 for training its supervisors, staff journalists and independent contractors who post photographs to Hearst-operated websites."  Doc. No. 102, at 9.  As an initial matter, Hearst has already "identified" an "alternate witness" in Ms. Siegel.  Although not a lawyer, Ms.

Siegel has competently testified to these matters through her declaration.[4]  To the extent Plaintiff wants to examine a witness about Hearst's Copyright Training Program, he can ask Ms. Siegel (and Mr. Sebastian) about it at trial.  Hearst is not hiding the ball; it has a compelling story to tell, and Ms. Siegel and Mr. Sebastian are telling it.

But there is a bigger point here, and it is about Plaintiff's tactics.  Plaintiff is using the threat of calling Ms. Burton to the stand as a bargaining chip to obtain something he is not entitled to learn at this late stage.[5]  Plaintiff's proposal is that, unless Hearst provides Plaintiff with the name of an attorney with relevant knowledge—*i.e.*, information Plaintiff declined to learn during discovery through interrogatories or a deposition—then he will subject a senior executive for the entire Hearst Corporation to needless questioning at trial.  The joint pre-trial order is not a discovery device; Hearst declines to indulge Plaintiff's untimely discovery demand; and the Court should not approve of Plaintiff's tactic by compelling Hearst to produce some other witness in lieu of Ms. Burton.

---

[4]   If Plaintiff were to call a Hearst attorney as a witness, Plaintiff clearly would not be entitled to learn about legal advice or opinions covered by the attorney-client privilege that are shared at these training sessions.  Thus, an attorney is in no better position to speak to the Copyright Training Program than is Ms. Siegel, and Plaintiff is not prejudiced by not questioning an attorney about the same matters.

[5]   In a draft of the parties' proposed joint pre-trial order, Plaintiff also identified Hearst's Chief Financial Officer, Mitchell Scherzer, as a witness, with the same footnote that Plaintiff would be "amenable" to an "alternate witness."  Although Plaintiff dropped Mr. Scherzer from the witness list prior to the joint pre-trial order being filed, it is another instance of Plaintiff employing this tactic.

## **CONCLUSION**

For the foregoing reasons, the Motion should be granted.

Dated: May 20, 2019  
     New York, New York

Respectfully submitted,

 /s/ Nathaniel S. Boyer  
Jonathan R. Donnellan  
Ravi V. Sitwala  
Nathaniel S. Boyer  
The Hearst Corporation  
Office of General Counsel  
300 West 57th Street, 40th Floor  
New York, NY 10019  
Tel: (212) 841-7000  
Fax: (212) 554-7000  
jdonnellan@hearst.com  
rsitwala@hearst.com  
nathaniel.boyer@hearst.com

*Counsel for Defendant*  
*Hearst Communications, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on May 20, 2019.

                                                                               /s/ Nathaniel S. Boyer
                                                                               Nathaniel S. Boyer