UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN OTTO,

                Plaintiff,

- against -

HEARST COMMUNICATIONS, INC.

                Defendant.

Docket No. 1:17-cv-04712 (GHW)

ECF CASE

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE THE
LIVE TESTIMONY OF EVE BURTON</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii
INTRODUCTION .............................................................................................................. 1
LEGAL STANDARD ......................................................................................................... 2
ARGUMENT ...................................................................................................................... 2

POINT I:   MS. BURTON'S TESTIMONY IS RELEVANT TO THE ISSUE OF
           WILLFULNESS AND STATUTORY DAMAGES .................................... 2

POINT II:  HEARST HAS FAILED TO DEMONSTRATE THAT MS. BURTON'S
           TESTIMONY WOULD BE PREJUDICIAL, CONFUSING OR NEEDLESSLY
           CUMULATIVE ............................................................................................ 4

POINT III: PLAINTIFF IS ENTITLED TO CROSS-EXAMINE MS. BURTON EVEN IF SHE
           IS A SO-CALLED "APEX WITNESS" TO PROBE HER KNOWLEDGE (OR
           LACK THEREOF) ....................................................................................... 6

CONCLUSION .................................................................................................................. 8

# TABLE OF AUTHORITIES

**CASES**

*Alliance Industries, Inc. v. Lonqyear Holding, Inc.,*
  No. 08CV490S, 2010 WL 4323071, at *4 (W.D.N.Y. March 10, 2010) ------------------------ 6

*Barcroft Media, Ltd. v. Coed Media Grp., LLC,*
  297 F. Supp. 3d 339, 358 (S.D.N.Y. 2017) ----------------------------------------------------- 3

*Chevron Corp. v. Donziger,*
  No. 11 CIV. 0691 LAK JCF, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) ---------------- 7

*Highland Capital Mgmt., L.P., v. Schneider, et al.,*
  551 F.Supp.2d 173, 176 (S.D.N.Y.2008) ------------------------------------------------------- 2

*In re Deposition Subpoenas of David Garlock,*
  463 F.Supp.2d 478, 481 (S.D.N.Y.2006) ------------------------------------------------------- 7

*In re Ski Train Fire of Nov. 11, 2000 Kaprun, Austria,*
  No. MDL 1428, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006) -------------------------- 6

*Island Intellectual Prop. LLC v. Deutsche Bank AG,*
  No. 09 CIV. 2675(KBF), 2012 WL 526722, at *3 (S.D.N.Y. Feb. 14, 2012) -------------------- 2

*Mango v. BuzzFeed, Inc.,*
  316 F. Supp. 3d 811, 815 (S.D.N.Y. 2018) ----------------------------------------------------- 3

*Mango v. BuzzFeed, Inc.,*
  356 F. Supp. 3d 368 (S.D.N.Y. 2019) ---------------------------------------------------------- 4

*Naftchi v. New York University Medical Center,*
  172 F.R.D. 130, 132 (S.D.N.Y.1997) ----------------------------------------------------------- 4

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.,*
  937 F.Supp. 276, 287 (S.D.N.Y.1996) --------------------------------------------------------- 2

*Oracle USA, Inc. v. Rimini St., Inc.,*
  No. 2:10-CV-00106-LRH, 2015 WL 5176582, at *5 (D. Nev. Sept. 3, 2015) ------------------- 3

*Palmieri v. Defaria,*
  88 F.3d 136, 141 (2d Cir.1996) ---------------------------------------------------------------- 2

*Perfect 10, Inc. v. Giganews, Inc.,*
  No. CV 11-07098-AB (SHX), 2014 WL 12597433, at *4 (C.D. Cal. Oct. 31, 2014) ------------ 3

*Psihoyos v. John Wiley & Sons, Inc.*,
   No. 11-CV-1416, 2012 WL 5506121, at *4 (S.D.N.Y. Nov. 7, 2012), *aff'd*, 748 F.3d 120 (2d Cir. 2014) -------------------------------------------------------------------------------------- 3

*Sharkey v. J.P. Morgan Chase & Co.*,
   No. 10 CIV. 3824, 2017 WL 374735, at *1 (S.D.N.Y. Jan. 26, 2017) --------------------------- 2

*Treppel v. Biovail Corp.*,
   No. 03 Civ. 3002, 2006 WL 468314, at *1–2 (S.D.N.Y. Feb. 28, 2006) -------------------------- 6

*U.S. Media Corp. v. Edde Entm't Corp.*,
   No. 94 CIV. 4849(MBM)MHD, 1998 WL 401532, at *20 (S.D.N.Y. July 17, 1998) ----------- 3

*United States v. Myers (In re Nat'l Broadcasting Co.)*,
   635 F.2d 945, 952 (2d Cir. 1980) ------------------------------------------------------------------ 2

*Viacom Intern., Inc. v. YouTube, Inc.*,
   676 F.3d 19, 35 (2012) ------------------------------------------------------------------------------ 4

<u>RULES</u>

Fed.R.Evid. 401, 403, 611 ---------------------------------------------------------------------- passim

Plaintiff Jonathan Otto ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant Hearst Communications, Inc. ("Defendant" or "Hearst")'s motion in limine.

