IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN OTTO,<br><br>　　　　Plaintiff,<br><br>v.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>　　　　Defendant. | C.A. No. 1:17-cv-04712-GHW |

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT
OF ITS MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF
FROM CALLING EVE BURTON AS A WITNESS AT TRIAL**

Jonathan R. Donnellan
Ravi V. Sitwala
Nathaniel S. Boyer
THE HEARST CORPORATION
　Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
jdonnellan@hearst.com
rsitwala@hearst.com
nathaniel.boyer@hearst.com

*Counsel for Defendant
Hearst Communications, Inc.*

Pursuant to Rule 5.B.i of the Court's Individual Rules of Practice in Civil Cases, Hearst respectfully submits this reply memorandum of law in further support of its motion *in limine* for an order precluding Plaintiff Jonathan Otto from calling Eve Burton as a witness at the parties' upcoming bench trial on damages, and in response to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion *in Limine* to Preclude the Live Testimony of Eve Burton, ECF No. 116 (the "Opposition" or "Opp.").[1]  Nothing in Plaintiff's Opposition casts doubt on the fact that Ms. Burton has no relevant knowledge concerning the Copyright Training Program, and Plaintiff ignores the precedent instructing that a party should be precluded from calling an apex witness at trial where nothing in discovery suggests that the witness has any relevant knowledge.

**ARGUMENT**
**THE COURT SHOULD PRECLUDE PLAINTIFF**
**FROM CALLING EVE BURTON AS A WITNESS**

**A.     Plaintiff Ignores Precedent Instructing that a Party Should Be Precluded from Calling an Apex Witness Where Discovery Has Failed to Establish that Her Testimony Would Be Relevant.**

As Hearst explained in its Opening Brief, the Court can and should exercise control over the manner and mode of the examination of witnesses by precluding Plaintiff from calling witnesses whose testimony would have no probative value.  Opening Br. at 2-3 (citing Fed. R. Evid. 401, 402, 403, 611(a), and cases).  Specifically, the Court should not permit Plaintiff to call an "apex" witness at trial where, as here, discovery has not established that the witness has any knowledge that is relevant to the issues in the case.  *See* Opening Br. at 3-4 (citing *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 CIV. 7508 SAS, 2013 WL 1155420, at *4-5,

---

[1]     Except as defined in this memorandum, all defined terms have the same definition as in Hearst's opening Memorandum of Law in Support of Its Motion *in Limine* to Preclude Plaintiff from Calling Eve Burton as a Witness at Trial, ECF. No. 107 ("Opening Brief" or "Opening Br.").

1

10 (S.D.N.Y. Mar. 20, 2013) (granting motion *in limine* to preclude plaintiff from calling company CEO "in light of plaintiffs' failure to renew their request to depose him, his 'apex' witness status, and the absence of any evidence of direct knowledge regarding the falsity statements at issue in this case"); *Rookaird v. Bnsf Ry. Co.*, No. C14-176RSL, 2016 WL 1258388, at *5 (W.D. Wash. Mar. 31, 2016) (where court had previously "denied plaintiff's motion to compel the deposition of" a company's chief operating officer, granting motion *in limine* to preclude other high-level executives from being called at trial).

In his Opposition, Plaintiff neither cites nor responds to this highly instructive precedent. As in *Abu Dhabi Commercial Bank* and *Rookaird*, Plaintiff is seeking to examine a high-ranking corporate executive, Eve Burton, even though Plaintiff cannot point to (i) a single document that has been produced in this case that even references Ms. Burton, or (ii) any deposition testimony at which Ms. Burton was mentioned at all, let alone identified as a person with knowledge of the Copyright Training Program. In both *Abu Dhabi Commercial Bank* and *Rookaird*, the Court granted motions *in limine* to preclude such apex witness trial testimony. The same outcome should follow here.[2]

---

[2] Plaintiff cites two cases that, he contends, support a "'presumption of access' to live witnesses." Opp. Br. at 2 (citing *Sharkey v. J.P. Morgan Chase & Co.*, No. 10-cv-3824, 2017 WL 374735, at *1 (S.D.N.Y. Jan. 26, 2017), and *United States v. Myers (In re Nat'l Broadcasting Co.)*, 635 F.2d 945, 952 (2d Cir. 1980)). But these cases concern *the public*'s First Amendment right to access trial proceedings and to know the identity of witnesses, and the exceedingly narrow circumstances under which courts will limit such access due to competing interests. They have nothing at all to do with the question of whether a court should grant a motion *in limine* to preclude a litigant from calling, as a trial witness, a senior executive who has no relevant knowledge. To the extent the cases have any relevance, it bears observing that the Court in *Sharkey* would not compel the witness to testify unless the party who sought to call the witness could establish that the testimony would be relevant to the issues at trial. *Sharkey*, 2017 WL 374735, at *1 (granting motion *in limine* to quash trial subpoena "until the time at which either of the parties can make an *in camera* showing that [the witness's] testimony will be relevant during trial").

