**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/02/19

JONATHAN OTTO

                            Plaintiff,

        - against -

HEARST COMMUNICATIONS, INC.

                            Defendant.

Case No. 1:17-cv-4712 (GHW) (JLC)

[Proposed] **JOINT**
**PRE-TRIAL ORDER**

The parties to the above-captioned action respectfully submit this Proposed Joint

Pre-Trial Order, pursuant to Rule 16 of the Federal Rules of Civil Procedure and section 5.A

of Court's Individual Rules of Practice in Civil Cases.

**(i)**     **FULL CAPTION OF ACTION**

    *Jonathan Otto v. Hearst Communications, Inc.*, 1:17-cv-4712 (GHW-JLC)

**(ii)**     **NAMES OF TRIAL COUNSEL**

    **For Plaintiff:**

    Richard P. Liebowitz
    James H. Freeman
    LIEBOWITZ LAW FIRM, PLLC
    11 Sunrise Plaza, Suite 305
    Valley Stream, NY 11580
    Tel: (516) 233-1600
    Fax: (516) 612-2740

    **For Defendant:**

    Jonathan R. Donnellan
    Ravi V. Sitwala
    Nathaniel S. Boyer
    THE HEARST CORPORATION
    Office of General Counsel

300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 841-7000
Fax: (212) 554-7000

**(iii)   STATEMENT RE: SUBJECT MATTER JURISDICTION**

• This one-count action arises under the Copyright Act, 17 U.S.C. § 101 *et seq*.

• This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**(iv)   BRIEF SUMMARY OF CLAIMS AND DEFENSES**

• **PLAINTIFF'S STATEMENT**

Plaintiff Jonathan Otto ("Otto") is the author and copyright holder of an exclusive photograph of President Donald Trump whilst crashing a wedding at Trump's New Jersey golf resort (the "Photograph").  Defendant Hearst Communications, Inc. ("Hearst"), the sophisticated publisher of Esquire.com, expropriated the Photograph from a third-party Instagram account, without Otto's authorization, for use on Esquire.com.

On the parties' cross-motions for summary judgment, the Court determined that Hearst is liable for copyright infringement.  [Dkt. # 85]  With respect to the two elements of Otto's infringement claim, the Court found that there was no triable issue of fact concerning the validity of Otto's copyright ownership or Hearst's actual copying of the Photograph. The Court also dismissed Hearst's affirmative defenses of failure to state a claim, non-infringement, waiver, consent, release and fair use under 17 U.S.C. § 107.

Accordingly, a bench trial will be held on the issue of Otto's damages under 17 U.S.C. § 504(c), which includes the sub-issue of Hearst's willfulness.  Plaintiff seeks an award of $30,000 as a civil penalty for Heart's willful infringement or, in the alternative, five times the maximum amount that Hearst has paid a photographer to cover an event.

• DEFENDANT'S STATEMENT

This case presents a single count of copyright infringement, concerning a single factual photograph depicting a newsworthy event, taken by a Vice President for Operations at Deutsche Bank who styles himself a "guy with an iPhone," that was used on a single web-only news article among other photographs of the same scene. This is an exceedingly low-value case. Otto, with no evidence of any actual damages, has elected to recover statutory damages in lieu of proving his actual damages. *See* 17 U.S.C. § 504. On the facts of this case, and as explained in greater detail below and in the accompanying memorandum of law, Otto should recover $750, which is generous for the work at issue.

**(v)     STATEMENT RE: TRIAL LENGTH**

• The parties have consented to a bench trial which the parties anticipate will be completed in 1-2 days.

**(vi)     STATEMENT RE: MAGISTRATE JUDGE**

• The parties have not consented to trial before the Magistrate Judge.

**(vii)     STIPULATIONS OR AGREED STATEMENTS OF FACT AND LAW**

**Stipulation Regarding Settlement Agreements**

1.     The parties will not, for any purpose other than impeachment, seek to introduce, elicit testimony concerning, or otherwise reference or use evidence concerning any agreements to settle any claims for copyright infringement, including any retroactive licensing agreements that were entered into in connection with any such settlement agreements.

**The Wedding**

2.     On June 10, 2017, a wedding reception took place at Trump National Golf Club in Bedminster Township, New Jersey (the "Wedding").

3.     The bride at the Wedding is named Kristen Piatowski (the "Bride").

4.     U.S. President Donald Trump ("President Trump") made a surprise appearance at the Wedding or, in other words, President Trump crashed the wedding.

