UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN OTTO,

                     Plaintiff,

    - against -


HEARST COMMUNICATIONS, INC.

                     Defendant.

Docket No. 1:17-cv-04712 (GHW)

## **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 17 U.S.C. § 505**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD ......................................................................................................... 2

ARGUMENT ...................................................................................................................... 4


POINT I: AN AWARD OF ATTORNEYS' FEES WOULD SATISFY THE COPYRIGHT
ACT'S PURPOSES OF COMPENSATION AND DETERRENCE ............................ 4

    A. THE MODEST VALUE OF PLAINTIFF'S COPYRIGHTED WORK JUSTIFIES AN AWARD OF
ATTORNEYS' FEES TO DETER FUTURE INFRINGEMENT ......................................... 4

    B. PLAINTIFF SHOULD BE APPROPRIATELY COMPENSATED FOR PROSECUTING A MERITORIOUS
INFRINGEMENT CLAIM TO JUDGMENT ................................................................. 6

    C. THE COURT'S FINDING OF NON-WILLFULNESS DOES NOT PRECLUDE AN AWARD OF FEES
BECAUSE DEFENDANT REMAINS BLAMEWORTHY ................................................. 9


POINT II: HEARST'S DEFENSES TO LIABILITY WERE OBJECTIVELY
UNREASONABLE ...................................................................................... 9

    A. THE FAIR USE DEFENSE IS OBJECTIVELY UNREASONABLE ................................. 10

    B. HEARST'S OTHER DEFENSES TO LIABILITY ARE OBJECTIVELY UNREASONABLE BECAUSE
THEY WERE NOT SUPPORTED BY THE FACTUAL RECORD .................................... 13


POINT III: THE HOURLY RATES OF PLAINTIFF'S ATTORNEYS ARE REASONABLE 14


POINT IV: THE NUMBER OF HOURS EXPENDED BY PLAINTIFF'S COUNSEL IS
REASONABLE ..................................................................................... 18

    A. MR. FREEMAN'S HOURS ARE REASONABLE ..................................................... 18

    B. MR. LIEBOWITZ'S HOURS ARE REASONABLE .................................................. 20

    C. THE HOURS EXPENDED BY PLAINTIFF'S COUNSEL ARE COMMENSURATE WITH SIMILAR
INFRINGEMENT ACTIONS INVOLVING COPYRIGHTS OF MODEST VALUE ........................... 20

POINT V: PLAINTIFF SHOULD BE REIMBURSED FOR HIS COSTS…………………20

# TABLE OF AUTHORITIES

<u>CASES</u>

*Anderson v. Primera Plana NY, Inc.,*
    17-cv-7715 (JMF-KNF) (S.D.N.Y. May 1, 2019) ....................................................................15

*Assessment Techs. of WI, LLC v. Wiredata, Inc.*,
    361 F.3d 434, 437 (7th Cir. Mar. 17, 2004) .............................................................................3

*Barcroft Media, Ltd. v. Coed Media Grp., LLC,*
    297 F.Supp.3d 339, 352 (S.D.N.Y. 2017)...............................................................................11

*Beastie Boys v. Monster Energy Co.*,
    112 F. Supp. 3d 31, 56 (S.D.N.Y. 2015).................................................................................16

*Branch v. Ogilvy & Mather, Inc.*,
    772 F. Supp. 1359, 1365 (S.D.N.Y. 1991) ..............................................................................7

*Brefford v. I Had A Ball Co.*,
    271 F.Supp. 623, 627 (S.D.N.Y.1967)......................................................................................7

*Broadcast Music, Inc. v. Pamdh Enters., Inc.*,
    No. 14-cv-2255 (KMW), 2014 WL 2781846, at *7 (S.D.N.Y. June 19, 2014)........................17

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.,*
    196 F.Supp.3d 395, 407 (S.D.N.Y. 2016)...............................................................................11

*Carrero v. New York City Hous. Auth.*, 685 F. Supp. 904, 908–09 (S.D.N.Y. 1988), *aff'd and
    remanded on other grounds*, 890 F.2d 569 (2d Cir. 1989) .....................................................19

*Castro v. City of New York*,
    No. 94 CIV. 5114 JFK, 1996 WL 617341, at *2 (S.D.N.Y. Oct. 25, 1996)............................10

*Chicoineau v. Bonnier Corp.,*
    No. 18-CV-3264 (JSR), 2018 WL 6039387, at *1 (S.D.N.Y. Oct. 16, 2018) .........................16

*Clarke v. Frank*,
    960 F.2d 1146, 1153 (2d Cir. 1992) .......................................................................................18

*Crown Awards, Inc. v. Discount Trophy & Co., Inc.*,
    564 F.Supp.2d 290 (S.D.N.Y. 2008), *aff'd*, 326 Fed.Appx. 575 (2d Cir. Apr. 21, 2009) ..........3

*David v. Sullivan,*
    777 F.Supp. 212, 223 (E.D.N.Y.1991)...................................................................................19

*DC Comics v. Pac. Pictures Corp.,*

No. 2:10-CV-03633-ODW, 2013 WL 1389960, at *5 (C.D. Cal. Apr. 4, 2013) ...................... 5

*Delman Fabrics, Inc. v. Holland Fabrics, Inc.*,
No. 84 CIV. 2512-CSH, 1986 WL 13803, at *1 (S.D.N.Y. Nov. 28, 1986) ............................ 4

*Dhillon v. Does 1-10,*
No. C-13-1465, 2014 WL 722592, at *5 (N.D. Cal., February 25, 2014) ............................... 12

*Di Filippo v. Morizio*,
759 F.2d 231, 236 (2d Cir. 1985) ........................................................................................ 18

*Dweck v. Amadi*,
No. 10 Civ. 2577 (RMB) (HBP), 2012 WL 3020029, at *4 & n. 5 (S.D.N.Y. July 6, 2012)... 16

*Engel v. Wild Oats, Inc.,*
644 F.Supp. 1089, 1093 (S.D.N.Y.1986) ............................................................................ 7

*FameFlynet, Inc. v. Shoshanna Collection, LLC*,
282 F. Supp. 3d 618, 627–28 (S.D.N.Y. 2017), *appeal withdrawn,* No. 18-633, 2018 WL
2740233 (2d Cir. Mar. 20, 2018) ......................................................................................... 7

*Farbotko v. Clinton Cnty.*,
433 F.3d 204, 209 (2d Cir. 2005) ........................................................................................ 14

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517, 534 n.19 (1994) .............................................................................................. 3

*GAKM Res. LLC v. Jaylyn Sales Inc.*,
No. 08 Civ. 6030 (GEL), 2009 WL 2150891, at *8 (S.D.N.Y. July 20, 2009) ...................... 17

