IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JONATHAN OTTO,<br><br>   Plaintiff,<br><br>v.<br><br>HEARST COMMUNICATIONS, INC.,<br><br>   Defendant. | C.A. No. 1:17-cv-04712-GHW |

**DEFENDANT'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR
ATTORNEYS' FEES AND COSTS PURSUANT TO 17 U.S.C § 505**

Jonathan R. Donnellan
Ravi V. Sitwala
Nathaniel S. Boyer
THE HEARST CORPORATION
 Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 841-7000
Fax: (212) 554-7000
jdonnellan@hearst.com
rsitwala@hearst.com
nathaniel.boyer@hearst.com

*Counsel for Defendant Hearst
Communications, Inc.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................1.

FACTUAL AND PROCEDURAL BACKGROUND ................................................2

ARGUMENT ..............................................................................................................3

    I.      PLAINTIFF'S APPLICATION SHOULD BE DENIED IN FULL .....................3

        A.      In *Fogerty* and *Kirtsaeng*, the Supreme Court Held that Fees Are
Never Presumed for Prevailing Plaintiffs or Defendants, and
"Substantial Weight" Must Be Afforded to the "Objective
Reasonableness" of the Non-Moving Party's Positions .............................3

        B.      Hearst's Positions in This Case Were Objectively Reasonable .................6

              1.      Defendant's Arguments Regarding Liability, Even
Though Unsuccessful, Were Not "Objectively
Unreasonable." ...............................................................................7

              2.      Defendant's Arguments Regarding Damages Were
Successful and Reasonable ............................................................14

              3.      Defendant Reasonably Responded to Plaintiff's
Misleading Positions Regarding the Amount at Issue in
This Case ........................................................................................15

        C.      There Is No Need for Further Compensation for Plaintiff's
Counsel ...................................................................................................19

        D.      Defendant Has Not Engaged in Any Conduct that Needs to be
Deterred Through an Award of Attorneys' Fees ......................................21

        E.      Defendant's Motivation in Defending this Case Was Proper ...................21

        F.      In Sum, All Factors Favor the Defendant ................................................22

    II.      SHOULD THE COURT GRANT PLAINTIFF'S APPLICATION,
PLAINTIFF'S UNREASONABLE ATTORNEYS' FEES DEMAND
SHOULD BE REDUCED .................................................................................22

CONCLUSION .........................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agence France Presse v. Morel*,
    No. 10-CV-2730 (AJN), 2015 WL 13021413 (S.D.N.Y. Mar. 23, 2015) ......................7, 8, 18

*Anderson v. Primera Plana NY, Inc.*,
    No. 17-CV-7715 (JMF) (KNF), 2019 WL 1936741 (S.D.N.Y. Mar. 29, 2019) ...................23

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
    522 F.3d 182 (2d Cir. 2008)...............................................................................................22, 23

*Assessment Techs. Of WI, LLC v. WIREdata, Inc.*,
    361 F.3d 434 (7th Cir. 2004) ....................................................................................................19

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
    No. 16-CV-7634 (JMF), 2018 WL 357298 (S.D.N.Y. Jan. 10, 2018) ....................................7

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
    537 F.3d 132 (2d Cir. 2008)......................................................................................................24

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006)..........................................................................................9, 12, 13

*Bond v. Welpak Corp.*,
    No. 15-CV-2403 (JBW) (SMG), 2017 WL 4325819 (E.D.N.Y. Sept. 26,
    2017) ........................................................................................................................................24

*BWP Media USA, Inc. v. Mishka NYC LLC*,
    No. 13 CV 4435 (ENV)(LB), 2016 WL 8309676 (E.D.N.Y. Dec. 28, 2016) ..........................7

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)....................................................................................................................7

*Cariou v. Prince*,
    714 F.3d 694 (2d Cir. 2013)..................................................................................................7, 13

*Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*,
    No. 14 Civ. 9270 (RJS), 2017 WL 3393850 (S.D.N.Y. Aug. 4, 2017) ....................................6

*Crown Awards, Inc. v. Discount Trophy & Co., Inc.*,
    564 F. Supp. 2d 290 (S.D.N.Y. 2008)......................................................................................19

*E.E.O.C. v. Original Honeybaked Ham Co. of Ga.*,
    No. 11-cv-02560 (MSK) (MEH), 2012 WL 5430974 (D. Colo. Nov. 7, 2012).......................8

*FameFlyNet, Inc. v. Jasmine Enters. Inc.*,
No. 17 C 4749, 2019 WL 3733592 (N.D. Ill. Aug. 8, 2019)................................................8, 13

*Farrar v. Hobby*,
506 U.S. 103 (1992)........................................................................................................24

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994).................................................................................................. *passim*

*Greenwich Film Prods., S.A. v. DRG Records, Inc.*,
No. 91 CIV. 0546 (JSM), 1996 WL 502336 (S.D.N.Y. Sept. 5, 1996)...................................16

*Harrell v. Van der Plas*,
No. 08 CIV. 8252 (GEL), 2009 WL 3756327 (S.D.N.Y. Nov. 9, 2009)..................................20

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)....................................................................................................24, 25

*Huurman v. Foster*,
No. 07 CIV. 9326 (MHD), 2010 WL 2545865 (S.D.N.Y. June 21, 2010)..............................20

*In Design v. K–Mart Apparel Corp.*,
13 F.3d 559 (2d Cir. 1994)................................................................................................14

*Johnson v. Kay*,
742 F. Supp. 822 (S.D.N.Y. 1990)......................................................................................25

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*,
820 F. Supp. 2d 569 (S.D.N.Y. 2011).................................................................................19

*Kirtsaeng v. John Wiley & Sons, Inc.*,
136 S. Ct. 1979 (2016)................................................................................................ *passim*

*Lieb v. Topstone Indus., Inc.*,
788 F.2d 151 (3d Cir. 1986)................................................................................................5

*McDermott v. Monday Monday, LLC*,
No. 17-cv-9230 (DLC), 2018 WL 5312903 (S.D.N.Y. Oct. 26, 2018)..................................20

*Microsoft Corp. v. Software Wholesale Club, Inc.*,
129 F. Supp. 2d 995 (S.D. Tex. 2000) ................................................................................14

*Miller v. Facebook, Inc.*,
No. 10-cv-264 (WHA), 2010 WL 2198204 (N.D. Cal. May 28, 2010) ...................................9

*Monaghan v. SZS 33 Assocs., L.P.*,
154 F.R.D. 78 (S.D.N.Y. 1994) .........................................................................................25

*Mordant v. Citinsider LLC*,
No. 18-CV-9054 (RA), 2019 WL 3288391 (S.D.N.Y. July 22, 2019)...................................23

*Myeress v. Elite Travel Grp. USA*,
No. 18-CV-340 (AJN), 2018 WL 5961424 (S.D.N.Y. Nov. 14, 2018)...................................23

*Otto v. Hearst Commc'ns, Inc.*,
345 F. Supp. 3d 412 (S.D.N.Y. 2018)...................................................................7, 11, 13, 18

*Otto v. Hearst Commc'ns, Inc.*,
No. 17-CV-4712 (GHW) (JLC), 2019 WL 1034116 (S.D.N.Y. Feb. 21, 2019) ...................16

*Overseas Direct Imp. Co. v. Family Dollar Stores Inc.*,
No. 10 Civ. 4919 (JGK), 2013 WL 5988937 (S.D.N.Y. Nov. 12, 2013) .................................6

*Pearson Educ., Inc. v. Liu*,
No. 08 CIV. 6152 KBF, 2013 WL 6916883 (S.D.N.Y. Dec. 27, 2013)....................................6