**INTRODUCTION**

Defendant's motion in limine seeks to preclude live trial testimony of Eve Burton, Defendant's Chief Legal Officer who has direct supervision over Jonathan Donnellan, lead defense counsel for Hearst in this action. According to Defendant's public-facing website, [www.hearst.com](www.hearst.com), Ms. Burton "has overall responsibility of day-to-day management for the Office of General Counsel, which provides legal services to all of Hearst's businesses around the world." Rules 401, 403 and 611 of the Federal Rules of Evidence provide the basis for Defendant's motion in limine to preclude Ms. Burton's testimony.

As a matter of law, Ms. Burton's testimony concerning Hearst's policies and practices for licensing intellectual property is relevant to the issue of willfulness and statutory damages. Hearst has not cited to any authority which holds otherwise. Moreover, as the head lawyer in charge of supervising the "day-to-day management" of Hearst's legal department, Ms. Burton is uniquely situated to testify as to Heart's policies for licensing third-party content and for claiming privilege under the fair use doctrine. Ms. Burton is also equipped to testify as to Hearst's track record for being sued for copyright infringement, as she directly supervises lead defense counsel in this action. Finally, Heart's attempt to invoke the "apex witness doctrine" is futile. Ms. Burton is not the CEO of Hearst or some random senior executive removed from the locus of facts in this case. To the contrary, she is the one lawyer in charge of managing the daily operations of Hearst's in-house legal department, which is the only department capable of regulating Hearst's policies and standards for licensing of intellectual property.

1

**LEGAL STANDARD**

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir.1996) (internal quotation marks omitted); *accord Highland Capital Mgmt., L.P., v. Schneider, et al.,* 551 F.Supp.2d 173, 176 (S.D.N.Y.2008).

"In its role as gatekeeper, [the] court must balance a number of competing considerations, including relevance, probative value, unfair prejudice and confusion of the issues." *Island Intellectual Prop. LLC v. Deutsche Bank AG,* No. 09 CIV. 2675(KBF), 2012 WL 526722, at *3 (S.D.N.Y. Feb. 14, 2012) (citing Fed.R.Evid. 401, 402, 403). However, evidence should not be excluded on a motion *in limine* unless such evidence is "clearly inadmissible on all potential grounds." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.,* 937 F.Supp. 276, 287 (S.D.N.Y.1996) (citation omitted). Moreover, the Second Circuit has a "presumption of access" to live witnesses. *Sharkey v. J.P. Morgan Chase & Co.*, No. 10 CIV. 3824, 2017 WL 374735, at *1 (S.D.N.Y. Jan. 26, 2017). Indeed, this presumption is "especially strong" requiring "extraordinary circumstances to justify restrictions." *United States v. Myers* (*In re Nat'l Broadcasting Co.*), 635 F.2d 945, 952 (2d Cir. 1980).

**ARGUMENT**

**POINT I:** **MS. BURTON'S TESTIMONY IS RELEVANT TO THE ISSUE OF WILLFULNESS AND STATUTORY DAMAGES**

Under Federal Rule of Evidence 401, testimony is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401.

"[C]ourts consistently consider testimony about a company's pre- and post-infringement practices and training programs in assessing whether the unlicensed publication of a photograph was willful." *Mango v. BuzzFeed, Inc.*, 316 F. Supp. 3d 811, 815 (S.D.N.Y. 2018) (citing *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 358 (S.D.N.Y. 2017)) (stating that the defendant's culpability was diminished for purposes of a statutory damages inquiry because several "witnesses testified about practices the company has put into place recently to ensure that content on its websites is properly licensed"); *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-CV-1416, 2012 WL 5506121, at *4 (S.D.N.Y. Nov. 7, 2012), aff'd, 748 F.3d 120 (2d Cir. 2014) (describing evidence relevant to the court's statutory damages determination to include evidence that the infringer "had failed to adopt copyright compliance policies").[1]

As a matter of law, Ms. Burton's testimony is relevant to the issue of willfulness (and therefore the calculation of statutory damages). Here, Hearst does not dispute that issues pertaining to Hearst's policies and practices are relevant to the issue of willfulness. Hearst only disputes whether Ms. Burton has knowledge of such practices. [Dkt. # 107, p. 2 of 10 ("Ms.