### B. Plaintiff's Speculation that Ms. Burton May Have Relevant Knowledge Is Irrelevant and Baseless.

Instead of disputing the application of the law to the facts, Plaintiff simply disputes the facts themselves; he argues that it "strains credulity" that Ms. Burton has no involvement in Hearst's Copyright Training Program.  Opp. at 4.  In support, Plaintiff has submitted a print-out of a short biography of Ms. Burton from Hearst's website.  The print-out says nothing about copyright law or rights clearances; it states that Ms. Burton "has overall responsibility of day-to-day management for the Office of General Counsel."  Opp. at 1 (citing ECF No. 117-1).  From this generic statement, Plaintiff infers that, notwithstanding Hearst's representations, Ms. Burton is "uniquely situated to testify as to Heart's [*sic*] policies for licensing third-party content and for claiming privilege under the fair use doctrine," *id.*, and "must have presumptive knowledge of Hearst's standards, practices, and training programs," *id.* at 7.  As Plaintiff sees it, Ms. Burton's testimony "will be integral to 'determining the truth'" concerning "how the photograph at issue in this litigation was simply poached from Instagram with no effort made to determine the rightful copyright owner."  *Id.*

Plaintiff's attempt to rely on fanciful inferences with no basis in the record runs directly contrary to the authorities.  Avoiding such speculation concerning a senior executive's knowledge underlies the courts' opinions in *Abu Dhabi Commercial Bank* and *Rookaird*, which Plaintiff ignores.  It was incumbent upon Plaintiff to learn what he could through discovery concerning the Copyright Training Program.  Having failed to establish through discovery that Ms. Burton had or has any involvement in the Copyright Training Program, Plaintiff cannot use trial as a discovery tool to harassingly haul a Hearst senior executive into Court.  These are the precise concerns that animate the "apex witness doctrine," pursuant to which "courts give special scrutiny to requests to depose high-ranking corporate and governmental officials" "[b]ecause of

3

the possibility of business disruption and the potential for harassment." Opening Br. at 3 n.1 (quoting *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK JCF, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013)). Notably, Plaintiff admits that the apex witness doctrine applies to trial witnesses: He acknowledges that "Courts do give special scrutiny to requests to depose high-ranking corporate and governmental officials, who are sometimes referred to as 'apex witnesses,'" and he does not dispute that Ms. Burton is in fact an "apex witness." Opp. at 6.

Further, Plaintiff's inferences are a *non sequitur*: The fact that Ms. Burton has "*overall* responsibility of day-to-day management for the Office of General Counsel" (emphasis added)—an office comprised of 50 attorneys and 30 paraprofessionals and support staff—does not mean that Ms. Burton is involved in every aspect of Hearst's legal operations, including the Copyright Training Program. As the print-out itself makes clear, Ms. Burton is the chief legal officer for "more than 360 global businesses" that "span cable entertainment and syndication, interactive and emerging digital media, local broadcast television, magazines, newspapers and real estate as well as business information companies that create and deliver content, analytics and workflow solutions for the finance, healthcare and transportation industries worldwide." Doc. No. 117-1. Ms. Burton also (i) is "a member of the Hearst Board of Directors," (ii) "manages corporate human resource issues, labor relations and government affairs," (iii) "is a member of Hearst's Venture Committee which funds digital initiatives," (iv) "is a leader of HearstLab, which fosters innovation and investment in early stage businesses led by women"; (v) "sits on the board of directors of Intuit, Inc., and prior to that was on the board of directors of [the] AOL board until its recent sale to Verizon"; and (vi) "is a member of the advisory board of the David and Helen Gurley Brown Institute for Media Innovation at Stanford and Columbia Universities." Given the breadth of her executive-level activities, it is not surprising at all that Ms. Burton is not directly

involved in routine corporate training. And Plaintiff's contrary conjecture has no basis in fact or common sense.

For these same reasons, Plaintiff gets no mileage out of his suggestion that there is probative value in Ms. Burton testifying that she is *not* involved in the Copyright Training Program. The fact that Ms. Burton herself is not involved in the Copyright Training Program would not establish that Hearst, as an entity, is "willfully blind" to copyright infringement, as Plaintiff argues. *See* Opp. at 4, 7.[3] Indeed, other witnesses have already offered testimony making clear that Hearst's in-house legal department regularly counsels and trains editors and reporters on their use of content.