5.      President Trump's surprise appearance at the Wedding was a newsworthy event.

6.      President Trump is generally newsworthy.

**Plaintiff Jonathan Otto**

7.      Otto was employed by Deutsche Bank as a Vice President of Operations at the time the Photograph was created.

8.      Otto is not and has never been a professional photographer.

9.      Otto has never been in the business of licensing photographs.

10.    Otto attended the Wedding.

11.    Otto did not have professional camera equipment with him at the Wedding.

**The Photograph of President Trump at the Wedding**

12.    The Photograph at issue in this lawsuit depicts President Trump with the Bride at the Wedding (the "Photograph").

13.    Otto took the Photograph with his iPhone 7, using its standard camera application.

14.    Otto took other photographs of Trump at the Wedding with his iPhone 7 which are not the subject of this infringement lawsuit.

15.    After taking the Photograph, Otto texted a copy of the Photograph to one other wedding guest named Sean Burke, who had asked Otto to share the Photograph with him.

16.    When Otto texted the Photograph to Sean Burke, Otto had no knowledge as to how Burke planned to use the Photograph.

17.    Otto did not post the Photograph to social media.

18.    Otto did not provide the Photograph to commercial news organizations in June of 2017.

19.    Other people at the Wedding also took photographs of Trump.

**Otto's Licensing History**

20.    As of December 11, 2017, Otto had never licensed any photograph that is not the Photograph.

21.    Otto has never entered into a license agreement authorizing a third party's publication of the Photograph before that third party published the Photograph.

**Publication of the Photograph on Instagram**

22.     On June 11, 2017, the Photograph was published on Instagram.

23.     Otto did not publish the Photograph to Instagram.

24.     It appears that Laura Piatowski, a family member of the Bride, posted the
        Photograph to her Instagram account @lauramp11.

25.     Hearst obtained the Photograph from Instagram.

26.     Hearst obtained the Photograph from the Instagram account of Laura Piatowski at
        @lauramp11.

**Hearst's Publication of the Photograph on www.Esquire.com**

27.     At all times relevant to this action, Hearst owned, operated and/or exercised control
        over the Website www.Esquire.com (the "Website").

28.     The Website is a frequent licensee of photographs from professional photographers
        and from stock photography agencies, such as Getty Images.

29.     On June 11, 2017, the Photograph, or a reproduction thereof, appeared on the
        Website as part of an article about President Trump's appearance at the Wedding
        entitled "President Trump is the Ultimate Wedding Crasher," at the URL
        http://www.esquire.com/newspolitics/news/a55573/president-trump-wedding-
        crasher (the "Article").

30.     The Photograph appears on Hearst's servers.

31.     Commercial advertisements were visible at the same URL on www.esquire.com
        where the Photograph was displayed.

32.     Hearst earned revenue from ads that were visible at the same URL on
        www.esquire.com as the Article.

33.     Hearst frequently includes photographs of public figures, celebrities and politicians,
        including President Trump, in articles on www.esquire.com in the ordinary course of
        business.

34.     Hearst's use of the Photograph, or a reproduction thereof, on the Website did not
        credit Otto as the photographer of the Photograph or otherwise attribute the
        Photograph to Otto.

35.     Hearst did not seek Otto's permission to publish the Photograph.

36.     Otto never directly granted Hearst authorization to copy the Photograph or distribute
        copies of his image to the public.

37.   Photographs licensed by Hearst generally are taken by professional photographers with professional camera equipment.

38.   Prior to publishing the Photograph on the Website, Hearst did not communicate with Otto.

39.   Subsequent to publishing the Photograph on the Website, but before this lawsuit was filed, Hearst did not communicate with Otto.

40.   Otto did not communicate with Hearst regarding its use of the Photograph prior to the filing of the Complaint in this action.

41.   Peter Wade wrote the Article.

42.   At the time Hearst published the Photograph, Hearst had the ability to view and/or use other photographs of Trump's attendance at the Wedding.

**Publication of the Photograph By Third Party News Organizations**

43.   Several third-party news outlets published the Photograph after apparently obtaining it from Instagram.

44.   Many similar images of President Trump at the Wedding also circulated on the internet.

45.   Several third-party news organizations published the Photograph.

46.   Other photographs of Trump's attendance at the Wedding have been published.

47.   Numerous news websites ran articles about Trump's appearance at the Wedding and included photographs and/or video other than, or in addition to, the Photograph. These third party news articles include, but are not limited to, the following:

    a.   Ashley Killough, "Trump crashes New Jersey Wedding," www.cnn.com, June 11, 2017;

    b.   Amy B. Wang and Ana Swanson, "President Trump Can't Stop Crashing Parties at His Golf Clubs," www.washingtonpost.com, June 11, 2017;

    c.   Jay Willis, "Donald Trump Crashes Strangers' Weddings So He Can Remember What Being Loved Feels Like," www.gq.com, June 12, 2017;

    c.   "President Trump: Wedding Crasher," www.TMZ.com, June 11, 2017;

    e.   Liam Quinn, "Donald Trump crashes wedding at this New Jersey golf

club," www.dailymail.co.uk, July 19, 2017;

    f.    Patricia Madek, "Trump plays wedding crasher at New Jersey ceremony," www.phillyvoice.com, June 12, 2017.