*Galeana v. Lemongrass on Broadway Corp.*,
No. 10 Civ. 7270 (GBD) (MHD), 2014 WL 1364493, at *13 (S.D.N.Y. Apr. 4, 2014)...... 14

*Genger v. Genger*,
No. 14 Civ. 5683 (KBF), 2015 WL 1011718, at *2 (S.D.N.Y. Mar. 9, 2015) ........................ 15

*Goldstein v. California*,
412 U.S. 546, 556 (1973) ..................................................................................................... 6

*Gonzales v. Transfer Techs., Inc.*,
301 F.3d 608, 609–10 (7th Cir. 2002) ................................................................................ 8

*Harrell v. Van Der Plas*,
No. 08-cv- 8252 (GEL), 2009 WL 3756327, *4 (S.D.N.Y. Nov. 9, 2009) ............................ 5

*Hearst Corp. v. Oregon Worsted Co.,*

No. CV 99-640-BR, 2001 WL 668040, at *4 (D. Or. Apr. 18, 2001) ....................................... 8

*Hensley v. Eckerhart,*
    461 U.S. 424, 438 n. 13 (1983) ............................................................................ 19

*Hirsch v. The Dishh, LLC,*
    18-cv-09079 (LGS) (S.D.N.Y. December 10, 2018) .............................................. 15

*In Design v. K–Mart Apparel Corp.,*
    13 F.3d 559, 567–68 (2d Cir. 1994) ....................................................................... 9

*In Design v. K-Mart Apparel Corp.*,
    No. 87 CIV. 8397 (AGS), 1996 WL 4122, at *7 (S.D.N.Y. Jan. 3, 1996) ................ 4

*Johnson v. Kay,*
    742 F.Supp. 822, 836–37 (S.D.N.Y.1990) ........................................................... 19

*Kingvision Pay-Per-View Ltd v. Zalazar,*
    653 F. Supp. 2d 335, 343 (S.D.N.Y. 2009) ............................................................ 3

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    136 S. Ct. 1979, 1986 (2016) ................................................................................. 3

*Lanzilote v. The Tempest Media, Inc.*,
    19-cv-00477 (JGK) (S.D.N.Y. June 4, 2019) ....................................................... 17

*Magnuson v. Video Yesteryear*,
    85 F.3d 1424, 1432 (9th Cir. 1996) ........................................................................ 5

*Mahan v. Roc Nation, LLC*,
    No. 14 Civ. 5075 (LGS), 2016 WL 4718018, at *2 (S.D.N.Y. Sept. 9, 2016) ........ 17

*Malletier v. Artex Creative Int'l Corp.,*
    687 F.Supp.2d 347, 361 (S.D.N.Y. 2010) ........................................................... 16

*Mango v. BuzzFeed, Inc.,*
    356 F. Supp. 3d 368 (S.D.N.Y. 2019) ................................................................. 16

*Matthew Bender & Co. v. West Publ'g Co.,*
    240 F.3d 116, 122 (2d Cir. 2001) ........................................................................... 4

*Microsoft Corp. v. Software Wholesale Club, Inc.,*
    129 F.Supp.2d 995, 1003 (S.D.Tex.2000) ............................................................ 9

*Millea v. Metro-North R.R. Co.,*
    658 F.3d 154, 166 (2d Cir. 2011 ............................................................................ 3

*Miroglio S.P.A. v. Conway Stores, Inc.*,
   629 F. Supp. 2d 307, 311 (S.D.N.Y. 2009) ............................................................. 9

*Mishkin Law Office v. Lopalo*,
   767 F.3d 144, 149 (2d Cir. 2014) ......................................................................... 19

*MiTek Holdings, Inc. v. Arce Eng'g Co.*,
   198 F.3d 840, 842–43 (11th Cir. 1999) ..................................................................... 7

*Monaghan v. SZS 33 Assocs., L.P.*,
   154 F.R.D. 78, 84 (S.D.N.Y. 1994) ...................................................................... 19

*Mordant v. Citinsider LLC*,
   No. 18-CV-9054 (RA), 2019 WL 3288391, at *2 (S.D.N.Y. July 22,
2019) ........................................................................................................................ 15

*Mugavero v. Arms Acres, Inc.*,
   No. 03-cv-5724 (PGG), 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) ............. 18

*New Pac. Overseas Grp. (USA) Inc. v. Excal Int'l Dev. Corp.*,
   No. 99 CIV 2436 DLC, 2000 WL 377513, at *7 (S.D.N.Y. Apr. 12, 2000) ......... 11

*On Davis v. The Gap, Inc.*,
   246 F.3d 152, 174 (2d Cir. 2001), ......................................................................... 10

*Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 419 (S.D.N.Y. 2018) ..................... passim

*OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*,
   No. 09 Civ. 8665 (JGK) (FM), 2010 ..................................................................... 16

*Peterman v. Republican Nat'l Comm.*,
   369  F. Supp. 3d 1053 (D. Mont. 2019) ................................................................. 12

*Psihoyos v. Nat'l Exam'r*,
No. 97-cv-7624 (JSM), 1998 WL 336655, at *3 (S.D.N.Y. June 22, 1998)................................ 11

*Quinto v. Legal Times of Washington, Inc.*,
   511 F.Supp. 579, 581 (D.D.C.1981) ....................................................................... 1

*Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*,
   No. 13 Civ. 2493 (KBF), 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014)............... passim


*Sands v. CBS Interactive, Inc.*,
   18-cv-7345 (JSR), 2019 WL 1447014 (S.D.N.Y. March 13, 2019) ......................... 16

*Scanlon v. Kessler,*
   23 F.Supp.2d 413, 416 (S.D.N.Y.1998) ................................................................. 9

*Small v. Implant Direct Mfg. LLC,*
   No. 06 CIV. 683 NRB, 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014), *aff'd,* 609 F. App'x
   650 (Fed. Cir. 2015) ............................................................................................. 10

*TCA Television Corp. v. McCollum,*
   No. 15-cv-4325-GBD-JCF, 2017 WL 2418751, at *16 (S.D.N.Y. June 5, 2017), *report and*
   *recommendation adopted,* No. 15-cv-4325-GBD, 2018 WL 2932724 (S.D.N.Y. June 12, 2018)
   ................................................................................................................................. 19

*U.S. Media Corp. v. Edde Entm't Corp.,*
   No. 94-cv-4849 (MBM), 1998 WL 401532, at *27 (S.D.N.Y. July 17, 1998) .......................... 3

*U.S. Media Corp. v. Edde Entm't, Inc.,*
   94 Civ. 4849, 1999 WL 498216 at *4 (S.D.N.Y. July 14, 1999) ................................................. 4