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*,
No. 96 Civ. 4126, 2004 WL 728878 (S.D.N.Y. Apr. 6, 2004) .............................................6, 9

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ...............................................................................................8

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equipment, Ltd.*,
No. 11-CV-726 (CBA) (RLM), 2015 WL 13037562 (E.D.N.Y. Sept. 10,
2015) ....................................................................................................................................19

*Quinto v. Legal Times of Washington, Inc.*,
511 F. Supp. 579 (D.D.C. 1981)...........................................................................................20

*Sands v. CBS Interactive Inc.*,
No. 18-CV-7345 (JSR), 2019 WL 1447014 (S.D.N.Y. Mar. 13, 2019)...........................20, 21

*Scanlon v. Kessler*,
23 F. Supp. 2d 413 (S.D.N.Y. 1998).....................................................................................14

*Silberstein v. Fox Entm't Grp., Inc.*,
536 F. Supp. 2d 440 (S.D.N.Y. 2008)......................................................................................6

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
756 F.3d 73 (2d Cir. 2014)................................................................................................9, 10

*TCA Television Corp. v. McCollum*,
No. 15 Civ. 4325 (GBD) (JCF), 2017 WL 2418751 (S.D.N.Y. June 5, 2017)......................18

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
996 F.2d 1366 (2d Cir. 1993)................................................................................................13

*U.S. Media Corp. v. Edde Entm't Corp.*,
  No. 94 CIV. 4849 MHD, 1998 WL 401532 (S.D.N.Y. July 17, 1998)...................................20

*Viva Video, Inc. v. Cabrera*,
  9 F. App'x 77 (2d Cir. 2001) ...........................................................................................6

*Whitehead v. Mix Unit, LLC*,
  No. 17 Civ. 9476 (VSB) (JLC), 2019 WL 384446 (S.D.N.Y. Jan. 31, 2019) ........................23

*Williams v. Epic Sec. Corp.*,
  368 F. Supp. 3d 651 (S.D.N.Y. 2019)...................................................................................22

*Wright v. Warner Books, Inc.*,
  953 F.2d 731 (2d Cir. 1991)................................................................................................11

**Statutes**

17 U.S.C. § 107...................................................................................................................7

17 U.S.C. § 505.............................................................................................................1, 3, 4

**Other Authorities**

Fed. R. Evid. 408 ..............................................................................................................16

Defendant Hearst Communications, Inc. ("Defendant" or "Hearst") submits this memorandum of law in opposition to Plaintiff Jonathan Otto ("Plaintiff")'s application for attorneys' fees and costs pursuant to 17 U.S.C. § 505 (Doc. No. 132, the "Motion").

## PRELIMINARY STATEMENT

Plaintiff's Motion should be denied in full.  Plaintiff's primary argument is that there is a "presumptive entitlement" to attorneys' fees in copyright infringement cases where the prevailing plaintiff's recovery is modest, adding that Plaintiff's counsel serves as a "private attorney general" who, in this case, sought to clarify the bounds of copyright law.  These arguments, however, have never been adopted by the Supreme Court or the Second Circuit; they are, in fact, directly contrary to Supreme Court precedent, which Plaintiff does not address; and the cases on which Plaintiff relies have been rejected by subsequent cases in this and other courts.  *See infra* Argument Section I.C.

Plaintiff's focus on this supposed "presumptive entitlement" is an ineffective attempt to escape binding precedents that lead to the conclusion that Plaintiff's Motion must be denied. Courts in this Circuit, following Supreme Court guidance, assign "substantial weight" to the question of whether the non-prevailing party's arguments were "objectively (un)reasonable." Here, Defendant's arguments on both liability and damages were clearly "objectively reasonable," as that term has been defined by the Second Circuit and applied by this Court. Indeed, the Court found after a recent bench trial that, "on these facts," the editor who posted the photograph at issue in this case (the "Photograph") "could reasonably have believed in good faith that the use of the image was fair use."  Moreover, Defendant's arguments were a necessary response to Plaintiff's misleading litigation tactics, which were designed to obfuscate and artificially inflate the value of Plaintiff's case.  As a result of Plaintiff's unreasonable demands,

1

settlement was never a realistic option for Defendant in this case. *See infra* Argument Point I.B.

None of the other factors weigh in favor of awarding fees, either. There is no need for further compensation for the Plaintiff, who has already been awarded damages of 7.5 times a reasonable licensing fee for the work at issue. *See infra* Argument Point I.C. And there is no need to deter Defendant's conduct, for the reasons set forth in the Court's findings of fact and conclusions of law. *See infra* Argument Point I.D. Moreover, Plaintiff does not suggest that Defendant's motivations were somehow improper in defending this matter—although Plaintiff's tactics raise significant questions about Plaintiff's (or Plaintiff's counsel's) motivations. In particular, Plaintiff filed this case without any attempt to obtain a reasonable license fee, and then made settlement demands that always consisted of amounts far greater than any reasonable fee in addition to attorneys' fees expended up to the point of the demands. In other words, Plaintiff attempted to use the threat of a fee award to make unreasonable demands that caused the case to continue to be litigated. This turns the purpose of allowing for fees on its head, and heavily weighs against granting fees in order to disincentivize Plaintiff and others from pursuing actions for the entire purpose of seeking fees. *See infra* Argument Point I.E.

In sum, all of the factors weigh against awarding fees to Plaintiff, and the Motion should be denied in full. *See infra* Argument Point I.F. However, should the Court award Plaintiff anything, it should substantially reduce the fee award (i) to align with rates for which Plaintiff's counsel has been previously approved, (ii) to account for Plaintiff's limited success in this matter, and (iii) to account for Plaintiff's counsel's failure to submit contemporaneous records for the Court to review. *See infra* Argument Point II.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts most relevant to the disposition of this Motion are the Court's opinion and

order granting Plaintiff's motion for partial summary judgment on the issue of liability, *see* Doc. No. 85 (the "Summary Judgment Opinion"), and the Court's July 19, 2019 findings of fact and conclusions of law concerning the July 15, 2019 bench trial on damages, the transcript of which (the "Damages Decision") is annexed as Exhibit A to the August 20, 2019 Declaration of Ravi Sitwala ("Sitwala Declaration" or "Sitwala Decl."). Defendant assumes the Court is familiar with these rulings, and will not burden the Court with a recitation of them. Any additional facts that are relevant to the disposition of the Motion are referenced in the body of the Argument section below, and are set forth in the accompanying Sitwala Declaration.

## ARGUMENT

### I. PLAINTIFF'S APPLICATION SHOULD BE DENIED IN FULL.

Section 505 of the Copyright Act provides that, "[i]n any civil action under this title, the court in its discretion may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The Supreme Court has decided two cases addressing how Section 505 should be applied: *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), and *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016). Because Plaintiff glosses over these critical Supreme Court opinions, Defendant begins with a description of their holdings.

### A. In *Fogerty* and *Kirtsaeng*, the Supreme Court Held that Fees Are Never Presumed for Prevailing Plaintiffs or Defendants, and "Substantial Weight" Must Be Afforded to the "Objective Reasonableness" of the Non-Moving Party's Positions.