---

[1] *See also U.S. Media Corp. v. Edde Entm't Corp.*, No. 94 CIV. 4849(MBM)MHD, 1998 WL 401532, at *20 (S.D.N.Y. July 17, 1998) ("For reasons noted, we conclude that Edde and its officers acted willfully in infringing plaintiff's copyrights. Moreover, since they have explicitly adopted a policy that treats such infringements of unregistered copyrights as a standard business practice, we infer that they have made a rational calculation that it is more profitable for them to proceed in this way than to avoid copyrighted films or to pay for a license. The size of a statutory award must necessarily take this deliberation into consideration in determining whether a given award for the one film will serve as a deterrent to future misconduct of this sort by Edde and by others in the business who may seek to pursue a similar course."); *Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-CV-00106-LRH, 2015 WL 5176582, at *5 (D. Nev. Sept. 3, 2015) ("the court finds that Hilliard's testimony about industry standards, customs, and practice is relevant to Oracle's claims for punitive damages and willful infringement"); *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHX), 2014 WL 12597433, at *4 (C.D. Cal. Oct. 31, 2014) (existence of defendant's past infringement actions may be "relevant to show that Defendants had a pattern or practice of being 'willfully blind' to numerous 'red flags' of the *specific acts of infringement at issue in this case."*).

Burton has no relevant knowledge concerning the Copyright Training Program, …")]  But Hearst publicizes Ms. Burton as the attorney who "has overall responsibility of day-to-day management for the Office of General Counsel." *See* https://www.hearst.com/about/bios/eve-burton.

It strains credulity for Hearst to argue that Ms. Burton has no knowledge of Hearst's licensing practices when she manages the day-to-day affairs of Hearst's legal department. Indeed, such a statement, if true, is itself an admission of willful blindness.  *Viacom Intern., Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2012) ("A person is 'willfully blind' or engages in 'conscious avoidance' amounting to knowledge where the person 'was aware of a high probability of the fact in dispute and consciously avoided confirming that fact.'")  Plaintiff should therefore have the opportunity to examine what Hearst's lawyer-in-charge knows (or doesn't know) about Hearst's compliance policies.  *See Naftchi v. New York University Medical Center,* 172 F.R.D. 130, 132 (S.D.N.Y.1997) ("Nor . . . does it matter that the proposed witness . . . professes lack of knowledge of the matters at issue, as the party seeking discovery is entitled to test the asserted lack of knowledge.").  And the fact that Plaintiff did not depose Ms. Burton during discovery should not preclude Otto from calling Ms. Burton as a live witness at trial.[2]

In short, Hearst has failed to demonstrate that Ms. Burton's testimony should be preluded pursuant to Fed.R.Evid. 401.

**POINT II:** **HEARST HAS FAILED TO DEMONSTRATE THAT MS. BURTON'S TESTIMONY WOULD BE PREJUDICIAL, CONFUSING OR NEEDLESSLY CUMULATIVE**

---

[2] Indeed, Plaintiff's counsel did not take any depositions in the case of *Mango v. Buzzfeed* and still managed to prove willfulness at trial after cross-examining Buzzfeed's in-house counsel about Buzzfeed's compliance policies. *Mango v. BuzzFeed, Inc.,* 356 F. Supp. 3d 368 (S.D.N.Y. 2019).

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403. Hearst has failed to demonstrate how Ms. Burton's testimony would unfairly prejudice Hearst, confuse the issues or constitute needlessly cumulative testimony.

First, Hearst does not argue that Ms. Burton's testimony would be unfairly prejudicial to Hearst. Instead, it argues that "Plaintiff is not prejudiced by not questioning an attorney about the same matters [as a non-lawyer]" [Dkt. # 107, p. 8 of 10, fn. 4] Contrary to Hearst's analysis, Plaintiff will be prejudiced by the preclusion of Ms. Burton's testimony as she is uniquely qualified to testify regarding Hearst's policies of compliance with U.S. copyright law (or lack thereof). In any event, the analysis under Fed.R.Evid. 403 is the prejudice to be suffered *by Hearst*, which has failed to identify any factors that would subject it to prejudice on account of Ms. Burton's appearance at trial.

Second, Hearst does not argue that Ms. Burton's testimony would cause confusion of the issues. This is because Ms. Burton's testimony will undoubtedly provide *clarity* of the issues and allow the Court to obtain a full picture of how Hearst manages its licensing practices.