But even if the Court considers Ms. Burton's lack of involvement to be probative, there is no need to call Ms. Burton as a witness; Hearst has offered (and hereby reiterates its offer) to

---

[3] Evidence concerning the Copyright Training Program is relevant to "the deterrent effect on the infringer and third parties," which is the fourth of six factors that courts consider "[w]hen determining the amount of statutory damages to award for copyright infringement." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). Such evidence is not, however, relevant to a finding of willfulness, and Plaintiff's statement that "Hearst does *not* dispute that issues pertaining to Hearst's policies and practices are relevant to the issue of willfulness," Opp. at 3, is incorrect. As Hearst explained in its pre-trial memoranda, evidence concerning the Copyright Training Program is, as a matter of law, irrelevant to the question of whether Hearst was "willfully blind." To prove willfulness by establishing "[w]illful blindness," Plaintiff must prove that Hearst had "knowledge or awareness of specific instances of infringement." *See Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012). This requires Plaintiff to introduce evidence of "the subjective mental state of the former Hearst reporter who used the Photograph," ECF No. 103, at 18, ECF No. 113, at 10, which Plaintiff will be unable to do at trial. Moreover, Plaintiff cites *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368 (S.D.N.Y. 2019), arguing that his counsel established willfulness at trial "after cross-examining Buzzfeed's in-house counsel." Opp. at 4 n.2. However, the Court's finding of willfulness in *Mango* had nothing to do with testimony from in-house counsel. Rather, it was based on the actions of the reporter who published the article and, in particular, his decision to alter the credit on the photograph—something that did not happen in this case. *Id.* at 375 ("The context of his use of the Photograph and substitution of 'Fisher & Taubenfeld' in place of 'Gregory P. Mango' justify a finding of willfulness with a resulting statutory damages award five times the licensing fee that BuzzFeed would have paid.").

5

make "a more formal representation concerning Ms. Burton's lack of knowledge" by "stipulat[ing] to [Ms. Burton's lack of knowledge] on the record at trial." Opening Br. at 5 n.3. This sort of stipulation was sufficient for the Court in *Abu Dhabi Commercial Bank*, and it should be sufficient here, if it's necessary at all. *See* 2013 WL 1155420, at *4-5, 10 (granting motion subject to defendants stipulating to certain non-controversial facts to which witness would have testified).

### C. Even if Ms. Burton Had Some Relevant Knowledge, Her Testimony Would Be Needlessly Cumulative of Other Witnesses' Testimony.

As explained in the Opening Brief, "[e]ven if Ms. Burton had any first-hand knowledge of Hearst's Copyright Training Program—and she does not—her testimony would be duplicative of, and no more informative than, the testimony that Hearst has already submitted from Ms. Siegel," who has testified about her experience "engag[ing] Hearst's Office of General Counsel . . . to provide [HMDM's] editors with copyright training sessions." Opening Br. at 6 (quoting Siegel Decl. ¶ 11). Plaintiff responds by arguing that Ms. Siegel will be unable to provide the Court with "the full picture of Hearst's internal copyright policies," as her testimony would only be "half of the equation" "without testimony from a member of Hearst's legal department." Opp. at 5.

Plaintiff does not articulate what relevant facts a Hearst in-house lawyer would be able to testify to that Ms. Siegel cannot testify to, in light of the undisputed fact that "Plaintiff clearly would not be entitled to learn about legal advice or opinions covered by the attorney-client privilege that are shared at these training sessions." Opening Br. at 7 n.4. The principal relevant, non-privileged information regarding the Copyright Training Program that might be elicited at trial concerns (i) the frequency and circumstances by which copyright training sessions take place, and (ii) what HMDM staff does as a result of those sessions. Based on Ms. Siegel's

6

declaration, she is in just as good a position (if not a better position) to testify to these facts as is Hearst in-house counsel, and in-house counsel would not add anything to Ms. Siegel's testimony.

In any event: Even if Plaintiff were correct that in-house counsel would help provide a "full picture," Ms. Burton is most certainly *not* the specific in-house counsel who would be the "other half" of the "equation" that Plaintiff envisions, for the reasons stated above and in the Opening Brief.

## CONCLUSION

For the foregoing reasons and those stated in the Opening Brief, the Motion should be granted.

Dated: June 6, 2019
     New York, New York

Respectfully submitted,

 /s/ Nathaniel S. Boyer
Jonathan R. Donnellan
Ravi V. Sitwala
Nathaniel S. Boyer
The Hearst Corporation
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
jdonnellan@hearst.com
rsitwala@hearst.com
nathaniel.boyer@hearst.com

*Counsel for Defendant*
*Hearst Communications, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on June 6, 2019.

      /s/ Nathaniel S. Boyer
    Nathaniel S. Boyer