**Defendant Hearst Communications, Inc.**

48.    Hearst is a for-profit entity.

49.    Hearst is the in the business of publishing news.

50.    Hearst is in the publishing business.

51.    In connection with its publications, every year, Hearst publishes many thousands of photographs for which it obtains a license.

52.    Hearst employs lawyers in house who are knowledgeable about U.S. copyright law, and about licensing practices in the publishing industry.

53.    As of June 10, 2017, Hearst employed lawyers who are knowledgeable about licensing photographs.

54.    Hearst sometimes provides written standards or practices to some employees who are responsible for publishing content on the Website.

55.    Hearst sometimes provides written standards or practices to some independent contractors who are responsible for publishing content on the Website.

56.    Through its enterprise license with Getty Images, Hearst has access to millions of photographs, including photographs of President Trump.

57.    Hearst is a company with diversified media businesses.

58.    Hearst is a large corporation which has over 1,000 employees.

(viii)      **WITNESS LIST**

**Plaintiff's Statement**

| # | Witness Name | In Person | Summary of Testimony | Relevance to Issues on Trial |
|---|---|---|---|---|
| ~~1~~ | ~~Peter Wade~~ | ~~Yes~~ | ~~• Wade's background and training as a journalist and/or photo editor.~~ ~~• Wade's republication of the Photograph as part of the Esquire.com article.~~ ~~• Wade's communications with Michael Sebastian and in-house counsel.~~ | ~~• Willfulness, i.e., whether Hearst had actual or constructive knowledge that a license for the Photograph had to be obtained from the copyright holder.~~ |
| 2 | **Michael Sebastian** | Yes | • Sebastian's background and training as a supervising editor. • Hearst's legal clearance and licensing of copyrighted materials published to the Esquire.com website. • Hearst's use of full-time in-house counsel to ensure that photographs used by Hearst are properly licensed and attributed. • Hearst's standards and practices for licensing photographs, which are disseminated to Hearst's reporters and journalists, including Peter Wade. | • Willfulness, i.e., whether Hearst had actual or constructive knowledge that a license for the Photograph had to be obtained from the copyright holder. |
| 3 | **John G. Plumpe** | Yes | • Hearst's custom and practice of licensing photographs for use on Esquire.com. | • Willfulness, i.e., whether Hearst had actual or constructive knowledge that a |

| # | Witness Name | In Person | Summary of Testimony | Relevance to Issues on Trial |
|---|---|---|---|---|
| | | | • Hearst's annual and monthly budget for licensing photographs for use on Esquire.com. | license for the Photograph had to be obtained from the copyright holder.<br><br>• Calculation of statutory damages so as to deter future infringement |
| 4 | **Eve Burton**[1] | Yes | • Heart's policies and practices for training its supervising editors, staff journalists and independent contractors in legal matters relating to licensing of photographs, including the determination as to whether uses of photographs constitute fair use under 17 U.S.C. § 107. | • Willfulness, i.e., whether Hearst had actual or constructive knowledge that a license for the Photograph had to be obtained from the copyright holder.<br><br>• Calculation of statutory damages so as to deter future infringement |

---

[1] Otto is amenable to an alternate witness designated by Hearst, provided that such witness is a member of Hearst's in-house legal department and has knowledge of Heart's policies and practices as they existed in July 2017 for training its supervisors, staff journalists and independent contractors who post photographs to Hearst-operated websites.

**Defendant's Statement**

| # | WITNESS NAME | IN PERSON | SUMMARY OF TESTIMONY | RELEVANCE TO ISSUES ON TRIAL |
|---|---|---|---|---|
| 1 | **Jonathan Otto** | No; introducing deposition transcript excerpts as DX-S | Mr. Otto has testified regarding his background and his non-existent licensing history. | This testimony is relevant to the calculation of statutory damages. |
| 2 | **Eric Rachlis** | Declaration submitted; will make witness available for cross examination at trial | Mr. Rachlis, a photograph and footage licensing consultant with nearly thirty years of experience in the licensing field, will offer expert testimony concerning copyright licensing pricing and, in particular, a reasonable licensing fee that Otto could have expected for the Photograph as it was used by Hearst, one time, on a web-only article. | This testimony is relevant to the calculation of statutory damages. |
| 3 | **John G. Plumpe** | Declaration submitted; will make witness available for cross examination at trial | Mr. Plumpe, a Managing Director of Epsilon Economics, will offer expert testimony concerning the licensing fees that Hearst has paid for similar photographs of individuals, public figures, and President Trump, based on an analysis of Hearst's licensing practices with regard to such photographs. | This testimony is relevant to the calculation of statutory damages. |
| 4. | **Michael Sebastian** | Declaration submitted; | Mr. Sebastian, who oversaw the editor who | This testimony is relevant to the |