*Waves Audio, Ltd., Waves, Inc. v. Reckless Music, LLC,*
   No. 09 CIV. 2282 (JCF), 2010 WL 2365689, at *2 (S.D.N.Y. June 9, 2010) ......................... 10

*Whimsicality, Inc. v. Rubie's Costume Co. Inc.,*
   891 F.2d 452, 455 (2d Cir. 1989). ......................................................................... 13

*Wolman v. Hudson Valley News Network, LLC,*
   18-cv-11589 (JSR) (S.D.N.Y. April 15, 2019) ...................................................... 15


**STATUTES**
17 U.S.C. § 505 ...........................................................................................................passim


**TREATISES**
Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 14.10 (2002)........................... 5
Paul Goldstein, *Copyright* § 12.3.2.2 (2d ed.2002)......................................................... 5

Pursuant to the Court's Order, dated July 31, 2019 [ECF Docket ("Dkt.") # 129, (the "Order")], Plaintiff Jonathan Otto ("Plaintiff" or "Otto"), via counsel, respectfully submits this memorandum of law in support of Plaintiff's application for attorneys' fees and costs under 17 U.S.C. § 505 of the Copyright Act.

## **INTRODUCTION**

**"An award of attorney's fees helps to ensure that all litigants have equal access to the courts to vindicate their statutory rights. It also prevents copyright infringements from going unchallenged where the commercial value of the infringed work is small and there is no economic incentive to challenge an infringement through expensive litigation."**

- *Quinto v. Legal Times of Washington, Inc.,* 511 F.Supp. 579, 581 (D.D.C.1981)

Plaintiff's application for attorneys' fees is about ensuring that defendant Hearst Communications, Inc. ("Defendant" or "Hearst"), a largescale media conglomerate, complies with federal copyright law by taking the appropriate steps to secure licenses from photographers, regardless of whether they are professional or amateur. The best way to deter future infringement by Hearst, as well as to encourage the prosecution of meritorious infringement claims, is to impose a substantial penalty under the Copyright Act that makes it much more expensive to violate federal law than to abide by it.

The Copyright Act provides that attorneys' fees and costs may be awarded to the "prevailing party" in a copyright infringement action. 17 U.S.C. § 505. The Court found Hearst liable for copyright infringement in violation of 17 U.S.C. § 501 after summarily rejecting its fair use defense as a matter of law. *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 419 (S.D.N.Y. 2018) ("Stealing a copyrighted photograph to illustrate a news article, without adding new understanding or meaning to the work, does not transform its purpose - regardless of

whether that photograph was created for commercial or personal use.").

As the prevailing party here, Plaintiff respectfully requests an award of $60,621.25 for his reasonable attorneys' fees and costs in prosecuting his copyright infringement claim to judgment. As explained further herein and as supported by the accompanying declarations of Richard Liebowitz and James H. Freeman, an award of attorneys' fees is reasonable and appropriate in light of the purposes of the Copyright Act and the objectively unreasonable nature of Defendant's defenses.

An award of attorneys' fees is particularly appropriate in cases where the value of the copyright is relatively modest. Indeed, several courts in this District have declared that there is a "presumptive entitlement" to fees in cases where the value of the copyright is low. Application of the attorneys' fee provision is necessary to incentivize the prosecution of meritorious suits, even those involving a single photograph. When cases such as the present are brought to judgment, the contours of copyright law became clearly demarcated. But for the efforts of copyright enforcement attorneys, such as Plaintiff's counsel, these cases would likely never get prosecuted, thereby immunizing media companies from infringement violations. Ultimately, an award of attorneys' fees in this case will benefit the public by ensuring that a fully functioning licensing market exists for photographic works, even those taken with an iPhone.

Plaintiff seeks $60,181.25 in attorneys' fees and $440.00 in costs, or a total award of $60,621.25.

**LEGAL STANDARD**

Section 505 of the Copyright Act, 17 U.S.C. § 505 authorizes the court to award reasonable attorneys' fees and costs to the prevailing party. Fees should be awarded to

"encourage the types of lawsuits that promote th[e] purposes [of the Copyright Act]," including the enrichment of the public through broad dissemination of creative works. *Kirtsaeng v. John Wiley & Sons*, *Inc.*, 136 S. Ct. 1979, 1986 (2016).

In infringement actions where the potential for monetary recovery is modest, courts recognize that the prevailing party should have a "presumptive entitlement" to the full amount of attorneys' fees. *See, e.g., Crown Awards, Inc. v. Discount Trophy & Co., Inc.*, 564 F.Supp.2d 290 (S.D.N.Y. 2008), *aff'd*, 326 Fed.Appx. 575 (2d Cir. Apr. 21, 2009) ("*Crown Awards*"); *U.S. Media Corp. v. Edde Entm't Corp.*, No. 94-cv-4849 (MBM), 1998 WL 401532, at *27 (S.D.N.Y. July 17, 1998); *see also Assessment Techs. of WI, LLC v. Wiredata, Inc.*, 361 F.3d 434, 437 (7th Cir. Mar. 17, 2004) (J. Posner). Courts are also encouraged to advance considerations of compensation and deterrence, as well as assess the objective unreasonableness of the defenses. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994); *Kirtsaeng*, 136 S. Ct. at 1985.

In the Second Circuit, fee awards are calculated using the "presumptively reasonable fee" approach. *Arbor Hill Concerned Citizens Neighborhood Ass 'n v. Cnty. of Albany*, 522 F.3d 182, 189 (2d Cir. 2008). In considering the reasonableness of a fee award, a court should consider both the reasonableness of the hourly rates and the reasonableness of the hours spent. *See Kingvision Pay-Per-View Ltd v. Zalazar*, 653 F. Supp. 2d 335, 343 (S.D.N.Y. 2009). This method is generally referred to as the "lodestar." *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) ("[T]here is a 'strong presumption' that the lodestar figure is reasonable . . . ."). The "lodestar" is calculated by multiplying "a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Under section 505 of the Copyright Act, fees may be awarded where plaintiff's counsel works on a contingent fee arrangement. *See, e.g., Delman Fabrics, Inc. v. Holland Fabrics, Inc.*,

No. 84 CIV. 2512-CSH, 1986 WL 13803, at *1 (S.D.N.Y. Nov. 28, 1986) (awarding $37,312.50

in fees and $1,930.73 in costs where plaintiff's counsel worked on contingency); *In Design v. K-

Mart Apparel Corp.*, No. 87 CIV. 8397 (AGS), 1996 WL 4122, at *7 (S.D.N.Y. Jan. 3, 1996)

(awarding $65,000 in attorneys' fees under section 505 where plaintiff's counsel worked on

contingency). "In calculating the amount of such a fee [under the Copyright Act], professional

fee standards apply, without regard to private arrangements." *Delman Fabrics* at *1 (citation

omitted). Further, the lodestar method applies with equal force to copyright attorneys who work

on contingency. *U.S. Media Corp. v. Edde Entm't, Inc.,* 94 Civ. 4849, 1999 WL 498216 at *4

(S.D.N.Y. July 14, 1999) (rejecting contingency fee agreement as basis for adjusting lodestar

in Copyright Act case).