*Fogerty v. Fantasy.* In *Fogerty*, the Supreme Court rejected the plaintiff's argument that—like with the Civil Rights Act of 1964—attorneys' fees in copyright infringement cases should be awarded to prevailing plaintiffs as a "matter of course." 510 U.S. 517 (1994). In distinguishing the statutes, the Court explained that the heavy presumption in favor of fees for prevailing plaintiffs under the Civil Rights statutes is consistent with Congress' intent to use

"plaintiffs as 'private attorney[s] general'" to achieve the "important policy objectives" of the Civil Rights statutes. *Id.* at 523. "Oftentimes, in the civil rights context, impecunious 'private attorney general' plaintiffs can ill afford to litigate their claims against defendants with more resources. Congress sought to redress this balance in part, and to provide incentives for the bringing of meritorious lawsuits, by treating successful plaintiffs more favorably than successful defendants in terms of the award of attorney's fees." *Id.* at 524.

The Court in *Fogerty* rejected the argument that copyright plaintiff's counsel serve as "private attorneys general," explaining that "[t]he legislative history of § 505 [of the Copyright Act] provides no support for treating prevailing plaintiffs and defendants differently with respect to the recovery of attorney's fees." *Id.* at 523. The Supreme Court in *Fogerty* reasoned that "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* at 527; *see also id.* at 524 ("The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public."). Also in *Fogerty*, the Supreme Court rejected the prevailing defendant's argument that "both prevailing plaintiffs and defendants should be awarded attorney's fees as a matter of course, absent exceptional circumstances," observing that Congress had clearly not intended to adopt the "British Rule" for fee-shifting. *Id.* at 533; *see id.* ("The word 'may' clearly connotes discretion. The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of that discretion."). Thus, the Court in *Fogerty* held that the award of fees is truly discretionary, regardless of which party prevails.

The Court in *Fogerty* then noted with approval the following factors that "may be used to guide courts' discretion" in awarding fees: "frivolousness, motivation, objective

unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 534 n.19 (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). However, "such factors" must be applied in a manner that is "faithful to the purposes of the Copyright Act," and "applied to prevailing plaintiffs and defendants in an evenhanded manner." *Id.*

<u>*Kirtsaeng v. John Wiley & Sons, Inc.*</u> Twenty-two years later in *Kirtsaeng*, the Supreme Court "provid[ed] further guidance" concerning the application of the aforementioned non-exclusive *Fogerty* factors. 136 S. Ct. 1979, 1985 (2016). The Court held that courts should give "substantial weight to the objective (un)reasonableness of a losing party's litigating position." *Id.* at 1986. As the Court explained, doing so "encourages parties with strong legal positions to stand on their rights and deters those with weak ones from proceeding with litigation," which ultimately serves the purposes of the Copyright Act. *Id.* at 1986-87.

Moreover, the Supreme Court in *Kirtsaeng* made clear that, in determining whether a losing defendant's positions are "(un)reasonable" or not, district court must not "conflate[] two different questions: whether a defendant in fact infringed a copyright and whether he made serious arguments in defense of his conduct." *Id.* at 1988. As the Supreme Court explained, "Courts every day see reasonable defenses that ultimately fail . . . ; in this context, as in any other, they are capable of distinguishing between those defenses . . . and the objectively unreasonable variety." *Id.* The Supreme Court also observed that "a court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses," or "a court may do so to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case." *Id.* at 1988-89.

The Supreme Court also rejected as unhelpful the plaintiff's proposal that, in deciding whether to award fees, significant weight should be afforded to the lawsuit's role in "settling significant and uncertain legal issues." *Id.* at 1986-87. As the Court explained, that would simply "increase the reward for a victory" while "enhanc[ing] the penalty for a defeat" in "hard cases" where "no party can be confident if he will win or lose." *Id.* Such a rule could "just as easily discourage as encourage parties to pursue the kinds of suits that 'meaningfully clarif[y]' copyright law," depending on how risk averse or risk-taking the party is. *Id.*

**B.  Hearst's Positions in This Case Were Objectively Reasonable.**

As explained above, of the non-exclusive *Fogerty* factors, "objective unreasonableness," while not dispositive, is given "substantial weight." *Kirtsaeng*, 136 S. Ct. at 1989. A claim is "objectively unreasonable" only if it is "clearly without merit or otherwise patently devoid of legal or factual basis." *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, No. 96 Civ. 4126, 2004 WL 728878, at *3 (S.D.N.Y. Apr. 6, 2004); *see also Pearson Educ., Inc. v. Liu*, No. 08 CIV. 6152 KBF, 2013 WL 6916883, at *3 (S.D.N.Y. Dec. 27, 2013) (same); *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001) ("'Objective unreasonableness' is generally used to describe claims that have no legal or factual support."); *Silberstein v. Fox Entm't Grp., Inc.*, 536 F. Supp. 2d 440, 444 (S.D.N.Y. 2008) ("[T]he courts of this Circuit have generally concluded that only those claims that are clearly without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable." (citation omitted)). A "lack of success on the merits, without more," does not establish that a position was "objectively unreasonable." *Overseas Direct Imp. Co. v. Family Dollar Stores Inc.*, No. 10 Civ. 4919 (JGK), 2013 WL 5988937, at * 2 (S.D.N.Y. Nov. 12, 2013) (citations omitted); *see also Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, No. 14 Civ. 9270 (RJS), 2017

WL 3393850, at *2 (S.D.N.Y. Aug. 4, 2017); *Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2015 WL 13021413, at *3 (S.D.N.Y. Mar. 23, 2015) ("[T]he fact that a party's factual or legal theory was not ultimately successful does not mean it was objectively unreasonable."), *aff'd sub nom. Presse v. Morel*, 645 F. App'x 86 (2d Cir. 2016).

      1.   *Defendant's Arguments Regarding Liability, Even Though Unsuccessful, Were Not "Objectively Unreasonable."*

Defendant's primary argument concerning liability was that its use of the Photograph was a "fair use." 17 U.S.C. § 107. As stated in the Summary Judgment Opinion, the doctrine of fair use provides the breathing room necessary to accommodate important First Amendment concerns. *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 426 (S.D.N.Y. 2018) ("[I]n cases pertaining to the media's secondary use of a copyrighted work, as in this matter, the Second Circuit has consistently held that that 'First Amendment concerns are protected by and coextensive with the fair use doctrine.'" (citations omitted)). Yet the fair use analysis "is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). Rather, "'[t]he fair use determination is an open-ended and context sensitive inquiry,' weighing four non-exclusive statutorily provided factors in light of the purposes of copyright." *Otto*, 345 F. Supp. 3d at 426 (quoting *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013)).

Consistent with the difficulties in applying the fair use doctrine, Courts are generally hesitant to find that an unsuccessful fair use defense is "objectively unreasonable." *See Barcroft Media, Ltd. v. Coed Media Grp., LLC*, No. 16-CV-7634 (JMF), 2018 WL 357298, at *2 (S.D.N.Y. Jan. 10, 2018) (denying fees where defendant "focused the bulk of its attention on the defense of fair use, which turns on a fact-intensive, multifactor inquiry"); *BWP Media USA, Inc. v. Mishka NYC LLC*, No. 13 CV 4435 (ENV)(LB), 2016 WL 8309676, at *3 (E.D.N.Y. Dec. 28,

2016) ("Mishka's assertion of a fair use defense was not patently unreasonable and does not entitle plaintiff to fees."), *report and recommendation adopted sub nom. BWP Media USA Inc. v. Death Adders Inc.*, No. 13-CV-4435 (ENV) (LB), 2017 WL 880855 (E.D.N.Y. Mar. 3, 2017); *see also FameFlyNet, Inc. v. Jasmine Enters. Inc.*, No. 17 C 4749, 2019 WL 3733592, at *4 (N.D. Ill. Aug. 8, 2019) (denying fees in large part notwithstanding "summary judgment ruling in which the Court found that three of the four statutory factors for evaluating fair use weighed against applying fair use," because "while ultimately unsuccessful, the defense was neither factually nor legally unreasonable").