Third, Hearst's contention that Ms. Burton's testimony would be needlessly cumulative is unavailing. Hearst argues that it has already proffered a non-lawyer witness, Brooke Siegel, to testify about Hearst's licensing and compliance programs. But the Court is not going to have the full picture of Hearst's internal copyright policies without testimony from a member of Hearst's legal department. Siegel's testimony will only provide half of the equation. Any decisions made by non-lawyers at Hearst, i.e. Siegel, respecting licensing practices are ultimately regulated by

5

Hearst's lawyers who are in the best position to educate journalists about U.S. copyright law and the fair use doctrine.

**POINT III: PLAINTIFF IS ENTITLED TO CROSS-EXAMINE MS. BURTON EVEN IF SHE IS A SO-CALLED "APEX WITNESS" TO PROBE HER KNOWLEDGE (OR LACK THEREOF)**

Finally, Hearst has failed to demonstrate that Ms. Burton's testimony should be precluded under Rule 611 of the Federal Rules of Evidence which allows the Court to preclude testimony "to avoid wasting time" and to "protect witnesses from harassment or undue embarrassment." Fed.R.Evid. 611(a).

Hearst argues that the Court should preclude Ms. Burton's testimony under Fed.R.Evid. 611 because she is a high-ranking corporate officer who should therefore be shielded from examination. Courts do give special scrutiny to requests to depose high-ranking corporate and governmental officials, who are sometimes referred to as "apex witnesses." *See Alliance Industries, Inc. v. Lonqyear Holding, Inc.,* No. 08CV490S, 2010 WL 4323071, at *4 (W.D.N.Y. March 10, 2010); *In re Ski Train Fire of Nov. 11, 2000 Kaprun, Austria,* No. MDL 1428, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006) ("Courts disfavor requiring the depositions of senior executives unless they have personal knowledge of relevant facts or some unique knowledge that is relevant to the action."); *Treppel v. Biovail Corp.,* No. 03 Civ. 3002, 2006 WL 468314, at *1–2 (S.D.N.Y. Feb. 28, 2006).[3]

"However, senior executives are not exempt from deposition, and, because principles relating to apex witnesses are in tension with the broad availability of discovery . . . it is important to excuse a witness from giving testimony only in compelling circumstances."

---

[3] Hearst has failed to cite any authority for the proposition that the "apex witness" doctrine applies to trial testimony, as opposed to depositions.

*Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK JCF, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) (citing *In re Deposition Subpoenas of David Garlock,* 463 F.Supp.2d 478, 481 (S.D.N.Y.2006) ("We begin with the proposition that plaintiffs have no burden to show that the deponents have any relevant knowledge."); *Naftchi,* 172 F.R.D. at 132 ("[I]t is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition. Nor, in ordinary circumstances, does it matter that the proposed witness is a busy person or professes lack of knowledge of the matters at issue, as the party seeking discovery is entitled to test the asserted lack of knowledge." (internal citations omitted)).

As such, the mere fact that Ms. Burton is a high-ranking lawyer at Hearst does not, in and of itself, support preclusion. If anything, her high-ranking status will help the Court to understand how the photograph at issue in this litigation was simply poached from Instagram with no effort made to determine the rightful copyright owner. Indeed, Rule 611 actually supports Plaintiff's position because Ms. Burton's testimony will be integral to "determining the truth." Fed.R.Evid. 611(a)(1).

In sum, as the lawyer in charge of day-to-day management for the Office of General Counsel, Ms. Burton is ideally situated to provide testimony concerning Hearst's best practices for licensing third-party photographic content, including how Hearst instructs its employees (and freelancers) to obtain legal permission to republish such content on Hearst's commercial websites. As the head lawyer in charge, Ms. Burton must have presumptive knowledge of Hearst's standards, practices, and training programs relating to the licensing or sourcing of third-party photographic content. And if she remains oblivious to Hearst's policies respecting U.S. copyright law, then such lack of knowledge should be examined as relevant to the analysis of willful blindness.

7

Ms. Burton will also know how Hearst's legal department interfaces with supervising editors (or "top editors") in designing the content management system ("CMS"), the software interface which constructs news articles and tracks Hearst's publication of copyrighted materials. And she will also know about Hearst's track record of being sued for copyright infringement and what Hearst has done in response to bring its operation into compliance with federal law.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court DENY Defendant's motion in limine.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

**/jameshfreeman/**
Richard Liebowitz
James H. Freeman, Esq.
11 Sunrise Plaza, Ste. 305
Valley Stream, NY 11580

*Counsel for Plaintiff Jonathan Otto*