| # | WITNESS NAME | IN PERSON | SUMMARY OF TESTIMONY | RELEVANCE TO ISSUES ON TRIAL |
|---|---|---|---|---|
| | | will make witness available for cross examination at trial | published the article that featured the Photograph, will testify regarding his involvement in the article at issue, the practices concerning the use of copyrighted content by himself and those who report to him, and the training he and his team have received. | calculation of statutory damages and non-willfulness. |
| 5 | **Brooke Siegel** | Declaration submitted; will make witness available for cross examination at trial | Vice President, Content with Hearst Magazines Digital Media, will testify regarding Hearst's practices concerning the use of third-party content | This testimony is relevant to the calculation of statutory damages and non-willfulness. |

**(ix)    DEPOSITION TESTIMONY**

**Plaintiff's Deposition Testimony Designations**

• None.

**Defendant's Deposition Testimony Designations**

• None, as there are no previously deposed but unavailable witnesses.  However, Hearst understands that Plaintiff is also not submitting a direct examination declaration from himself in this case.  Hearst therefore intends to introduce, as an exhibit, excerpts of the transcript of Mr. Otto's deposition as non-hearsay statements by a party opponent.  *See* DX-S, below; Fed. R. Evid. 801(d), Fed. R. Civ. P. 32(a)(3).  Otto may not cross-designate portions of the transcript in lieu of offering live testimony, as that would be inconsistent

with both the Federal Rules of Civil Procedure and the rule against hearsay.  *See* Fed. R.

Evid. 801-03, Fed. R. Civ. P. 32(a)(4).

**(x)      EXHIBIT LIST**

**Plaintiff's Exhibit List**

| # | P. EX. (Bate-Stamp) | DOCUMENT DESCRIPTION | DEFENDANT'S OBJECTIONS |
|---|---|---|---|
| 1 | **P. Ex. 1** (OTTO_0007) | Unedited Version of Photograph | None. |
| 2 | **P. Ex. 2** (OTTO_0008) | Edited Version of Photograph | None |
| 3 | **P. Ex. 3** (OTTO_0009-11) | Text messages b/w Otto and Sean Burke, dated June 10-11, 2017 | None. |
| 4 | **P. Ex. 4** (OTTO_0012-13) | Tweets b/w Otto and TMZ, dated June 11, 2017 | Relevance.  Otto's post hoc attempts to enforce his copyright are irrelevant, and any retroactive license that resulted from his communication with TMZ is not relevant or admissible, per the stipulation above.

Moreover, to the extent Otto is attempting to offer this exhibit to prove the truth of its contents, then it is hearsay for which no exception applies. |
| 5 | **P. Ex. 5** (OTTO_0014-19) | Screenshots from Otto's iPhone editing program, dated June 10, 2017 | None. |
| 6 | **P. Ex. 6** (HCI-OTTO_00001-8) | Esquire.com article, dated June 11, 2017, entitled "President Trump is the Ultimate Wedding Crasher" | None. |

| 7 | **P. Ex. 7** (HCI-OTTO_00010) | Hearst's Cropped Version of Photograph | None. |
| 8 | **P. Ex. 8** (HCI-OTTO_00012-18) | Hearst Digital Intake Form – Edit Article 55573, dated June 11, 2017 at 10:44 a.m. | None. |
| 9 | **P. Ex. 9** (HCI-OTTO_00019-26) | Hearst Digital Intake Form – Edit Image #217074, dated June 11, 2017 at 10:41 a.m. | ~~It is not clear how Plaintiff intends to lay a foundation for this document. He must authenticate it at trial through an adverse witness, to the extent Plaintiff can establish the document's relevance in the first place.~~ Relevance. |
| 10 | **P. Ex. 10** (HCI-OTTO_00027-32) | Hearst Digital Intake Form – Edit Image #217075, dated June 11, 2017 at 10:41 a.m. | None. |
| 11 | **P. Ex. 11** (HCI-OTTO_00033-40) | Hearst Digital Intake Form – Edit Image #217076, dated June 11, 2017 at 10:41 a.m. | ~~It is not clear how Plaintiff intends to lay a foundation for this document. He must authenticate it at trial through an adverse witness, to the extent Plaintiff can establish the document's relevance in the first place.~~ Relevance. |
| 12 | **P. Ex. 12** (HCI-OTTO_41) | Hearst Canonical URL Report, dated June 11, 2017-July 7, 2017 | ~~It is not clear how Plaintiff intends to lay a foundation for this document. He must authenticate it at trial through an adverse witness, to the extent Plaintiff can establish the document's relevance in the first place.~~ Relevance. |
| 13 | **P. Ex. 13** (HCI-OTTO_188) Confidential | Hearst Pages Report, dated June 12, 2017 at 3:04 a.m. | ~~It is not clear how Plaintiff intends to lay a foundation for this document. He must authenticate it at trial through an adverse witness, to the extent Plaintiff can establish the document's relevance in the first place.~~ Relevance. |