## ARGUMENT

**POINT I:**     **AN AWARD OF ATTORNEYS' FEES WOULD SATISFY THE COPYRIGHT ACT'S PURPOSES OF COMPENSATION AND DETERRENCE**

*Fogerty* instructs courts to advance considerations of compensation and deterrence,

which means that the Court should look at whether an award of attorneys' fees will not only

compensate parties for raising "objectively reasonable claims and defenses," but also "deter

infringement." *Matthew Bender & Co. v. West Publ'g Co.,* 240 F.3d 116, 122 (2d Cir. 2001)

("*Matthew Bender*").

### A.     THE MODEST VALUE OF PLAINTIFF'S COPYRIGHTED WORK JUSTIFIES AN AWARD OF ATTORNEYS' FEES TO DETER FUTURE INFRINGEMENT

To ensure that copyright holders are motivated to prosecute meritorious claims, and to deter

copyright infringers from stealing protected works, courts in this Circuit (and beyond) have

consistently recognized that where monetary recovery is low, the prevailing party should have a

"presumptive entitlement" to the full amount of attorneys' fees. Thus, in *Crown Awards,* the

Honorable Chief Judge McMahon recognized:

> One such factor the Court may consider [in shifting fees] is the amount at stake in the litigation. In a case decided by the Seventh Circuit, Judge Posner noted that "the prevailing party in a copyright case in which the monetary stakes are small should have a presumptive entitlement to an award of attorneys' fees." *Assessment Techs. of WI, LLC v. Wiredata, Inc.*, 361 F.3d 434, 437 (7th Cir. Mar. 17, 2004) (citations omitted). This factor bolsters considerations of compensation, because "when a meritorious claim or defense is not lucrative, an award of attorneys' fees may be necessary to enable the party possessing the meritorious claim or defense to press it to a successful conclusion rather than surrender it because the cost of vindication exceeds the private benefit to the party**."** *Id.*

*Crown Awards* at 294-95 (underline added); *see also U.S. Media Corp.,* 1998 WL 401532, at *27

("the relatively modesty of the amounts awarded to plaintiff in damages suggests that such

deterrence is appropriately served by an award of fees"); *Harrell v. Van Der Plas*, No. 08-cv-

8252 (GEL), 2009 WL 3756327, *4 (S.D.N.Y. Nov. 9, 2009) ("Far from defendants' position

that plaintiff's [fees] application should be denied because the judgment is already substantially

more than the trivial profits defendants earned from any purported infringement, such an award

is 'particularly justified' where defendants' actual profits from the infringement were relatively

small.") (*citing Assessment Techs* at 437).[1]

In *Crown Awards,* after Judge McMahon held a two-day bench trial at which $22,845.18

was awarded, the court granted plaintiff the entire amount of attorneys' fees and costs requested

in the sum of $150,024.51. The court noted that:

> "[h]ad this [the $22,845.18] been the only possible award, the Plaintiff might not have litigated the infringement, or might have been forced to accept a settlement which would

---

[1] *Accord Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996) ("we are particularly concerned that the small award for damages in this case is insufficient to deter future copyright infringements such as the one at issue here"); *DC Comics v. Pac. Pictures Corp.,* No. 2:10-CV-03633-ODW, 2013 WL 1389960, at *5 (C.D. Cal. Apr. 4, 2013) ("The Ninth Circuit has noted particular concern that copyright holders will not prosecute infringement actions when the amount at stake is low") (citing *Magnuson*); Paul Goldstein, *Copyright* § 12.3.2.2 (2d ed.2002); Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 14.10 (2002).

not fully address the wrong the Defendant committed. Moreover, an award of attorneys' fees would ensure that this particular Defendant would not escape from litigation relatively unscathed, since its actual profits in the case are relatively small . . . Only an award of attorneys' fees will have an appropriately deterrent effect.

*Crown Awards*, 564 F. Supp. 2d at 296

The same logic adheres in this case. Plaintiff acknowledged in his pre-trial submissions that the value of the Photograph at issue was relatively modest. Ultimately, the Court awarded the statutory minimum of $750 after finding that the hypothetical licensing fee of the Photograph would be approximately $100. If the Court were to deny attorneys' fees to Plaintiff after prosecuting a meritorious claim to judgment, then Hearst (and others similarly situated) would be emboldened to steal more photographs, knowing that the penalty for doing so is nominal. An award of fees is therefore the best preventive measure to ensure that Hearst complies with U.S. Copyright law.

**B.     PLAINTIFF SHOULD BE APPROPRIATELY COMPENSATED FOR PROSECUTING A MERITORIOUS INFRINGEMENT CLAIM TO JUDGMENT**

"The purpose of the Copyright Act is to encourage people to devote themselves to intellectual and artistic creation by granting authors the exclusive right to the fruits of their labor." *Quinto,* 511 F. Supp. at 581 (*citing Goldstein v. California*, 412 U.S. 546, 556 (1973)); *see also Matthew Bender,* 240 F.3d at 122 (the Copyright Act's principle purpose "is to encourage the origination of creative works by attaching enforceable rights to them.")

"Thus a successful suit for copyright infringement involves more than just the vindication of private property rights, for if the Act were not enforced by private suits, the incentives Congress established to encourage authorship would have little effect. One way Congress sought to ensure that the Copyright Act would be enforced was to provide for discretionary awards of costs and attorneys' fees." *Quinto,* 511 F.Supp. at 581 (*citing Brefford v. I Had A Ball Co.*, 271

F.Supp. 623, 627 (S.D.N.Y.1967) ("The purpose of an award of attorney's fees to a plaintiff is to deter copyright infringement.")).