Adding to the complexity of the fair use analysis in this case is that the parties and Court were applying the doctrine to the largely untested context of social media. *Cf. Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1166 (9th Cir. 2007) (noting rapid and complex evolution of fair use doctrine in light of rapid technological changes on the Internet). As this case shows, any casual, personal photograph or video by a "guy with an iPhone" who has no immediate desire to generate revenue, and who shares them with the world for no cost at all through social media, can later register his copyright and sue for statutory damages from those who republish the images. The application of fair use to such a claim was far from clear at the outset of this case. Because the personal photograph at issue in this case pertained to highly newsworthy matters, the Court and litigants were obliged to apply fair use precedent that concerned antecedent technology and different contexts onto a new, and very different, fact pattern. *See Agence France Presse*, 2015 WL 13021413, at *4 (in denying fees upon finding that defendant's arguments were objectively reasonable: "The federal courts have recognized that 'the whole area of social media presents thorny and novel issues with which courts are only now coming to grips.'" (quoting *E.E.O.C. v. Original Honeybaked Ham Co. of Ga.*, No. 11-cv-02560 (MSK)

(MEH), 2012 WL 5430974, at *1 (D. Colo. Nov. 7, 2012))); *see also Miller v. Facebook, Inc.*,
No. 10-cv-264 (WHA), 2010 WL 2198204, at *1 (N.D. Cal. May 28, 2010) (noting the
"slipperiness of enforcing intellectual property rights in a world where creating and dispersing
infringing material to the public via social networking websites has become all too easy").

In this context, Defendant advanced a wholly reasonable fair use defense.  While the
Court ultimately disagreed with Defendant's arguments, it cannot be said that they were
"patently devoid of legal or factual basis."  *Penguin Books U.S.A., Inc.*, 2004 WL 728878, at *3.

To start, Defendant undeniably used the Photograph for the dual purposes of "news
reporting" and "comment," which are purposes that the Copyright Act identifies as being
candidates for fair uses.  17 U.S.C. § 107.  The Photograph was used to report on the highly
newsworthy event of the President of the United States crashing a stranger's wedding at his own
company's private golf club—which, until shortly before June 2017, actively touted, in
marketing brochures, the fact that the President of the United States may swing by on the
couple's "big day."  Def.'s Mem. of Law in Supp. of Its Mot. for Summ. J. and in Opp. to Pl.'s
Mot. for Partial Summ. J. (Doc. No. 52, "Def.'s Summ. J. Br.") at 4.

Further, Defendant reasonably argued that its use was "transformative"—the first factor
of the fair use analysis—because Defendant's "purpose . . . is plainly different from the original
purpose for which [the works] were created."  Def.'s Summ. J. Br. at 13-14 (quoting *Bill
Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608-10 (2d Cir. 2006)).  As
Defendant argued, "[w]ithin the context of the [article in which the Photograph was used (the
"Article")] . . . the [Photograph] is transformed from a personal keepsake into part of a story
about the President of the United States' apparent desire to be photographed in certain settings."
Def.'s Summ. J. Br. at 17 (citing *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73,

84 (2d Cir. 2014) (explaining that courts will sometimes hold that the use of complete copies of materials to be transformative based on "the altered purpose or context of the work, as evidenced by surrounding commentary or criticism").  Defendant cited to twelve cases—including one Second Circuit opinion and one opinion from this Court—where courts have found the use of still images that had not been substantially altered to be "transformative."  Def.'s Summ. J. Br. at 14-15; *see also Swatch Grp.*, 756 F.3d at 84 (physical alteration is not necessary for a finding of transformation).

In his Motion, Plaintiff proffers three arguments to suggest that the fair use defense in this case was objectively unreasonable.  Mem. of Law in Supp. of Pl.'s Application for Attorneys' Fees and Costs (Doc. 133, "Pl.'s Mem.") at 10-13.  None of them are persuasive.

*First*, Plaintiff argues that "Hearst failed to cite any legal authority for the proposition that its use was transformative because the [P]hotograph was created for personal use."  Pl.'s Mem. at 10.  That is not true; Defendant cited a number of cases that, Defendant contended, supported the proposition that Defendant's use of Plaintiff's Photograph was a fair use; the fact that none of those cases concerned the specific use of a personal photograph posted to a personal social media account does not mean that the "legal authority" that Defendant cited was not at least arguably supportive of Defendant's propositions.  To the extent Plaintiff is suggesting that Defendant argued that *all* uses of personal photographs are a fair use in *all* contexts, that is a straw man; Defendant never staked out such an absolutist position.  Rather, as explained above, the inquiry is fact intensive and context-specific, and Defendant's arguments—which marshaled both binding and persuasive precedent in support—were limited to the facts of this case.

Importantly, in its Summary Judgment Opinion, the Court recognized that the outcome of this case turns on the fact intensive nature of the fair use inquiry:

> The Court must remind the parties, however, of the "fact-driven nature" of the fair use inquiry and thus, the outcome may have been different in a similar scenario. *Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir. 1991).  It is not unreasonable to think that the use could be considered fair in another matter involving a news publisher's incorporation of a personal photograph. Though the Court did not find fair use in this particular instance, it does not preclude a finding of fair use in other matters, depending on the balance of the fair use factors.  Therefore, the Court emphasizes that a finding of fair use in a matter involving personal photographs used by the media might be readily sustainable on facts other than those presented here.

*Otto*, 345 F. Supp. 3d at 433.  Similarly, in its Damages Decision, the Court found that "on these facts," the editor who posted the Photograph "could reasonably have believed in good faith that the use of the image was fair use."  Sitwala Decl., Ex. A at 26:5-7.  Plaintiff ignores this aspect of the Summary Judgment Opinion, and he ignores the Decision on Damages in its entirety.

    *Second*, Plaintiff argues that Defendant's position was objectively unreasonable because Defendant did not actually "comment" on the President's availability for photographs at a wedding at all, but rather merely "ma[d]e note of the President's pattern of crashing weddings" as part of a "puff piece."  Pl.'s Mem. at 11-12.  This, again, is not true; the Article commented on the president's decision to crash at the wedding.  The Article described how Donald Trump's business was attempting to generate revenue by advertising that the President of the United States "will likely stop in & congratulate" persons who, by celebrating their wedding at the Bedminster Country Club, have chosen to do business with the President's private company.  Moreover, the Article mentioned that Trump crashed this wedding during "Trump's 24th visit to a golf course since he was elected," and that he "took the time to sign autographs for fans."[1]

---

[1]    Moreover, the larger editorial context is notable insofar as it also makes clear Defendant's use as commentary:  Trump decided to crash this wedding only five days after James Comey testified publicly before the Senate Select Committee on Intelligence concerning his interactions with the President leading up to his firing.  This event garnered substantial national and international media attention for the remainder of the week.  While the President would have been eager to do something to change the

11

This fact could be understood as a critique of how the President chooses to spend his time (notwithstanding that, before he was President, Donald Trump famously critiqued President Barack Obama for golfing too much).