| 14 | **P. Ex. 14** (HCI-OTTO_00277) Confidential (unredacted version) | Hearst DM Esquire – 5520 (Current Actuals and Estimates PM10, 2017) | ~~It is not clear how Plaintiff intends to lay a foundation for this document. He must authenticate and establish its relevance at trial through an adverse witness, to the extent Plaintiff can establish the document's relevance in the first place.~~ Relevance. |
| --- | --- | --- | --- |
| 15 | **P. Ex. 15** (HCI-OTTO_278-283) Confidential | Intraoffice Text Messages b/w Peter Wade and Michael Sebastian, dated June 11, 2017 | None. |
| 16 | **P. Ex. 16** (Dkt. # 38-13) | Screenshot from Hearst's Infringing URL (accessed February 23, 2018) | None. |
| 17 | **P. Ex. 17** (HCI-OTTO_000284-287) Confidential | ESQUIRE BUDGET SPREADSHEET 2018 | None |
| 18 | **P. Ex. 18** (HCI-OTTO_000288-292) Confidential | ESQUIRE BUDGET SPREADSHEET 2017 | None |
| 19 | **P. Ex. 19** (HCI-OTTO_00293-308) Confidential | ESQUIRE BUDGET SPREADSHEET 2016 | None |
| 20 | **P. Ex. 20** (OTTO_120-121) | Docket Sheet from CM/ECF listing Hearst as a defendant (accessed November 9, 2017) | Relevance. Otto seeks to use this document establish that Hearst has been sued for copyright infringement in the past. This is irrelevant. Hearst reserves the right to move *in limine* to exclude this document. Moreover, it is not clear how Plaintiff intends to lay a foundation for it. |

| 21 | **P. Ex. 21** | Defendant's Objections and Answers to Plaintiff's Second Set of Requests for Admission to Defendant, dated December 22, 2017 | None. |
| 22 | **P. Ex. 22** | Defendant's Objections and Answers to Plaintiff's First Set of Interrogatories, dated October 2, 2019 | None. |
| 23 | **P. Ex. 23** | Defendant's Objections and Responses to Plaintiff's First Requests for Production of Documents, dated October 2, 2019 | None. |
| 24 | **P. Ex. 24** | Copyright Registration Certificate, VA 2-055-309, dated June 12, 2017 | None |

**Defendant's Exhibit List**

| # | **D. Ex._** (Bates Range) | **DOCUMENT DESCRIPTION** | **PLAINTIFF'S OBJECTIONS** |
|---|---|---|---|
| 1 | DX-A | Professional Experience of Eric Rachlis (Exhibit 1 to Mr. Rachlis' expert report) | None |
| 2 | DX-B | Screenshots of Licenses from Getty, Relied upon by Eric Rachlis (Exhibit 2 to Mr. Rachlis' expert report) | None |
| 3 | DX-C | CV for John G. Plumpe (Tab 1 to Mr. Plumpe's expert report) | None |
| 4 | DX-D (HCI-OTTO-00284–HCI-OTTO-00360) | Data concerning 2015-2017 licensing history for photographs for use on Esquire.com | |
| 5 | DX-E | A chart entitled "License Fees Paid for Hearst Stock Photographs, All Photographs" (Tab 3a to Mr. Plumpe's expert | None |

| # | D. Ex._ (Bates Range) | DOCUMENT DESCRIPTION | PLAINTIFF'S OBJECTIONS |
|---|---|---|---|
| | | report) *see* Fed. R. Evid. 1006 | |
| 6 | DX-F | A chart entitled "License Fees Paid for Hearst Stock Photographs, Individual Photographer" (Tab 3b to Mr. Plumpe's expert report) *see* Fed. R. Evid. 1006 | None |
| 7 | DX-G | A chart entitled "License Fees Paid for Hearst Stock Photographs, Public Figure Photographs" (Tab 3c to Mr. Plumpe's expert report) *see* Fed. R. Evid. 1006 | None |
| 8 | DX-H | A chart entitled "License Fees Paid for Hearst Stock Photographs, Individual Photographer / Public Figure Photographs" (Tab 3d to Mr. Plumpe's expert report) *see* Fed. R. Evid. 1006 | None |
| 9 | DX-I | A chart entitled "License Fees Paid for Hearst Stock Photographs, Trump Photographs" (Tab 3e to Mr. Plumpe's expert report) *see* Fed. R. Evid. 1006 | None |
| 10 | DX-J | A graph entitled "Distribution of License Fees Per Photograph, All Photographs" (Tab 4a to Mr. Plumpe's expert report) *see* Fed. R. Evid. 1006 | None |
| 11 | DX-K | A graph entitled "Distribution of License Fees Per Photograph, Individual Photographer" (Tab 4b to Mr. Plumpe's expert report) *see* Fed. R. Evid. 1006 | None |
| 12 | DX-L | A graph entitled "Distribution of License Fees Per Photograph, Public Figure Photographs" (Tab 4c to Mr. Plumpe's expert report) *see* Fed. R. Evid. 1006 | None |
| 13 | DX-M | A graph entitled "Distribution of | None |