"Attorney's fees are awarded in order to assure equal access to the courts, to provide an economic incentive to challenge infringements, and to penalize the losing party." *Branch v. Ogilvy & Mather, Inc.*, 772 F. Supp. 1359, 1365 (S.D.N.Y. 1991) (*citing Oboler v. Goldin,* 714 F.2d 211, 213 (2d Cir.1983)); *see also FameFlynet, Inc. v. Shoshanna Collection, LLC*, 282 F. Supp. 3d 618, 627–28 (S.D.N.Y. 2017), *appeal withdrawn*, No. 18-633, 2018 WL 2740233 (2d Cir. Mar. 20, 2018) ("The Plaintiff's request for reasonable attorney's fees and costs is granted as it promotes the stated purposes of the Copyright Act. Specifically, shifting fees here serves to encourage and reward innovators for their contributions in the march toward progress rather than burdening them with the costs of defending their protected works. The Plaintiff's motion for reasonable costs and attorney's fees is granted."); *Engel v. Wild Oats, Inc.,* 644 F.Supp. 1089, 1093 (S.D.N.Y.1986) ("Fees and costs in copyright infringement cases, . . . are . . . to be awarded with an eye toward encouraging the pursuit of colorable copyright claims and deterring further infringement.").

Here, an award of attorneys' fees to Plaintiff as the prevailing party would encourage copyright holders to bring meritorious claims which help demarcate "the boundaries of copyright law ... as clearly as possible in order to maximize the public exposure to valuable works." *MiTek Holdings, Inc. v. Arce Eng'g Co.,* 198 F.3d 840, 842–43 (11th Cir. 1999) (quoting *Fogerty,* 510 U.S. at 526–27). The Court's award of fees here will encourage prosecution of such claims which ultimately help to ensure that a fully functioning licensing market remains intact.  Photographers should be properly credited and compensated in exchange for widescale exploitation of their work.  The net result, of course, is the benefit to the public which has an insatiable appetite to view newsworthy photographs.

On the other hand, if the Court were to deny Plaintiff's application, then it would disincentivize copyright holders from challenging infringements involving registered works of modest value. Commercial publishers would enjoy blanket immunity from infringement suits and thereby engage in mass piracy of newsworthy photographs, many of which are of modest value. *See Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608, 609–10 (7th Cir. 2002) ("willful infringements involving small amounts of money cannot be adequately deterred . . . without an award of attorneys' fees. No one can prosecute a copyright suit for $3,000. The effect of the district court's decision if universalized would be to allow minor infringements, though willful, to be committed with impunity, to be in effect privileged, immune from legal redress. The smaller the damages, provided there is a real, and especially a willful, infringement, the stronger the case for an award of attorneys' fees.").

Finally, Plaintiff's counsel, Liebowitz Law Firm, serves a valuable public need by prosecuting meritorious infringement claims on behalf of photographers whose art contributes to the fabric of American society. But for the Liebowitz Law Firm's efforts, amateur photographers like Jonathan Otto would not have access to the federal courts and media corporations would be running roughshod over photographers' rights. An award of fees in the full amount is justified as recognition for the Liebowitz Law Firm's crucial role acting as "private attorney general" to enforce the rights of the artistic community. *See Hearst Corp. v. Oregon Worsted Co.,* No. CV 99-640-BR, 2001 WL 668040, at *4 (D. Or. Apr. 18, 2001) ("an award of attorneys' fees to Plaintiffs will compensate them for their costs of serving as a private attorney general, encourage future private enforcement of infringement claims, and deter future infringements.").

**C.** **THE COURT'S FINDING OF NON-WILLFULNESS DOES NOT PRECLUDE AN AWARD OF FEES BECAUSE DEFENDANT REMAINS BLAMEWORTHY**

The Second Circuit holds that "[w]illful infringement . . . is not a necessary requirement for an award of attorney' fees to a prevailing plaintiff." *In Design v. K–Mart Apparel Corp.,* 13 F.3d 559, 567–68 (2d Cir. 1994) (citations omitted).[2] "The fact that a defendant has been held liable for infringement necessarily means the defendant is blameworthy." *Id.* at 568 (citations omitted); see also *Scanlon v. Kessler,* 23 F.Supp.2d 413, 416 (S.D.N.Y.1998) ("the court's finding of lack of willfulness . . . does not prevent plaintiff from being awarded attorney's fees and costs"); *Microsoft Corp. v. Software Wholesale Club, Inc.,* 129 F.Supp.2d 995, 1003 (S.D.Tex.2000) ("A finding of willful infringement is not a prerequisite to an award of attorney fees under the Copyright Act.").

Here, while the Court ultimately determined that Defendant's infringement was non-willful, it should be emphasized that Hearst never argued that its infringement was *innocent.* Hearst remains blameworthy as it has been found liable for violating the Copyright Act. Thus, the Court should award fees to encourage the prosecution of meritorious claims which help demarcate the boundaries of copyright law. *Fogerty,* 510 U.S. at 526-27.

**POINT II:** **HEARST'S DEFENSES TO LIABILITY WERE OBJECTIVELY UNREASONABLE**

Objective unreasonableness of a party's claims or defenses is sufficient to subject a party to an award of attorneys' fees under § 505. *See, e.g., Matthew Bender* at 121-22; *Crown Awards* at 294 (objective unreasonableness is sufficient to subject a party to an award of attorneys'

---

[2] Overruled on other grounds by *Fogerty,* 510 U.S. at 533; *but see Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 311 (S.D.N.Y. 2009) ("there is nothing in *Fogerty* that negates the Second Circuit's conclusion that attorney's fees may be awarded to a prevailing plaintiff even in the absence of any finding that the defendant's infringement was willful.")

fees under § 505).  Normally this factor should be given "substantial weight." *Matthew Bender* at 122.

"A court need not determine that a claim or defense was frivolous or asserted in bad faith in order to find that it was objectively unreasonable." *Waves Audio, Ltd., Waves, Inc. v. Reckless Music, LLC*, No. 09 CIV. 2282 (JCF), 2010 WL 2365689, at *2 (S.D.N.Y. June 9, 2010).  Courts are more likely to award fees "where a party knew or willfully ignored evidence of his claims' meritlessness, where such meritlessness could have been discovered by basic pre-trial investigation, or where such meritlessness is made clear to the court early in the litigation."  *Small v. Implant Direct Mfg. LLC*, No. 06 CIV. 683 NRB, 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014), *aff'd*, 609 F. App'x 650 (Fed. Cir. 2015). Here, all of Hearst's defenses to liability for copyright infringement were objectively unreasonable.

## A.   THE FAIR USE DEFENSE IS OBJECTIVELY UNREASONABLE

Hearst's fair use defense is objectively unreasonable because there is nothing remotely transformative about Hearst's secondary use of the Photograph.  Given that the first factor is the "heart of the fair use inquiry," *On Davis v. The Gap, Inc.*, 246 F.3d 152, 174 (2d Cir. 2001), this defense never should have been invoked in the first instance.