What Plaintiff seems to be saying is that—by reporting facts from which readers can draw conclusions instead of "tak[ing] a political stance"—Defendant did not engage in "commentary" at all. Pl.'s Mem. at 11-12. In fact, Plaintiff admits that "Hearst's transformative argument would be colorable under First Amendment grounds" "had Hearst taken a political stance by attacking the President's penchant for crashing weddings as 'unpresidential,' or criticized the President for spending time crashing weddings rather than attending to important executive decisions . . . ." Pl.'s Mem. at 11-12. Plaintiff cites nothing to support his argument that reporting facts is not commentary, and that proposition is contrary to Second Circuit precedent. *See Bill Graham Archives*, 448 F.3d at 607, 609 ("commentary" included in factual "coffee table book" that "tells the story of the Grateful Dead along a timeline running continuously through the book, chronologically combining over 2000 images representing dates in the Grateful Dead's history with explanatory text," even though "each reproduced image [was not] accompanied by comment or criticism related to the artistic nature of the image" itself). Even though the Court ultimately found that Defendant's commentary did not render its use "transformative," Plaintiff is simply wrong to argue that Defendant did not offer any commentary at all.[2]

---

discussion, one might reasonably wonder why he was at a private wedding at one of his golf clubs, posing for photos, instead of in Washington during the midst of a political firestorm.

[2]     Events of the ensuing two years have proven that *Esquire.com*'s June 11, 2017 Article was a valuable addition to broader discussions concerning the time the President spends at his personal properties at taxpayer expense, entanglements between the President and his personal business, and the President's habit for crashing weddings at times when, some might suggest, he should be focused on other matters. *See* S.V. Date, *Trump's Golf Costs: $102 Million And Counting, With Taxpayers Picking Up The Tab*, Huffington Post, May 22, 2019, *available at* https://www.huffpost.com/entry/trump-golf-

*Third*, Plaintiff argues that Defendant "knew throughout the litigation that Otto had promptly sought to capitalize on the widespread use of his work," rendering Defendant's argument that there was no market harm (the fourth factor of the fair use analysis) "unreasonable." Pl.'s Mem. at 12-13. However, Defendant developed and presented undisputed evidence that, at the time he took the Photograph, Plaintiff did not anticipate licensing the photograph, thus drawing into question Plaintiff's suggestion that any actual or intended market for Plaintiff's work had been harmed by Defendant's use. *See Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1377 (2d Cir. 1993) (there can be no harm where "the defendant's work filled a market . . . that the plaintiff simply had no interest in occupying."); *see also Cariou*, 714 F.3d at 709 (market is usurped only where "the infringer's target audience . . . is the same as the original"). Moreover, Defendant argued that the fact that the use was "transformative" dictates that Plaintiff suffers no market harm, because "copyright owners may not preempt exploitation of transformative markets" by claiming that they could have tried to charge a license fee, or even "by developing or licensing a market" for such uses. *See Bill Graham Archives*, 448 F.3d at 615.[3] Again, Defendant's arguments, although unsuccessful, were

---

102-million-taxpayers_n_5ce46727e4b09b23e65a01bb (*see* Sitwala Decl., Ex. B); Brian Niemietz, *President Trump finds time to crash a wedding between massacres in Texas and Ohio*, N.Y. Daily News, Aug. 4, 2019, *available at* https://www.nydailynews.com/news/politics/ny-president-trump-wedding-texas-ohio-20190804-si5utiexjjcvngvzy7zlbhkddu-story.html (*see* Sitwala Decl., Ex. C); WNYC and ProPublica, *Trump Inc.: Exploring the Business of Trump*, https://www.propublica.org/series/trump-inc ("'Trump, Inc.' is a joint reporting project from WNYC Studios and ProPublica that digs deep into," *inter alia*, whether "the president and his family are keeping their promise to separate the Trump Organization from the Trump White House") (*see* Sitwala Decl., Ex. D).

[3]     Defendant waived most of its other asserted defenses—a factor that underscores the reasonableness of Defendant's positions. *See Otto*, 345 F. Supp. 3d at 433 (observing that "Plaintiff . . . moved for summary judgment on Defendant's remaining affirmative defenses: (1) failure to state a claim; (2) non-infringement; (3) waiver; (4) consent; and (5) release," and "Defendant has not responded to Plaintiff's arguments concerning any of the defenses other than waiver and consent."); *FameFlyNet, Inc.*, 2019 WL 3733592, at *4 ("[F]ar from being frivolous, [the defendant's decision to] focus[] only on its strongest defense – fair use – served judicial economy."). As for waiver and consent: They were not objectively unreasonable defenses, because Plaintiff conceded that he provided the

certainly reasonable.

At base, Plaintiff is arguing that because Defendant was found liable for infringement, it is "blameworthy" and therefore Plaintiff should recover his attorneys' fees. Pl.'s Mem. at 9. This argument runs headfirst into *Kirtsaeng*, in which the Supreme Court held that, in determining whether a losing defendant's positions were "(un)reasonable" or not, district courts must not "conflate[] two different questions: whether a defendant in fact infringed a copyright and whether he made serious arguments in defense of his conduct." 136 S. Ct. at 1988. Not surprisingly, Plaintiff relies on three pre-*Kirtsaeng* opinion in support of this point. Pl.'s Mem. at 9 (citing *In Design v. K–Mart Apparel Corp.*, 13 F.3d 559, 567-68 (2d Cir. 1994); *Scanlon v. Kessler*, 23 F. Supp. 2d 413, 416 (S.D.N.Y. 1998); *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1003 (S.D. Tex. 2000)). In fact, Plaintiff relies on a 1994 Second Circuit opinion that pre-dates and was overruled by *Fogerty*, and which reasoned that prevailing plaintiffs should be awarded attorneys' fees "as a matter of course." *See In Design*, 13 F.3d at 567-68.

### 2. *Defendant's Arguments Regarding Damages Were Successful and Reasonable.*

The Court agreed with Defendant that Plaintiff is entitled to a statutory damages award of $750.00, the statutory minimum. Sitwala Decl., Ex. A at 36. Defendant proffered unrebutted evidence that the reasonable licensing fee for the work at issue in this case was approximately $100.00, and the Court so found. *Id.* at 21. Further, the Court found that Defendant's

---

Photograph to Sean Burke without imposing any restrictions on Mr. Burke's use or transmission of the Photograph. Similarly, it was not objectively unreasonable for Defendant to question whether Plaintiff's copyright certificate corresponded to the Photograph at issue in this case, considering that Plaintiff took over 100 photographs of the event at issue and the registration certificate did not specify which photograph had been registered. In any event, there is no evidence that Plaintiff spent much time or effort addressing those secondary arguments.

infringement was not "willful," observing that Hearst's witnesses credibly testified that Hearst respects intellectual property rights; that it has controls in place to prevent against infringement; and that Hearst reasonably believes that those controls are effective at minimizing infringement, given the relative scarcity of infringement actions against the massive volume of content that Hearst publishes. *Id.* at 11, 27. Applying established precedent, these facts dictated that Plaintiff recover the statutory minimum of $750.00. Defendant's arguments concerning the damages amount in this case were "objectively reasonable" and accepted by the Court. Plaintiff does not argue to the contrary.

        3.   *Defendant Reasonably Responded to Plaintiff's Misleading Positions Regarding the Amount at Issue in This Case.*

In agreeing with Defendant's arguments on the issue of damages, the Court rejected Plaintiff's demand at trial for $30,000, which was not supported by any evidence. *Id.* at 35. This was just the last in a series of unreasonable positions by Plaintiff that forced Defendant to marshal a vigorous defense, and which failed to serve the purposes of the Copyright Act.

To start, Plaintiff made no attempt to resolve this matter short of litigation. The first Defendant learned of Plaintiff's claim was when Plaintiff filed a federal lawsuit on June 21, 2017. Sitwala Decl. ¶ 6. Then, throughout the case, Plaintiff made false allegations and statements to artificially inflate the value of his claim. In his Complaint, Plaintiff alleged that he is "a professional photojournalist in the business of licensing his photographs to online, print, and television stations for a fee," Doc. No. 1 ¶ 5, signaling that he could quantify his damages. This was and is not true. *See* Sitwala Decl., Ex. A at 3:20-22 ("Otto is not, and has never been, a professional photographer and has never been in the business of licensing photographs."). Plaintiff never amended or corrected the misstatement, nor did he ever introduce any competent evidence of what a reasonable licensing fee would be for the work at issue in this case.