| # | D. Ex._ (Bates Range) | DOCUMENT DESCRIPTION | PLAINTIFF'S OBJECTIONS |
|---|---|---|---|
| | | License Fees Per Photograph, Individual Photographer/Public Figure Photographs" (Tab 4d to Mr. Plumpe's expert report) *see* Fed. R. Evid. 1006 | |
| 14 | DX-N | A graph entitled "Distribution of License Fees Per Photograph, Trump Photographs" (Tab 4e to Mr. Plumpe's expert report) *see* Fed. R. Evid. 1006 | None |
| 15 | DX-O (HCI-OTTO-00278-83) | Slack Conversation between Peter Wade and Michael Sebastian on June 11, 2017 | None |
| 16 | DX-P (Doc. No. 54-2) | A true, correct, and complete copy of the Article, in which the Photograph was Used | None |
| 17 | DX-Q (HCI-OTTO-00012-00019) | Screenshots from Hearst's CMS that display information about the Article stored in Hearst's CMS | None |
| 18 | DX-R (HCI-OTTO-00027-00032) | Screenshots from Hearst's CMS that display information about the Photograph stored in Hearst's CMS | None |
| 19 | DX-S | Excerpts of the Transcript of the December 11, 2017 Videotaped Deposition of Jonathan Otto | None |

**(xi)**   **DAMAGES**

• **Plaintiff's Statement**

\*The parties stipulated on the record during the final pre-trial conference held on July 1, 2019 regarding the admissibility of all exhibits for which the parties have not listed objections.

Otto seeks enhanced statutory damages under section 504(c) of the Copyright Act, which provides that a willful copyright infringer may be held liable for between $750 and $150,000 per work.  17 U.S.C. § 504(c).  To prove "willfulness" under the Copyright Act, the plaintiff must show: (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of "reckless disregard" for, or "willful blindness" to, the copyright holder's rights.  *See In re Aimster Copyright Litigation,* 334

F.3d 643, 650 (7th Cir.2003); *Lipton v. Nature Co.,* 71 F.3d 464, 472 (2d Cir.1995); *N.A.S. Import Corp. v. Chenson Enters., Inc.,* 968 F.2d 250, 252 (2d Cir.1992); *see also Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 112 (2d Cir.2001) ("Willfulness in this context means that the defendant recklessly disregarded the possibility that its conduct represented infringement.")

If evidence of actual knowledge is not available, "a plaintiff can still prove willfulness by proffering circumstantial evidence that gives rise to an inference of willful conduct." *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 264 (2d Cir. 2005) (citing *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1010 (2d Cir.1995) (noting that "[k]nowledge of infringement may be constructive rather than actual; that is, 'it need not be proven directly but may be inferred from the defendant's conduct' ") (*quoting N.A.S. Import Corp. v. Chenson Enters., Inc.,* 968 F.2d 250, 252 (2d Cir.1992)).

In evaluating an infringer's willful state of mind, courts look to factors such as whether "whether the infringer was on notice that the copyrighted work was protected; whether the infringer had received warnings of the infringements; [and] whether the infringer had experience with previous copyright ownership, prior lawsuits regarding similar practices, or work in an industry where copyright is prevalent." *Agence France Presse v. Morel*, 934 F. Supp. 2d 547, 570 (S.D.N.Y. 2013).

Courts in this District have recently found willfulness where a trained journalist failed to obtain a license to republish a photograph to a media defendant's commercial news website and failed to provide the appropriate photo credit to the copyright holder. *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 374 (S.D.N.Y. 2019). Courts have also found willfulness where a defendant-media company knowingly saved a photo and then uploaded

it to a website which defendant "completely controlled and actively monitored." *FameFlynet, Inc. v. Shoshanna Collection, LLC*, 282 F. Supp. 3d 618, 627 (S.D.N.Y. 2017), *appeal withdrawn*, No. 18-633, 2018 WL 2740233 (2d Cir. Mar. 20, 2018).  In short, the evidentiary standard to establish willfulness against a corporate media outlet is not a high bar considering that media companies are charged with knowledge of U.S. copyright law.  *See, e.g., Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172 (2d Cir. 1983) (finding that a newspaper publisher willfully infringed because, as a publisher of a copyrighted newspaper, defendant should have known that its unauthorized reproduction of plaintiff's copyrighted article constituted copyright infringement).