First, the Court recognized in its decision and order, dated December 10, 2018, that Hearst failed to cite any legal authority for the proposition that its use was transformative because the photograph was created for personal use.  *Otto*, 345 F. Supp. 3d at 427 ("The Court has not found any law supporting this point, and the existing precedent requires the opposite conclusion.").  Typically, arguments made without legal support are deemed frivolous.  *See, e.g., Castro v. City of New York*, No. 94 CIV. 5114 JFK, 1996 WL 617341, at *2 (S.D.N.Y. Oct. 25, 1996) (characterizing argument as "frivolous" where "there is no legal authority that would

remotely support such an argument"); *New Pac. Overseas Grp. (USA) Inc. v. Excal Int'l Dev. Corp.*, No. 99 CIV. 2436 DLC, 2000 WL 377513, at *7 (S.D.N.Y. Apr. 12, 2000) (finding argument "plainly frivolous" where there was "no legal authority in support of these novel arguments").

Second, Hearst's theory that it transformed the Photograph by "commenting" on the President's availability for photographs at the wedding as part of a broader trend in the President's behavior is unreasonable. As a preliminary matter, Hearst's argument relied on non-binding, out-of-Circuit authority to support its theory[3] while entirely ignoring the weight of authority within the Second Circuit.[4] Thus, once again, Hearst proffered far-fetched arguments without any substantial legal support.

Moreover, it's evident that Hearst used the Photograph to merely illustrate a news report about the President's presence at a private wedding. *See Otto,* 345 F. Supp. 3d at 428–29 ("It would be antithetical to the purposes of copyright protection to allow media companies to steal personal images and benefit from the fair use defense by simply inserting the photo in an article which only recites factual information—much of which can be gleaned from the photograph itself."). Even if the so-called "commentary" alleged by Hearst was to make note of the President's pattern of crashing weddings, Hearst failed to explain how such alleged commentary

---

[3] *Calkins v. Playboy Enterprises Int'l, Inc.*, 561 F.Supp.2d 1136, 1141 (E.D. Cal. 2008); *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000), two cases which the Court found were inapposite and not binding on the Court. *Otto,* 345 F. Supp. 3d at 428.

[4] *See, e,.g, Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F.Supp.3d 339, 352 (S.D.N.Y. 2017); *BWP Media USA, Inc. v. Gossip Cop Media, Inc.,* 196 F.Supp.3d 395, 407 (S.D.N.Y. 2016); *Psihoyos v. Nat'l Exam'r*, No. 97-cv-7624 (JSM), 1998 WL 336655, at *3 (S.D.N.Y. June 22, 1998).

transformed the Photograph beyond its original intent of depicting the President crashing weddings.

Hypothetically, had Hearst taken a political stance by attacking the President's penchant for crashing weddings as "unpresidential", or criticized the President for spending time crashing weddings rather than attending to important executive decisions, then at least Hearst's transformative argument would be colorable under First Amendment grounds. *See, e,g., Dhillon v. Does 1-10,* No. C-13-1465, 2014 WL 722592, at *5 (N.D. Cal., February 25, 2014) (noting that "the defendant used the headshot photo in connection with an article criticizing the plaintiff's political views"); *Peterman v. Republican Nat'l Comm.,* 369 F. Supp. 3d 1053 (D. Mont. 2019) (finding use transformative where photograph was employed to criticize a political rival's background as a musician). But in this case, Hearst published a "puff piece" intended to report on the President's lifestyle choices. There was no criticism of the President (or his policies) whatsoever and there was no editorial commentary at all. As the Court has recognized, Hearst's infringing article does nothing more than report on what was already depicted in the image.

Third, with respect to the fourth fair use factor regarding impact on the market, Hearst knew throughout the litigation that Otto had promptly sought to capitalize on the widespread use of his work. *Otto,* 345 F. Supp. 3d at 433 ("The fact that the Photograph was reported on so widely indicates that there was indeed a market for it"). Indeed, Hearst's expert witness, Jonathan G. Plumpe, cited the various and widespread uses of Otto's work by commercial new outlets. Hearst even stipulated to facts regarding widespread commercial exploitation of the Photograph prior to moving for summary judgment. [Dkt. #41, ¶¶ 43-47]. And yet, Hearst argued that its use of the Photograph had no impact on the actual or potential market because "no such

market even exists." [Hearst memo, Dkt. #52, p. 39 of 52]. In other words, Hearst stipulated that a widespread market existed but then argued that no market existed. Such a contradictory position is objectively unreasonable by any measure.

Given the unreasonable arguments proffered by Hearst on the critical questions of whether secondary use was transformative (first factor) or had market impact (fourth factor), coupled with the absence of legal authority to support such arguments, the Court should conclude that its fair use defense was objectively unreasonable.

### B. HEARST'S OTHER DEFENSES TO LIABILITY ARE OBJECTIVELY UNREASONABLE BECAUSE THEY WERE NOT SUPPORTED BY THE FACTUAL RECORD

Prior to summary judgment, Hearst also refused to withdraw its other defenses to liability, including meritless challenges to the validity of Otto's copyright registration, and boilerplate defenses of waiver, consent and release.

With respect to the validity of the copyright, Otto's certificate was entitled to the presumption of validity because the photograph was published within five years of registration. *Whimsicality, Inc. v. Rubie's Costume Co. Inc.*, 891 F.2d 452, 455 (2d Cir. 1989). Even though Hearst carried the burden to invalidate the copyright through the production of admissible evidence, Hearst made no attempt during discovery to gather evidence from the Copyright Office. Instead, it argued that Otto carried such burden. Ultimately, Otto was forced to incur the time and expense of ordering a certified deposit copy from the Copyright Office because Hearst refused to concede that the registration was valid.

Hearst's defenses of waiver, consent and release were arguably frivolous because they were not supported by any factual evidence on the record. *Otto,* 345 F. Supp. at 434–35 ("no reasonable jury could find that Otto intended to waive his rights in the Photograph by texting it to Burke nor that Otto intended for Burke to disseminate the Photograph. Even if Otto allowed

Burke to share the image, there is no evidence that there was a similar agreement or "meeting of the minds" with Hearst, the party in this matter."); *id*. ("there is no evidence that Otto entered into an agreement with Hearst, or any other parties, to release his copyright infringement claims. Both parties agree that Otto and Hearst had no communication prior to this suit and that Hearst did not know Otto was the copyright owner of the Photograph until receiving the Complaint."). Once again, Hearst stipulated to facts which precluded the assertion of these defenses, but then went ahead and briefed the arguments anyway. It was objectively unreasonable for Hearst to do so.