On October 18, 2017, Plaintiff served interrogatory responses in which he stated that he "calculates the loss of licensing fee in the range of $5,000 based on the market rate of photographs of similar style, quality and content."  Sitwala Decl., Ex. E.  Plaintiff did not provide any explanation as to how he arrived at that number, or explanation for the basis for that number.  Then, six days later, Plaintiff and Hearst attended a settlement conference.[4]  Near the outset of the conference, Plaintiff's counsel, Richard Liebowitz, represented to Hearst's counsel and the Court that Plaintiff was on the verge of executing a license for the Photograph for a sum of $9,500 (the "Purported License").  *Id.* ¶ 9.  Plaintiff's counsel allowed Hearst's counsel to examine an unsigned document that he represented was that Purported License, suggesting that a reasonable estimate of damages in this case would be three to five times the license fee of $9,500.  *Id.* ¶¶ 9-10.  Defendant then repeatedly pressed Plaintiff's counsel for an explanation as to whether the Purported License was in settlement of Plaintiff's claims against another media entity, to which Plaintiff's counsel said it was not.  *Id.* ¶ 10.  That document, however, was subsequently produced—as part of a settlement agreement.  *Id.* ¶¶ 13-15.  Magistrate Judge Cott would later admonish Plaintiff's counsel for this conduct in response to Defendant's motion for sanctions.  *See Otto*, 2019 WL 1034116, at *12 ("[T]he Court strongly cautions Liebowitz and

---

[4]      Consideration of evidence of settlement negotiations and offers are not precluded by Fed. R. Evid. 408, because it is not being offered to "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a).  Rather, it is being offered for "another purpose," *id.* 408(b), *i.e.*, to elucidate Plaintiff's litigation conduct and unreasonable demands.  *See Greenwich Film Prods., S.A. v. DRG Records, Inc.*, No. 91 CIV. 0546 (JSM), 1996 WL 502336, at *2 (S.D.N.Y. Sept. 5, 1996) ("While determining the reasonableness of a claim for attorney's fees is not specifically mentioned as a purpose for which evidence of a settlement offer may be considered, strong public policy considerations support its admissibility for that purpose. . . . [L]itigation is not a weapon to punish an adversary and one who makes a totally unreasonable settlement demand should not be rewarded at the end of the litigation with a generous award of counsel fees.").  Moreover, because these facts are reflected in a publicly available opinion, there is no need to file this information under seal.  *See* Doc. No. 94 (Opinion and Order by Magistrate Judge Cott disposing of sanctions motions, entered after no party requested redactions); *Otto v. Hearst Commc'ns, Inc.*, No. 17-CV-4712 (GHW) (JLC), 2019 WL 1034116, at *1 (S.D.N.Y. Feb. 21, 2019) (same).

his law firm to be mindful of overplaying their hands (or worse) during settlement negotiations. .

. . This is hardly the first time that Liebowitz and his firm have had their reputation called into

question, and the Court can only hope it will be the last." (collecting cases).)

Plaintiff was then deposed on December 11, 2017.  During the deposition, the following

exchange took place:

> Q. Have you ever licensed the photograph at issue in this case to
> anyone?
> A. Currently, yes.
> Q. What do you mean by "currently"?
> A. We've—we've licensed the photos [sic], yes.
> Q. Who have you licensed it to?
> A. TMZ
> Q. Is that it?
> A. To my knowledge as of today, yes....
> * * *
> Q. What's the status of [your lawsuit against Warner Brothers]?
> A. I believe that one's settled or a settlement, I think, as well.
> Q. Was this license agreement part of the settlement of that
> lawsuit?
> A. No, they're separate.
> Q. How are they separate?
> A. We had a settlement with them after the license agreement.
> Q. Is there a separate written settlement agreement?
> A. Yes.

Sitwala Decl., Ex. F.  However, Plaintiff never produced any license agreement "separate" from

a settlement agreement.  Plaintiff has no licensing history whatsoever, as was stipulated in

connection with both the summary judgment briefing and the trial.  Doc. Nos. 41 ¶ 20; 119 ¶ 21.

When he finally admitted that he did not have any licensing history at all, Plaintiff

attempted to argue at trial that the most analogous reasonable fee for the work would be the

amount that Defendant has paid for commissioned photographs in the past ($4,000).  The Court

found that argument to be "wholly implausible."  Sitwala Decl., Ex. A at 21.  As the Court

found, "this was not a commissioned photograph"; "it is not reasonable to ask me to value this

image at the value of what it would have cost had it been a commissioned photograph"; and "there is no basis for me to speculate that Hearst would have commissioned this photograph, much less that it would have paid the highest possible amount for such a photograph." *Id.*[5]

Plaintiff's unreasonable positions were capped off by the settlement demand he made of Defendant on July 2, 2019 (*i.e.*, one day after the final pre-trial conference at which the Court suggested that the parties discuss settlement). That day, Plaintiff demanded *$125,000* from Defendant to settle the case (with an exploding sub-offer of $75,000 if Defendant accepted by 5 p.m. EDT on July 8, 2019). Sitwala Decl. ¶ 16. $125,000 is almost $35,000 *more than the sum of what Plaintiff has sought from this Court*, adding his plea for damages at trial ($30,000.00) and the present application for fees and costs ($60,181.25). And these numbers are worlds away from the reasonable licensing fee of $100.00, as the Court found, and the statutory minimum of $750.00, as the Court awarded. Needless to say, this demand was a non-starter, and did not warrant a counter-offer from Defendant. Sitwala Decl. ¶ 18.

In sum, given Plaintiff's positions regarding damages, there was never a reasonable off-ramp in this litigation for Defendant. Defendant proffered objectively reasonable positions in the face of misleading litigation tactics designed to obfuscate the true value of Plaintiff's case. Defendant's arguments in this litigation were "objectively reasonable."[6]

---

[5]    At summary judgment, Plaintiff similarly argued that "Defendant should have hired its own photographer to take photos of President Trump at the wedding." The Court dismissed this argument as "absurd." *Otto*, 345 F. Supp. 3d at 431. "It would clearly be impossible for news companies, even ones as large as Hearst, to assign photojournalists to cover every single potential news story, let alone one that occurred unexpectedly and at a private, closed event." *Id.*

[6]    In light of the objective reasonableness of Hearst's positions, the "frivolousness" factor of the *Fogerty* analysis also weighs against an award of attorneys' fees. *See Agence France Presse*, 2015 WL 13021413, at *5 (concluding claim was not frivolous for the same reasons it was not deemed to be objectively unreasonable); *TCA Television Corp. v. McCollum*, No. 15 Civ. 4325 (GBD) (JCF), 2017 WL 2418751, at *14 (S.D.N.Y. June 5, 2017) (only finding frivolousness where party exhibits a "particularly intense form of objective unreasonableness").

C.    **There Is No Need for Further Compensation for Plaintiff's Counsel.**

The "need for advance considerations of compensation" is not applicable here.  Plaintiff

has already been awarded 7.5 times his reasonable licensing fee.  That is sufficient to

compensate Plaintiff.  The purposes of the Copyright Act would not be served by providing

Plaintiff's counsel with a windfall of an attorneys' fee award that is more than 80 times the

damages award in this case.