Hearst should be found liable for willful copyright infringement because, *inter alia*, it is largescale media company well-versed in copyright law, has been repeatedly sued for copyright infringement in the last three years, hastily poached Otto's photograph from Instagram without bothering to conduct a modicum of due diligence into the identity of the copyright holder, maintained full control and supervision over the Esquire.com website and made no effort to analyze whether its use constituted a legal fair use prior to publication.

**Statutory Damages**

Plaintiff seeks $30,000 in statutory damages under 17 U.S.C. § 504(c) as a *civil penalty* for Hearst's willful copyright infringement of the Photograph.  A $30,000 penalty is warranted on the following grounds:

(1) $30,000 is the maximum amount for non-willful infringement under 17 U.S.C. § 504(c)(1); thus, the imposition of a $30,000 penalty under 17 U.S.C. § 504(c)(2) to deter *willful* infringement is entirely justified under the statutory framework;

(2) a $30,000 penalty is the standard amount routinely awarded in this District in cases of default judgment involving the willful infringement of a single photograph (and there is no logical reason for imposing any lesser penalty on a defendant whose conduct is found willful at trial);

(3) Hearst's size, wealth and sophistication as a mass media publisher justify a substantial civil penalty of $30,000 to deter future infringement by Hearst and other largescale media conglomerates who are similarly situated;

(4) the recent judicial custom and practice of calculating statutory damages through a "one-size-fits-all" formula which multiplies lost licensing fees by 3-5 times has proven wholly ineffective in deterring the widespread infringement of newsworthy photographs in the Internet Age and is contrary to Congressional intent;

(5) any attempt to estimate the lost licensing fee is wholly speculative given that: (a) Otto never licensed the Photograph in the ordinary course of business; and (b) Hearst expropriated the Photograph without authorization and thereby deprived Otto the opportunity to engage in arms-length negotiation of any licensing fee.

**<u>Attorneys' Fees and Costs</u>**

As a "prevailing party" in the action pursuant to 17 U.S.C. § 505, Plaintiff will also seek an award of his attorneys' fees and costs within 14 days after entry of the Court's final judgment. *See, e.g., Crown Awards, Inc. v. Discount Trophy & Co., Inc.*, 564 F.Supp.2d 290 (S.D.N.Y. 2008), *aff'd*, 326 Fed.Appx. 575 (2d Cir. Apr. 21, 2009) ("the prevailing party in a copyright case in which the monetary stakes are small should have a presumptive entitlement to an award of attorneys' fees.") (quoting *Assessment Techs. of WI, LLC v. Wiredata, Inc.*, 361 F.3d 434, 437 (7th Cir. Mar. 17, 2004) (Judge Posner)); *Mango*, 356 F. Supp. 3d at 374

(awarding attorneys' fees where defendant's conduct was found willful and damages recovery was moderate).

• **Defendant's Statement**

As explained in greater detail in the accompanying pre-trial memorandum, Otto should recover no more than $750, which is more than generous for the infringement at issue here.

Statutory Damages**:**  "When determining the amount of statutory damages to award for copyright infringement, courts consider: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties."  *Bryant v. Media Right Productions, Inc.*, 603 F. 3d 135, 144 (2d Cir. 2010).

Here, all of the factors instruct that a damages award at the lowest end of the range is appropriate.  *See* 17 U.S.C. § 504(c)(1) (range for recovery between $750 and $30,000).  To start, Hearst had, and has proffered, a reasonable, good-faith argument before this Court that its use of the Photograph was a "fair use" under the Copyright Act, 17 U.S.C. § 107. Moreover, the evidence will show that Hearst saved, at most, $100 in expenses by not procuring a license to use the Photograph.  Otto did not lose any anticipated revenue because Otto, a self-proclaimed "guy with an iPhone" who just happened to be the right spot at the right time, is not a photojournalist; he has never earned any revenue from licensing any photographs; and he never generated any revenue from licensing the Photograph.

Hearst has provided Otto with fulsome document production, has generated multiple expert reports addressing a reasonable licensing fee, and has made numerous witnesses available for deposition so that Otto can accurately assess the (limited) value of his claim.  The only party in this litigation that has engaged in questionable conduct intended to distort the true value of Otto's claim is Otto and his counsel.  *See* Doc. No. 94 (Magistrate Judge Cott's order denying a motion for sanctions based on misrepresentations concerning licensing history during a settlement conference: "[T]he Court strongly cautions Liebowitz and his firm to be mindful of overplaying their hands (or worse) during settlement negotiations. . . . This is hardly the first time that Liebowitz and his firm have had their reputation called into question, and the Court can only hope it will be the last." (collecting cases).)