## POINT III: THE HOURLY RATES OF PLAINTIFF'S ATTORNEYS ARE REASONABLE

Hourly rates are deemed reasonable when they are in line with the rates prevailing in the district for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13 CIV. 2493 KBF, 2014 WL 4792082, at *1 (S.D.N.Y. Sept. 24, 2014); *see also Arbor Hill*, 522 F.3d at 192 (courts "should generally use 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee'") (citation omitted); *Galeana v. Lemongrass on Broadway Corp.*, No. 10 Civ. 7270 (GBD) (MHD), 2014 WL 1364493, at *13 (S.D.N.Y. Apr. 4, 2014) (in determining whether a fee is reasonable, "the court may [also] consider rates approved in prior cases and the court's own knowledge of reasonable rates in the district.") (citing *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005)).

As set forth fully in the accompanying Declaration of James H. Freeman ["Freeman Declr."] and Richard Liebowitz ["Liebowitz Declr."], the hourly rates and years of

experience of each attorney who worked on Plaintiff's behalf are as follows:

| Name | Title (Experience) | Hourly | Hours | Fees |
|------|--------------------|--------|-------|------|
| Richard P. Liebowitz | Founding Partner (4 Years) | $425 | 13.0 | $5,525.00 |
| James H. Freeman | Senior Counsel (18 years) | $375 | 145.75 | $54,656.25 |
| | | Totals: | | **$60,181.25** |

### 1. Mr. Freeman's Hourly Rate of $375/hr. is Reasonable

Freeman served as lead counsel since filing a notice of appearance in November 2017 and drafted the briefs which led to Otto's victory on summary judgment. [Freeman Declr. ¶ 3] His hourly rate of $375/hr. in this action is commensurate with what other courts in this District have approved for Freeman in the last two years. [Freeman Declr. ¶ 7] *See, e.g. Wolman v. Hudson Valley News Network, LLC*, 18-cv-11589 (JSR) (S.D.N.Y. April 15, 2019) [Dkt. #17] (awarding attorneys' fees on default based on Freeman's hourly rate of $375/hr.) [Dkt. #17, dated 4/15/19]; *Hirsch v. The Dishh, LLC*, 18-cv-09079 (LGS) (S.D.N.Y. December 10, 2018) [Dkt. # 19] (awarding attorneys' fees on default based on Freeman's hourly rate of $350/hr.); *Anderson v. Primera Plana NY, Inc.,* 17-cv-7715 (JMF-KNF) (S.D.N.Y. May 1, 2019) [Dkt. # 31] (awarding attorneys' fees on default based on Freeman's hourly rate of $300/hr. as of 2017); *Mordant v. Citinsider LLC*, No. 18-CV-9054 (RA), 2019 WL 3288391, at *2 (S.D.N.Y. July 22, 2019) (awarding attorneys' fees on default based on Freeman's hourly rate of $300/hr. derived from *Anderson* and noting that Freeman's work on default involved ministerial aspects).

Freeman's hourly rate of $375/hr. is also well below what other courts in this district have found as reasonable for senior associates in New York-based law firms practicing in this District. *See, e.g.*, *Genger v. Genger*, No. 14 Civ. 5683 (KBF), 2015 WL 1011718, at *2 (S.D.N.Y. Mar. 9, 2015) ("New York district courts have . . . recently approved rates for law

firm associates in the range of $200 to $450 per hour.”); *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 56 (S.D.N.Y. 2015) (approving hourly rate of $461 for second-year associate); *Walker v. Carter*, No. 12 Civ. 5384 (ALC) (RLE), 2016 WL 6820722, at *1 (S.D.N.Y. Aug. 29, 2016) (approving hourly rates of $370 to $425 for associates with between six and eight years of experience); *Dweck v. Amadi*, No. 10 Civ. 2577 (RMB) (HBP), 2012 WL 3020029, at *4 & n. 5 (S.D.N.Y. July 6, 2012) (collecting cases approving rates between $180 and $440 per hour for associates); *OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*, No. 09 Civ. 8665 (JGK) (FM), 2010 WL 5538552, at *4 (S.D.N.Y. Dec. 6, 2010), *report and recommendation adopted*, 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011) (approving rates between $355 and $400 per hour for associates); *Malletier v. Artex Creative Int'l Corp.,* 687 F.Supp.2d 347, 361 (S.D.N.Y. 2010) (“The hourly rates of $390.00 to $470.00 charged by the associates and junior partner representing Vuitton fall at the very top of the spectrum of reasonable hourly rates for associates.”)

Freeman’s hourly rate is further justified by his 18 years of private practice in this District, which includes eight years of “AM 100” law firm experience, two-plus years at a boutique firm on Wall Street, and six years as a solo practitioner. [Freeman Decl. ¶ 8]. Freeman also possesses extensive experience in copyright infringement matters and, in the last year, has managed to secure victories against other largescale media corporations represented by sophisticated counsel. *See, e.g.*, *Sands v. CBS Interactive, Inc.,* 18-cv-7345 (JSR), 2019 WL 1447014 (S.D.N.Y. March 13, 2019) (summary judgment); *Mango v. BuzzFeed, Inc.,* 356 F. Supp. 3d 368 (S.D.N.Y. 2019) (bench trial); *Chicoineau v. Bonnier Corp.,* No. 18-CV-3264 (JSR), 2018 WL 6039387, at *1 (S.D.N.Y. Oct. 16, 2018) (summary judgment). [Freeman Decl. ¶ 8].

### 2. Mr. Liebowitz's Hourly Rate of $425/hr. is Reasonable

Richard Liebowitz is a founding member and managing partner at Liebowitz Law Firm, PLLC, a boutique law firm which specializes in copyright enforcement of photographs and videos. He graduated from the Maurice A. Deane School of Law at Hofstra University in 2015 and his firm has filed over 1500 copyright infringement lawsuits since January 2016. He has thereby developed an expertise in the field. His rate is $425/hr. [Liebowitz Declr. ¶ 3]

Liebowitz's hourly rate of $425/hr. in this action is commensurate with what other courts in this District have recently approved for Liebowitz. *See, e.g., Lanzilote v. The Tempest Media, Inc.*, 19-cv-00477 (JGK) (S.D.N.Y. June 4, 2019) [Dkt. #19] (awarding attorneys' fees on default based on Liebowitz's hourly rate of $425/hr.).