Plaintiff's primary response is that, in "infringement actions where the potential for

monetary recovery is modest, courts recognize that the prevailing party should have a

'presumptive entitlement' to the full amount of attorneys' fees."  Pl.'s Mem. at 3 (citing *Crown

Awards, Inc. v. Discount Trophy & Co., Inc.*, 564 F. Supp. 2d 290 (S.D.N.Y. 2008), *aff'd*, 326 F.

App'x 575 (2d Cir. 2009)).  But *Crown Awards* has been called into question by at least two

subsequent decisions, because it relies on an opinion from the Seventh Circuit Court of Appeals

that is inconsistent with *Fogerty* and *Kirtsaeng*.  *See Assessment Techs. Of WI, LLC v.

WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004).  In *Jovani Fashion, Ltd. v. Cinderella Divine,

Inc.*, 820 F. Supp. 2d 569, 575 (S.D.N.Y. 2011), this Court observed that this proposed

"refinement of the *Fogerty* standard" "has not been endorsed by the Supreme Court, or by a

precedential opinion of the Court of Appeals for this circuit."  *Id.*  "Indeed, to the extent that it

sets a presumption of a fee award . . . , the rule of *Assessment Technologies* appears to conflict

with the Supreme Court's holding in *Fogerty* that fee-shifting is a matter for the district court's

discretion, that prevailing defendants and plaintiffs are to be evaluated 'alike' and 'in an

evenhanded manner,' and that the Copyright Act did not adopt 'the British Rule for automatic

recovery of attorney's fees by the prevailing party.'"  *Id.*

Similarly, in *Point 4 Data Corp. v. Tri-State Surgical Supply & Equipment, Ltd.*, No. 11-

CV-726 (CBA) (RLM), 2015 WL 13037562, at *3 n.4 (E.D.N.Y. Sept. 10, 2015), *aff'd in part, vacated in part on other grounds sub nom. Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equipment Ltd.*, 716 F. App'x 5 (2d Cir. 2017), the United States District Court for the Eastern District of New York observed that "the Seventh Circuit imposes a strong presumption in favor of an award when defendants are the prevailing party," but "[b]ecause such a finding is contrary to *Fogerty*'s express rejection of a presumption in favor of either party, the Court join[ed] the growing chorus of courts that have declined to follow *Assessment Technologies*." This Court should join that "growing chorus" and reject Plaintiff's argument that there is a "presumptive entitlement" to fees in cases where Plaintiff's recover is small (even if it is 7.5 times the reasonable licensing fee for the work at issue).[7]

Relatedly, Plaintiff presses that the Liebowitz Law Firm serves as a "'private attorney general' to enforce the rights of the artistic community." Pl.'s Mem. at 8. As described above, this argument was not adopted by the Court in *Fogerty*, which rejected the proposed analogy to the Civil Rights statutes. Moreover, "[w]hat the Liebowitz firm trumpets as its self-appointed role of 'private attorney general' has been described by another court as a dubious practice of copyright trolling." *Sands v. CBS Interactive Inc.*, No. 18-CV-7345 (JSR), 2019 WL 1447014, at *7 (S.D.N.Y. Mar. 13, 2019) (quoting *McDermott v. Monday Monday, LLC*, No. 17-cv-9230

---

[7]    *Harrell v. Van der Plas*, No. 08 CIV. 8252 (GEL), 2009 WL 3756327 (S.D.N.Y. Nov. 9, 2009), also cited by Plaintiff, also relies on the *Assessment Technologies*. Also, in that case, the Court found that the defendant's infringement was willful, which the Court did not find in this case. *U.S. Media Corp. v. Edde Entm't Corp.*, No. 94 CIV. 4849 (MBM) MHD, 1998 WL 401532 (S.D.N.Y. July 17, 1998), also cited by Plaintiff, says nothing about a "presumptive entitlement," but in any event is also a case where the defendant was found to be a willful infringer. And lastly, *Quinto v. Legal Times of Washington, Inc.*, 511 F. Supp. 579, 581 (D.D.C. 1981)—featured in a block quote at the beginning of Plaintiff's Memorandum—was decided only three years after the effective date of the Copyright Act and thus well before *Fogerty* and *Kirtsaeng*. Moreover, the *Quinto* court awarded only $500 in fees to a *pro se* litigant—a practice that this Court has rejected. *See Huurman v. Foster*, No. 07 CIV. 9326 (MHD), 2010 WL 2545865, at *17 (S.D.N.Y. June 21, 2010) ("Courts have held that pro se litigants are not entitled to statutory attorneys' fee awards for prevailing parties, even when the pro se litigants are attorneys.").

(DLC), 2018 WL 5312903, at *2-3 (S.D.N.Y. Oct. 26, 2018) (detailing the Liebowitz Law

Firm's history of questionable litigation practices and holding that "it is undisputable that Mr.

Liebowitz is a copyright troll," *id.* at *3)).

**D.    Defendant Has Not Engaged in Any Conduct that Needs to be Deterred Through an Award of Attorneys' Fees.**

In its Damages Decision, the Court rejected Plaintiff's call for an outsized award of

$30,000 (or anything close to that) to serve as a deterrent.  As the Court concluded in its

Damages Decision, "in light of my previous findings regarding the lack of evidence that the

Hearst organization as a whole generally disregards the rights of copyright owners, I conclude

that a large statutory damages award is not necessary to deter Hearst against future

infringement."  Sitwala Decl., Ex. A, at 33:17-21.  As the Court said, "a multiplier greater than

7.5 times the licensing fee, which would be required in order to bring the award to a figure in

excess of the $750 statutory minimum, would be excessive in light of my evaluation of the facts

of this case and applicable law."  *Id.* at 35:22-36:1.  Those same factors instruct that the Court

should need not award Plaintiff his attorneys fees to "deter" Hearst's conduct, either.

Plaintiff's only response is to point to *Crown Awards*' "presumptive entitlement"

language.  For the reasons described above, this argument should be rejected.

**E.    Defendant's Motivation in Defending this Case Was Proper.**

While Plaintiff does not proffer an argument concerning Defendant's motivation, there is

no reason to believe that Defendant defended itself in this action in bad faith or for an improper

motive.  However, there is substantial reason to question whether Plaintiff's motivations were in

line with the Copyright Act's purposes.  Every settlement demand that Plaintiff made in this case

far exceeded the fair value of the Photograph plus the amount of attorneys' fees accrued to that

point in the case.[8]  Plaintiff is asking this Court to reward it for making unreasonable demands, and awarding any fees would not only reward this strategy but incentivize Plaintiff and others to make unreasonable demands and extend litigation for no reason.  Indeed, given that this case (and others like it) are contingency cases, counsel would have every reason to draw out litigations in order to make more money at the end of the day.

F.    **In Sum, All Factors Favor the Defendant.**

For the reasons stated above, Defendant's arguments in this matter were "objectively reasonable," and none of the other *Fogerty* factors weigh in favor of awarding fees to Plaintiff, either.  The Motion should be denied in full.