$750 is *7.5 times* a reasonable licensing fee for this Photograph, based on an unrebutted expert examination of Hearst's typical licensing practices.  *See* Declaration of John G. Plumpe.  $750 also represents *between 15 and 30 times* what fee a licensor could typical expect in the market for the Photograph, based on unrebutted expert testimony of a photograph and footage licensing consultant.  *See* Declaration of Eric Rachlis.  By either metric, $750 is well above the range that a copyright plaintiff should recover in statutory damages for an infringement such as this one.

Moreover, Otto will be unable to introduce any evidence to support his justification for a drastic upward deviation on the grounds that Hearst's conduct was "willful" within the meaning of Section 504 of the Copyright Act.  Otto bears the burden of establishing willfulness under the Copyright Act, 17 U.S.C. § 504(c)(2), which requires him to show Hearst's "mental state" and establish that Hearst "had knowledge that its conduct constituted

infringement or showed reckless disregard for the copyright holder's rights." *Lipton v. Nature Co.*, 71 F.3d 464, 472 (2d Cir. 1995); *see also Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005).  Here, Otto has developed no such evidence; he will not be able to introduce any such evidence; and the mere fact that Hearst is a large corporation that has been sued for copyright infringement in the past is irrelevant but, in any event, insufficient to establish willfulness.  Indeed, considering the scope of Hearst's publishing, the limited number of times that Hearst has been sued for copyright infringement is a credit to its practices, which are described in the declarations of Brooke Siegel and Michael Sebastian.

Even if Otto could establish that Hearst acted "willfully" (and he cannot), case law does not support a dramatic upward departure from a multiplier of reasonable licensing fees that is no more than five times a reasonable licensing fee.  "Second Circuit case law . . . reflects that courts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid." *Mango v. BuzzFeed, Inc.*, 316 F. Supp. 3d 811, 814 (S.D.N.Y. 2018) (deciding motions *in limine* in bench trial concerning the defendant's use of a single photograph).  Moreover, "a statutory damages award that far exceeds a single-digit multiple of a reasonable licensing fee is generally appropriate only where the infringement at issue is more large-scale or otherwise pernicious than the infringement alleged in this case, which relates to a single production of a single photograph." *Id.* at 814 n.1 (emphasis added).  For example, in *Mango*—a case where, unlike here, the defendant had affirmatively replaced plaintiff's credit on the photograph with that of another entity— Judge Marrero found that the defendant had acted willfully, but still only issued a statutory

damages award that was five times the reasonable licensing fee, as that was the "higher end of the range typically awarded by courts in this district."  *See* 17-cv-06784-VM, Doc. No. 56.

      <u>Plaintiff's Claim to Attorneys' Fees</u>: We understand from the above that Plaintiff intends to move to recover his attorneys' fees, if he is a prevailing party.  17 U.S.C. § 505. The question of Plaintiff's entitlement to attorneys' fees should await post-trial briefing, as is typical, as Hearst expects that the trial will be instructive as whether and to what extent Plaintiff would be entitled to recover his attorneys' fees.  For the reasons explained in this memorandum and the accompanying declarations, the Court may decline to grant Plaintiff an award of attorneys' fees, even if Plaintiff is considered a "prevailing party."  *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, No. 16-CV-7634 (JMF), 2018 WL 357298, at *3 (S.D.N.Y. Jan. 10, 2018) (denying copyright infringement plaintiff's motion for attorneys' fees in case concerning defendant's infringing use six celebrity photographs for which evidence established a reasonable licensing fee of $255 for each photographs); *see also* 17 U.S.C. § 505 ("[T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs."); *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S. Ct. 1023, 1033, 127 L. Ed. 2d 455 (1994) (in distinguishing copyright actions from Civil Rights actions, explaining that "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.").

**(xii)   VERDICT**

• Not applicable on grounds that the parties have consented to a bench trial.


Dated: May 13, 2019

Respectfully Submitted:

**LIEBOWITZ LAW FIRM, PLLC**                    **THE HEARST CORPORATION**


By: */s/*jameshfreeman.com                     By: /s/ Nathaniel S. Boyer
James H. Freeman                               Jonathan R. Donnellan
11 Sunrise Plaza, Suite 305                    Ravi V. Sitwala
Valley Stream, NY 11580                        Nathaniel S. Boyer
Tel.: (516) 233-1660                           Office of General Counsel
                                               300 West 57th Street, 40th Fl.
                                               New York, NY 10019
                                               Tel: (212) 841-7000


*Attorneys for Plaintiff*                       *Attorneys for Defendant*


SO ORDERED.

Dated: July 2, 2019                            _____
New York, New York                                     GREGORY H. WOODS
                                                United States District Judge