Liebowitz's hourly rate of $425 is also "well below what other courts in this district have found as reasonable" for partners. *See, e.g., Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13 Civ. 2493 (KBF), 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014) ("In recent years, New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour."); *Mahan v. Roc Nation, LLC*, No. 14 Civ. 5075 (LGS), 2016 WL 4718018, at *2 (S.D.N.Y. Sept. 9, 2016) (approving partners' hourly rates of $565 to $855); *Broadcast Music, Inc. v. Pamdh Enters., Inc.*, No. 14-cv-2255 (KMW), 2014 WL 2781846, at *7 (S.D.N.Y. June 19, 2014) (collecting cases approving partners' hourly rates of $400 to $735); *Pyatt v. Raymond*, No. 10 Civ. 8764 (CM), 2012 WL 1668248, at *6 (S.D.N.Y. May 10, 2012) (collecting cases approving hourly rates of $400 to $650 for partners in copyright and trademark cases); *GAKM Res. LLC v. Jaylyn Sales Inc.*, No. 08 Civ. 6030 (GEL), 2009 WL 2150891, at *8 (S.D.N.Y. July 20, 2009) (approving hourly rates of $650 and $600 for partners specializing in intellectual property litigation); Diplomatic Man, 2009 WL 935674, at

**5-6 (approving partners' hourly rate of $650); *BMS Entm't/Heat Music LLC v. Bridges*, No. 04 Civ. 2484 (PKC), 2007 WL 1989292, at *2, 4 (S.D.N.Y. July 6, 2007) (approving hourly rates greater than $500 for experienced copyright litigators).

## POINT IV:  THE NUMBER OF HOURS EXPENDED BY PLAINTIFF'S COUNSEL IS REASONABLE

"In calculating the number of 'reasonable hours,' the court looks to 'its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (quoting *Di Filippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985)). "Courts base the hours inquiry not on what appears necessary in hindsight, but on whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Mugavero v. Arms Acres, Inc.,* No. 03-cv-5724 (PGG), 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (citation and internal quotation marks omitted).

Here, the number of hours Plaintiff's counsel expended is reasonable.

### A.  MR. FREEMAN'S HOURS ARE REASONABLE

Mr. Freeman spent a total of 145.75 hours on this case.  [Freeman Decl. ¶ 5, Ex. A] The hours reflected in Mr. Freeman's declaration do <u>not</u> include any administrative or paralegal tasks (even though Freeman performed all his such tasks himself).  From November 22, 2017 onward, Freeman handled all aspects of the case including legal research, drafting of letters and motions, attendance at deposition, communications with opposing counsel and every court appearance.  He also served as lead counsel at trial, delivering the opening and closing statement and examining four witnesses on the stand.  [Freeman Decl. ¶ 4]

These hours are substantiated by Freeman's declaration, which attaches transcripted

time entries that have been reconstructed from contemporaneous records. [Freeman Decl. ¶ 5, Ex. A]  *See, e.g., Mishkin Law Office v. Lopalo*, 767 F.3d 144, 149 (2d Cir. 2014) ("Attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying *Carey* and suffice to permit recovery of attorneys' fees.") (quoting *David v. Sullivan,* 777 F.Supp. 212, 223 (E.D.N.Y.1991)); *Carrero v. New York City Hous. Auth.*, 685 F. Supp. 904, 908–09 (S.D.N.Y. 1988), *aff'd and remanded on other grounds*, 890 F.2d 569 (2d Cir. 1989) ("Where the attorneys have provided the court with affidavits that have been reconstructed from contemporaneous records and that set forth all charges with specificity, fees have not been denied").[5]

These records indicate the hours expended by Freeman and the nature of the work done.  *TCA Television Corp. v. McCollum*, No. 15-cv-4325-GBD-JCF, 2017 WL 2418751, at *16 (S.D.N.Y. June 5, 2017), *report and recommendation adopted*, No. 15-cv-4325-GBD, 2018 WL 2932724 (S.D.N.Y. June 12, 2018).  With only one attorney running most of the case throughout the course of litigation, the staffing could not have been any leaner or more efficient.  All of the work done was necessary and not redundant.

---

[5] Courts have recognized that attorneys who work on a contingency fee arrangement are not expected to maintain contemporaneous time records.  In such cases, equitable considerations warrant a discount in fees (rather than a complete denial).  *See, e.g., Monaghan v. SZS 33 Assocs., L.P.,* 154 F.R.D. 78, 84 (S.D.N.Y. 1994) ("it was not unreasonable for [the plaintiff]'s attorneys to neglect to keep such records based on their contingency fee arrangement. Accordingly, in the interest of equity, this Court will reduce the amount of hours expended in the reconstructed time records by 30%"); *Hensley v. Eckerhart,* 461 U.S. 424, 438 n. 13 (1983) (finding that district court properly considered the reasonableness of the hours expended, and reduced the hours of one attorney by 30% to account for his failure to keep contemporaneous time records); *Johnson v. Kay,* 742 F.Supp. 822, 836–37 (S.D.N.Y.1990) (accepting reconstructed time records, but reducing amount of award by 20% as a penalty).

**B.     MR. LIEBOWITZ'S HOURS ARE REASONABLE**

Mr. Liebowitz spent a total of 13 hours on this case, which consisted of pre-filing due diligence, filing of the complaint, initial discovery requests and responses, and trial assistance.  [Liebowitz Declr. ¶ 3]

**C.     THE HOURS EXPENDED BY PLAINTIFF'S COUNSEL ARE COMMENSURATE WITH SIMILAR INFRINGEMENT ACTIONS INVOLVING COPYRIGHTS OF MODEST VALUE**

The total of 158.75 hours expended by Plaintiffs' attorneys in this litigation, which spanned over two years time, is entirely reasonable in light of other cases involving copyrights of modest value.  *See, e,g., Fameflynet, Inc.,* 282 f. supp. 3d at 627 (prevailing plaintiff's counsel billed 113.10 hours to recover $750 in damages); *Harrell,* 2009 WL 3756327 (prevailing plaintiff's counsel billed 182.60 hours to recover $7,500 in damages); *Crown Awards*, 564 F. Supp. 2d at 296 (prevailing plaintiff's counsel billed 358.40 hours to recover $22,845.18 in damages).

**POINT V:     PLAINTIFF SHOULD BE REIMBURSED FOR HIS COSTS**

Expenses incurred in the course of litigation should also be itemized so that the reviewing court can determine whether each cost was in fact necessary to the success of the litigation *Regulatory Fundamentals*, 2014 WL 4792082, at *2.

Here, Plaintiff incurred expenses of $440.00 during the course of litigation, all of which were necessary to his success as a prevailing party. [Freeman Declr. ¶ 11]

**CONCLUSION**

For the reasons set forth herein, Plaintiff respectfully requests that the Court award $60,181.25 in attorneys' fees and $440.00 in costs, or a total award of $60,621.25.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

**/jameshfreeman/**
James H. Freeman, Esq.
Richard Liebowitz
11 Sunrise Plaza, Ste. 305
Valley Stream, NY 11580
(516) 233-1660
jf@liebowitzlawfirm.com

*Counsel for Plaintiff Jonathan Otto*