II.    **SHOULD THE COURT GRANT PLAINTIFF'S APPLICATION, PLAINTIFF'S UNREASONABLE ATTORNEYS' FEES DEMAND SHOULD BE REDUCED.**

Courts in the Second Circuit employ the "presumptively reasonable fee" (or "lodestar") method in determining attorney's fee awards.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).  The "presumptively reasonable fee" is derived by multiplying the reasonable hourly rates by the number of hours reasonably expended. *Id.*  However, that is not the end of the analysis; "[c]ourts in this Circuit have recognized a district court's authority to make across-the-board percentage cuts in hours, as opposed to an item-by-item approach, to arrive at the reasonable hours expended."  *Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 656-57 (S.D.N.Y. 2019).  Here, should the Court grant Plaintiff's

---

[8]    At the October 23, 2017 settlement conference, Plaintiff's counsel suggested that a reasonable estimate of damages in this case, under Second Circuit case law, would be between $28,500 and $47,500. Sitwala Decl. ¶ 9.  However, prior to the mediation, Mr. Liebowitz and Mr. Freeman had only performed $3,400 in legal services, even accepting the rates they have requested and tables they have submitted to this Court.  *See* Doc. No. 134 ¶ 7, Ex. A; Doc. No. 135 ¶ 4, Ex. A.  Later, on February 6, 2018, Plaintiff made a settlement demand of $15,000.  Sitwala Decl. ¶ 16.  However, at that point in the case, Plaintiff had only performed $15,000 worth of legal services, again according to the rates they have requested and tables they have submitted to this Court.  *See* Doc. No. 134 ¶ 7, Ex. A; Doc. No. 135 ¶ 4, Ex. A.

application at all—and it should not, *see supra* Argument Point I—Plaintiff's request for

$60,181.25 should be substantially reduced, for three reasons.[9]

*First*, Mr. Freeman and Mr. Liebowitz's hourly rates should be reduced to $300 per hour

and $350 per hour, respectively.  A "reasonable hourly rate" is the "hourly rate . . . a paying

client would be willing to pay." *Arbor Hill*, 522 F.3d at 190.  Although there is no evidence that

any client has ever paid Mr. Freeman or Mr. Liebowitz their attorneys' fees—they acknowledge

that they generally work on a contingency basis—very recent cases have approved of the rates of

$300/hr. for Mr. Freeman and $350/hr. for Mr. Liebowitz.  *See Whitehead v. Mix Unit, LLC*, No.

17 Civ. 9476 (VSB) (JLC), 2019 WL 384446, at *5 (S.D.N.Y. Jan. 31, 2019) (approving of a

rate of $350/hr. for Mr. Liebowitz), *report and recommendation adopted*, No. 17-CV-9476

(VSB), 2019 WL 1746007 (S.D.N.Y. Apr. 18, 2019); *Myeress v. Elite Travel Grp. USA*, No. 18-

CV-340 (AJN), 2018 WL 5961424, at *5 (S.D.N.Y. Nov. 14, 2018) (same); *Anderson v. Primera*

*Plana NY, Inc.*, No. 17-CV-7715 (JMF) (KNF), 2019 WL 1936741, at *6 (S.D.N.Y. Mar. 29,

2019) (approving of rate of $300/hr. for Mr. Liebowitz), *report and recommendation adopted*,

No. 17-CV-7715 (JMF), 2019 WL 1966369 (S.D.N.Y. May 1, 2019); *Mordant v. Citinsider*

*LLC*, No. 18-CV-9054 (RA), 2019 WL 3288391, at *2 (S.D.N.Y. July 22, 2019) (same).  The

Court should apply those same rates here, which would lower Plaintiff's attorneys' fees demand

to $48,275.00.

*Second*, the $48,275.00 amount should be reduced by 50 percent to account for Plaintiff's

limited success in this matter.  The "most critical factor" in a district court's determination of

what constitutes reasonable attorney's fees in a given case "is the degree of success obtained" by

---

[9]    Should the Court award Plaintiff his costs, Defendant has no objection to the claimed $440.00 in
costs for initiating the lawsuit ($400) and then serving process on Defendant ($40).

the plaintiff.  *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008)

(quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *see also Hensley v. Eckerhart*, 461 U.S.

424, 436 (1983) ("If, on the other hand, a plaintiff has achieved only partial or limited success,

the product of hours reasonably expended on the litigation as a whole times a reasonable hourly

rate may be an excessive amount.").  "A district court's assessment of the 'degree of success'

achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims,"

but includes both "'the quantity and quality of relief obtained' as compared to what the plaintiff

sought to achieve as evidenced in her complaint."  *Barfield*, 537 F.3d at 152 (citation omitted);

*see also Bond v. Welpak Corp.*, No. 15-CV-2403 (JBW) (SMG), 2017 WL 4325819, at *7

(E.D.N.Y. Sept. 26, 2017) ("In light of plaintiffs' quite limited success at trial, I find that an

across-the-board reduction of 25% of the hours for which plaintiffs seek reimbursement is

appropriate."), *appeal dismissed* (Apr. 9, 2018).  Where a prevailing plaintiff realizes limited

success by this measure, Courts will reduce the attorneys' fees award by a significant percentage.

*See Barfield*, 537 F.3d at 152 (affirming 50% reduction of award).

       Here, Plaintiff won on liability—but was awarded only a fraction of what he sought in

damages.  Granting Plaintiff an attorneys' fees award that is more than double Plaintiff's

damages demand—and more than 80 times the damages award—would be inconsistent with

what a "presumptively reasonable fee" should be for a case like this.  Following *Barfield*, the

Court should reduce Plaintiff's recovery by an additional 50 percent.  *Id.* at 139 (where plaintiff

sought large recovery through class certification, failed, and then individual plaintiff prevailed on

the merits but was only awarded $1,774.50, district court did not abuse discretion in reducing

$99,778.75 lodestar calculation by 50 percent).  This brings the attorneys' fees award down to

$24,137.50.

*Third* and lastly, the $24,137.50 amount should be reduced by an additional 30 percent due to Plaintiff's counsel's apparent failure to maintain contemporaneous time records. Although Mr. Leibowitz claims that his time records were kept "contemporaneous[ly]," no "contemporaneous" records have been presented to the Court. Rather, Mr. Liebowitz has submitted what he represents to be time records that have been "reconstructed based on cross-references to the court's docket, internal files, and calendars." Doc. No. 135 ¶ 6. Similarly, Mr. Freeman has not submitted the "contemporaneous handwritten time entries" that he allegedly maintained, but rather a chart that has been "reconstructed." Doc. No. 135 ¶ 6. As the cases cited by Plaintiff establish, courts will, at a minimum, decrease attorneys' fees awards by a significant percentage where, as here, a contingency fee counsel submits "reconstructed" time records. Pl.'s Mem. at 19 (citing *Monaghan v. SZS 33 Assocs., L.P.*, 154 F.R.D. 78, 84 (S.D.N.Y. 1994) (reducing fee award by 30 percent); *Hensley*, 461 U.S. at 438 n. 13 (affirming 30 percent reduction of one attorney's time); *Johnson v. Kay*, 742 F. Supp. 822, 836-37 (S.D.N.Y. 1990) (reducing amount of award by 20%)). The Court should do so here, reducing the $24,137.50 amount by an additional 30 percent and thus bringing the total attorneys' fees award down to $16,896.25. This award would be more than generous in this case, where Plaintiff recovered only $750.00, and Plaintiff's counsel should have realized early on that this was an exceedingly low-value case.

## **CONCLUSION**

For the foregoing reasons, the Motion should be denied in full. Should the Court award Plaintiff's counsel his costs and fees, the fees award should be reduced to $16,896.25.

Dated: August 20, 2019
      New York, New York

Respectfully submitted,

/s/ Nathaniel S. Boyer
Jonathan R. Donnellan
Ravi V. Sitwala
Nathaniel S. Boyer
The Hearst Corporation
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 841-7000
nathaniel.boyer@hearst.com

*Counsel for Defendant Hearst
Communications, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on August 20, 2019.

/s/ Nathaniel S. Boyer
Nathaniel S. Boyer